ACCEPTED
15-25-00016-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
2/11/2025 4:07 PM
CHRISTOPHER A. PRINE
CLERK

No. 15-25-00016-CV

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
2/11/2025 4:07:26 PM
CHRISTOPHER A. PRINE
Clerk

**IN THE**

**FIFTEENTH COURT OF APPEALS**

**AUSTIN, TEXAS**

In re,

MARTY BERRY AND AXIS MIDSTREAM HOLDINGS, LLC

*Relators*

**RELATORS' APPENDIX**
**VOLUME 4 OF 5**

Original proceeding brought from Business Court 11A,
Cause No. 24-BC11A-0025
The Honorable Sofia Adrogue, Presiding

Douglas A. Allison
State Bar No. 01083500
LAW OFFICES OF
DOUGLAS A. ALLISON
403 N. Tancahua Street
Corpus Christi, TX 78401
Telephone: (361) 888-6002
Facsimile: (361) 888-6651
Email: doug@dallisonlaw.com

COUNSEL FOR RELATORS

# APPENDIX VOLUME 4 OF 5

# TABLE OF CONTENTS

APPENDIX 32………………………………………………….……Dec. 31, 2024
Judge's Ruling Requesting Briefing
Cause No. 24-BC11A-0025
11th Business Court, Harris County, Texas

APPENDIX 33……………………………...………………….…..Jan. 9, 2025
Defendants' Brief
Cause No. 24-BC11A-0025
11th Business Court, Harris County, Texas

APPENDIX 34……………………………………………..…….Jan. 9, 2025
Responding Parties' Brief on the Moving Parties' Signature Claim
Cause No. 24-BC11A-0025
11th Business Court, Harris County, Texas

APPENDIX 35……………………………………………….....…..Jan. 9, 2025
Responding Parties' Brief on the Moving Parties' Signature Claim
Cause No. 24-BC11A-0025
11th Business Court, Harris County, Texas

APPENDIX 36……………………………………………….…..Jan. 17, 2024
Signed Order re Plea in Abatement and Motion to Abate
Cause No. 24-BC11A-0025
11th Business Court, Harris County, Texas

APPENDIX 37……………………………………………….…..Jan. 21, 2025
Berry GP's Application for TRO and Temp. Injunction
Cause No. 2024DCV-0045-C
Nueces County, Texas

APPENDIX 38……………………………………………….…..Jan. 24, 2025
Hearing Transcript
Cause No. 2024DCV-0045-C
Nueces County, Texas

APPENDIX 39…………………………………………………….…Jan. 27, 2025
Order Denying TRO
Cause No. 2024DCV-0045-C
Nueces County, Texas

APPENDIX 40……………………………………………….…Jan. 28. 2025
Defendant Bonnie Berry's Emergency Plea in Abatement / Motion to Abate
Cause No. 24-BC11A-0025
11th Business Court, Harris County, Texas

APPENDIX 41……………………………………………….…Jan. 28. 2025
Counter-Plaintiff Berry GP's Supplemental and Third Party Petition
Cause No. 2024DCV-0045-C
Nueces County, Texas

APPENDIX 42……………………………………………...….April 21, 2020
Transfer of Interests between Berry GP and Redfish Bay Terminal, Inc.
ALB_001057

APPENDIX 43…………………………………………...….Berry GP Bylaws

APPENDIX 44……………………………………...….Lawrence Berry Testimony
(will be supplemented when transcript is received from court reporter)

APPENDIX 45……………………………………………...….April 21, 2020
Transfer of Interests between Redfish Bay Terminals, Inc. and
Lone Star Ports Holdings, LLC ALB_001061

APPENDIX 46………………………….…...….Redfish Bay Terminals, Inc. Bylaws

APPENDIX 47…………………………………….…………...….Jan. 29-30, 2025
TI Hearing Testimony
(will be supplemented when transcript is received from court reporter)

APPENDIX 48…………………………………………………......….Jan. 31, 2025
Notice of Hearing for Continuation of TI on Feb. 14, 2025
Cause No. 24-BC11A-0025
11th Business Court, Harris County, Texas

APPENDIX 49…………………………………………….…...….Feb. 5, 2025

Intervenors' Original Petition in Intervention
Cause No. 2024DCV-0045-C
Nueces County, Texas

APPENDIX 50………………………………………...……April 24, 2020
Email re Lone Star Ports' Group Companies

APPENDIX 51…………………...……Lone Star Ports Project- Holding Structure

APPENDIX 52……………………………………………...……Nov. 27, 2024
Plaintiffs' Verified 3rd Amended Petition and Application for
Temporary Restraining Order and Temporary Injunction
Cause No. 24-BC11A-0025
11th Business Court, Harris County, Texas

APPENDIX 53………………………………………...……...……Jan. 24, 2025
Allen Lawrence Berry's Response in Opposition to Application for
Temporary Restraining Order and Temporary Injunction
Cause No. 2024DCV-0045-C
Nueces County, Texas

APPENDIX 54……………………………………..Companies' Organizational Chart

APPENDIX 55………………………………………...……...……Dec. 3, 2024
Movants' Exhibit List
Cause No. 24-BC11A-0025
11th Business Court, Harris County, Texas

APPENDIX 56………………………………………...……...……March 14, 2024
Plaintiffs' 1st Amended Verified Petition and Application
For Temporary Injunction
Cause No. 2024DCV-0045-C
Nueces County, Texas

APPENDIX 57………………………………………...……...……Dec. 6, 2023
Proposed Amended TRO
Harris County, Texas

APPENDIX 58…………………………………………..…...…….Nov. 4, 2024
Axis Midstream Holdings, LLC Filing History
Texas SOS

APPENDIX 59…………………………………....……….....….Jan. 6, 2025
Notice of Hearing on Plaintiffs' Application for Temporary Injunction
Cause No. 24-BC11A-0025
11th Business Court, Harris County, Texas

APPENDIX 60………………………………....……….....….Jun. 7, 2024
Lawrence Berry's Responses and Objections to Berry Entities'
First Request for Production to Allen Lawrence Berry
Cause No. 2024DCV-0045-C
Nueces County, Texas
APPENDIX 61…………………………....………..……….....….2024
Axis Midstream Holdings, LLC PIR filed with Texas SOS

# APPENDIX 32

E-filed in the Office of the Clerk
for the Business Court of Texas
1/2/2025 2:12 PM
Accepted by: Beverly Crumley
Case Number: 24-BC11A-0025



THE BUSINESS COURT OF TEXAS
ELEVENTH DIVISION

| | | |
|---|---|---|
| Albert Theodore Powers; Allied Ports, LLC, §<br>§<br>Plaintiffs, §<br>§<br>v. §<br>§<br>Axis Midstream Holdings, LLC; Allen §<br>Lawrence Berry; Marvin Glenn Berry; and §<br>Bonnie Berry as successor in interest to §<br>Dennis Wayne Berry, §<br>§<br>Defendants. §<br>§<br>§ | | Cause No. 24-BC11A-0025 |

---

## ORDER

---

Before the Court is Marvin Glenn Berry's Plea in Abatement and Motion to Abate; Movants' Motion to Remand, Dismiss and/or Transfer Venue; and Defendant Axis Midstream Holdings, LLC's Motion to Transfer Venue (the "Motions").

At this juncture, the Court orders that, on or before January 9, 2025, the Moving Parties (collectively, Marvin Glenn Berry, Bonnie Berry, and Axis Midstream Holdings, LLC), and the Responding Parties (collectively, Allen Lawrence Berry, Albert Theodore Powers, and Allied Ports,

1

LLC) shall each jointly prepare and file a brief[1] addressing the legal effect, if any, of the Moving Parties' claim that "neither Marty Berry nor Dennis Berry signed any contract with a provision allowing for venue in Harris County, Texas"[2] on the disposition of the Motions. Absent leave of Court, no further briefing shall be submitted prior to the Court's ruling on the Motions.

    SO ORDERED.

                                                 _____

                                               Hon. Sofia Adrogué
                                               Texas Business Court, Eleventh Division

DATED: December 31, 2024

---

[1] The Moving Parties shall file a single joint brief, and the Responding Parties shall file a single joint brief.
[2] Movants' Mot. to Remand, Dismiss and/or Transfer Venue at 13 n. 56.

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Envelope ID: 95794739
Filing Code Description: No Fee Documents
Filing Description: Order [Re-Scanned]
Status as of 1/2/2025 2:34 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Barrett H.Reasoner | | breasoner@gibbsbruns.com | 1/2/2025 2:12:50 PM | SENT |
| Michael R.Absmeier | | mabsmeier@gibbsbruns.com | 1/2/2025 2:12:50 PM | SENT |
| Stephanie Sanchez | | sanchezst@gtlaw.com | 1/2/2025 2:12:50 PM | SENT |
| Rosa Brennan | | rbrennan@gibbsbruns.com | 1/2/2025 2:12:50 PM | SENT |
| Douglas Allison | 1083500 | doug@dallisonlaw.com | 1/2/2025 2:12:50 PM | SENT |
| Alistair Dawson | 5596100 | adawson@beckredden.com | 1/2/2025 2:12:50 PM | SENT |
| Roland Garcia | 7645250 | garciar@gtlaw.com | 1/2/2025 2:12:50 PM | SENT |
| Michael Hummell | 10271100 | hummellm@bayltd.com | 1/2/2025 2:12:50 PM | SENT |
| Michael McClellan | 24109525 | jmcclellan@beckredden.com | 1/2/2025 2:12:50 PM | SENT |
| Roxanne Graham | | rgraham@gibbsbruns.com | 1/2/2025 2:12:50 PM | SENT |
| Christina Pena | | cpena@gibbsbruns.com | 1/2/2025 2:12:50 PM | SENT |
| Kim Brunkenhoefer | | kim@dallisonlaw.com | 1/2/2025 2:12:50 PM | SENT |
| Susan Gonzales | | susan@dallisonlaw.com | 1/2/2025 2:12:50 PM | SENT |
| Steven Higginbotham | | higginbothams@gtlaw.com | 1/2/2025 2:12:50 PM | SENT |
| Bruce Baldree | | bbaldree@gibbsbruns.com | 1/2/2025 2:12:50 PM | SENT |
| Sydney Ballesteros | | sballesteros@gibbsbruns.com | 1/2/2025 2:12:50 PM | SENT |
| Becky Young | | Becky.Young@gtlaw.com | 1/2/2025 2:12:50 PM | SENT |
| Madeline Gay | | mgay@beckredden.com | 1/2/2025 2:12:50 PM | SENT |
| Business Court 11A | | BCDivision11A@txcourts.gov | 1/2/2025 2:12:50 PM | SENT |
| Liz Poirrier | | epoirrier@beckredden.com | 1/2/2025 2:12:50 PM | SENT |
| Vanessa Gilmore | | vg@robertsmarkland.com | 1/2/2025 2:12:50 PM | SENT |

# APPENDIX 33

E-filed in the Office of the Clerk
for the Business Court of Texas
1/9/2025 4:23 PM
Accepted by: Beverly Crumley
Case Number: 24-BC11A-0025

CAUSE NO. 24-BC11A-0025

| | | |
|---|---|---|
| ALBERT THEODORE POWERS and ALLIED PORTS LLC | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | IN THE BUSINESS COURT |
| v. | | |
| | | 11A – STATE OF TEXAS |
| AXIS MISTREAM HOLDINGS, LLC,<br>ALLEN LAWRENCE BERRY,<br>MARVIN GLENN BERRY, and<br>BONNIE BERRY, as successor in interest to<br>DENNIS WAYNE BERRY | | HONORABLE SOFIA ADROGUE |

## DEFENDANTS' BRIEF

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COME Marty Berry ("Marty"), Bonnie Berry ("Bonnie"), and Axis Midstream Holdings LLC ("Axis"), and file this Defendants' Brief and in support of same would show:

## I.
## PRELIMINARY STATEMENT

**Subject-Matter Jurisdiction:**

The Court's request for additional briefing probes that interplay as between jurisdiction (as traditionally defined) and venue (as traditionally defined). This cross-roads is dominant jurisdiction. Please consider.

> **Subject-Matter Jurisdiction:** "Jurisdiction" refers to the power of the court, under the Constitution and laws, to determine the merits of an action between parties and to render a judgment."[1]
> . . . Subject-matter jurisdiction 'exists by operation of law only, and cannot be conferred upon any court by consent or waiver.'"[2]

---

[1] *Gordon v. Jones*, 196 S.W.3d 376, 382 (Tex.Civ.App. – Houston [1st District] 2006); citing *Reliant Energy Inc. v. Gonzalez,* 102 S.W.3d 868, 871 (Tex.Civ.App. – Houston [1st District] 2003), affirmed 159 S.W.3d 615 (Texas 2005) (citing *National Life Company v. Rice,* 167 S.W.2d 1021, 1024 (1943).

[2] *Gordon v. Jones*, 196 S.W.3d 376, 382 (Tex.Civ.App. – Houston [1st District] 2006); citing *Dubai Petroleum Company v. Kazi,* 12 S.W.3d 71, 76 (Texas 2000) (quoting *Federal Underwriters Exchange v. Pugh,* 174 S.W.2d 598, 600 (1943); see also *Texas Association of Business v. Texas Air Control Board*, 852 S.W.2d 440, 443-444 (Texas 1993).

The parties to this Harris County Lawsuit[3] seemingly concede that this Business Court has acquired subject-matter jurisdiction, and that Judge Robert Galvan presiding over the Nueces County Lawsuit[4] also has acquired subject-matter jurisdiction. As further discussed below, this circumstance is precisely what triggers the filing of Movants' Plea in Abatement and this Court's consideration of dominant jurisdiction.

**Venue:**

Of course, "**Venue is Not Jurisdictional:** Jurisdiction and venue are not synonymous."[5]

> ""Venue" refers to the propriety of prosecuting, in a particular forum, a suit on a given subject matter with specific parties, over which the forum must, necessarily, have subject-matter jurisdiction.[6] See id. [*State v. Pounds*, 525 S.W.2d 547, 550 (Tex. Civ.App. – Amarillo 1975, writ ref'd n.r.e.); *Reliant Energy Inc.* 102 S.W.3d at 871; *Nat'l Life Co. v. Rice*, 167 S.W.2d at 1025; see also *Herring v. Welborn*, 27 S.W.3d 132, 140-141 (Tex.App. – San Antonio 2000, petition denied) (holding that issue of subject-matter jurisdiction "trumps" venue provisions of Civil Practice and Remedies Code).[7]

---

NOTE: If a court lacks subject-matter jurisdiction, the case must be dismissed – and any judgment rendered is void. *Gordon v. Jones*, 196 S.W.3d 376, 382 (Tex.Civ.App. – Houston [1st District] 2006).

[3] *Albert Theodore Powers, and Allied Ports LLC v. Axis Midstream Holdings LLC, Allen Lawrence Berry, Marvin Glenn Berry, and Bonnie Berry, as successor in interest to Dennis Wayne Berry,* Cause No. 24-BC11A-0025, pending in the Texas Business Court (Eleventh Division).

[4] *Lawrence Berry, individually and as Trustee of the Allen Lawrence Berry Trust, directly and derivatively on behalf of Becon Inc.; LDMA Limited Partnership, and Berry GP Inc. (Berry GP Inc., LDMA Limited Partnership, and Becon Inc., nominal Plaintiffs) v. Marty Berry, Michael Hummell, Berry GP Inc., Berry Operating Company LLC, and Berry Contracting LP,* Cause No. 2024DCV-0045-C, pending before the 94th Judicial District Court, Nueces County, Texas (Honorable Judge Robert Galvan, presiding).

[5] *Gordon v. Jones*, 196 S.W.3d 376, 382 (Tex.Civ.App. – Houston [1st District] 2006). In the sense that dominant jurisdiction determines the location of the court contest, Texas judicial authority speaks of dominant jurisdiction as deciding the venue of the court contest. Notwithstanding, the Texas common law of dominant jurisdiction must not be confused with the Texas' statutory scheme defining what Texas county or counties are proper venue for a given claim/lawsuit.

[6] *Gordon v. Jones*, 196 S.W.3d 376, 382 (Tex.Civ.App. – Houston [1st District] 2006).

[7] *Gordon v. Jones*, 196 S.W.3d 376, 382 (Tex.Civ.App. – Houston [1st District] 2006).

Venue is determined by application of Texas Civil Practice and Remedies Code ("TCPRC"), Chapter 15; or other express statutory language as may be contained in other legislation.[8] Whereas subject-matter jurisdiction may be challenged at any time (it cannot be waived), a party may waive venue if not challenged on a timely basis.[9] Venue is not jurisdictional.[10]

**Dominant Jurisdiction:**

"When the jurisdiction of [two (2) different Texas courts] are concurrent, the issue is one of dominant jurisdiction"[11] "When, as here, two courts have concurrent jurisdiction to determine inherently intertwined issues, filing a dilatory plea in abatement is the proper method for drawing the court's attention to another court's possible dominant jurisdiction"[12] "Dominant jurisdiction applies when venue is proper in two or more Texas counties or courts."[13] Texas' common law having evolved over the past one hundred (100) years informs our judiciary of how to address the

---

[8] In the Harris County Lawsuit, venue may lie in Harris County, Texas (as claimed by Plaintiffs - although their proffered venue selection clause is not an agreement as to venue in Harris County but rather only speaks of 'waiving objection' to venue (and saying nothing of exclusive venue)); or in Nueces County pursuant to TCPRC 15.011; or in Nueces County pursuant to TCPRC 15.002 (where the purported Investment Agreement was allegedly signed); or in San Patricio County pursuant to TCPRC 15.011. As discussed herein, this venue issue is not to be addressed in the second-filed action (Harris County Lawsuit).

[9] *Gordon v. Jones*, 196 S.W.3d 376, 382 (Tex.Civ.App. – Houston [1st District] 2006); citing *Saudi v. Brieven*, 176 S.W.3d 108, 113 (Tex.App. – Houston [1st District] 2004, no petition); *Massey v. Columbus State Bank*, 35 S.W.3d 697, 700 (Tex.Civ.App. – Houston [1st District] 2000, petition denied); *Herring v. Welborn*, 27 S.W.3d 132, 141 (Tex.App. – San Antonio 2000, petition denied).

[10] *Gordon v. Jones*, 196 S.W.3d 376, 382 (Tex.Civ.App. – Houston [1st District] 2006); citing *Herring v. Welborn,* 27 S.W.3d 132, 141 (Tex.App. – San Antonio 2000, petition denied); *Massey v. Columbus State Bank*, 35 S.W.3d 697, 700 (Tex.Civ.App. – Houston [1st District] 2000, petition denied).

[11] *In re Puig*, 351 S.W.3d 301, 305 (Texas 2011); citing *Wyatt v. Shaw Plumbing Company,* 760 S.W.2d 245, 248 (Texas 1988); see also *Bailey v. Cherokee County Appraisal District*, 862 S.W.2d 581, 582 (Texas 1993) (district court and county probate court had concurrent jurisdiction, giving rise to determination that first-filed action had dominant jurisdiction); *In re Sims*, 88 S.W.3d 297 (Tex.Civ.App. – San Antonio, 2002) (where two (2) courts have concurrent jurisdiction, court of first-filed action should retain its jurisdiction); *Green v. Watson,* 860 S.W.2df 238, 243 (Tex.Civ.App. – Austin 1993) ("Generally, when two courts have concurrent jurisdiction, the court in which suit was first filed has dominant jurisdiction to the exclusion of the other coordinate courts").

[12] *In re Puig*, 351 S.W.3d 301, 305 (Texas 2011).

[13] *In re Puig*, 351 S.W.3d 301, 305 (Texas 2011); citing *Gonzalez v. Reliant Energy Inc*., 159 S.W.3d 615, 622 (Texas 2005); *Wyatt v. Shaw Plumbing Company,* 760 S.W.2d 245, 248 (Texas 1988); *Perry v. Del Rio*, 66 S.W.3d 239, 252 (Texas 2001).

circumstance of two (2) courts having concurrent jurisdiction of intertwined issues – when both courts have venue of the cases before the two (2) courts.[14]

## II.
## ISSUE

In our present circumstance, there is the Nueces County Lawsuit and the Harris County Lawsuit. Both courts (in Nueces and Harris County) have acquired subject-matter jurisdiction, and both courts have venue (although there is a pending motion for transfer of the Harris County Lawsuit based upon mandatory venue provisions (TCPRC 15.011)). This Court requested further briefing "addressing the legal effect, if any, of the Moving Parties' claim that "neither Marty Berry nor Dennis Berry ["Dennis"] signed any contract with provision allowing for venue in Harris County, Texas" on disposition of the Motions."[15] The Court's query considers the legal effect, if any, on three (3) distinct motions; that is, the plea in abatement, motion to transfer venue, and motion to remand. For reasons that perhaps are obvious, this response will focus upon Movants' plea in abatement, and motion to transfer venue.

## III.
## ARGUMENT

**Plea in Abatement:**

As noted above, the "filing a dilatory plea in abatement is the proper method for drawing the court's attention to another court's possible dominant jurisdiction."[16] In Texas, there is no 'dominant jurisdiction statute,' but rather it is a doctrine that has evolved in Texas common law

---

[14] See *Cleveland v. Ward,* 285 S.W. 1063 (Texas 1926), and other cases cited herein. All parties seeming concede the 94th Judicial District Court in Nueces County (the Nueces County Lawsuit) has subject-matter jurisdiction and proper venue (there is no venue contest in the Nueces County Lawsuit). Thus, the two (2) courts (for the Nueces County Lawsuit and the Harris County Lawsuit) have concurrent jurisdiction, and proper venue of the actions pending before them.

[15] Per this Court's Order, the term "Motions" is defined as Marvin Glenn Berry's Plea in Abatement and Motion to Abate; Movants' Motion to Remand, Dismiss, and/or Transfer Venue; and Axis Midstream Holdings LLC's Motion to Transfer Venue.

[16] *In re Puig*, 351 S.W.3d 301, 305 (Texas 2011).

4

over the past one hundred (100) years.[17] The most pointed answer to the Court's query is stated in the Texas Supreme Court's opinion in *Curtis v. Gibbs*,[18] wherein one litigant filed a legal action in Bowie County (the first-filed action) and the opposing litigant filed a legal action in Dallas County (the second-filed action). Given the circumstance (both courts having subject-matter jurisdiction of the dispute, and both courts having venue of the matter), the Texas Supreme Court concluded that the judge in Dallas County (second-filed lawsuit) had "no right to interfere [with the actions of the judge in Bowie County], or to take any other action with the suit filed in Dallas County except to sustain the plea in abatement . . . ."[19] The party opposing the abatement argued venue was proper in Dallas County (much like Plaintiffs argue that venue is proper in the Harris County Lawsuit), but the Texas Supreme Court held steadfast to its rule of how to manage venue in the second-filed action. The Texas Supreme Court stated:

> "The [party opposing the plea in abatement in the second-filed action] asserts that venue properly lies in Dallas County [the location of the second-filed action] . . . . This is [] irrelevant. The Dallas Court [second-filed action] did not have jurisdiction to pass on the venue question in connection with a plea of prior action pending. The court which has dominant jurisdiction of the controversy, in this case the Bowie court [first-filed action], has exclusive jurisdiction to determine the venue question."[20] . . .

Whether Marty or Dennis signed the Investment Agreement is a disputed issue. If Marty and Dennis signed the Investment Agreement, the venue provision therein is of no impact to Movants' Plea in Abatement which clearly sets forth how the judge presiding in the Nueces County Lawsuit acquired dominant jurisdiction given the inherent interrelation of a core dispute made subject of

---

[17] See *Cleveland v. Ward*, 285 S.W. 1063 (Texas 1926), and other cases cited herein.
[18] *Curtis v. Gibbs*, 511 S.W.2d 263 (Texas 1974).
[19] *Curtis v. Gibbs*, 511 S.W.2d 263, 265 (Texas 1974).
[20] *Curtis v. Gibbs*, 511 S.W.2d 263, 268 (Texas 1974); citing *Neal v. Texas Employers' Insurance Association*, 14 S.W.2d 793 (1929); *Wheelis v. Wheelis*, 226 S.W.2d 224 (Tex.Civ. App. 1950, no writ history).

the Nueces County Lawsuit and the Harris County Lawsuit (ownership and control of Axis Midstream Holdings LLC by Berry GP Inc./Redfish Bay Terminals Inc. (as claimed by Berry GP Inc., Marty Berry, and Bonnie Berry), or Allied Ports LLC (as claimed by Plaintiffs herein and Lawrence Berry)).[21]

The Texas Supreme Court's resolve and the result obtained in the *Curtis* matter (1974) is demonstrable in other judicial opinions. In *Herring v. Welborn*,[22] the first-filed proceeding was a probate matter (San Patricio County) and the second-filed proceeding was filed in the county wherein real property of the probate estate was located (Wilson County). The plaintiff in the second-filed proceeding (Wilson County) argued that "substantial authority exists for the filing of a lawsuit regarding real estate title in district court, particularly [in] the county . . . where the property is located, even while a probate remains open."[23] The San Antonio Court of Appeals followed the reasoning in *Goodwin v. Kent*[24] (wherein the Tyler Court of Appeals considered the issue of dominant jurisdiction as between two (2) courts with power to decide a real estate title issue), and decided the first-filed legal action in San Patricio County had "broad authority . . . which is ongoing because of the continuing administration of [the] estate, . . . to the exclusion of the Wilson County district court . . . ."[25] The San Antonio Court of Appeals decided, "the Wilson County district court should not exercise jurisdiction"[26] – and this ruling directly ignored the Wilson County plaintiff's argument that mandatory venue lies in Wilson County for disputes related to the real estate in Wilson County.[27] The trial court and appellate court gave no significance to plaintiff's argument (in the second-filed Wilson County proceeding) that a

---

[21] See Movants' briefing on file.
[22] *Herring v. Welborn*, 27 S.W.3d 132 (Tex.Civ.App. – San Antonio 2000).
[23] *Herring v. Welborn*, 27 S.W.3d 132, 138 (Tex.Civ.App. – San Antonio 2000).
[24] *Herring v. Welborn*, 27 S.W.3d 132, 138-140 (Tex.Civ.App. – San Antonio 2000).
[25] *Herring v. Welborn*, 27 S.W.3d 132, 140 (Tex.Civ.App. – San Antonio 2000).
[26] *Herring v. Welborn*, 27 S.W.3d 132, 140 (Tex.Civ.App. – San Antonio 2000).
[27] *Herring v. Welborn*, 27 S.W.3d 132, 138-140 (Tex.Civ.App. – San Antonio 2000)

mandatory venue provision somehow impacted the dominant jurisdiction analysis (it did not). The San Antonio Court of Appeals reasoned: "The jurisdictional requirement "trumps" the venue provision of bringing suit in the county where the land is located."[28] This reasoning is consistent with the Texas Supreme Court's opinion in *Curtis*.[29] This reasoning is sound.

A review of *Wyatt v. Shaw Plumbing Company*[30] confirms the underlying reason why the Texas Supreme Court (in *Curtis*) and a Texas Court of Appeals (in *Herring*) refused to conflate the issue of dominant jurisdiction with a venue determination. In *Wyatt*, the first-filed action was in Duval County, and the second-filed action was in Nueces County. Staying true to Texas jurisprudence, the Texas Supreme Court supported abatement of the second-filed action, stating:

> "Abatement of a lawsuit due to the pendency of a prior suit is based on the principles of comity, convenience, and the necessity for an orderly procedure in the trial of contested issues. (citations omitted) . . . There are three exceptions to the rule in *Cleveland v. Ward* that the court where suit is first filed acquires dominant jurisdiction: (1) conduct by a party that estops him from asserting prior active jurisdiction; (2) lack of persons to be joined if feasible, or the power to bring them before the court; and (3) lack of intent to prosecute the first lawsuit."[31] (citations omitted).

In no way, shape, or form is there any Texas case law that states or even remotely suggests that the purported signing of a 'contract with provision allowing for venue'[32] would have any impact on a court's analysis and application of Texas common law on dominant jurisdiction. There are three (3) exceptions to application of the law of dominant jurisdiction (as stated in *Wyatt*). None of the three (3) judicially recognized *Wyatt* exceptions apply in this Harris County Lawsuit.

---

[28] *Herring v. Welborn*, 27 S.W.3d 132 (Tex.Civ.App. – San Antonio 2000).
[29] Compare *Herring v. Welborn*, 27 S.W.3d 132 (Tex.Civ.App. – San Antonio 2000), with *Curtis v. Gibbs*, 511 S.W.2d 263, 265 (Texas 1974).
[30] *Wyatt v. Shaw Plumbing Company,* 760 S.W.2d 245 (Texas 1988).
[31] *Wyatt v. Shaw Plumbing Company,* 760 S.W.2d 245, 248 (Texas 1988).
[32] Hearing Exhibit 8 (Investment Agreement), at p. 4

In summary, the Texas Supreme Court in *Curtis* informs us that consideration of a venue argument in the second-filed action is "irrelevant," and that the court in a second-filed action "did not have jurisdiction to pass on the venue question in connection with a plea of prior action pending." In similar manner, the San Antonio Court of Appeals (*Herring*) considered whether a mandatory venue provision might sway application of the doctrine of dominant jurisdiction and concluded the jurisdictional requirement "trumps" any consideration of a mandatory venue provision. Finally, the Texas Supreme Court in *Wyatt* makes clear the three (3) exceptions to the dominant jurisdiction/first-filed rule – and none of the exceptions apply in the Harris County Lawsuit (there is no exception allowing a contract, if signed, to overwhelm Texas common law relating to dominant jurisdiction).

**Motion to Transfer Venue:**

As discussed above, Movants do not believe venue is an issue to be decided in this second-filed lawsuit (the Harris County Lawsuit). If the Court is considering the dominant jurisdiction issue along-side the venue issue, then Movants request consideration of the following.

1. *Venue Has Already Been Decided*

Lawrence filed the Nueces County Lawsuit more than a year ago,[33] and this lawsuit is still-pending in Nueces County[34] – along with Movant Marty Berry's (Berry GP Inc.'s and others') counterclaims therein.[35] The Nueces County Lawsuit expressly requests that Judge Robert Galvan declare –

> "transfers / conveyances / contracts / Manager appointments
> executed / accepted by [Lawrence] (e.g., purportedly involving

---

[33] Hearing Exhibit 15: Plaintiffs' Original Verified Petition and Application for Temporary Restraining Order and Temporary Injunction
[34] Hearing Exhibit 15: Plaintiffs' Original Verified Petition and Application for Temporary Restraining Order and Temporary Injunction
[35] Hearing Exhibit 25: Cause No. 2024DCV-0045-C: Counter-Plaintiffs' Second Amended Original Petition Asserting Counter-Claims

. . . Axis Midstream Holdings LLC (as wholly owned/Managed by Berry GP and/or Redfish Bay Terminal Inc.), and/or others)) without majority Board of Directors approval [] void, void ab initio, voidable, invalid, and/or of no legal force or effect."[36]

This issue is pending in Nueces County, Texas, as Berry GP/Redfish Bay Terminal Inc. ("RBT") seek a judicial determination that Berry GP or RBT (both wholly owned/controlled by Marty, Bonnie, and Lawrence through various companies) is sole owner and solely in control of Axis Midstream Holdings LLC (not Plaintiffs).[37] Of course, the Plaintiffs in this Harris County Lawsuit have pleadings on file that endeavor to achieve the opposite result on the exact same issue (i.e., that Plaintiffs own and control Axis Midstream Holdings LLC).[38] The proper venue for a judicial declaration to resolve this core dispute has already been ruled upon; that is, the Nueces County Lawsuit is irreversibly cemented in Nueces County by way of a court order transferring the Nueces County Lawsuit to Nueces County, Texas.[39]

All considered, venue of this dispute regarding ownership/control of Axis Midstream Holdings LLC has already been decided.[40] TRCP 87(5), in pertinent part, states:

> "**Motion for Rehearing.** If venue has been sustained as against a motion to transfer, or if an action has been transferred to a proper county in response to a motion to transfer, then no further motions to transfer shall be considered regardless of whether the movant was a party to the prior proceedings or was added as a party subsequent to the venue proceedings . . . ."[41]

---

[36] Hearing Exhibit 25: Cause No. 2024DCV-0045-C: Counter-Plaintiffs' Second Amended Original Petition Asserting Counter-Claims, at p. 17

[37] Hearing Exhibit 25: Cause No. 2024DCV-0045-C: Counter-Plaintiffs' Second Amended Original Petition Asserting Counter-Claims, at p. 17

[38] Hearing Exhibit 12: Plaintiffs' Verified First Amended Petition and Application for Temporary Restraining Order and Temporary Injunction; see also Hearing Exhibit 17: Amended Temporary Restraining Order

[39] Hearing Exhibit 18: Agreed Order Granting Defendants Marty Berry's and Robert Powers' Emergency Motions to Transfer Venue

[40] Hearing Exhibit 18: Agreed Order Granting Defendants Marty Berry's and Robert Powers' Emergency Motions to Transfer Venue

[41] Texas Rule of Civil Procedure 87(5).

Texas law precludes a second venue determination by any court.[42] TRCP 87(5) is fully discussed in *Hendrick Medical Center v. Howell*.[43] In *Hendrick,* a Jefferson County judge transferred a case to Jones County – the plaintiffs dismissed the case – the plaintiffs re-filed in Dallas County – and a venue dispute ensured in the Dallas County litigation. On appeal, the Dallas Court of Appeals ruled:

> " . . . [W]e hold that once a venue determination has been made in a cause, that determination is conclusive in a subsequent refiling after nonsuit of the same cause of action against the same parties. Consequently, venue in the second suit filed by [plaintiffs] has been **conclusively determined to lie in Jones County as a result of the Jefferson County judge's venue determination in the first suit**."[44] (emphasis added)

> "The *res judicata* rule was adopted to prevent defendants from being subjected to the harassment and expense of presenting their venue claims in a number of successive forums as a consequence of a plaintiff's nonsuiting and subsequent refiling of the same cause of action in different counties."[45]

Obviously, Lawrence has not non-suited his claims in the Nueces County Lawsuit (strengthening Movants' argument), nor have Movants non-suited their counterclaims in the Nueces County Lawsuit. However, Plaintiffs filing with Lawrence as a friendly defendant in this Harris County Lawsuit is substantially the same as Lawrence re-filing his Nueces County Lawsuit a second time in Harris County (both seeking control of Axis Midstream Holdings LLC and its real property associated with the Project (as more fully discussed in previous briefing and shown by evidentiary

---

[42] TRCP 87(5); see also *Hendrick Medical Center v. Howell,* 690 S.W.2d 42 (Tex.Civ.App. – Dallas 1985).
[43] *Hendrick Medical Center v. Howell,* 690 S.W.2d 42 (Tex.Civ.App. – Dallas 1985).
[44] *Hendrick Medical Center v. Howell,* 690 S.W.2d 42, 44 (Tex.Civ.App. – Dallas 1985).
[45] *Hendrick Medical Center v. Howell,* 690 S.W.2d 42, 45 (Tex.Civ.App. – Dallas 1985).

exhibits[46])) – and thus *Hendricks* applies.[47]   Movants should not be required to defend venue twice[48] – irrespective of any purported contract with provision allowing for venue in Harris County.[49]   Thus, the Investment Agreement's venue provision (whether signed by Marty and Dennis, or not) is of no impact as the venue for adjudication of the core dispute has already been decided.

2.   *The Venue Clause in the Investment Agreement is Not Applicable*

Additionally, and alternatively, Movants would show that the venue provision in the Investment Agreement is not applicable (signed or not).  A simple reading of the Investment Agreement's venue provision reveals that the circumstances that presently exist were not contemplated by the Investment Agreement; that is, the Investment Agreement commits no one to any position in the event a first-filed action (the Nueces County Lawsuit) seeking adjudication of interrelated issues is properly filed or pursued in a different venue (a venue other than Harris County).  The venue provision in the Investment Agreement does not contemplate a scenario that raises the issue of dominant jurisdiction.

3.   Finally, the Court's specific query highlights the factual dispute regarding whether

---

[46] Hearing Exhibits 2, 3, and 4 (real property made subject of Nueces County Lawsuit is same real property made subject of Axis Midstream Holdings LLC's United States Army Corps of Engineer's (USACE's) permit over which all parties assert ownership/control).

[47] Compare Hearing Exhibit 12: Plaintiffs' Verified Original Petition and Application for Temporary Restraining Order and Temporary Injunction, with Hearing Exhibit 25: Counter-Plaintiffs' Second Amended Original Petition Asserting Counter-Claims

[48] *Hendrick Medical Center v. Howell,* 690 S.W.2d 42, 45 (Tex.Civ.App. – Dallas 1985).  Accord *Joiner v. Stephens,* 457 S.W.2d 351, 351-352 (Tex.Civ.App. – El Paso 1970) (plaintiff filed first lawsuit, defendant requested transfer to Grayson County, and plaintiff dismissed and re-filed "new suit" – El Paso Court of Appeals ruled venue must be in Grayson County based upon "policy that defendants are not to be subjected to repeated expense of pressing venue claims in successive actions by a plaintiff . . . ."); *Southwestern Investment Company v. Gibson*, 372 S.W.2d 754, 757 (Tex.Civ.App. – Fort Worth 1963) (plaintiff filed first lawsuit, defendant requested transfer to Potter County, plaintiff re-filed against same and new party – Fort Worth ruled venue must be in Potter County based upon policy reason that "defendant should not be subjected to the repeated expense of presenting his venue claim in successive actions").

[49] Hearing Exhibit 8: Investment Agreement

Marty Berry and/or Dennis Berry ever signed the Investment Agreement. This factual dispute may only be resolved by a jury. As such, any Court ruling in support of venue in Harris County would be automatic reversible error in the event a jury determines that either Marty Berry or Dennis Berry did not sign the Investment Agreement. Neither this Court nor the parties should be forced into this quandary given the core dispute among the parties is ownership and control of Axis Midstream Holdings LLC – and issue ripe for judicial declaration in the Nueces County Lawsuit.

## IV.
## PLAINTIFFS HAVE OPTIONS

For the record, Plaintiffs are not without options. If the case is abated, such is not a dismissal of Plaintiffs' Harris County Lawsuit. Allowing Judge Robert Galvan to address all matters within the scope of his jurisdiction is appropriate under Texas law, and – more importantly – consistent with the judicial policy considerations favoring comity, conservation of judicial resources, convenience, avoidance of delay, and the necessity for an orderly procedure in the trial of contested issues. Obviously, there will be no ruling on Plaintiffs' breach of contract or other claims in the Nueces County Lawsuit, absent Plaintiffs' participation in the Nueces County Litigation. Plaintiffs may choose to intervene into the Nueces County Lawsuit,[50] or may choose to wait until such time as the abatement is lifted to pursue its claims, if any, that are not inherently interrelated/intertwined in the Nueces County Lawsuit.

## V.
## CONCLUSION

A more recent Texas Supreme Court opinion holds true to that which has long been the law in the State of Texas.:

"The obvious reasons for abatement, as we explained in *Wyatt*

---

[50] See *Curtis v. Gibbs*, 511 S.W.2d 263, 268 (Texas 1974) ("If the mother objects to the venue, her remedy is to file a motion to transfer in the Bowie court.").

12

*v. Shaw Plumbing Co.*, are the conservation of judicial resources, avoidance of delay, "comity, convenience, and the necessity for an orderly procedure in the trial of contested issues"— or as we put it in *Cleveland v. Ward*, to "prevent races from court to court by vigilant counsel". The first-filed rule also has several justifications. The jurisprudential reason for the rule is that once a matter is before a court of competent jurisdiction, "its action must necessarily be **exclusive"** because it is "impossible that two courts can, at the same time, possess the power to make a final determination of the same controversy between the same parties."[51] (emphasis added).

Respectfully, the first-filed action to acquire "competent jurisdiction" has the "exclusive"[52] jurisdiction to be the forum for adjudication of all inherently interrelated / intertwined disputes[53] within the scope of such court's jurisdiction (including those claims asserted by later amendment of pleadings, and/or related claims requiring inclusion of additional parties[54]). This has been the law in the State of Texas for almost a century and is the law of this case irrespective of whether

---

[51] See *Perry v Del Rio*, 66 S.W.3d 239, 252 (Texas 2001); citing *Wyatt v. Shaw Plumbing Company,* 760 S.W.2d 245 (Texas 1988); see also *Cleveland v. Ward,* 285 S.W. 1063 (Texas 1926), citing 1 Freeman on Judgments § 335 (5th ed.)).

[52] See *Cleveland v. Ward,* 285 S.W. 1063 (Texas 1926), citing 1 Freeman on Judgments § 335 (5th ed.) (with dispute in two (2) different courts, one of the court's "action must necessarily be exclusive," and it "cannot be destroyed, diminished, or suspended by one of the parties bringing an action in another court") and further reference to a French case that declared "[w]hile the jurisdiction lasted it was exclusive, and could not be trenched upon by another tribunal." See also *Perry v. Del Rio*, 66 S.W.3d 239, 252 (Texas 2001), citing to same quote in 1 Freeman on Judgments § 335 (5th ed.); *Curtis v. Gibbs*, 511 S.W.2d 263, 268 (Texas 1974) (court of first-filed action had "exclusive jurisdiction to determine the venue question").

[53] See *Wyatt v. Shaw Plumbing Company,* 760 S.W.2d 245, 247 (Texas 1988) ("When an inherent interrelation of the subject matter exists in two pending lawsuits, a plea in abatement in the second action must be granted."); guided by TRCP 39, 97(a) which in this Harris County Lawsuit necessarily extends to TRCP 97(e) and TRCP 97(f) given that Movants' counterclaims in the Nueces County Lawsuit are identical to the cross-claims (Marty and Bonnie against Lawrence) that would be necessary in the Harris County Lawsuit, if not abated.

[54] See *Cleveland v. Ward,* 285 S.W. 1063, at *16 (Texas 1926) (first-filed court's jurisdiction attaches to permit "pleadings to be amended and amplified, new parties to be made, to determine the essential questions . . . ); *Wyatt v. Shaw Plumbing Company,* 760 S.W.2d 245 (Texas 1988) ("It is not required that the exact issues and all parties be included in the first filed action before the second is filed, provided that the claim in the first suit may be amended to bring in all necessary and proper parties and issues."); see also *Encore Enterprises Inc. v. Borderplex Realty Trust,* 583 S.W.3d 713, 723 (Tex.Civ.App. – El Paso 2019) (" . . . courts have not required that the precise issues and all the parties be included in the first suit, provided that the claims in the first suit can be amended to bring in all the necessary parties and claims), citing *In re Coronado Energy E & P Co. LLC* 341 S.W.3d 479, 482 (Tex.Civ.App. – San Antonio 2011, original proceeding) and *Wyatt v. Shaw Plumbing Company,* 760 S.W.2d 245, 246-247 (Texas 1988).

13

there is a contract argued by a later-in-time party with provision allowing for venue in Harris County.

Respectfully submitted,

**LAW OFFICES OF DOUGLAS ALLISON**
403 N. Tancahua Street
Corpus Christi, Texas 78401
T:     361-888-6002
F:     361-888-6651
E:     doug@dallisonlaw.com

BY:    */s/ Douglas A. Allison*
        **DOUGLAS A. ALLISON**
        State Bar No. 01083500

ATTORNEY FOR DEFENDANTS
MARTY BERRY, BONNIE BERRY, &
AXIS MIDSTREAM HOLDINGS, LLC

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that a true and correct copy of the foregoing document was served upon all counsel of record in accord with the Texas Rules of Civil Procedure on January 9, 2025.

*/s/ Douglas A. Allison*
DOUGLAS A. ALLISON

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Susan Gonzales on behalf of Douglas Allison
Bar No. 1083500
susan@dallisonlaw.com
Envelope ID: 96055643
Filing Code Description: No Fee Documents
Filing Description: Defendants' Brief
Status as of 1/9/2025 5:01 PM CST

Associated Case Party: AllenLawrenceBerry

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Barrett H.Reasoner | | breasoner@gibbsbruns.com | 1/9/2025 4:23:43 PM | SENT |
| Michael R.Absmeier | | mabsmeier@gibbsbruns.com | 1/9/2025 4:23:43 PM | SENT |
| Bruce Baldree | | bbaldree@gibbsbruns.com | 1/9/2025 4:23:43 PM | SENT |
| Sydney Ballesteros | | sballesteros@gibbsbruns.com | 1/9/2025 4:23:43 PM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Stephanie Sanchez | | sanchezst@gtlaw.com | 1/9/2025 4:23:43 PM | SENT |
| Rosa Brennan | | rbrennan@gibbsbruns.com | 1/9/2025 4:23:43 PM | SENT |
| Roxanne Graham | | rgraham@gibbsbruns.com | 1/9/2025 4:23:43 PM | SENT |
| Christina Pena | | cpena@gibbsbruns.com | 1/9/2025 4:23:43 PM | SENT |
| Becky Young | | Becky.Young@gtlaw.com | 1/9/2025 4:23:43 PM | SENT |
| Business Court 11A | | BCDivision11A@txcourts.gov | 1/9/2025 4:23:43 PM | SENT |
| Liz Poirrier | | epoirrier@beckredden.com | 1/9/2025 4:23:43 PM | SENT |
| Vanessa Gilmore | | vg@robertsmarkland.com | 1/9/2025 4:23:43 PM | SENT |

Associated Case Party: MarvinGlennBerry

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Douglas Allison | 1083500 | doug@dallisonlaw.com | 1/9/2025 4:23:43 PM | SENT |
| Kim Brunkenhoefer | | kim@dallisonlaw.com | 1/9/2025 4:23:43 PM | SENT |
| Susan Gonzales | | susan@dallisonlaw.com | 1/9/2025 4:23:43 PM | SENT |

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Susan Gonzales on behalf of Douglas Allison
Bar No. 1083500
susan@dallisonlaw.com
Envelope ID: 96055643
Filing Code Description: No Fee Documents
Filing Description: Defendants' Brief
Status as of 1/9/2025 5:01 PM CST

Associated Case Party: AlbertTheodorePowers

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Alistair Dawson | 5596100 | adawson@beckredden.com | 1/9/2025 4:23:43 PM | SENT |
| Michael McClellan | 24109525 | jmcclellan@beckredden.com | 1/9/2025 4:23:43 PM | SENT |
| Madeline Gay | | mgay@beckredden.com | 1/9/2025 4:23:43 PM | SENT |

Associated Case Party: Allied Ports LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Roland Garcia | 7645250 | garciar@gtlaw.com | 1/9/2025 4:23:43 PM | SENT |
| Steven Higginbotham | | higginbothams@gtlaw.com | 1/9/2025 4:23:43 PM | SENT |

Associated Case Party: Axis Midstream Holdings

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Michael Hummell | 10271100 | hummellm@bayltd.com | 1/9/2025 4:23:43 PM | SENT |

# APPENDIX 34

E-filed in the Office of the Clerk
for the Business Court of Texas
1/9/2025 5:20 PM
Accepted by: Beverly Crumley
Case Number: 24-BC11A-0025

CAUSE NO. 24-BC11A-0025

| | | |
|---|---|---|
| ALBERT THEODORE POWERS; ALLIED PORTS LLC, | § § § | IN THE BUSINESS COURT |
| *Plaintiffs,* | § § | |
| v. | § § § | ELEVENTH DIVISION |
| AXIS MIDSTREAM HOLDINGS, LLC; ALLEN LAWRENCE BERRY; MARVIN GLENN BERRY; AND BONNIE BERRY, as successor in interest to DENNIS WAYNE BERRY | § § § § § § | |
| *Defendants.* | § § | HARRIS COUNTY, TEXAS |

**RESPONDING PARTIES' BRIEF ON THE MOVING PARTIES' SIGNATURE CLAIM**

The Court requested the Moving[1] and Responding[2] Parties address "the legal effect, if any, of the Moving Parties' claim that 'neither Marty Berry nor Dennis Berry signed any contract with a provision allowing for venue in Harris County, Texas.'" Dec. 31, 2024 Order. The answer is simple: it has no effect on the pending motions. It is nothing more than an unsupported allegation that cannot be considered because Plaintiffs' prima facie proof in support of venue "is not subject to rebuttal, cross-examination, impeachment, or disproof." *See, e.g.*, *In re Missouri Pac. R. Co.*, 998 S.W.2d 212, 216 (Tex. 1999); *Sustainable Tex. Oyster Research Mgmt. L.L.C. v. Hannah Reef, Inc.*, 491 S.W.3d 96, 106 (Tex. App.—Houston [1st Dist.] 2016, pet. denied) (same). The relevant question is: did Plaintiffs present prima facie proof by "properly pleaded" "venue facts"

---

[1] The Moving Parties are Defendants Marvin Glen Berry, Bonnie Berry, and Axis Midstream Holdings, LLC.

[2] The Responding Parties are, pursuant to the Court's Order, Plaintiffs Albert Theodore Powers and Allied Ports LLC and Defendant Lawrence Berry. Without waiver of his General Denial, Defendant Lawrence Berry agrees with and joins in the legal arguments set forth herein.

1

and evidence "specifically setting forth" those facts? Tex. R. Civ. P. 87.3(a), (c). The answer to this question is undoubtedly "yes." Plaintiffs' Petition properly pleaded facts establishing mandatory venue in Harris County, with specific record evidence setting forth those facts:

- **The *fully executed* Investment Agreement itself.** Third Am. Pet. at Ex. 2; Resp. to Mtn. to Transfer at Ex. 1; *see Patterson v. Yellow Cab Mfg. Co.*, 298 S.W. 918, 920 (Tex. Civ. App. Eastland 1927, no writ) ("The production of the written contract delivered complete on its face with appellant's signature attached is prima facie the entire agreement."). Because the filing of the fully executed Investment Agreement cannot be controverted in connection with a venue motion, the Court's inquiry need not go further.

- **Direct evidence from eyewitnesses—including Plaintiff Powers and one of the Defendants—that Marty and Dennis Berry signed the Investment Agreement.** Third Am. Pet at Ex. 11 ¶ 5; Resp. to Mtn. to Transfer at Ex. 11 ¶5 ("On May 28, 2019, I witnessed Marty Berry and Dennis Berry execute both the Investment Agreement and the Agreement at the Berry GP office in Corpus Christi, Texas."); Lawrence's Resp. to Mtn. to Transfer at p. 11 ("Lawrence recalls being present when both Marty and Dennis signed the Investment Agreement."); *see Aerotek v. Boyd*, 624 S.W.3d 199, 202 (Tex. 2021) ("For a paper document with a handwritten, wet-ink signature, the genuineness of the signature can be proved by direct evidence—for example, **testimony by an eyewitness**, a witness familiar with the signatory's handwriting, or an expert who has compared the signature against a genuine specimen.") (emphasis added). In this case, the Court has evidence from two eyewitnesses, both of whom saw Marty and Dennis sign the Investment Agreement. Because this evidence cannot be controverted (and indeed has not been legitimately controverted by Marty or Bonnie) the Court's inquiry need not go further.

- **Evidence that the parties' conduct was consistent with a fully executed Investment Agreement.** Third Am. Pet. ¶¶ 13-19. The parties exchanged a plethora of documents acknowledging the Plaintiffs' 20% ownership interest that was memorialized in the Investment Agreement, which were not disputed by the Defendants. Resp. to Mtn. to Transfer at Ex. 5, 8 (organizational charts showing Plaintiffs' ownership interest sent to Lawrence, Marty, and Dennis with no objection). Similar documents were shared with potential investors with no objection from Lawrence, Marty or Dennis. *Id.* at Ex. 6-7 (Powers' sending transfer documents and operating agreements to potential investors and Lawrence, Marty and Dennis with no objection from Lawrence, Marty, or Dennis). In addition, Plaintiffs supplied the Court with evidence that Mr. Powers was paid in accordance with the compensation Agreement (which was signed at the same time as the Investment Agreement), and Mr. Powers was reimbursed expenses in accordance with both the Investment Agreement and the compensation Agreement. *Id.* at Ex. 11 ¶ 6; *see also id.* at Ex. 3-4 (termination of compensation portion of the Agreement "has no effect on the rights and obligations of the parties to that certain Investment Agreement by and among the Berrys and [Powers] dated as of November 1, 2020 [sic]."); *see SK Plymouth, LLC v. Simmons*, 605 S.W.3d 706, 718 (Tex. App.—Houston [1st Dist. 2020], no pet.) ("A party's intent to be bound by a contract may be evidenced by its conduct at the time a contract is

2

drafted and by its subsequent conduct reflecting that it was acting in accordance with the terms of the contract.") (quotations omitted).

Even if the Court could consider evidence of the Moving Parties' claim, the Moving Parties offered no evidence to consider in their Motions or at the December 6, 2024 hearing. Neither Marty nor Bonnie has submitted an affidavit in connection with the Motions swearing under oath that either Marty or Dennis did not sign the Investment Agreement.[3] But even if they did, merely denying that Marty and Dennis signed the Investment Agreement is no evidence at all. *Aerotek*, 624 S.W.3d 199 at 209 ("[m]ere denials do not suffice" to contest signature on contract); *see also City of Ames v. City of Liberty*, 2023 WL 2180967, at *12 (Tex. App.—Beaumont Feb. 23, 2023, pet. denied) (party that did not rebut executed contract with evidence it was not properly executed failed to meet burden on plea to the jurisdiction).

And even if the Court were to accept the claim that Marty and Dennis did not sign the Investment Agreement, Lawrence undisputedly did, and venue accordingly would be mandatory against him in Harris County.[4] Moreover, Lawrence is a citizen of Harris County—the most basic of bases for proper venue. Tex. Civ. Prac. & Rem. Code § 15.002. Because venue is mandatory and proper against one defendant, venue is proper against all defendants. Tex. Civ. Prac. & Rem. Code § 15.005 ("In a suit in which the plaintiff has established proper venue against a defendant, the court also has venue of all the defendants in all claims or actions arising out of the same

---

[3] Defendant Marty Berry did file a verified denial in which he denied execution of the Investment Agreement. That verified denial was not an exhibit to or mentioned in the Motions, nor was it introduced at the hearing on December 6, 2024. Nor is it competent evidence in any event to support his Motions. *See, e.g.*, *In re HPGM, LLC*, 629 S.W.3d 418, 423 (Tex. App.—Texarkana 2020, orig. proceeding) ("[I]t is well established that pleadings are generally not competent evidence, even if sworn or verified."). Defendant Bonnie Berry has not filed an answer and has not asserted that the signature on the Investment Agreement is not that of her late husband.

[4] Marty and Bonnie are also bound through their conduct and acceptance of the benefits they have gained through Mr. Powers' work under the Investment Agreement. *See* pp. 10-11, *infra*. Additionally, as set forth in Plaintiffs' response to Defendants' Motion to Transfer, a substantial part of the events giving rise to this lawsuit also took place in Harris County. Tex. Civ. Prac. & Rem. Code § 15.005.

3

transaction, occurrence, or series of transactions or occurrences."). For these reasons and those set forth below, the Court should determine that the Moving Parties' assertion that Marty and Dennis did not sign the Investment Agreement has no legal significance to the Moving Parties' Motions, and these Motions should be denied.

## ARGUMENT AND AUTHORITIES

I.     **Plaintiffs provided prima facie proof that the Investment Agreement was signed.**

**A.  The Fully Executed Agreement Was Provided to the Court.**

The Court's inquiry focuses on the Moving Parties' assertion that Marty and Dennis did not sign the Investment Agreement. That assertion has no effect on the Court's limited and deferential review at the motion to transfer stage. *See, e.g.*, *Missouri Pac. R. Co.*, 998 S.W.2d at 216 ("The parties' pleading and proof limits a trial court's discretion to determine venue."). What matters is this: Plaintiffs properly pleaded that the Investment Agreement contains an enforceable forum selection (or alternatively a venue selection) clause, and they provided the Court with prima facie proof to support those allegations. That ends the analysis. Tex. R. Civ. P. 87.3(c) ("If a claimant has adequately pleaded and made prima facie proof that venue is proper in the county of suit [or an established ground of mandatory venue]… then the cause shall not be transferred but shall be retained in the county of suit."). Below is directly from Plaintiffs' live Petition:

> 9.    Venue is proper in this district because Powers, a citizen of New York, and the Berry Defendants, citizens of Texas, entered into agreements with a mandatory forum selection clause wherein each party consented to "exclusive jurisdiction" in Harris County, Texas to the exclusion of other courts and waived objections to Harris County as the forum and venue for the claims asserted in this lawsuit and others that may arise under the agreements. *See* **Ex. 2** (the "Investment Agreement") at § 5(a). Alternatively, the written agreements underlying Plaintiffs' claims constitute a "major transaction" providing for venue in Harris County, Texas. Tex. Civ. Prac. & Rem. Code § 15.020.[2]   Venue is additionally proper because one of the defendants is a

Plaintiffs' Third Am. Pet. at ¶ 9.   Plaintiffs attached a fully executed copy of the Investment Agreement containing the forum selection clause to their Petition.   *Id.* at Ex. 2.   It shows on its face it was *fully executed* by all parties—Lawrence, Marty, Dennis and Powers:



*Id.*; Resp. to Mtn. to Transfer at Ex. 1.   The existence of the fully executed Investment Agreement alone is "prima facie proof" of the entire agreement. *See Patterson v. Yellow Cab Mfg. Co.*, 298 S.W. 918, 920 (Tex. Civ. App.—Eastland 1927, no writ) ("The production of the written contract delivered complete on its face with appellant's signature attached is prima facie the entire agreement."); *see also Western Surety Co. v. Medsolutions, Inc.*, 2003 WL 251433, at *4 (N.D.

Tex. Feb. 3, 2003) (citing *Wheel Masters, Inc. v. Jiffy Metal Prods. Co.*, 955 F.2d 1126 (7th Cir. 1992)) ("[A] signed agreement is *prima facie* evidence of a valid and enforceable contract[.]").

**B.    Eyewitness Testimony That Marty and Dennis Berry Signed The Investment Agreement.**

While the fully executed Investment Agreement is sufficient itself, Plaintiffs provided much more. Plaintiffs pleaded that the Investment Agreement was executed. Third Am. Pet. at ¶ 13. And in his affidavit, Powers provided direct evidence that he "witnessed Marty Berry and Dennis Berry execute both the Investment Agreement and the Agreement at the Berry GP office in Corpus Christi, Texas." Resp. to Mtn. to Transfer at Ex. 11 ¶ 5. Powers also "has an original Investment Agreement signed in ink by all four parties" in his possession. *Id.*[5] Eyewitness testimony is a common and recognized method to prove a signature. *Aerotek v. Boyd*, 624 S.W.3d 199, 204-05 (Tex. 2021) ("For a paper document with a handwritten, wet-ink signature, the genuineness of the signature can be proved by direct evidence—for example, testimony by an eyewitness, a witness familiar with the signatory's handwriting, or an expert who has compared the signature against a genuine specimen."). Defendant Lawrence Berry filed a verified pleading in which he corroborated Powers' testimony that Marty and Dennis signed the Investment Agreement. Lawrence's Resp. to Mtn. to Transfer at p. 11 ("Lawrence recalls being present when both Marty and Dennis signed the Investment Agreement."). Plaintiffs have provided the Court with more than sufficient prima facie proof that there is an enforceable and signed Investment Agreement. As discussed above, the Plaintiffs' prima facie proof "is not subject to rebuttal, cross-examination, impeachment, or disproof." *See, e.g.*, *Missouri Pac. R. Co.*, 998 S.W.2d at 216; *Sustainable Tex. Oyster.*, 491 S.W.3d at 106 (same).

---

[5] The Court will recall that at the December 6, 2024 hearing, counsel for Mr. Powers explained that he was reluctant to have Mr. Powers send the original signed Investment Agreement in the mail for fear that it might get lost, but that the original will be available for the Court at the Injunction hearing.

6

C.     **The Parties' Conduct Is Consistent with a Signed Investment Agreement.**

Plaintiffs also pleaded and provided further prima facie proof that the parties' conduct was consistent with the Investment Agreement having been signed by all parties. Third Am. Pet. at ¶ 14-19. A brief summary of the record evidence demonstrates the point:

- In December 2018, Mr. Powers began receiving $100,000 per month plus expenses for services rendered beginning in November 2018 after the parties agreed to the terms that were embodied in the Investment Agreement and separate compensation Agreement. Resp. to Mtn. to Transfer at Ex. 11 ¶ 6.

- In February 2019, as the Berrys' "representative and chief negotiator" under the Investment Agreement, Mr. Powers negotiated a signed term sheet with the Carlyle Group valuing the Berry-side equity interest at no less than $400,000,000. Resp. to Mtn. to Transfer at Ex. 1 p. 25, Ex. 9 p. 327.

- In January 2020, after paying him $100,000 per month and reasonable expenses for his work on the Lone Star Ports Project, the Berrys requested that Powers agree that the monthly compensation portion of the separate Agreement be terminated because of cash flow considerations. Resp. to Mtn. to Transfer at Ex. 3. Powers accepted the requested termination of the monthly compensation portion of the Agreement, but noted that it "has no effect on the rights and obligations of the parties to that certain Investment Agreement by and among the Berrys and [Powers] dated as of November 1, 2020 [sic]."). *Id.* at Ex. 4. No one disputed his ownership or objected that Powers was incorrect or mistaken. *Id.* at Ex. 11 ¶ 6-7.

- Even after the termination of the monthly compensation portion of the Agreement, the Berrys continued to reimburse Powers' expenses in accordance with both the Investment Agreement and the Agreement for another three and one-half years. *Id.*

- Consistent with the terms of the signed Investment Agreement, Powers sent Lawrence, Marty, and Dennis multiple proposed holding structures he prepared for the Project that plainly showed Plaintiffs' ownership interest. *Id.* at Ex. 5, Ex. 8. Not once did they respond disputing Plaintiffs' interest or asserting that he did not have an interest. *Id.* at Ex. 11 ¶ 8-9.

Not surprisingly, courts often look to similar evidence to determine whether a party agreed to a contract's terms—whether they actually signed it or not. *See, e.g.*, *SK Plymouth, LLC v. Simmons*, 605 S.W.3d 706, 718 (Tex. App.—Houston [1st Dist. 2020], no pet.) ("A party's intent to be bound by a contract may be evidenced by its conduct at the time a contract is drafted and by

7

its subsequent conduct reflecting that it was acting in accordance with the terms of the contract.") (quotations omitted); *see also Firstlight Fed. Credit Union v. Loya*, 478 S.W.3d 157, 168 (Tex. App.—El Paso 2015, no pet.) ("In the absence of a signature on a contract, a court may look to other evidence to establish the parties' assent to the terms of the contract," which "includes the party's conduct.").

This mountain of evidence that Marty and Dennis signed the Investment Agreement far exceeds the "prima facie proof" standard. And if the Court determines that Plaintiffs' pleadings and prima facie proof are sufficient to support venue, the analysis ends, and the Moving Parties' Motions must be denied. Tex. R. Civ. P. 87.3(c) ("If a claimant has adequately pleaded and made prima facie proof that venue is proper in the county of suit [or an established ground of mandatory venue]… then the cause shall not be transferred but shall be retained in the county of suit."). Thus, Plaintiffs respectfully submit that the Court should sustain venue in Harris County and deny the Moving Parties' Motions.

## II. Plaintiffs' prima facie proof cannot be controverted, and even if it could, the Moving Parties provided nothing but an insufficient "mere denial" of signatures.

Plaintiffs' proof set forth above must be measured only against the "prima facie" standard, and not by any evidence (much less, an unsupported assertion) put forth by the Moving Parties. Plaintiffs' prima facie proof is "not subject to rebuttal, cross-examination, impeachment, or disproof." *In re Missouri Pac. R. Co.*, 998 S.W.2d at 216; *Sustainable Tex. Oyster*, 491 S.W.3d at 106 (same).

Thus, the Moving Parties' "claim" that Marty and Dennis did not sign the Investment Agreement is not relevant and should not be considered by this Court, as it attempts to "rebut" or "disprove" Plaintiffs' prima facie proof. *See id.* But even if the Court were to entertain the "claim" that Marty and Dennis did not sign the Investment Agreement, there is no competent evidence for

8

the Court to consider. The Moving Parties submitted ***no evidence***, either in their Motions or at the December 6, 2024 hearing, to support the claim that Marty and Dennis did not sign the Investment Agreement. But even if they did supply the Court with that evidence, as Plaintiffs previously explained, "[m]ere denials do not suffice" to establish a party did not sign a contract in order to avoid a forum selection clause. Resp. to Mtn. to Transfer at pp. 9-10; *see, e.g.*, *Aerotek*, 624 S.W.3d at 202; *Knox Waste Serv., LLC v. Sherman*, 2021 WL 4470876, at *8 (Tex. App.—Eastland Sept. 30, 2021, no pet.) (enforcing arbitration agreement even after counter-party filed an affidavit claiming that "he did not sign the document.").

The Moving Parties' evidence (or better termed, lack thereof) would be insufficient even aside from the Court's limited, deferential review for transfer. In *City of Ames v. City of Liberty*, in support of a Plea to the Jurisdiction, Ames asserted that Liberty did not establish that the contract at issue was "properly executed." 2023 WL 2180967 at *11. Liberty pleaded that the contract was executed and cited the signatures on the contract itself, noting that it "presented prima facie evidence of contract formation and execution" and "the burden is on Ames to offer evidence that would refute contract formation, which Ames did not do." *Id*.

The court agreed and rejected Ames' claim, noting that Ames "offered no evidence to controvert Liberty's pleadings" and "failed to meet its burden to create a disputed fact issue on this point." *Id.* at *12. The court denied the plea to the jurisdiction. *Id.* at *14. Like in *Ames*, the Moving Parties submitted no evidence in support of its Plea to the Jurisdiction that Marty and Dennis did not sign the Investment Agreement—they "mere[ly] deni[ed]" it. Even if the Court could consider an unsupported denial as part of the transfer analysis (which it cannot), the Moving Parties provided nothing to overcome the prima facie evidence supplied by the Plaintiffs. The Court should deny the Moving Parties' Motions.

9

## III. Venue is proper in Harris County regardless of whether Marty and Dennis signed the Investment Agreement.

Plaintiffs do not believe that the Court should reach this section for the reasons discussed above, but even if the Court were to accept the claim that Marty and Dennis did not sign the Investment Agreement, venue would still be proper in Harris County, for several reasons.

First, Lawrence undisputedly signed the Investment Agreement, establishing mandatory venue against him in Harris County.[6] And because venue is proper against one defendant, it is proper against *all defendants*. Tex. Civ. Prac. & Rem. Code § 15.005 ("In a suit in which the plaintiff has established proper venue against a defendant, the court also has venue of all the defendants in all claims or actions arising out of the same transaction, occurrence, or series of transactions or occurrences.").

Even so, Texas courts often bind non-signatories to forum selection clauses when they have sought the benefits of the contract containing the forum selection clause. Direct benefits estoppel, for instance, "is invoked if non-signatories who, during the life of the contract, have embraced the contract despite their non-signatory status, but then, during litigation, attempt to repudiate the [forum selection clause][7] in the contract." *In re Western Dairy Transp., L.L.C.*, 574 S.W.3d 537, 551 (Tex. App.—El Paso 2019, no pet.) (internal quotations omitted). Non-signatories that do so are "estopped from simultaneously attempting to avoid the contract's burdens." *Loya v. Loya*, 507 S.W.3d 871, 877 (Tex. App.—Houston [1st Dist.] 2016, no pet.).

---

[6] As set forth in Plaintiffs' Response to Defendants' Motion to Transfer Venue, if not a mandatory forum selection clause, the Investment Agreement is a "major transaction," which trumps other mandatory venue provisions (even if others are applicable). Resp. to Mtn. to Transfer at pp. 12-16; *see, e.g.*, *In re Fisher*, 433 S.W.3d 523, 534 (Tex. 2014).

[7] Direct benefits estoppel applies both to arbitration agreements and forum selection clauses. *See, e.g.*, *Deep Water Slender Wells, Ltd. v. Shell Intern. Explor. & Prod., Inc.*, 234 S.W.3d 679, 693 (Tex. App.—Houston [14th Dist.] 2007, pet. denied) ("The First Court of Appeals has determined that the equitable-estoppel theories regarding nonsignatories to arbitration agreements also should be applied to forum-selection clauses that do not involve arbitration…We agree.").

Here, the Moving Parties were content to accept the benefits of Mr. Powers' work under the Investment Agreement. As set forth above, the parties acted as if the Investment Agreement was signed and in effect for many years while Mr. Powers worked on the Project on their behalf. *See supra* at pp. 6-7. Some specific examples prove the point. Both Marty and Dennis signed the February 2019 term sheet negotiated by Mr. Powers that valued their interest at over $400,000,000—a testament to the significant and impactful work of Mr. Powers on the Project. Resp. to Mtn. to Transfer at Ex. 9, p. 325 ("no less than $400,000,000"), p. 333 (Marty's and Dennis's signatures). They also knew he was continuing to act as the Berrys' "representative and chief negotiator" under the Investment Agreement when he prepared several transfers of interests and operating agreements for the relevant assets and entities involved in the Project and sent those documents to another group of potential investors. *Id.* at Ex. 6-7 (Powers' sending transfer documents and operating agreements to potential investors and Lawrence, Marty, and Dennis with no objection). Both Marty and Dennis also attended meetings with prospective third-party investors in the project that were arranged by Powers. Lawrence, Marty, Dennis, and Powers also met to discuss progress of the project and potential third-party investors on multiple occasions long after the monthly compensation portion of the Agreement was terminated.

Notably, none of the Moving Parties have ever presented any evidence that they disapproved or disputed any of the work that Powers did in furtherance of the Lone Star Ports Project. Indeed, only when Axis Midstream received the permit to begin construction did the Moving Parties ever do anything other than benefit from the work Powers did for years on the Project. They cannot now reap the benefits of his work under the Investment Agreement and avoid "burdens" in the contract like the forum selection clause. *Loya*, 507 S.W.3d at 877.

11

Additionally, Lawrence is undisputedly a citizen of Harris County—another basis for proper venue. Third Am. Pet. at ¶ 9; Tex. Civ. Prac. & Rem. Code § 15.002(2). And finally, a substantial part of the events giving rise to Plaintiffs' claims occurred in Harris County. *Id*. Powers' affidavit provides more than sufficient prima facie proof. Resp. to Mtn. to Transfer at Ex. 11 ¶¶ 3-9 (detailing various meetings with the Berry Defendants and work done in Houston in furtherance of the Lone Star Ports Project under the Investment Agreement). At bottom, each path leads to venue in Harris County.[8]

## CONCLUSION

For the reasons set forth herein and for the reasons set forth in Plaintiffs' Response to Defendants' Motion to Transfer Venue and Motion to Remand/Dismiss/Transfer as well as Defendant Lawrence Berry's Response to Defendants' Motion to Remand/Dismiss/Transfer, Responding Parties respectfully request that the Court deny the Moving Parties' Motions[9] and grant any further relief to which the Responding Parties are entitled.

---

[8] The Court may recall that the allegations made on behalf of Marty Berry in the Nueces County lawsuit were amended just days before the December 6, 2024 hearing in this matter in an attempt to manufacture a connection between the two lawsuits. Amending a suit between different parties over different subject matter does not create dominant jurisdiction, negate a valid forum selection clause, nor have any effect on the Court's venue analysis.

[9] If the Court disagrees and finds that transfer is warranted, for the reasons set forth in Plaintiffs' Response to Defendants' Motion to Transfer Venue at pp. 18-20, Plaintiffs respectfully submit that the Court transfer this action to the Fourth Division Business Court in San Antonio.

DATED: January 9, 2025

Respectfully submitted,

/s/ Alistair B. Dawson
Alistair B. Dawson
State Bar No. 05596100
M. Jake McClellan
State Bar No. 24109525
Madeline E. Gay
State Bar No. 24138681
E-mail: adawson@beckredden.com
E-mail: jmcclellan@beckredden.com
E-mail: mgay@beckredden.com
1221 McKinney Street, Suite 4500
Houston, Texas 77010-2010
Telephone:     (713) 951-3700
Telecopier:     (713) 951-3720

**ATTORNEYS FOR PLAINTIFF ALBERT THEODORE POWERS**

**GREENBERG TRAURIG, LLP**

/s/ Roland Garcia
Roland Garcia
State Bar No. 07645250
Steven Higginbotham
State Bar No. 24125274
E-mail: garciar@gtlaw.com
E-mail: higginbothams@gtlaw.com
1000 Louisiana Street, Suite 6700
Houston, Texas 77002
Telephone:  (713) 374-3500
Facsimile:   (713) 374-3505

**ATTORNEYS FOR PLAINTIFF ALLIED PORTS LLC**

/s/ Barrett H. Reasoner
Barrett Reasoner
State Bar No. 16641980
breasoner@gibbsbruns.com
Michael R. Absmeier
State Bar No. 24050195
mabsmeier@gibbsbruns.com
L. Bruce Baldree
State Bar No. 24116064

13

bbaldree@gibbsbruns.com
Sydney G. Ballesteros
State Bar No. 24036180
sballesteros@gibbsbruns.com
**GIBBS & BRUNS LLP**
1100 Louisiana, Suite 5300
Houston, Texas 77002
Tel: 713.650.8805
Fax: 713.750.0903

**ATTORNEYS FOR DEFENDANT
A. LAWRENCE BERRY**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this document was served on counsel of record in this matter in accordance with Rules 21 and 21a of the Texas Rules of Civil Procedure on this 9th day of January, 2025.

*/s/ M. Jake McClellan*
M. Jake McClellan

14

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Lisa Verm on behalf of Alistair Dawson
Bar No. 5596100
lverm@beckredden.com
Envelope ID: 96058977
Filing Code Description: No Fee Documents
Filing Description: Responding Parties' Brief on the Moving Parties' Signature Claim
Status as of 1/9/2025 5:24 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Barrett H.Reasoner | | breasoner@gibbsbruns.com | 1/9/2025 5:20:25 PM | SENT |
| Michael R.Absmeier | | mabsmeier@gibbsbruns.com | 1/9/2025 5:20:25 PM | SENT |
| Stephanie Sanchez | | sanchezst@gtlaw.com | 1/9/2025 5:20:25 PM | SENT |
| Rosa Brennan | | rbrennan@gibbsbruns.com | 1/9/2025 5:20:25 PM | SENT |
| Douglas Allison | 1083500 | doug@dallisonlaw.com | 1/9/2025 5:20:25 PM | SENT |
| Alistair Dawson | 5596100 | adawson@beckredden.com | 1/9/2025 5:20:25 PM | SENT |
| Roland Garcia | 7645250 | garciar@gtlaw.com | 1/9/2025 5:20:25 PM | SENT |
| Michael Hummell | 10271100 | hummellm@bayltd.com | 1/9/2025 5:20:25 PM | SENT |
| Michael McClellan | 24109525 | jmcclellan@beckredden.com | 1/9/2025 5:20:25 PM | SENT |
| Roxanne Graham | | rgraham@gibbsbruns.com | 1/9/2025 5:20:25 PM | SENT |
| Christina Pena | | cpena@gibbsbruns.com | 1/9/2025 5:20:25 PM | SENT |
| Kim Brunkenhoefer | | kim@dallisonlaw.com | 1/9/2025 5:20:25 PM | SENT |
| Susan Gonzales | | susan@dallisonlaw.com | 1/9/2025 5:20:25 PM | SENT |
| Steven Higginbotham | | higginbothams@gtlaw.com | 1/9/2025 5:20:25 PM | SENT |
| Bruce Baldree | | bbaldree@gibbsbruns.com | 1/9/2025 5:20:25 PM | SENT |
| Sydney Ballesteros | | sballesteros@gibbsbruns.com | 1/9/2025 5:20:25 PM | SENT |
| Becky Young | | Becky.Young@gtlaw.com | 1/9/2025 5:20:25 PM | SENT |
| Madeline Gay | | mgay@beckredden.com | 1/9/2025 5:20:25 PM | SENT |
| Business Court 11A | | BCDivision11A@txcourts.gov | 1/9/2025 5:20:25 PM | SENT |
| Liz Poirrier | | epoirrier@beckredden.com | 1/9/2025 5:20:25 PM | SENT |
| Vanessa Gilmore | | vg@robertsmarkland.com | 1/9/2025 5:20:25 PM | SENT |
| Liz Poirrier | | epoirrier@beckredden.com | 1/9/2025 5:20:25 PM | SENT |

# APPENDIX 35

E-filed in the Office of the Clerk
for the Business Court of Texas
1/9/2025 5:20 PM
Accepted by: Beverly Crumley
Case Number: 24-BC11A-0025

CAUSE NO. 24-BC11A-0025

| | | |
|---|---|---|
| ALBERT THEODORE POWERS; ALLIED PORTS LLC, | § § § | IN THE BUSINESS COURT |
| *Plaintiffs,* | § § | |
| v. | § § § | ELEVENTH DIVISION |
| AXIS MIDSTREAM HOLDINGS, LLC; ALLEN LAWRENCE BERRY; MARVIN GLENN BERRY; AND BONNIE BERRY, as successor in interest to DENNIS WAYNE BERRY | § § § § § § | |
| *Defendants.* | § § § | HARRIS COUNTY, TEXAS |

**RESPONDING PARTIES' BRIEF ON THE MOVING PARTIES' SIGNATURE CLAIM**

The Court requested the Moving[1] and Responding[2] Parties address "the legal effect, if any, of the Moving Parties' claim that 'neither Marty Berry nor Dennis Berry signed any contract with a provision allowing for venue in Harris County, Texas.'" Dec. 31, 2024 Order. The answer is simple: it has no effect on the pending motions. It is nothing more than an unsupported allegation that cannot be considered because Plaintiffs' prima facie proof in support of venue "is not subject to rebuttal, cross-examination, impeachment, or disproof." *See, e.g.*, *In re Missouri Pac. R. Co.*, 998 S.W.2d 212, 216 (Tex. 1999); *Sustainable Tex. Oyster Research Mgmt. L.L.C. v. Hannah Reef, Inc.*, 491 S.W.3d 96, 106 (Tex. App.—Houston [1st Dist.] 2016, pet. denied) (same). The relevant question is: did Plaintiffs present prima facie proof by "properly pleaded" "venue facts"

---

[1] The Moving Parties are Defendants Marvin Glen Berry, Bonnie Berry, and Axis Midstream Holdings, LLC.

[2] The Responding Parties are, pursuant to the Court's Order, Plaintiffs Albert Theodore Powers and Allied Ports LLC and Defendant Lawrence Berry. Without waiver of his General Denial, Defendant Lawrence Berry agrees with and joins in the legal arguments set forth herein.

1

and evidence "specifically setting forth" those facts? Tex. R. Civ. P. 87.3(a), (c). The answer to this question is undoubtedly "yes." Plaintiffs' Petition properly pleaded facts establishing mandatory venue in Harris County, with specific record evidence setting forth those facts:

- **The *fully executed* Investment Agreement itself.** Third Am. Pet. at Ex. 2; Resp. to Mtn. to Transfer at Ex. 1; *see Patterson v. Yellow Cab Mfg. Co.*, 298 S.W. 918, 920 (Tex. Civ. App. Eastland 1927, no writ) ("The production of the written contract delivered complete on its face with appellant's signature attached is prima facie the entire agreement."). Because the filing of the fully executed Investment Agreement cannot be controverted in connection with a venue motion, the Court's inquiry need not go further.

- **Direct evidence from eyewitnesses—including Plaintiff Powers and one of the Defendants—that Marty and Dennis Berry signed the Investment Agreement.** Third Am. Pet at Ex. 11 ¶ 5; Resp. to Mtn. to Transfer at Ex. 11 ¶5 ("On May 28, 2019, I witnessed Marty Berry and Dennis Berry execute both the Investment Agreement and the Agreement at the Berry GP office in Corpus Christi, Texas."); Lawrence's Resp. to Mtn. to Transfer at p. 11 ("Lawrence recalls being present when both Marty and Dennis signed the Investment Agreement."); *see Aerotek v. Boyd*, 624 S.W.3d 199, 202 (Tex. 2021) ("For a paper document with a handwritten, wet-ink signature, the genuineness of the signature can be proved by direct evidence—for example, **testimony by an eyewitness**, a witness familiar with the signatory's handwriting, or an expert who has compared the signature against a genuine specimen.") (emphasis added). In this case, the Court has evidence from two eyewitnesses, both of whom saw Marty and Dennis sign the Investment Agreement. Because this evidence cannot be controverted (and indeed has not been legitimately controverted by Marty or Bonnie) the Court's inquiry need not go further.

- **Evidence that the parties' conduct was consistent with a fully executed Investment Agreement.** Third Am. Pet. ¶¶ 13-19. The parties exchanged a plethora of documents acknowledging the Plaintiffs' 20% ownership interest that was memorialized in the Investment Agreement, which were not disputed by the Defendants. Resp. to Mtn. to Transfer at Ex. 5, 8 (organizational charts showing Plaintiffs' ownership interest sent to Lawrence, Marty, and Dennis with no objection). Similar documents were shared with potential investors with no objection from Lawrence, Marty or Dennis. *Id.* at Ex. 6-7 (Powers' sending transfer documents and operating agreements to potential investors and Lawrence, Marty and Dennis with no objection from Lawrence, Marty, or Dennis). In addition, Plaintiffs supplied the Court with evidence that Mr. Powers was paid in accordance with the compensation Agreement (which was signed at the same time as the Investment Agreement), and Mr. Powers was reimbursed expenses in accordance with both the Investment Agreement and the compensation Agreement. *Id.* at Ex. 11 ¶ 6; *see also id.* at Ex. 3-4 (termination of compensation portion of the Agreement "has no effect on the rights and obligations of the parties to that certain Investment Agreement by and among the Berrys and [Powers] dated as of November 1, 2020 [sic]."); *see SK Plymouth, LLC v. Simmons*, 605 S.W.3d 706, 718 (Tex. App.—Houston [1st Dist. 2020], no pet.) ("A party's intent to be bound by a contract may be evidenced by its conduct at the time a contract is

2

drafted and by its subsequent conduct reflecting that it was acting in accordance with the terms of the contract.") (quotations omitted).

Even if the Court could consider evidence of the Moving Parties' claim, the Moving Parties offered no evidence to consider in their Motions or at the December 6, 2024 hearing. Neither Marty nor Bonnie has submitted an affidavit in connection with the Motions swearing under oath that either Marty or Dennis did not sign the Investment Agreement.[3] But even if they did, merely denying that Marty and Dennis signed the Investment Agreement is no evidence at all. *Aerotek*, 624 S.W.3d 199 at 209 ("[m]ere denials do not suffice" to contest signature on contract); *see also City of Ames v. City of Liberty*, 2023 WL 2180967, at *12 (Tex. App.—Beaumont Feb. 23, 2023, pet. denied) (party that did not rebut executed contract with evidence it was not properly executed failed to meet burden on plea to the jurisdiction).

And even if the Court were to accept the claim that Marty and Dennis did not sign the Investment Agreement, Lawrence undisputedly did, and venue accordingly would be mandatory against him in Harris County.[4] Moreover, Lawrence is a citizen of Harris County—the most basic of bases for proper venue. Tex. Civ. Prac. & Rem. Code § 15.002. Because venue is mandatory and proper against one defendant, venue is proper against all defendants. Tex. Civ. Prac. & Rem. Code § 15.005 ("In a suit in which the plaintiff has established proper venue against a defendant, the court also has venue of all the defendants in all claims or actions arising out of the same

---

[3] Defendant Marty Berry did file a verified denial in which he denied execution of the Investment Agreement. That verified denial was not an exhibit to or mentioned in the Motions, nor was it introduced at the hearing on December 6, 2024. Nor is it competent evidence in any event to support his Motions. *See, e.g.*, *In re HPGM, LLC*, 629 S.W.3d 418, 423 (Tex. App.—Texarkana 2020, orig. proceeding) ("[I]t is well established that pleadings are generally not competent evidence, even if sworn or verified."). Defendant Bonnie Berry has not filed an answer and has not asserted that the signature on the Investment Agreement is not that of her late husband.

[4] Marty and Bonnie are also bound through their conduct and acceptance of the benefits they have gained through Mr. Powers' work under the Investment Agreement. *See* pp. 10-11, *infra*. Additionally, as set forth in Plaintiffs' response to Defendants' Motion to Transfer, a substantial part of the events giving rise to this lawsuit also took place in Harris County. Tex. Civ. Prac. & Rem. Code § 15.005.

3

transaction, occurrence, or series of transactions or occurrences."). For these reasons and those set forth below, the Court should determine that the Moving Parties' assertion that Marty and Dennis did not sign the Investment Agreement has no legal significance to the Moving Parties' Motions, and these Motions should be denied.

## ARGUMENT AND AUTHORITIES

I. **Plaintiffs provided prima facie proof that the Investment Agreement was signed.**

### A. The Fully Executed Agreement Was Provided to the Court.

The Court's inquiry focuses on the Moving Parties' assertion that Marty and Dennis did not sign the Investment Agreement. That assertion has no effect on the Court's limited and deferential review at the motion to transfer stage. *See, e.g.*, *Missouri Pac. R. Co.*, 998 S.W.2d at 216 ("The parties' pleading and proof limits a trial court's discretion to determine venue."). What matters is this: Plaintiffs properly pleaded that the Investment Agreement contains an enforceable forum selection (or alternatively a venue selection) clause, and they provided the Court with prima facie proof to support those allegations. That ends the analysis. Tex. R. Civ. P. 87.3(c) ("If a claimant has adequately pleaded and made prima facie proof that venue is proper in the county of suit [or an established ground of mandatory venue]… then the cause shall not be transferred but shall be retained in the county of suit."). Below is directly from Plaintiffs' live Petition:

> 9. Venue is proper in this district because Powers, a citizen of New York, and the Berry Defendants, citizens of Texas, entered into agreements with a mandatory forum selection clause wherein each party consented to "exclusive jurisdiction" in Harris County, Texas to the exclusion of other courts and waived objections to Harris County as the forum and venue for the claims asserted in this lawsuit and others that may arise under the agreements. *See* **Ex. 2** (the "Investment Agreement") at § 5(a). Alternatively, the written agreements underlying Plaintiffs' claims constitute a "major transaction" providing for venue in Harris County, Texas. Tex. Civ. Prac. & Rem. Code § 15.020.[2] Venue is additionally proper because one of the defendants is a

Plaintiffs' Third Am. Pet. at ¶ 9. Plaintiffs attached a fully executed copy of the Investment Agreement containing the forum selection clause to their Petition. *Id*. at Ex. 2. It shows on its face it was *fully executed* by all parties—Lawrence, Marty, Dennis and Powers:



ALLEN LAWRENCE BERRY

DENNIS WAYNE BERRY

MARVIN GLEN BERRY

ALBERT THEODORE POWERS

*Id.*; Resp. to Mtn. to Transfer at Ex. 1. The existence of the fully executed Investment Agreement alone is "prima facie proof" of the entire agreement. *See Patterson v. Yellow Cab Mfg. Co.*, 298 S.W. 918, 920 (Tex. Civ. App.—Eastland 1927, no writ) ("The production of the written contract delivered complete on its face with appellant's signature attached is prima facie the entire agreement."); *see also Western Surety Co. v. Medsolutions, Inc.*, 2003 WL 251433, at *4 (N.D.

5

Tex. Feb. 3, 2003) (citing *Wheel Masters, Inc. v. Jiffy Metal Prods. Co.*, 955 F.2d 1126 (7th Cir. 1992)) ("[A] signed agreement is *prima facie* evidence of a valid and enforceable contract[.]").

**B.      Eyewitness Testimony That Marty and Dennis Berry Signed The Investment Agreement.**

While the fully executed Investment Agreement is sufficient itself, Plaintiffs provided much more.  Plaintiffs pleaded that the Investment Agreement was executed.  Third Am. Pet. at ¶ 13.  And in his affidavit, Powers provided direct evidence that he "witnessed Marty Berry and Dennis Berry execute both the Investment Agreement and the Agreement at the Berry GP office in Corpus Christi, Texas."  Resp. to Mtn. to Transfer at Ex. 11 ¶ 5.  Powers also "has an original Investment Agreement signed in ink by all four parties" in his possession.  *Id.*[5]  Eyewitness testimony is a common and recognized method to prove a signature.  *Aerotek v. Boyd*, 624 S.W.3d 199, 204-05 (Tex. 2021) ("For a paper document with a handwritten, wet-ink signature, the genuineness of the signature can be proved by direct evidence—for example, testimony by an eyewitness, a witness familiar with the signatory's handwriting, or an expert who has compared the signature against a genuine specimen.").  Defendant Lawrence Berry filed a verified pleading in which he corroborated Powers' testimony that Marty and Dennis signed the Investment Agreement.  Lawrence's Resp. to Mtn. to Transfer at p. 11 ("Lawrence recalls being present when both Marty and Dennis signed the Investment Agreement.").  Plaintiffs have provided the Court with more than sufficient prima facie proof that there is an enforceable and signed Investment Agreement.  As discussed above, the Plaintiffs' prima facie proof "is not subject to rebuttal, cross-examination, impeachment, or disproof."  *See, e.g.*, *Missouri Pac. R. Co.*, 998 S.W.2d at 216; *Sustainable Tex. Oyster.*, 491 S.W.3d at 106 (same).

---

[5] The Court will recall that at the December 6, 2024 hearing, counsel for Mr. Powers explained that he was reluctant to have Mr. Powers send the original signed Investment Agreement in the mail for fear that it might get lost, but that the original will be available for the Court at the Injunction hearing.

## C. The Parties' Conduct Is Consistent with a Signed Investment Agreement.

Plaintiffs also pleaded and provided further prima facie proof that the parties' conduct was consistent with the Investment Agreement having been signed by all parties. Third Am. Pet. at ¶ 14-19. A brief summary of the record evidence demonstrates the point:

- In December 2018, Mr. Powers began receiving $100,000 per month plus expenses for services rendered beginning in November 2018 after the parties agreed to the terms that were embodied in the Investment Agreement and separate compensation Agreement. Resp. to Mtn. to Transfer at Ex. 11 ¶ 6.

- In February 2019, as the Berrys' "representative and chief negotiator" under the Investment Agreement, Mr. Powers negotiated a signed term sheet with the Carlyle Group valuing the Berry-side equity interest at no less than $400,000,000. Resp. to Mtn. to Transfer at Ex. 1 p. 25, Ex. 9 p. 327.

- In January 2020, after paying him $100,000 per month and reasonable expenses for his work on the Lone Star Ports Project, the Berrys requested that Powers agree that the monthly compensation portion of the separate Agreement be terminated because of cash flow considerations. Resp. to Mtn. to Transfer at Ex. 3. Powers accepted the requested termination of the monthly compensation portion of the Agreement, but noted that it "has no effect on the rights and obligations of the parties to that certain Investment Agreement by and among the Berrys and [Powers] dated as of November 1, 2020 [sic].")· *Id.* at Ex. 4. No one disputed his ownership or objected that Powers was incorrect or mistaken. *Id.* at Ex. 11 ¶ 6-7.

- Even after the termination of the monthly compensation portion of the Agreement, the Berrys continued to reimburse Powers' expenses in accordance with both the Investment Agreement and the Agreement for another three and one-half years. *Id.*

- Consistent with the terms of the signed Investment Agreement, Powers sent Lawrence, Marty, and Dennis multiple proposed holding structures he prepared for the Project that plainly showed Plaintiffs' ownership interest. *Id.* at Ex. 5, Ex. 8. Not once did they respond disputing Plaintiffs' interest or asserting that he did not have an interest. *Id.* at Ex. 11 ¶ 8-9.

Not surprisingly, courts often look to similar evidence to determine whether a party agreed to a contract's terms—whether they actually signed it or not. *See, e.g.*, *SK Plymouth, LLC v. Simmons*, 605 S.W.3d 706, 718 (Tex. App.—Houston [1st Dist. 2020], no pet.) ("A party's intent to be bound by a contract may be evidenced by its conduct at the time a contract is drafted and by

7

its subsequent conduct reflecting that it was acting in accordance with the terms of the contract.") (quotations omitted); *see also Firstlight Fed. Credit Union v. Loya*, 478 S.W.3d 157, 168 (Tex. App.—El Paso 2015, no pet.) ("In the absence of a signature on a contract, a court may look to other evidence to establish the parties' assent to the terms of the contract," which "includes the party's conduct.").

This mountain of evidence that Marty and Dennis signed the Investment Agreement far exceeds the "prima facie proof" standard. And if the Court determines that Plaintiffs' pleadings and prima facie proof are sufficient to support venue, the analysis ends, and the Moving Parties' Motions must be denied. Tex. R. Civ. P. 87.3(c) ("If a claimant has adequately pleaded and made prima facie proof that venue is proper in the county of suit [or an established ground of mandatory venue]… then the cause shall not be transferred but shall be retained in the county of suit."). Thus, Plaintiffs respectfully submit that the Court should sustain venue in Harris County and deny the Moving Parties' Motions.

## II.     Plaintiffs' prima facie proof cannot be controverted, and even if it could, the Moving Parties provided nothing but an insufficient "mere denial" of signatures.

Plaintiffs' proof set forth above must be measured only against the "prima facie" standard, and not by any evidence (much less, an unsupported assertion) put forth by the Moving Parties. Plaintiffs' prima facie proof is "not subject to rebuttal, cross-examination, impeachment, or disproof." *In re Missouri Pac. R. Co.*, 998 S.W.2d at 216; *Sustainable Tex. Oyster*, 491 S.W.3d at 106 (same).

Thus, the Moving Parties' "claim" that Marty and Dennis did not sign the Investment Agreement is not relevant and should not be considered by this Court, as it attempts to "rebut" or "disprove" Plaintiffs' prima facie proof. *See id.* But even if the Court were to entertain the "claim" that Marty and Dennis did not sign the Investment Agreement, there is no competent evidence for

8

the Court to consider. The Moving Parties submitted ***no evidence***, either in their Motions or at the December 6, 2024 hearing, to support the claim that Marty and Dennis did not sign the Investment Agreement. But even if they did supply the Court with that evidence, as Plaintiffs previously explained, "[m]ere denials do not suffice" to establish a party did not sign a contract in order to avoid a forum selection clause. Resp. to Mtn. to Transfer at pp. 9-10; *see, e.g.*, *Aerotek*, 624 S.W.3d at 202; *Knox Waste Serv., LLC v. Sherman*, 2021 WL 4470876, at \*8 (Tex. App.—Eastland Sept. 30, 2021, no pet.) (enforcing arbitration agreement even after counter-party filed an affidavit claiming that "he did not sign the document.").

The Moving Parties' evidence (or better termed, lack thereof) would be insufficient even aside from the Court's limited, deferential review for transfer. In *City of Ames v. City of Liberty*, in support of a Plea to the Jurisdiction, Ames asserted that Liberty did not establish that the contract at issue was "properly executed." 2023 WL 2180967 at \*11. Liberty pleaded that the contract was executed and cited the signatures on the contract itself, noting that it "presented prima facie evidence of contract formation and execution" and "the burden is on Ames to offer evidence that would refute contract formation, which Ames did not do." *Id*.

The court agreed and rejected Ames' claim, noting that Ames "offered no evidence to controvert Liberty's pleadings" and "failed to meet its burden to create a disputed fact issue on this point." *Id*. at \*12. The court denied the plea to the jurisdiction. *Id*. at \*14. Like in *Ames*, the Moving Parties submitted no evidence in support of its Plea to the Jurisdiction that Marty and Dennis did not sign the Investment Agreement—they "mere[ly] deni[ed]" it. Even if the Court could consider an unsupported denial as part of the transfer analysis (which it cannot), the Moving Parties provided nothing to overcome the prima facie evidence supplied by the Plaintiffs. The Court should deny the Moving Parties' Motions.

**III.    Venue is proper in Harris County regardless of whether Marty and Dennis signed the Investment Agreement.**

Plaintiffs do not believe that the Court should reach this section for the reasons discussed above, but even if the Court were to accept the claim that Marty and Dennis did not sign the Investment Agreement, venue would still be proper in Harris County, for several reasons.

First, Lawrence undisputedly signed the Investment Agreement, establishing mandatory venue against him in Harris County.[6]  And because venue is proper against one defendant, it is proper against *all defendants*.  Tex. Civ. Prac. & Rem. Code § 15.005 ("In a suit in which the plaintiff has established proper venue against a defendant, the court also has venue of all the defendants in all claims or actions arising out of the same transaction, occurrence, or series of transactions or occurrences.").

Even so, Texas courts often bind non-signatories to forum selection clauses when they have sought the benefits of the contract containing the forum selection clause.  Direct benefits estoppel, for instance, "is invoked if non-signatories who, during the life of the contract, have embraced the contract despite their non-signatory status, but then, during litigation, attempt to repudiate the [forum selection clause][7] in the contract." *In re Western Dairy Transp., L.L.C.*, 574 S.W.3d 537, 551 (Tex. App.—El Paso 2019, no pet.) (internal quotations omitted).  Non-signatories that do so are "estopped from simultaneously attempting to avoid the contract's burdens." *Loya v. Loya*, 507 S.W.3d 871, 877 (Tex. App.—Houston [1st Dist.] 2016, no pet.).

---

[6] As set forth in Plaintiffs' Response to Defendants' Motion to Transfer Venue, if not a mandatory forum selection clause, the Investment Agreement is a "major transaction," which trumps other mandatory venue provisions (even if others are applicable).  Resp. to Mtn. to Transfer at pp. 12-16; *see, e.g.*, *In re Fisher*, 433 S.W.3d 523, 534 (Tex. 2014).

[7] Direct benefits estoppel applies both to arbitration agreements and forum selection clauses.  *See, e.g.*, *Deep Water Slender Wells, Ltd. v. Shell Intern. Explor. & Prod., Inc.*, 234 S.W.3d 679, 693 (Tex. App.—Houston [14th Dist.] 2007, pet. denied) ("The First Court of Appeals has determined that the equitable-estoppel theories regarding nonsignatories to arbitration agreements also should be applied to forum-selection clauses that do not involve arbitration…We agree.").

10

Here, the Moving Parties were content to accept the benefits of Mr. Powers' work under the Investment Agreement. As set forth above, the parties acted as if the Investment Agreement was signed and in effect for many years while Mr. Powers worked on the Project on their behalf. *See supra* at pp. 6-7. Some specific examples prove the point. Both Marty and Dennis signed the February 2019 term sheet negotiated by Mr. Powers that valued their interest at over $400,000,000—a testament to the significant and impactful work of Mr. Powers on the Project. Resp. to Mtn. to Transfer at Ex. 9, p. 325 ("no less than $400,000,000"), p. 333 (Marty's and Dennis's signatures). They also knew he was continuing to act as the Berrys' "representative and chief negotiator" under the Investment Agreement when he prepared several transfers of interests and operating agreements for the relevant assets and entities involved in the Project and sent those documents to another group of potential investors. *Id.* at Ex. 6-7 (Powers' sending transfer documents and operating agreements to potential investors and Lawrence, Marty, and Dennis with no objection). Both Marty and Dennis also attended meetings with prospective third-party investors in the project that were arranged by Powers. Lawrence, Marty, Dennis, and Powers also met to discuss progress of the project and potential third-party investors on multiple occasions long after the monthly compensation portion of the Agreement was terminated.

Notably, none of the Moving Parties have ever presented any evidence that they disapproved or disputed any of the work that Powers did in furtherance of the Lone Star Ports Project. Indeed, only when Axis Midstream received the permit to begin construction did the Moving Parties ever do anything other than benefit from the work Powers did for years on the Project. They cannot now reap the benefits of his work under the Investment Agreement and avoid "burdens" in the contract like the forum selection clause. *Loya*, 507 S.W.3d at 877.

11

Additionally, Lawrence is undisputedly a citizen of Harris County—another basis for proper venue. Third Am. Pet. at ¶ 9; Tex. Civ. Prac. & Rem. Code § 15.002(2). And finally, a substantial part of the events giving rise to Plaintiffs' claims occurred in Harris County. *Id*. Powers' affidavit provides more than sufficient prima facie proof. Resp. to Mtn. to Transfer at Ex. 11 ¶¶ 3-9 (detailing various meetings with the Berry Defendants and work done in Houston in furtherance of the Lone Star Ports Project under the Investment Agreement). At bottom, each path leads to venue in Harris County.[8]

## **CONCLUSION**

For the reasons set forth herein and for the reasons set forth in Plaintiffs' Response to Defendants' Motion to Transfer Venue and Motion to Remand/Dismiss/Transfer as well as Defendant Lawrence Berry's Response to Defendants' Motion to Remand/Dismiss/Transfer, Responding Parties respectfully request that the Court deny the Moving Parties' Motions[9] and grant any further relief to which the Responding Parties are entitled.

---

[8] The Court may recall that the allegations made on behalf of Marty Berry in the Nueces County lawsuit were amended just days before the December 6, 2024 hearing in this matter in an attempt to manufacture a connection between the two lawsuits. Amending a suit between different parties over different subject matter does not create dominant jurisdiction, negate a valid forum selection clause, nor have any effect on the Court's venue analysis.

[9] If the Court disagrees and finds that transfer is warranted, for the reasons set forth in Plaintiffs' Response to Defendants' Motion to Transfer Venue at pp. 18-20, Plaintiffs respectfully submit that the Court transfer this action to the Fourth Division Business Court in San Antonio.

DATED: January 9, 2025

Respectfully submitted,

*/s/ Alistair B. Dawson*
Alistair B. Dawson
State Bar No. 05596100
M. Jake McClellan
State Bar No. 24109525
Madeline E. Gay
State Bar No. 24138681
E-mail: adawson@beckredden.com
E-mail: jmcclellan@beckredden.com
E-mail: mgay@beckredden.com
1221 McKinney Street, Suite 4500
Houston, Texas 77010-2010
Telephone:     (713) 951-3700
Telecopier:    (713) 951-3720

**ATTORNEYS FOR PLAINTIFF ALBERT THEODORE POWERS**

**GREENBERG TRAURIG, LLP**

*/s/ Roland Garcia*
Roland Garcia
State Bar No. 07645250
Steven Higginbotham
State Bar No. 24125274
E-mail: garciar@gtlaw.com
E-mail: higginbothams@gtlaw.com
1000 Louisiana Street, Suite 6700
Houston, Texas 77002
Telephone:  (713) 374-3500
Facsimile:   (713) 374-3505

**ATTORNEYS FOR PLAINTIFF ALLIED PORTS LLC**

*/s/ Barrett H. Reasoner*
Barrett Reasoner
State Bar No. 16641980
breasoner@gibbsbruns.com
Michael R. Absmeier
State Bar No. 24050195
mabsmeier@gibbsbruns.com
L. Bruce Baldree
State Bar No. 24116064

13

bbaldree@gibbsbruns.com
Sydney G. Ballesteros
State Bar No. 24036180
sballesteros@gibbsbruns.com
**GIBBS & BRUNS LLP**
1100 Louisiana, Suite 5300
Houston, Texas 77002
Tel: 713.650.8805
Fax: 713.750.0903

**ATTORNEYS FOR DEFENDANT**
**A. LAWRENCE BERRY**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this document was served on counsel of record in this matter in accordance with Rules 21 and 21a of the Texas Rules of Civil Procedure on this 9th day of January, 2025.

*/s/ M. Jake McClellan*
M. Jake McClellan

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Lisa Verm on behalf of Alistair Dawson
Bar No. 5596100
lverm@beckredden.com
Envelope ID: 96058977
Filing Code Description: No Fee Documents
Filing Description: Responding Parties' Brief on the Moving Parties' Signature Claim
Status as of 1/9/2025 5:24 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Barrett H.Reasoner | | breasoner@gibbsbruns.com | 1/9/2025 5:20:25 PM | SENT |
| Michael R.Absmeier | | mabsmeier@gibbsbruns.com | 1/9/2025 5:20:25 PM | SENT |
| Stephanie Sanchez | | sanchezst@gtlaw.com | 1/9/2025 5:20:25 PM | SENT |
| Rosa Brennan | | rbrennan@gibbsbruns.com | 1/9/2025 5:20:25 PM | SENT |
| Douglas Allison | 1083500 | doug@dallisonlaw.com | 1/9/2025 5:20:25 PM | SENT |
| Alistair Dawson | 5596100 | adawson@beckredden.com | 1/9/2025 5:20:25 PM | SENT |
| Roland Garcia | 7645250 | garciar@gtlaw.com | 1/9/2025 5:20:25 PM | SENT |
| Michael Hummell | 10271100 | hummellm@bayltd.com | 1/9/2025 5:20:25 PM | SENT |
| Michael McClellan | 24109525 | jmcclellan@beckredden.com | 1/9/2025 5:20:25 PM | SENT |
| Roxanne Graham | | rgraham@gibbsbruns.com | 1/9/2025 5:20:25 PM | SENT |
| Christina Pena | | cpena@gibbsbruns.com | 1/9/2025 5:20:25 PM | SENT |
| Kim Brunkenhoefer | | kim@dallisonlaw.com | 1/9/2025 5:20:25 PM | SENT |
| Susan Gonzales | | susan@dallisonlaw.com | 1/9/2025 5:20:25 PM | SENT |
| Steven Higginbotham | | higginbothams@gtlaw.com | 1/9/2025 5:20:25 PM | SENT |
| Bruce Baldree | | bbaldree@gibbsbruns.com | 1/9/2025 5:20:25 PM | SENT |
| Sydney Ballesteros | | sballesteros@gibbsbruns.com | 1/9/2025 5:20:25 PM | SENT |
| Becky Young | | Becky.Young@gtlaw.com | 1/9/2025 5:20:25 PM | SENT |
| Madeline Gay | | mgay@beckredden.com | 1/9/2025 5:20:25 PM | SENT |
| Business Court 11A | | BCDivision11A@txcourts.gov | 1/9/2025 5:20:25 PM | SENT |
| Liz Poirrier | | epoirrier@beckredden.com | 1/9/2025 5:20:25 PM | SENT |
| Vanessa Gilmore | | vg@robertsmarkland.com | 1/9/2025 5:20:25 PM | SENT |
| Liz Poirrier | | epoirrier@beckredden.com | 1/9/2025 5:20:25 PM | SENT |

# APPENDIX 36

E-filed in the Office of the Clerk
for the Business Court of Texas
1/17/2025 7:25 PM
Accepted by: Beverly Crumley
Case Number: 24-BC11A-0025



**THE BUSINESS COURT OF TEXAS**
**ELEVENTH DIVISION**

| | | |
|---|---|---|
| Albert Theodore Powers; Allied Ports LLC, | § § § § § | |
| Plaintiffs, | § § | |
| v. | § § | Cause No. 24-BC11A-0025 |
| Axis Midstream Holdings, LLC; Allen Lawrence Berry; Marvin Glenn Berry; and Bonnie Berry as successor in interest to Dennis Wayne Berry, | § § § § § | |
| Defendants. | § § § | |

**ORDER**

On December 6, 2024, came to be heard Marvin Glenn Berry's Plea in Abatement and Motion to Abate; Movants' Motion to Remand, Dismiss and/or Transfer Venue; and Axis Midstream Holdings, LLC's Motion to Transfer Venue (the "Motions"). At this juncture, having considered the Motions; Defendant Lawrence Berry's Response to Motion to Remand, Dismiss, or Transfer Venue; Plaintiffs' Response to Defendants' Motion to Transfer Venue and Motion to Remand/Dismiss/Transfer; Plaintiffs' Response to Defendant's Plea in Abatement and Motion to Remand, Dismiss, and/or Transfer;

1

Plaintiffs' Notice Regarding Defendant Axis Midstream Holdings, LLC's Motion to Transfer Venue; Defendants' Combined Reply to Plaintiffs'/Lawrence's Response to Plea in Abatement; Defendants Marvin Glenn Berry and Bonnie Berry's Brief [filed January 9, 2025]; Responding Parties' Brief on the Moving Parties' Signature Claim; the evidence presented; the arguments of counsel; and the current status of the law, the Court **ORDERS** that the Motions are **DENIED**.

SO ORDERED.

SIGNED: January 17, 2025

Hon. Sofía Adrogué
Texas Business Court, Eleventh Division

2

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Envelope ID: 96382657
Filing Code Description: No Fee Documents
Filing Description: Signed Order
Status as of 1/18/2025 3:10 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Barrett H.Reasoner | | breasoner@gibbsbruns.com | 1/17/2025 7:25:52 PM | SENT |
| Michael R.Absmeier | | mabsmeier@gibbsbruns.com | 1/17/2025 7:25:52 PM | SENT |
| Stephanie Sanchez | | sanchezst@gtlaw.com | 1/17/2025 7:25:52 PM | SENT |
| Rosa Brennan | | rbrennan@gibbsbruns.com | 1/17/2025 7:25:52 PM | SENT |
| Douglas Allison | 1083500 | doug@dallisonlaw.com | 1/17/2025 7:25:52 PM | SENT |
| Alistair Dawson | 5596100 | adawson@beckredden.com | 1/17/2025 7:25:52 PM | SENT |
| Roland Garcia | 7645250 | garciar@gtlaw.com | 1/17/2025 7:25:52 PM | SENT |
| Michael Hummell | 10271100 | hummellm@bayltd.com | 1/17/2025 7:25:52 PM | SENT |
| Michael McClellan | 24109525 | jmcclellan@beckredden.com | 1/17/2025 7:25:52 PM | SENT |
| Roxanne Graham | | rgraham@gibbsbruns.com | 1/17/2025 7:25:52 PM | SENT |
| Christina Pena | | cpena@gibbsbruns.com | 1/17/2025 7:25:52 PM | SENT |
| Kim Brunkenhoefer | | kim@dallisonlaw.com | 1/17/2025 7:25:52 PM | SENT |
| Susan Gonzales | | susan@dallisonlaw.com | 1/17/2025 7:25:52 PM | SENT |
| Steven Higginbotham | | higginbothams@gtlaw.com | 1/17/2025 7:25:52 PM | SENT |
| Bruce Baldree | | bbaldree@gibbsbruns.com | 1/17/2025 7:25:52 PM | SENT |
| Sydney Ballesteros | | sballesteros@gibbsbruns.com | 1/17/2025 7:25:52 PM | SENT |
| Becky Young | | Becky.Young@gtlaw.com | 1/17/2025 7:25:52 PM | SENT |
| Madeline Gay | | mgay@beckredden.com | 1/17/2025 7:25:52 PM | SENT |
| Business Court 11A | | BCDivision11A@txcourts.gov | 1/17/2025 7:25:52 PM | SENT |
| Liz Poirrier | | epoirrier@beckredden.com | 1/17/2025 7:25:52 PM | SENT |
| Vanessa Gilmore | | vg@robertsmarkland.com | 1/17/2025 7:25:52 PM | SENT |
| Liz Poirrier | | epoirrier@beckredden.com | 1/17/2025 7:25:52 PM | SENT |

# APPENDIX 37

**CAUSE NO. 2024DCV-0045-C**

| | | |
|---|---|---|
| LAWRENCE BERRY, individually and derivatively on behalf of BERRY GP, INC. | § § § § | IN THE DISTRICT COURT |
| Plaintiff, | § § | |
| BERRY GP, INC., | § § | |
| Nominal Plaintiff, | § § | NUECES COUNTY, TEXAS |
| v. | § § § | |
| MARTY BERRY, ROBERT RICKETT, ROBERT POWERS, MICHAEL HUMMELL, BERRY GP, INC., BERRY OPERATING COMPANY, LLC and BERRY CONTRACTING LOP | § § § § § § § | |
| Defendants. | § § | 94th JUDICIAL DISTRICT |

**APPLICATION FOR TEMPORARY RESTRAINING ORDER
AND TEMPORARY INJUNCTION (the "APPLICATION")**

In support of this Application, Berry GP Inc. ("Berry GP") and Redfish Bay Terminals Inc. ("RBT") incorporate Counter-Plaintiffs' Second Amended Original Petition Asserting Counter-Claims ("Berry GP's Petition") on file as if set forth in its entirety. In further support of this Application, Berry GP and RBT incorporate and rely upon the Verification signed by Mike Hummell (Exhibit 1, attached). For reasons set forth or incorporated in this Application, Texas law supports issuance of a Temporary Restraining Order ("TRO") and Temporary Injunction ("TI").

*Additional Berry GP Facts:*

Axis Midstream Holdings LLC ("Axis") was formed by Allen Lawrence Berry ("Lawrence") on September 12, 2017.[1] On September 20, 2017, ownership and control of Axis was transferred

---

[1] See Exhibit 2 (Certificate of Formation); see also Exhibit 3 (ALB 007562).

1

by Lawrence to the Allen Lawrence Berry (2007) Trust ("Trust").[2] On September 20, 2017, ownership and control of Axis was transferred by Trust to Gansevoort Investments LLC.[3] On or about November 30, 2017, all ownership and all control of Axis was transferred to Berry GP.[4] None of these transactions (from Lawrence to Trust to Gansevoort to Berry GP) are in dispute, and all of these transactions ultimately caused Berry GP to be the sole Member of Axis, and the sole Manager of Axis beginning November 30, 2017. Simply stated, Axis Midstream Holdings LLC – as is true of almost all Berry Companies – became one of the several Berry Companies owned by Berry GP, controlled by Berry GP, and invested in by Berry GP (millions of dollars invested, some directly and some by other Berry Companies). A more detailed review confirms Berry GP's ownership and control of Axis Midstream Holdings LLC:

- November 30, 2017: All of Axis' membership interest and control of Axis transferred to Berry GP.[5] (restated, and not in dispute).

- December 1, 2017: Axis' bank account established at IBC Bank (same bank used by Berry GP), by signatures of Marty Berry, Lawrence Berry, and Ed Martin (then-CEO of Berry GP).[6] This bank account continued to exist for all years pertinent to this dispute (see IBC bank record for same Axis account referenced below).

- December 6, 2017: Change in Registered Office/Agent filed with Texas Secretary of State, naming Charles A. Vanaman (Berry Entity employee) as new registered

---

[2] Exhibit 4 (ALB 007561). By agreement of parties, all sensitive/confidential exhibits will be provided in camera.
[3] Exhibit 3 (ALB 007562).
[4] Exhibit 5 (ALB 007563).
[5] Exhibit 5 (ALB 007563).
[6] Exhibit 6: 2017.12.01 IBC Bank Signed Deposit Agreement

agent for Axis; and identifying 1414 Valero Way, Corpus Christi, Texas as new business address for Axis (same as Berry GP's business address).[7]

- February 28, 2018: Berry GP, through Berry Entities, began investing money in support of Axis project for which Axis sought permit (and has very recently acquired permit); with payments through October 17, 2024, totaling $XX,XXX,XXX.XX).[8]

- 2018 Texas Franchise Tax Public Information Report evidencing: (1) Axis' principal office is 1414 Corn Product Road (now 1414 Valero Way), Corpus Christi, Texas (also Berry GP's principal office address); (2) Axis' principal place of business is 1414 Corn Product Road, Corpus Christi, Texas (also Berry GP's principal place of business); (3) Axis' President is Lawrence, and Vice-Presidents are Marty and Dennis; (4) that "Name of owned (parent) corporation . . ." is "Berry GP Inc." ("Percentage of Ownership – 100.00"); (5) Axis' registered agent is Charles Vanaman (Berry Entity employee); and (6) all signed by Diane Decou (Berry Entity employee).[9]

- February 4, 2020: Change in Registered Office/Agent filed with Texas Secretary of State, naming Mike Hummell (Berry GP General Counsel) as new registered

---

[7] Exhibit 7: 2017.12.06 Statement of Change of Registered Office/Agent, filed with Texas Secretary of State.
[8] Exhibit 8: Berry Contracting, LP Job Cost Ledger.
[9] Exhibit 9: 2018 Axis Midstream Holdings LLC Texas Franchise Tax Public Information Report.

agent for Axis; and no change in the business address of Axis (1414 Valero Way, Corpus Christi, Texas).[10]

- Year End October 31, 2021 (Report Year 2022):[11]

  o Texas Franchise Tax Report filing for Berry GP and subsidiaries show "Axis Midstream Holdings LLC" as an "affiliate" of Berry GP – as such Berry GP is performing compliance reporting for "Axis Midstream Holdings LLC;"

  o Same Texas Franchise Tax Report document shows Berry GP's "Percentage of Ownership" of "Axis Midstream Holdings LLC" is "100.000."

  o Same Texas Franchise Tax Report document shows Axis Midstream Holdings LLC's business address as 1414 Valero Way, Corpus Christi, Texas (also Berry GP's business address), and list three (3) Managers: Lawrence, Marty, and Dennis – and, again, identifying "Berry GP Inc." as having a "Percentage of Ownership" of "100.000."

  o Finally, the footnote on the Texas Franchise Tax Report states (Year 2022): "AXIS MIDSTREAM (FEIN: 82-XXXX615) IS OWNED 100% BY BERRY GP, INC. . . . ."

- 2021 Texas Franchise Tax Public Information Report[12] evidencing: (1) Axis' principal office at 1414 Valero Way, Corpus Christi, Texas (also Berry GP's principal office address); (2) Axis' principal place of business at 1414 Valero Way,

---

[10] Exhibit 10: February 4, 2020 Statement of Change of Registered Office/Agent, filed with Texas Secretary of State.
[11] Exhibit 11: Form 05-158 Axis Midstream Holdings, LLC Texas Franchise Tax Public Information Report
[12] Exhibit 12: Report Year 2021, Axis Midstream Holdings, LLC Texas Franchise Tax Public Information Report.

4

Corpus Christi, Texas (also Berry GP's principal place of business); (3) Axis' President is Lawrence, and Vice-Presidents are Marty and Dennis; (4) that "Name of owned (parent) corporation . . ." is "Berry GP Inc." ("Percentage of Ownership – 100.000"); (5) Axis' registered agent is Mike Hummell  (Berry GP's  and Axis' General Counsel); and (6) all signed by Diane Decou (Berry Entity  employee).

- Year End October 31, 2022 (Report Year 2023):[13]

   o Texas Franchise Tax Report filing for Berry GP and subsidiaries shows "Axis Midstream Holdings LLC" as an "affiliate" of Berry GP – as such, Berry GP is performing compliance reporting for "Axis Midstream Holdings LLC;"

   o Same Texas Franchise Tax Report document shows Berry GP's "Percentage of Ownership" of "Axis Midstream Holdings LLC" is "100.000."

   o Same Texas Franchise Tax Report document shows Axis' business address is 1414 Valero Way, Corpus Christi, Texas (same Berry GP's business address), and list three (3) Managers: Lawrence, Marty, and

---

[13] Exhibit 13:  Form 05-158 Axis Midstream Holdings, LLC Texas Franchise Tax Public Information Report, year ended October 31, 2022

Dennis – and, again, identifying "Berry GP Inc." as having a "Percentage of Ownership" of "100.000."

- o Finally, the footnote on the Texas Franchise Tax Report states (Report Year 2023): "AXIS MIDSTREAM (FEIN: 82-XXXX615) IS OWNED 100% BY BERRY GP, INC. . . . ."

- November 29, 2022, Tonya Fulghum emailed Mike Hummell[14] (General Counsel for Axis and Berry GP ) to "correct" Texas Secretary of State paperwork for Axis Midstream Holdings LLC (email exchanges making clear that Tonya believes Axis is a Berry GP owned company).

- December 13, 2022: "Certificate of Amendment" naming Lawrence as President; Dennis, Marty, Jim Klein, Mike Hummell, and Robert Powers as Vice-Presidents; Jim Klein as CFO; Mike Hummell as General Counsel; and Crissy Hinojosa as Secretary, of Axis Midstream Holdings LLC.[15]

- 2022 Texas Franchise Tax Public Information Report[16] (signed January 24, 2023) evidencing: (1) Axis' principal office at 1414 Valero Way, Corpus Christi, Texas (also Berry GP's principal office address); (2) Axis' principal place of business at 1414 Valero Way, Corpus Christi, Texas (also Berry GP's principal place of business); (3) Axis' President is Lawrence, and Vice-Presidents are Marty, Dennis, Jim Klein, Robert Powers, and Mike Hummell (the last three (3) are Berry Entity employees); (4) that Mike Hummell is General Counsel, Jim Klein is CFO, and Crissy Hinojosa is Secretary (all Berry Entity employees); (5) that the "Name of owned (parent) corporation . . ." is "Berry GP Inc." ("Percentage of Ownership –

---

[14] Exhibit 14: 2022.11.29 Email from Tonya Fulghum (the Court may recall that Tonya Fulghum is now employed by and testified for Lawrence during the March 2024 hearings on Temporary Injunction).
[15] Exhibit 15: 2022.12.13 Certificate of Amendment, filed with Texas Secretary of State.
[16] Exhibit 16: 2022 Axis Midstream Holdings, LLC Texas Franchise Tax Public Information Report.

100.0"); (5) Axis' registered agent is Mike Hummell  (Berry GP's and Axis' General Counsel); and (6) all signed by Emily Smith (Berry Entity employee).

- 2023 Texas Franchise Tax Public Information Report[17] evidencing (signed November 15, 2023):  (1) Axis' principal office at 1414 Valero Way, Corpus Christi, Texas (also Berry GP's principal office address); (2) Axis' principal place of business at 1414 Valero Way, Corpus Christi, Texas (also Berry GP's principal place of business address); (3) Axis' President is Lawrence, and Vice-Presidents are Marty,  Dennis, Jim Klein, Robert Powers, and Mike Hummell (the last three (3) are Berry Entity employees); (4) that Mike Hummell is General Counsel, and Jim Klein is CFO (both Berry Entity employees); (5) that the "Name of owned (parent) corporation . . ." is "Berry GP Inc." ("Percentage of Ownership – 100.000"); (5) Axis' registered agent is Mike Hummell  (Berry GP's and Axis' General Counsel); and (6) all signed by James Klein (Berry Entity employee).

- January 2024:  IBC Bank account records[18] shows Axis Midstream Holdings LLC's address as 1414 Valero Way, Corpus Christi, Texas (same as Berry GP's address), and reconciliation

---

[17] Exhibit 17: 2023 Axis Midstream Holdings, LLC Texas Franchise Tax Public Information Report.
[18] Exhibit 18: IBC Bank record for January 2024 selected as exhibit, although each month's statement reveals the same information.  This Axis bank account has more recently been closed.

of IBC account record accomplished by Berry Entity employees (further confirming Axis is a Berry GP owned company).

- April 3, 2024: Texas Secretary of State document confirming Axis' officers: Lawrence as President; Dennis, Marty, Robert Powers, Mike Hummell, and James Klein as Vice-Presidents; James Klein as CFO; and Mike Hummell as General Counsel.[19]

- November 4, 2024: Texas Secretary of State document confirming Mike Hummell (General Counsel for Berry GP and Axis) as registered agent for Axis.[20]

- 2024 Texas Franchise Tax Public Information Report[21] evidencing (signed November 15, 2024): (1) Axis' principal office at 1414 Valero Way, Corpus Christi, Texas (also Berry GP's principal office address); (2) Axis' principal place of business at 1414 Valero Way, Corpus Christi, Texas (also Berry GP's principal place of business address); (3) Axis' President is Lawrence, and Vice-Presidents are Marty, Dennis, Jim Klein, Robert Powers, and Mike Hummell (the last three (3) are Berry Entity employees); (4) that Mike Hummell is General Counsel, and Jim Klein is CFO (both Berry Entity employees); (5) that the "Name of owned (parent) corporation . . ." is "Berry GP Inc." ("Percentage of Ownership – 100.000"); (5) Axis' registered agent is Mike Hummell (Berry GP's and Axis' General Counsel); and (6) all signed by James Klein (Berry Entity employee).

The evidentiary record is overwhelming. Since transfer of ownership and control of Axis Midstream Holdings LLC to Berry GP (November 30, 2017), the *status quo* has been that Berry GP is owner of Axis Midstream Holdings LLC; and Dennis, Marty, and Lawrence (as the Directors

---

[19] Exhibit 19: Filing History with Texas Secretary of State
[20] Exhibit 20: 2024.11.22 Texas Secretary of State Certificate of Amendment.
[21] Exhibit 25: 2024 Axis Midstream Holdings, LLC Texas Franchise Tax Public Information Report.

of Berry GP (Axis' only Member)[22] and as Managers of Axis) control Axis Midstream Holdings LLC. Axis' bank account (2017 – 2024) confirms that ownership and control is with Berry GP. Axis' legal filings with the Texas Secretary of State in 2017, 2018, 2020, 2021, 2022, 2023, and 2024 repeatedly and consistently confirm that ownership and control of Axis is with Berry GP (inclusive of express language that Berry GP is 100% owner of Axis Midstream Holdings LLC). Texas Franchise Tax Reports show that Berry GP is paying taxes owed for itself and its affiliated companies, including Axis Midstream Holdings LLC (these reports also with express language that Berry GP is 100% owner of Axis Midstream Holdings LLC). And some might say that actions speak louder than words, and that Berry GP's (and related Berry Entities') paying million of dollars in support of Axis' permit (and the Axis/Lone Star Ports project, generally) evidence an emphatic understanding that Berry GP owns Axis Midstream Holdings LLC. This status quo must be preserved, and such is Berry GP's objective with the filing of this Application.

*Additional Facts (Lawrence's actions):*

In disregard of Berry GP's seven (7) years of quiet ownership and control of Axis Midstream Holdings LLC (but true to his nature), Lawrence now claims that Berry GP no longer owns or controls Axis Midstream Holdings LLC. Lawrence now claims that Axis is owned by Lone Star Ports Enterprises LLC (with Lawrence as President of Axis).[23] Keys to Lawrence's contention are two (2) documents (both recently unearthed (November 2024)):

(1) "Transfer of Interest and Change of Manager Agreement"[24] from Berry GP to Redfish Bay Terminals Inc. ("RBT") – a document whose execution would require both Berry GP Board of Directors' approval by majority vote and RBT Board of Directors'

---

[22] Lawrence Berry was removed as Director of Berry GP on December 2, 2024.
[23] Exhibit 22: 2024.11.22 Certificate of Amendment, filed with Texas Secretary of State.
[24] Exhibit 23: ALB 001057-001058; and Berry GP Bylaws.

9

approval by majority vote (which neither Board of Directors approved, and no one contends otherwise); and

(2) "Transfer of Interests and Change of Manager Agreement"[25] from RBT to Lone Star Ports Holdings LLC (intermediary to Lone Star Ports Enterprises LLC) – a document whose execution would, at a minimum, require RBT Board of Directors' approval by majority vote (which never occurred, and no one contends otherwise).

Berry GP's Petition makes clear that both the above-reference purported transfers of ownership interest and control are invalid.[26] *It makes no sense whatsoever that Berry GP, or RBT, would invest millions of dollars in Axis only to give it away to Lawrence or another.* This is simply a new play by Lawrence[27] to try to wrestle control of Axis Midstream Holdings LLC away from Berry GP. As of November 2024, Berry GP learned of the two (2) documents referenced above. As of December 2024, Berry GP learned of a new "Certificate of Amendment" document apparently filed November 19, 2024, with the Texas Secretary of State – purportedly on behalf of Axis Midstream Holdings LLC – to completely reverse what has been Axis Midstream Holdings LLC's *status quo* of ownership and control for the past seven (7) years. Specifically, Lawrence's unilateral action by filing of the new "Certificate of Amendment" endeavor to: (1) remove Mike Hummell as registered agent of Axis, and replace him (Mike) with Gretchen Reed (Lawrence's

---

[25] Exhibit 24: ALB 001061-001062; and RBT Bylaws.

[26] Berry GP's Petition, pursuant to Texas Civil Practice & Remedies Code ("TCPRC") section 37.004, seek declaration that transfers / conveyances / contracts / Manager appointments executed/accepted by Lawrence (e.g., purportedly involving Axis Midstream Holdings LLC, wholly owned/Managed by Berry GP and/or Redfish Bay Terminal Inc.) without majority Board of Directors' approval are void, void ab initio, voidable, invalid, and/or of no legal force or effect.

[27] As of October 31, 2024, Ted Powers and Lawrence (as friendly defendant) filed a new lawsuit in Harris County, Texas, to take control of Axis Midstream Holdings LLC – yet refuse to add Berry GP to the new Harris County lawsuit (an effort to avoid application of the doctrine of dominant jurisdiction). This Nueces County lawsuit (of course, originally filed in Harris County but then transferred to Nueces County) is the first-filed lawsuit and thus enjoys dominant jurisdiction of all matters pleaded herein – including all matters the subject of amended pleadings and parties added (including dominant jurisdiction of inherently interrelated matters, if any).

employee); (2) change Axis' long-standing business address from 1414 Valero Way, Corpus Christi, Texas (Axis' and Berry GP's business address) to 5005 Riverway Drive, Houston, Texas (Lawrence's business address); (3) remove Marty, Dennis, Jim Klein, Mike Hummell, and Robert Powers as Vice-Presidents of Axis (casting-aside their service in support of Axis since 2017, for most of them), and remove Mike Hummell as General Counsel of Axis, and remove James Klein as CFO and remove Crissy Hinojosa as Secretary of Axis; and (5) name Lone Star Ports Enterprises LLC "as the Sole Member and Manager" of Axis.[28] Worst of all, Lawrence has been pushing to put his contrived ownership and control of Axis into practice; that is, Lawrence recently represented himself as having authority to negotiate to development the Axis/LSP project using Axis' USACE permit[29] (authority which Lawrence does not have). Obviously, Lawrence's unauthorized action cause confusion in the marketplace regarding Berry GP's /RBT's asset (Axis and Axis' permit) and jeopardize Axis/LSP project success. This puts Berry GP's investment (millions of dollars) at serious risk. Whereas Berry GP has owned and controlled Axis since 2017 (without drama or fanfare), Lawrence now wants to turn Axis on its head.

*Application for TRO and TI:*

Berry GP's Petition on file is approximately seventeen (17) pages in length. In relevant part, Berry GP's Petition alleges that Berry GP "substantially invested" (millions of dollars) seed money in "Axis [Midstream Holdings LLC] and LSP [Lone Star Ports LLC]." The Berry GP Petition further alleges that Lawrence Berry was charged with the responsibility to safeguard such investments, but went rogue by engaging a series of self-dealing transactions without notice to Berry GP (or Marty Berry or Dennis Berry). More specifically with regards to Axis Midstream

---

[28] Exhibit 22: 2024.11.22 Certificate of Amendment, filed with Texas Secretary of State.
[29] USACE refers to United States Army Corps of Engineers, the federal agency that recently approved Axis' permit application; thus giving rise to Lawrence's renewed, on-going effort to take from Berry GP.

Holdings LLC and Lone Star Ports LLC, Berry GP's Petition alleges that Lawrence did "wrongfully purport to have transferred some of this [Berry GP's] interest to others (e.g., Lone Star Ports Holdings LLC). Given Lawrence's supposed transfers/conveyances were without required Berry GP Board of Directors' majority-vote approval, Berry GP's Petition then prays that the Court judicially declare Lawrence's unilateral transfers/conveyances "void, void ab initio, voidable, invalid, and/or of no legal force or effect." Lawrence purportedly made similar transfers/ conveyances from RBT to Lone Star Ports Holdings LLC, but – again – without RBT Board of Directors' majority-vote approval (as required by RBT Bylaws). Thus, these purported RBT transfers (made apparently by Lawrence unilaterally) are 'void, void ab initio, voidable, invalid, and/or of no legal force or effect.' For the past seven (7) years, all appropriate documents evidence that Berry GP is owner of Axis Midstream Holdings LLC. For the past seven (7) years, the *status quo* as recognized Berry GP is 100% owner of Axis, and enjoys absolute control as the sole Member of Axis (and thus may chose Axis' Manager(s)). If Lawrence wishes to dispute this truth, then the *status quo* must be preserved during the pendency of the dispute.

*Texas Law:*

Pursuant to Texas Rules of Civil Procedure ("TRCP") 680 and 681, and pursuant to Texas Civil Practice and Remedies Code §§65.011(1) and (3), Berry GP request that the Court issue a Temporary Restraining Order ("TRO") and a Temporary Injunction ("TI") enjoining Lawrence Berry, and all those acting in concert with Lawrence Berry, from: (1) filing any document with the Texas Secretary of State changing, modifying, or altering any information about Axis Midstream Holdings LLC, absent a majority vote of its Member/Managers (Berry GP/RBT);[30] (2)

---

[30] By way of example, but without limitation, the document recently filed by Lawrence's collaboration with Lone Star Ports Enterprises LLC purported to change Axis' business address, Axis' principal place of business address, identity of Axis' officers and Managers, identity of Axis' registered agent, identity of Axis' General Counsel, Secretary, and

12

calling for or holding any Members' meetings purportedly on behalf of Axis Midstream Holdings LLC; (3) taking any action (through any person or company, including Lone Star Ports Enterprises LLC) purportedly as Member(s) and/or Manager(s) of Axis Midstream Holdings LLC; and (4) representing or suggesting to others any right of ownership or control of Axis Midstream Holdings LLC, except for Berry GP's (RBT's) 100% ownership and sole control – all such injunctive relief pending further Order from this Court or a final adjudication of the merits.  Berry GP (RBT) further requests that upon final trial on the merits, the Court award a permanent injunction against Lawrence Berry, and all those acting in concert with Lawrence Berry, for the same activity.

By this filing, Berry GP (RBT) merely seeks to preserve the status quo.  See *In re Newton,* 146 S.W.3d 648, 651 (Tex. 2004) ("The purpose of a TRO is to preserve the status quo, which we have defined as the last, actual peaceable, non-contested status which preceded the pending controversy.") (citations and quotations omitted).  Presently, Lawrence has been actively interfering with Berry's GP's (RBT's) right of ownership and control of Axis Midstream Holdings LLC by filing false documents with the Texas Secretary of State, and by falsely representing himself (Lawrence) as a person with authority to negotiate terms of business for Axis Midstream Holdings LLC.  By the recent filing with the Texas Secretary of State, Lawrence purports to have unilaterally moved the principal office and principal place of business of Axis from Nueces County to Harris County, purports to have changed Axis' officers, purports to have changed Axis' registered agent for service, and purports to have changed the identity of the legal entity that owns and controls Axis Midstream Holdings LLC (from Berry GP, as has been reflected in the Texas Secretary of State records for the past seven (7) years, to Lone Star Ports Enterprises LLC (a company never mentioned in the Texas Secretary of State records until late-November 2024)).  In

---

CFO, and purported to change ownership and control of Axis Midstream Holdings LLC.  All such conduct is altering of the *status quo,* and thus properly enjoined.

reality, these purported actions by Lawrence have no legal effect; however, such actions create significant risk that third parties will be misled and/or confused – and that Berry GP's and Axis' (and others') business relationships will be disrupted. The requested TRO and TI will prevent such immediate, irreparable, and immeasurable harm. The requested preliminary injunction is narrowly tailored to preserve the *status quo* and prevent Lawrence from causing chaos and disruption before this matter can be heard on its merits.

To obtain a TRO and temporary injunction, Berry GP must show a cause of action against Lawrence, a probable right to relief, and probable injury. *See, e.g., Butnam v. Ford Motor Co.,* 84 S.W.3d 198,204 (Tex. 2002). Please consider a more comprehensive review of each of these elements in support of the injunctive relief sought herein.

(1) <u>Probable Right to Relief:</u>

Lawrence's recently filed "Certificate of Amendment" states it has "been approved in the manner required by the Texas Business Organizations Code and by the governing documents of the entity [Berry GP]." This affirmation is required by the form for a "Certificate of Amendment." It is required by the on-line Texas Secretary of State form because it is Texas law. Berry GP's bylaws clearly require that the Board of Directors (not

14

only one (1) of three (3) directors) manage and control the business of Berry GP. Specifically, Berry GP's bylaws state:

> "DIRECTORS:  The property and business of the company
> will be managed and controlled by a board of directors . . . ."[31]

It really cannot be any more clearly stated.  This being said, Berry GP's bylaws further confirm this precise rule:

> "POWERS OF DIRECTORS:  The board of directors shall
> have the management of the business of the company . . . ."[32]

Again, clearly spoken.  Nothing gives any power to just one (1) director, or suggests that any one (1) director may unilaterally usurp management or control of Berry GP 'property or business' from the majority rule of the Berry GP Board of Directors.  To the contrary, the Berry GP bylaws repeatedly refer to action taken by "them" (referring to more than one director, at p. 1),[33] "They shall" (referring to more than one director, at p. 1), "their discretion" (referring to more than one director, at p. 2), and "prior act of the directors" (plural – "directors," at p. 2).  The Berry GP bylaws go on to list the "powers" of the "board of directors" (not just one director): (a) to purchase property, rights or privileges (at p. 2), (b) to appoint / remove subordinate managers (at p. 2), (c) to confer matters by resolution (at p. 2), (d) to appoint a person to hold property in trust (at p. 2), (e) to create, make, and issue mortgages, bones, deeds of trust . . . (at p. 3), and (f) to provide for the management

---

[31] Exhibit 23, ALB 001057-001058; and Berry GP Bylaws
[32] Exhibit 23, ALB 001057-001058; and Berry GP Bylaws
[33] All page numbers refer to Exhibit 23.

15

of the affairs of the company . . . (at p. 3). Again, these are powers of Berry GP's Board of Directors (not powers given to only one (1) director).

All considered, a reading of Berry GP's bylaws demonstrates that the Berry GP Board of Directors takes action as "they" may determine, actions taken are for "them" by "act of directors" – and no provision of the Berry GP Bylaws grants power to a single director acting alone (such as Lawrence tends to do). There has never been a vote (much less a majority-vote) by the Berry GP Board of Directors to gift, sell, or transfer to Lawrence (or anyone) Axis Midstream Holdings LLC (a substantial investment for Berry GP). The evidence overwhelmingly will show that Berry GP has a probable right to relief (i.e., a declaration that Berry GP owns and controls Axis Midstream Holdings LLC). Of course, Berry GP need not show that Berry GP will prevail at trial on its request for declaratory relief. Berry GP must merely plead a cause or causes of action and present some evidence that tends to sustain the pleaded causes of action.[34] Berry GP's request for declaratory relief (that the referenced purported transfers of Axis from Berry GP

---

[34] *Intercontinental Terminals Co. LLC v. Vopak North America, Inc.,* 354 S.W.3d 887, 897 (Tex.Civ.App.-Houston [1st Dist.] 2011, no petition).

16

and/or from RBT are void) may be granted/ sustained as a matter of law – and certainly there is a probable right to relief in favor of Berry GP (RBT).

RBT also has a probable right to relief.  Just as with the Berry GP Bylaws, the RBT Bylaws require a majority vote of directors for the corporation to take action. The RBT bylaws state:

> "Powers of Directors:  The business and affairs of the corporation shall be managed by its board of directors, . . ."[35]

Again, it is quite clear that only one (1) director cannot act alone and manage the business and/or affairs of RBT.

> "Chairman of the Board:  The Chairman of the Board, if one be elected by the Board, shall preside at all meetings of the Board of Directors and shall have such other powers and duties as may from time to time be prescribed by the Board of Directors, upon written directive given to him pursuant to resolution duly adopted by the Board of Directors."[36]

Again, the RBT bylaws are quite clear.  Not even the RBT Chairman of the Board of Directors may act without power being given him/her by the RBT Board of Directors.

> "At all meetings of the Board of Directors a majority of the directors shall constitute a quorum for the transaction of business, and the act of a majority of the directors present at the meeting at which there is a quorum shall be the act of the Board of Directors."[37]

Again, the RBT bylaws are definite.  There must be an "act of a majority of the directors present at the meeting at which there is a quorum . . ." – else there is no authority for any one (1) director to unilaterally act.

17

Simply put: an action taken by only one (1) director of Berry GP, absent resolution or vote of a majority of the Berry GP directors, is an action taken without authority. Moreover, an action taken by only one (1) director of RBT, absent resolution or vote of majority of the RBT directors, is an action taken without authority. Any such action is void, void ab initio, voidable, and of no legal effect whatsoever. Lawrence Berry's unilateral signing of transfer documents (purportedly transferring a multi-million dollar asset (Axis) for no consideration from Berry GP to RBT, and then purportedly transferring same from RBT to Lone Star Ports Holdings LLC) is void, void ab initio, voidable, and of no legal effect whatsoever. Berry GP continues to own and control Axis Midstream Holdings LLC. Berry GP (RBT) have a probable right to relief.

(2) Probable, Imminent, Irreparable Injury:

Lawrence's on-going actions – unless enjoined – also make likely a probable, imminent, and irreparable injury to Berry GP (RBT). "An injury is irreparable if the injured party cannot be adequately compensated in damages or if the damages cannot be measured by any certain pecuniary standard."[38] A "loss of management rights over a company are unique, irreplaceable, and cannot be measured by a certain pecuniary standard."[39] Moreover, a loss of interest in a legal entity is irreparable injury given such loss of interest forfeits management rights.[40] In the instant matter, Lawrence is

---

[35] Exhibit 24: ALB 001061-001062; and RBT Bylaws.
[36] Exhibit 24: ALB 001061-001062; and RBT Bylaws
[37] Exhibit 24: ALB 001061-001062; and RBT Bylaws
[38] *Butnaru,* 84 S.W.3d at 204.
[39] *Cheniere Energy Inc. v. Parallax Enterprises LLC*, 585 S.W.3d 70, 83 (Tex.Civ.App. – Houston [14th District] 2019, petition dismissed).
[40] Sonwalker v. St. Luke's Sugarland Partnership LLP, 394 S.W.3d 186, 201 (Tex.Civ.App. – Houston [1st District] 2012, no petition) (termination of interest in limited liability partnership would irreparably injure because of loss of management rights like selecting a governing board and blocking major actions).

trying to take Berry GP's "Percentage of ownership" to zero – although all reports filed with the Texas Secretary of State state that Berry GP's "Percentage of ownership" of Axis is "100.000%." Texas case law unequivocally informs us that the type of injury threatened by Lawrence is irreparable, and thus properly enjoined.

For the purposes of obtaining an injunction, an injury is "imminent" if one has expressed "demonstrable intent to do that for which injunctive relief is sought."[41] Harm is imminent if the "defendant will engage in the activity sought to be enjoined."[42] Lawrence has already taken action by his filing of a "Certificate of Amendment" on behalf of Axis Midstream Holdings LLC, and Lawrence has already taken action by misrepresenting his authority to negotiate business for the greater project requiring Axis' USACE permit. The threat is more than just imminent, it is a reality that has already occurring – and will happen repeatedly if not enjoined. Without a TRO and TI, it is exceedingly likely that Lawrence will continue to push to take ownership and control of Axis (and its USACE permit) away from Berry GP (in favor of Lone Star Ports Enterprises LLC).

(3) No Adequate Remedy at Law:

Berry GP (RBT) has no adequate remedy at law, so a TRO and TI must issue. An irreparable injury is one that, by definition, has no adequate remedy at law.[43] As explained above, the harm Berry GP (RBT) will suffer – unless Lawrence is enjoined – is denial of Berry GP's (RBT's) ownership and control of Axis Midstream Holdings LLC. Texas

---

[41] *Harbor Perfusion, Inc. v. Floyd,* 45 S.W.3d 713, 717-18 (Tex. App.-Corpus Christi 2001, no petition).
[42] *Schmidt v. Richardson,* 420 S.W.3d 442, 447 (Tex. App.- Dallas 2014, no writ).
[43] *Kennedy v. Gulf Coast Cancer & Diag. Center at Southeast, Inc.,* 326 S.W.3d 352, 360 (Tex. Civ.App.-Houston [1st Dist.] 2010, no petition) ("An injury is irreparable if there is no adequate remedy at law; if for example, a prevailing applicant could not be compensated adequately in damages or if damages cannot be measured by any certain pecuniary standard.") (further citations omitted).

judicial authority cited above informs that this is a loss that cannot be adequately compensated. Thus, Berry GP (RBT) do not have an adequate remedy at law.

Further, to justify denial of an application for injunction, a remedy at law must be "complete, practical, and efficient to the prompt administration of justice as is equitable relief."[44] Here, the equitable relief that Berry GP (RBT) seek is for the purpose of avoiding harm that could not be responded to fully in money damages. Money damages would be an incomplete remedy at best, especially given the harm likely to result if Berry GP (RBT) and Lawrence are fighting about ownership/control in the absence of guidance from this Court (by its issuance of injunctive relief).

(4) Berry GP (RBT) is willing to Post Bond:

For the reasons set forth above, Berry GP (RBT) is entitled to a TRO and TI. Berry GP request that upon notice and hearing, the Court enjoin Lawrence as prayed for herein. Pursuant to Rules 680 and 681 of the Texas Rules of Civil Procedure and Texas Civil Practice and Remedies Code §§65.011(1) and (3), Berry GP (RBT) request that the Court issue a Temporary Restraining Order ("TRO") and a Temporary Injunction ("TI") enjoining all Defendants, and all those acting in concert with them, from: (1) filing any document with the Texas Secretary of State changing, modifying, or altering any information about Axis Midstream Holdings LLC, absent a majority vote of its Manager/Member (Berry GP or RBT);[45] (2) calling for or holding any Members' meetings purportedly on behalf of Axis Midstream Holdings LLC; (3) taking any action (through any person or company, including Lone Star Ports Enterprises LLC) purportedly as Member(s)

---

[44] *Tex. Black Iron, Inc., Arawak Energy International Ltd.,* 572 S.W.3d 579, 584 (Tex.Civ.App.-Houston [14th Dist.] 2017, no petition).

[45] By way of example, but without limitation, the document recently filed by Lawrence's collaboration with Lone Star Ports Enterprises LLC purported to change Axis' business address, Axis' principal place of business address, identity of Axis' officers and Managers, identity of Axis' registered agent, identity of Axis' General Counsel, Secretary, and CFO, and purported to change ownership and control of Axis Midstream Holdings LLC. All such conduct is altering of the *status quo,* and thus properly enjoined.

20

and/or Manager(s) of Axis Midstream Holdings LLC; and (4) representing or suggesting to others any right of ownership or control of Axis Midstream Holdings LLC, except for Berry GP's (RBT's) 100% ownership and sole control – all such injunctive relief pending further Order from this Court or a final adjudication of the merits. Berry GP further request that upon final trial on the merits, the Court award a permanent injunction against Lawrence Berry, and all those acting in concert with Lawrence Berry, for the same activity. Berry GP (RBT) will post the bond.

## IX.
## ATTORNEY'S FEES

Berry GP (RBT) are entitled to recover attorneys' fees incurred in this matter pursuant to Texas Business Organizations Code, Section 101.053; and pursuant to Section 37.009 of the Texas Civil Practice & Remedies Code.

## X.
## PRAYER

Berry GP (RBT) prays for all relief requested herein, and for such other and further relief, both at law and in equity, to which Berry GP (RBT) may be justly entitled.

Respectfully submitted,

**LAW OFFICE OF DOUGLAS ALLISON**

By: */s/ Douglas Allison*
    Douglas Allison
    State Bar No. 01083500
    doug@dallisonlaw.com
    403 N. Tancahua Street
    Corpus Christi, Texas 78401
    Telephone: (361) 888-6002

    ATTORNEY FOR BERRY GP

## CERTIFICATE OF SERVICE

I hereby certify that on the 21st day of January 2025, a true and correct copy of the above was served upon the attorneys of record in the above entitled and numbered cause, via e-service.

*/s/ Douglas Allison*
Douglas Allison

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Susan Gonzales on behalf of Douglas Allison
Bar No. 1083500
susan@dallisonlaw.com
Envelope ID: 96430906
Filing Code Description: Motion
Filing Description: Application For Temporary Restraining Order And Temporary Injunction (The "Application")
Status as of 1/23/2025 11:54 AM CST

Associated Case Party: Lawrence Berry

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Barrett H.Reasoner | | breasoner@gibbsbruns.com | 1/21/2025 12:43:51 PM | SENT |
| Michael R.Absmeier | | mabsmeier@gibbsbruns.com | 1/21/2025 12:43:51 PM | SENT |
| Rosa Brennan | | rbrennan@gibbsbruns.com | 1/21/2025 12:43:51 PM | SENT |
| Roxanne Graham | | rgraham@gibbsbruns.com | 1/21/2025 12:43:51 PM | SENT |
| Christina Pena | | cpena@gibbsbruns.com | 1/21/2025 12:43:51 PM | SENT |
| Katrina Chamblee-Boyd | | katrinaboyd@butchboydlawfirm.com | 1/21/2025 12:43:51 PM | SENT |
| Sydney Ballesteros | | sballesteros@gibbsbruns.com | 1/21/2025 12:43:51 PM | SENT |
| Bruce Baldree | | bbaldree@gibbsbruns.com | 1/21/2025 12:43:51 PM | SENT |
| Butch Boyd | | butchboyd@butchboydlawfirm.com | 1/21/2025 12:43:51 PM | SENT |
| Cameron Roth | | CRoth@gibbsbruns.com | 1/21/2025 12:43:51 PM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Shanna Gohlke | | gohlkes@bayltd.com | 1/21/2025 12:43:51 PM | SENT |

Associated Case Party: Marty Berry

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Douglas  Allison | | doug@dallisonlaw.com | 1/21/2025 12:43:51 PM | SENT |
| Kim Brunkenhoefer | | kim@dallisonlaw.com | 1/21/2025 12:43:51 PM | SENT |
| Susan  Gonzales | | susan@dallisonlaw.com | 1/21/2025 12:43:51 PM | SENT |

Associated Case Party: Michael Hummell

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Susan Gonzales on behalf of Douglas Allison
Bar No. 1083500
susan@dallisonlaw.com
Envelope ID: 96430906
Filing Code Description: Motion
Filing Description: Application For Temporary Restraining Order And Temporary Injunction (The "Application")
Status as of 1/23/2025 11:54 AM CST

Associated Case Party: Michael Hummell

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Van Huseman | | vhuseman@husemanlawfirm.com | 1/21/2025 12:43:51 PM | SENT |
| John Swallow | | jswallow@husemanlawfirm.com | 1/21/2025 12:43:51 PM | SENT |

# APPENDIX 38

REPORTER'S RECORD
TRIAL COURT CAUSE NO. 2024DCV-0045-C

LAWRENCE BERRY,                  )      IN THE DISTRICT COURT
Individually and                 )
derivatively on behalf           )
of BERRY GP, INC.                )
                                 )
  Plaintiff,                     )
                                 )
BERRY GP, INC.,                  )
                                 )      94TH JUDICIAL DISTRICT
  Nominal Plaintiff,             )
                                 )
v.                               )
                                 )
MARTY BERRY, ROBERT              )
RICKETT, ROBERT POWERS,          )
MICHAEL HUMMELL, BERRY           )
GP, INC., BERRY                  )
OPERATING COMPANY, LLC           )
and BERRY CONTRACTING            )
LOP                              )
                                 )
  Defendant                      )      NUECES COUNTY, TEXAS

_____

COUNTER-PLAINTIFF'S MOTION FOR
TEMPORARY RESTRAINING ORDER
AND TEMPORARY INJUNCTION
_____

On January 16, 2025, the following proceedings came on to be heard in the above-entitled and numbered cause before the HONORABLE BOBBY GALVAN, Judge Presiding, held via Zoom, in Corpus Christi, Nueces County, Texas.

Proceedings reported by Machine Shorthand.

APPEARANCES: (All counsel appearing via Zoom)

MR. BARRETT REASONER
SBOT NO. 16641980
Gibbs & Bruns, LLP
1100 Louisiana, Suite 5300
Houston, Texas 77002
(713) 650-8805

AND

MR. BUTCH BOYD
SBOT NO. 00783694
Butch Boyd Law Firm
2905 Sackett Street
Houston, Texas 77098
(713) 589-8477

AND

MS. GABBIE S. CANALES
SBOT NO. 24012376
Law Office of Gabbie Canales
5262 South Staples, Suite 100
Corpus Christi, Texas 78411
(361) 887-4700

ATTORNEYS FOR PLAINTIFF, LAWRENCE BERRY

MR. DOUGLAS A. ALLISON
Law Office of Douglas Allison
SBOT NO. 01083500
403 North Tancahua Street
Corpus Christi, Texas 78401
(361) 888-6002

ATTORNEY FOR DEFENDANTS, BERRY GP, BERRY OPERATING,
BERRY CONTRACTING AND MARTY BERRY

AND

MR. JACOB P. HUBERT
SBOT NO. 24116541
Huseman Law Firm
615 North Upper Broadway Street, Suite 2000
Corpus Christi, Texas 78401
(361) 883-3563

ATTORNEY FOR DEFENDANTS, MIKE HUMMELL
AND ROBERT RICKETT

P R O C E E D I N G S

(January 24, 2025)

THE COURT: Let's see, this is Cause No. 2024DCV-45C, we'll just call it the Berry Entities, et al. All right. So you can stand there. I guess let's get appearances from everybody.

MR. ALLISON: Your Honor, Doug Allison, appearing -- I'm the lawyer appearing for Marty Berry, and also for Berry GP and Bay Limited, and Berry Contracting, and the actual motion before the Court is brought by Berry GP, so I'm actually actively appearing on their behalf. Thank you.

THE COURT: Okay.

MR. HUBERT: Yes, Jacob Hubert appearing for Mike Hummell today.

THE COURT: Okay.

MR. REASONER: Good afternoon, Your Honor, Barrett Reasoner on behalf of Lawrence Berry.

THE COURT: All right.

MS. CANALES: And Gabbie Canales on behalf of Lawrence Berry, Your Honor.

MR. ALLISON: And, Your Honor, it's our application. Would you like for me to proceed?

THE COURT: Sure.

MR. ALLISON: And I don't know how much

reading Your Honor's had.

THE COURT: I read last night your application, and then at about 11 or 11:30 or so came in the response, so I read that, too. And that's about -- and then -- and then somebody from your office came and brought this suitable for framing big notebook.

MR. ALLISON: Yes, that notebook has the exhibits, I believe, and the motion, probably.

THE COURT: Yeah, that's where we are.

MR. ALLISON: Okay. And I'll go ahead. I know the Court has some background, but let me kind of get you caught up on some things.

Obviously, this lawsuit was filed originally by Lawrence Berry in Harris County. There was an agreement to transfer ultimately, and under the name of Berry, very general -- an agreement. There was a TRO up in Houston, and then an amended TRO, and then an agreement to transfer down here to Nueces. It got transferred to Nueces. Somewhere in that time frame, about a year ago, we filed counterclaims so we became counter plaintiffs, and Lawrence Berry and actually his trust also became counter defendants.

The Court will recall, we had, I think, three days of hearings on temporary injunction, relief requested by Lawrence Berry. We did discovery. And

really what happened is our counterclaims, Your Honor, because it does become a little bit relevant so it's probably worth refreshing you. We started, and we did, we removed Lawrence, we think, from all or nearly all positions of authority as either a director or as a manager, depending on whether it's a, you know, a corporation or an LLC, whatever the right title might be. But we've removed him because, I mean, what we started finding -- and again, when you look through the pleadings and you look through everything, I mean, obviously, there's probably 25, 30 different entities that are all Berry-related companies, Berry. Most of them, not all of them, but most of them are under the umbrella of Berry GP, and so, we started doing discovery on those. And what we started finding is -- and that's really the direct subject of the first amended pleading, I think, and that is that we found that he was signing documents for, I'm going to call it ICI, Inter Channel Investments, and really for Orca, signing documents without authority, and, you know, from Berry GP or from the company he was signing documents for. And then we started doing broader discovery and inquiring about a company called Axis Midstream Holdings. And really, the exact same company that was a year ago, we started seeing he's signing things without permission. We just

recently discovered he's doing that again with regards to Axis Midstream Holdings and Redfish Bay Terminal, so it's really the same complaint that we have and that is that he's gone rogue.

And the Court may recall that a big part of our fight is he wanted to be able -- he wanted us to be enjoined. Your Honor did not grant this relief. But he wanted us to be enjoined -- my client's Marty and he wanted them -- Dennis was originally still living. But he wanted them to be enjoined from being able to even act as directors because he said, "I get to do it all on my own because I'm the sole disinterested director." Well, he apparently took that belief very much to heart and has just really signed some interesting documents where he -- there's about 10 of them where he's the grantor, the transferor, and the transferee and he's the transferor and the transferee.

And so what happened is then about the time we were figuring that out in discovery here and had a meeting here in Nueces County to try to figure out who are the proper owners of Axis Midstream, a fella named Ted Powers and his company named Allied filed a lawsuit end of last year, so a couple of months ago now or a month ago, filed a lawsuit up in Harris County saying, they're in charge of Axis and it's all theirs, and you

know, that Court has jurisdiction and you don't. Okay?

I have -- I've been down that road. I imagine the Court has been down that road more than once on the whole dominant jurisdiction argument. We -- we amended our pleading to specifically include Axis in this case in Your Honor's court. We amended that pleading saying that the document signed by Lawrence are null and void and have no legal effect. That issue is squarely before Your Honor and within your court, Your Honor's jurisdiction.

In support of that, we did what we think, and I actually feel very strongly about this, and I'm not going to get on too big of a high horse, but they spent 11 pages bashing me and saying, I'm doing an end run and I'm trying to do circumvent, and I'm a bad person and I look ugly, I mean, just, you know, you get my drift. But what we did is what we think is clearly the right procedure under multiple Texas Supreme Court cases.

Normally, what you do in a dominant jurisdiction fight is you go to the second filed court, which would be up in Harris County, and you file a plea in abatement and that -- and the purpose of it there -- and the case law is very clear -- is you're trying to avoid --

THE COURT: Conflicting orders.

MR. ALLISON: -- conflicting orders, and you're trying to -- and, you know, there's a real -- to me, I've got to be real honest, I've had this fight a bunch of times, there's an integrity about it. It's about if the courts say: Two courts can have proper venue, two courts can have proper jurisdiction. And there's a real integrity about going to the second court and saying we think you should abate. We did that here.

The Court up there disagreed and entered an order last week denying it on Friday. Okay? We have our right of mandamus. We're going to get there. We're trying to do it exactly the way the Texas Supreme Court over the years has said to do it, and that is, first, you go up to the second filed location, second filed court, file it and ask them to abate. The Court up there has a different opinion than what I have, obviously, or maybe what some have and that's why there's a process here.

And then you can go back to the first filed Court, and quite frankly, I haven't asked to do this, and it's not in my motion today, but you actually have the power then to enter an order enjoining them from proceeding in that court and any injunction against further -- against the suit. You don't have a right to

enjoin the court, but you do the parties who are before you. Okay? We haven't asked for that today.

We have -- we're trying -- and I'm sure you've seen this. One court does this, and another court does that and that's the way -- that's the only way the issue becomes ripe. So we filed this injunction because here we are, now Berry GP -- and I'm getting specifically to the motion, but you're going to hear a lot about how terrible it is that I'm circumventing the Court up there, and I want to be real clear, I have a high integrity I think about how I've done this and we've gone very, very high road.

But so I filed this motion here on behalf of Berry GP. Again, the Court will recall, that's sort of the mother ship. Okay. Ownership is up above that with the LDMA, but Berry GP is where all, almost all, not all, but most of the subsidiaries are controlled by Berry GP, including Axis, I believe.

And so I filed this motion by Berry GP because, guess what, they're not even -- they didn't even sue Berry GP up there. They want to say they're in control and that they're the owners and they haven't even sued the other company up there, probably because it's a party in your lawsuit, they haven't even sued them up there. So I can't even go up there and say,

Berry GP owns it. Okay?

So we are here trying to protect the Berry GP asset called Axis Midstream Holdings. And I will tell Your Honor, it is a very serious matter for us and it's in the pleading. And when you have Lawrence going out or Mr. Powers going out, and you have Marty going out, and now Bonnie is standing in the shoes, obviously, Dennis, and people, Mike Hummell representing that Axis is owned by Berry and trying to put together a, you know, a huge project out at Harbor Island. And then everybody goes, well, you -- I can't buy it, I'm not going to give you money. I mean, you can't even decide who owns the darn thing, okay? So the harm is just incredible. And so we looked, and when we finally figured out and got enough information about what they were claiming and tried to figure out where the -- where it really -- where does -- where's the last piece of well what status quo needs to be maintained, the last piece with regard to who owns it. It turns out it's been since 2017 until, I guess, October 31 of 2024, so for about seven years. The peaceable status quo has all of the filings have been that Axis and Midstream Holdings is owned by Berry GP.

And may I share screen, Your Honor?

THE COURT: Yeah. Hold on. Okay.

MR. ALLISON: Thank you. Here we go, maybe. It's not coming up, is it?

THE COURT: No, sir.

MR. ALLISON: You know what, I tell you, I know you have the notebook in front of you. Rather than me get caught in a technical way, I'll go through it, if I may, that way?

THE COURT: Go ahead. I've got it. Go ahead.

MR. ALLISON: Okay. There's not any doubt. If you look at Exhibit No. 2, Lawrence originally formed Axis Midstream. Nobody, I think, disagrees with that.

THE COURT: I think you're right.

MR. ALLISON: Okay. If you look at Exhibit 3, I'm going to jump -- I'm skipping one here just to make it a little quicker.

THE COURT: Mr. Reasoner, you jump in if you disagree.

MR. ALLISON: Okay. There you go. Axis Midstream --

MR. REASONER: On that point, I don't, Your Honor. I will not. I believe in the fact that I have not said he's ugly. Mr. Allison's actually a handsome man, but I will not -- I will not interrupt him every time I disagree or we'd be --

THE COURT: Or we'd be here a long time. But you agree with that point?

MR. REASONER: That originally it was formed, yes, but in that document by Lawrence, yes, sir.

THE COURT: All right. All right.

MS. CANALES: Judge, prior to proceeding, may I be excused? I think Mr. Boyd is on here and Mr. Reasoner. I'm in that capital murder and before the Judge sends somebody after me.

THE COURT: Okay. Where are you on that?

MS. CANALES: Well, I think the State's about to rest.

THE COURT: Okay.

MS. CANALES: But thank you, Judge.

THE COURT: Okay. All right.

MR. ALLISON: Exhibit No. 3, Your Honor, shows us that Axis was transferred to what they call Gansevoort Investments LLC, September of 2017. I'll plug in and say, I don't think anybody disagrees with that one. Everybody's on board there.

THE COURT: Okay.

MR. ALLISON: I think then the next one we have is on Exhibit 5 shows that Lawrence transferred 100 percent interest in Axis Midstream Holdings LLC to Berry GP Inc. effective November 30th, 2017. Again, nobody, I

don't think, disagrees with that, and I'll pause.

THE COURT: Okay. We're on Exhibit 4.

MR. ALLISON: And so the -- 4 is the -- the trust was involved. I get a little confused by looking at it because it's the same day whether the trust was before or after Lawrence individually, but everybody agrees that then Lawrence transferred it to, again Gansevoort November -- I'm sorry, from Gansevoort to Berry GP on November 30th, 2017. And again, so everybody agrees Berry GP became owner and sole control of Axis Midstream Holdings November 30, 2017.

THE COURT: Okay. And that's 5?

MR. ALLISON: That's 5. That's 5.

And this one on Exhibit No. 6, Your Honor, was put in there to, like you might expect, they went down and Lawrence and Marty, and the Court may just recall, I think it may have been mentioned in testimony, the original -- not the original, but one of the CEOs for a long time for Bay was -- and Berry Companies was Ed Martin, he signed it also, that's Exhibit No. 6. So you can see we're doing what you do when you own a company.

THE COURT: Okay.

MR. ALLISON: Exhibit No. 7, after it got transferred to -- from Gansevoort in November of 2017,

it got transferred or the company did what you do you when you own a company and that is you go file with the Texas Secretary of State the documents saying we own the company, and so, here you see on Exhibit No. 7, that Axis Midstream Holdings is identifying that its principal place of business is 1414 Valero Way, Corpus Christi, Texas. Sometimes you'll see the address written 1414 Corn Products Road, Your Honor, and that is because they changed the name I guess when you -- when you have a big enough building out there. I don't know why it wasn't Berry Way, but they get to name it Valero Way, but it's the same location.

THE COURT: I think once you cross 37.

MR. ALLISON: Okay. I don't think exactly.

THE COURT: It's Corn Products, it's still Corn Products the other way, I think. I believe that's right.

MR. ALLISON: Okay. But the point being that here in late 2017, December 6, 2017, they're doing the paperwork with the Texas Secretary of State. Nobody's fighting about it, nobody's disagreeing about it, peaceful, status quo. 2017, it is owned by Berry GP.

If you go then to look at No. 8, I put in this in there, this one is not filed with the Court, it

has sensitive financial information in it, Your Honor. The parties have agreed to handle documents like that in camera so I have confidence in that and gave it to you in the notebook. It shows -- and if you look at it, I mean, some of the entries are hundreds of thousands, some of them, you know, tens of thousands. It is a large investment and this is the scroll of money paid either by Bay Limited, which is one of the defendants in this case, but it's not Berry GP, but it's one of these companies controlled by Berry GP, and so, Bay Limited and Berry money you can see to the tunes of tens of millions of dollars as being invested.

THE COURT: I don't really see that. I mean, I see a lot of transactions, but I don't see the amounts.

MR. ALLISON: Oh, the amounts should be in the far right column. I wonder if it got cut off when it printed.

THE COURT: The last column is JRSEQ and then the top one is 004.

MR. ALLISON: Oh, okay. You don't have the amounts in far right column?

THE COURT: That's as far as it goes. It says -- on the top it says Bay, L, and then it gets cut off.

MR. ALLISON: Okay.

THE COURT: And then the last thing is a spreadsheet column is titled JRSEQ and then right under that is 0004 and then 0022. That's -- that's where I end up.

MR. ALLISON: I'll make sure that it gets replaced with one that has the full print out.

THE COURT: Okay.

MR. ALLISON: You know, with spreadsheets, I know how that sometimes gets cut off. I did not see the hard copy. I apologize.

THE COURT: That's okay.

MR. ALLISON: But I know that everybody's had this document previously and I know that I don't think there's any doubt that there was substantial investment, tens of millions of dollars by Berry GP and the Berry GP Companies. I'll pause there if somebody wants to really argue that.

The -- that was Exhibit No. --

MR. REASONER: And again, Your Honor, I'm not going to -- you can keep going, Mr. Allison. I'm going to wait my turn.

THE COURT: Okay. All right.

MR. ALLISON: Okay.

THE COURT: Mr. Reasoner wants to give his

whole see spiel at one time. I get it.

MR. ALLISON: Exhibit No. -- and I know in a way it's kind of laborious, Your Honor, but I think the point is important. I mean, it's such a significant thing to us that in 2018 -- of course -- of course here it says 1414 Corn Products Road for Axis Midstream Holdings --

THE COURT: Which one are we on now, 9?

MR. ALLISON: Pardon?

THE COURT: Are we moving to 9?

MR. ALLISON: I'm on Exhibit No. 9.

THE COURT: All right.

MR. ALLISON: The 2018 Tax Franchise Tax Public Information Report and it lists the three brothers. I know you're used to seeing that with the, you know, the Berry GP type entities, and this one --

THE COURT: Let's see here.

MR. ALLISON: Diane Decou it's signed by as a Berry or a Berry entity employee.

THE COURT: Axis Midstream Holdings LLC, 1414 Corn Products Road.

MR. ALLISON: Yeah.

THE COURT: The three brothers are on there and listed.

MR. ALLISON: Yeah. This is the one, Your

Honor, that under Section C -- that under Section C, it says "name of owned parent corporation" and it lists "Berry GP Inc."

THE COURT: Oh, yeah, I see that.

MR. ALLISON: And it says the percentage of ownership 100.00. I mean, there just is no doubt and I don't -- and actually, in this point in time in 2018, I don't think there was any doubt in anybody's mind that Axis was owned completely 100 percent by Berry GP.

If you go past Exhibit No. 9 then and go to Exhibit No. 10, this one is for the year 2020. This is the year that they claim that Lawrence transferred ownership, okay? And even though they make that claim, this one that is a February document, February 2020, actually before the date I think they claim it transferred. But it confirms that Axis Midstream Holdings LLC, again, the 1414 Valero Way. It identifies --

THE COURT: I guess it's by Mike Hummell the registered agent.

MR. ALLISON: Yeah, and it's signed by Mike Hummell, and I know the Court's aware he's a defendant and employee of Bay or Berry, or Berry Entity Companies. So, I mean, it's clearly, Berry GP still exercising control and being in control and owning it. That's

Exhibit No. 10.

If you go to Exhibit No. 11 then, this is --

THE COURT: Well, basically, this says, Axis Midstream. It does show the 1414 Valero Way. It changes the registered agent to Mike Hummell. I don't see any -- I don't see -- maybe I'm missing something. I don't see where it says anything about being owned by Bay but.

MR. ALLISON: Yeah, I don't think it says that it's -- I'm referring to the fact that it's got Mike Hummell's name on it.

THE COURT: It's got Mike Hummell's name on it. It is in the same -- it is the same address. Okay.

MR. ALLISON: And all the people on it are the Berry people. It's not anybody -- no new owners indicated, certainly, but I agree, this one doesn't specifically say --

THE COURT: Okay, I just want to make sure I wasn't missing something.

MR. ALLISON: Then when you go to Exhibit No. 11, Your Honor, and I'll refer this as a long form. This is a form that they do from Berry GP to identify all of its subsidiaries that they have to file, it's a taxes -- Texas Franchise Tax Report. If you look at

it -- and the way I did it is search it. But if you look at -- not the first page or the second page, but the third page, item number 17, Your Honor.

THE COURT: Berry GP. It's titled year -- well, 2022 Year Reporting Texas Franchise Tax Extension affiliate list. "Reporting entity taxpayers listed as Berry GP and subsidiaries." Okay.

MR. ALLISON: So it is listing or identifying on the third page, line number 17, one of the subsidiaries that it is identifying is Axis Midstream Holdings LLC. So here we are late 2021, and I say that because one of the dates says October 31, 2021, but it's for the tax year I think 2022, the way I understand it. But on -- it clearly indicates -- and this is a point in time where, again, for the first time, we didn't hear back in 2022 that they think they own it. We didn't hear -- and just to give the Court real context. I guess in about September -- and I may be off a month -- September of 2024, Axis had a big win with the United States Army Corp of Engineer and it got granted permission to do dredging and the full development of the Harbor Island project which is a, you know --

THE COURT: I'm familiar with that.

MR. ALLISON: It is a huge multimillion,

some would say billion dollar project when it all gets built. So to have that huge win happen in about September of 2024 -- let this be less than -- I'll be undramatic and just say, I'm sure that had an impact in somebody deciding that maybe they'd like to own a piece of it, okay?

But back in 2021 and 2022, here we are with the documents filed with the Texas Secretary of State. Page 3, line 17 shows that Axis Midstream Holdings LLC is still being handled with the State of Texas as being, quite frankly, a wholly-owned subsidiary or a subsidiary of Berry GP.

If you scroll through that, Your Honor, and this is the legal name of the affiliate. When I search it, it doesn't do much for me to tell me what page I'm on. You know what, it might.

THE COURT: Where do you want me to look?

MR. ALLISON: That's what I'm trying to figure out where I'm -- it looks like it's page 12. Yeah, it's page 12, legal name of affiliates has access Midstream Holdings LLC. All this is quoted in the motion. If you go to section B which shows up for me as page 19.

THE COURT: Yeah, I see it.

MR. ALLISON: It says Axis Midstream

Holdings LLC and has percentage of ownership 100 percent. So it's identifying that the parent company Berry GP has the subsidiary Axis Midstream Holdings LLC and owns it 100 percent. And then if you keep going down I think at the very end of the document, yeah, it's the last page, it has a Texas footnote, whatever a Texas footnote is that says, "Axis Midstream," and it gives FEIN number, "is owned 100 percent by Berry GP Inc., since they are disregarded for federal purposes, their activity has been included in this return." And I'm sure that the Court's aware or knowledgeable with regard to how disregarded entities are handled for tax purposes, that basically were, Berry GP's obviously been carrying the water and reporting and doing all this with the Texas Secretary of State and federal government, too, for that matter.

But Exhibit No. 11 clearly identifies Axis in this 2021 and 2022 time frame as being wholly owned at 100 percent owned by Berry GP, and that's Exhibit No. 11.

THE COURT: Okay.

MR. ALLISON: If you look at Exhibit No. 12, it's for 2021, again identifies Axis Midstream. I'm just going to shorten it and say that. It has the mailing address we're used to seeing which of course is

the same mailing address for Berry GP, lists the three brothers like we always do. Look down at Section C on this one in 2020. Yeah, it says report year 2021 at the top. And it says, "name of owned parent corporation Berry GP, Inc. Percentage of ownership, 100 percent."

THE COURT: Yeah.

MR. ALLISON: And I think that -- and also, Your Honor, it is, I guess, a little interesting, it names all these several people who are clearly Berry Entity employees, but I mean, that kind of -- Mike Hummell still is the agent. Mike Hummell is listed as general counsel for Axis, significant in that regard.

Exhibit No. 13, Your Honor, is again what I call the long form. We went through the long form a moment ago and I'll just summarize it again. This document shows Axis -- that Berry GP is listing all of its subsidiaries. It lists Axis again several times in this document. It also, at the end of the document again says, "Axis Midstream," this is the last page of it, "is owned 100 percent by Berry GP Inc. Since they are disregarded for federal purposes, their activity has been included in the this return."

Again, this is a document, Your Honor, this Exhibit No. 13 document, Your Honor, this is now in the time frame of October 31 of 2022, and it is the tax

franchise tax report -- excuse me, the Texas Franchise Tax Report for the report year 2023.

So here we are, I mean, since 2017, 2018, 2019, 2020, 2021, 2022, 2023, everything is fine, peaceable, status quo; things are being done the way that they've been done for years, and Axis, by all accounts, and by, and in the minds of, you know, Marty Berry, and you know, I think I can say safely, Dennis Berry, and with certainly with regards, I guess most importantly, to Berry GP, because that is the actual person or entity that owns it, that they are, you know, doing all the tax work and have -- if you look -- when we get you the full spreadsheet, Your Honor, if you look, over all of these years spending millions of dollars to develop this project.  But that's a summary of Exhibit No. 13.

If you look at Exhibit No. 14, I think it's interesting that we clearly get to include a really Lawrence Berry's right hand Tonja Fulghum, that clearly by email exchanges in November of 2022, it's an exchange of emails, and I'll let Your Honor read it, but essentially, this is, I think, Tonja, who the Court may recall testified at the temporary injunction hearing on behalf of Lawrence.

THE COURT:  Yes, sir.

MR. ALLISON: And she continues to be employed by Lawrence. But in this 2022 time frame, she was really asking for Mike Hummell because, of course, remember, he's listed all over as being the general counsel of not just Bay Ltd like we see here, but we also know that he's general counsel of Berry GP, but he's also general counsel for the forms we've been looking at, specifically named as general counsel for Axis Holdings or Midstream Holdings LLC. And here she has -- Tonja has an issue with the Railroad Commission, you'll see reference to RRC and getting some forms straight and needing the officers to match paperwork and so she turns to the general counsel of Axis and says, "Please get this corrected so that we're all up to date and current," I think is what she's doing there. The point being -- even Lawrence's right hand lady and my joke is, you know -- she thinks it before Lawrence says it. She's good. But here she is very clear in her mind in 2022, that Berry GP is the owner and that Mike Hummell is general counsel and is the one who would get these paperwork straight. That's in 2022. That is Exhibit 14.

If you look at Exhibit 15, Your Honor, then this is for -- oh, it's a Certificate of Amendment. Exhibit No. 15 in this is -- I think it's signed by

probably Hummell, yeah. So in December of 2022, just more confirmation, affirmation about who everybody thinks is the officers, and you know, again, the three brothers being most prominent there, but the other people being Berry GP or related company employees. So it's very clear by the end of 2022, still everybody, here we are waiting for the huge, you know, Army Corp of Engineer permit hopefully to be granted, and no -- no wrinkle. Nobody's jumping in and saying, oh, I own it, by the way. That's Exhibit No. 15, Your Honor.

Then Exhibit No. 16 is for tax year 2022. It's the Texas Franchise Tax Public Information Report again, once again, listing it's for Axis Midstream Holdings, of course, the same address as we've seen for many years that being the status quo. And as you scroll down, it lists Marty Berry, Robert Powers, Jim Klein, Mike Hummell, all the names we're used to seeing as being Berry GP people. On this one --

THE COURT: Oh, I see, it says, Berry GP 100 percent.

MR. ALLISON: Yeah, I was going to say, I think this one does have the Berry GP 100 percent on it too.

THE COURT: Yes, sir.

MR. ALLISON: So in 2022 everything is

status quo. Exhibit No. 16 -- oh, excuse me, that is 16.

And here's 17. This is for 2023. Axis Midstream again. Again, same thing, it is same address, same three brothers, same language on this one with Berry GP Inc. owns 100 percent. Nobody was disputing it. Same, has Mike Hummell, you know, he's general counsel but listed here as agent for service. Same in 2023. That is Exhibit No. 17.

Then you go to Exhibit No. 18. I put that in there just to show that even through 2024, we still had Berry GP companies, but first we had an Axis Midstream Holdings bank account is what you're looking at. And then if you scroll through it, what you can see is the people doing the reconciliation are the Berry GP entities, okay? And it says, or does it say that? Yeah. Axis Midstream Holdings, check reconciliation. I mean, all of this is paperwork is Berry GP paperwork or Bay Limited, actually, I think paperwork. Anyway, that's Exhibit No. 18.

Then when you go to Exhibit No. 19, I put this in there because, Your Honor, like I said, we were figuring out. We actually I think issued discovery in your lawsuit, this lawsuit here in Nueces in about May, April or May of 2024, and then we got back -- it took us

a while, several months -- we worked and got answers cooperatively. We did not end up going on a motion to compel but it still took some months and we got paperwork on Axis Midstream that was specifically asked about in your lawsuit back in May of 2024. And we're trying to figure out, hey, we think we own it, we think we control it, we think there's not any doubt. All of our paperwork is good with the Texas Secretary of State. You can see from this document that we ran the report in November 4th of 2024 and made sure that we looked at everything and looked at the history and it's a good history of it. This is Exhibit 19. And all of it, because I've just gone through it with Your Honor, the details of this paperwork that are summarized here on Exhibit No. 19, all of it clearly shows Berry GP, Berry GP, Berry GP is the 100 percent owner.

If you go then to Exhibit No. 20. Excuse me, I'm going to jump to 25 just to keep this.

THE COURT: 25?

MR. ALLISON: Jump to 25. And I did that, the reason it got later, we had all of them and somehow I didn't have the one for 2024 so we made sure we got it that's why it's numbered a little bit later. But Exhibit No. 25 is for the -- it again is the same form of taxes, Franchise Tax Public Information Report. It's

for the report year 2024. This one is looks like signed by James Klein. The Court might recall, he testified in the hearings in your court in March. He testified he's the -- I don't think the title is CFO, but he's basically the guy in charge of all of the accounting for the company.

And on 11 -- November 15th, 2024, he signed this document again confirming the location where Axis Midstream is located. He still puts the three brothers as being in charge of it. It still lists Mike Hummell as the agent for service, and this one, again, says that the name of the parent company is Berry GP Inc., 100 percent.

I don't mind telling Your Honor, I feel a high degree of confidence in the amount of money we had invested in this so that my client is invested and would not be doing it if he thought that it was owned by somebody else or that there was any wrinkle in it whatsoever, having enjoined, quite frankly by this point in time, seven years of peace and certainty that they were the owners.

If you then -- then what happened, Your Honor, is -- and they make a deal out of it. I guess they do have the emails that show back in 2020, they emailed a whole bunch of people documents signed by

Lawrence Berry and those document are at Exhibit Nos. 2023 -- sorry, excuse me, Exhibits 20 -- Exhibit 23 and Exhibit 24.

And what happened -- and I'm sure that it had to do with whatever deal somebody was trying to make at the time with whomever. But what clearly happened is that at least Lawrence Berry -- Dennis has passed so I've not had an opportunity to ask him. But Lawrence Berry certainly signed documents that purport to transfer ownership from Berry GP to Redfish Bay Terminal which is 100 percent owned by Berry GP. If that were a valid document, which it's not, we would not be alarmed. It would still be 100 percent owned by Berry GP, just it would be a subsidiary owning it.

And then if you look at Exhibit No. 24 Lawrence -- and again, this is where it gets even stickier for them -- Lawrence then signed a document purportedly on behalf of Redfish Bay -- on behalf of Redfish Bay Terminals, and also, purportedly on behalf of Lone Star Holdings I think it is. I don't have it in front of me. But the -- and then both of those exhibit numbers, Exhibit No. 23 and 24, Your Honor, should have copies of the, respectively, the Berry GP bylaws, and respectively, the Redfish Bay Terminal bylaws. And what you can see by looking at them is it is very clear --

and I'll let Barrett argue his part of it, but I don't really see that they're thinking that either one of those companies can act absent majority of director approval. I think that everybody's very clear on that, that's my belief. And it is clear there were no such approvals. There's no vote. Here we have an asset worth tens of millions of dollars that's been invested in it, and apparently, with no vote and with no attention whatsoever, from our perspective. You know, Lawrence thinks he unilaterally transferred them. That's just not how -- that's not how corporations work. And I actually, a very, very, I'll say famous -- I'm trying to see if I can take this off of screen anyway. There.

A famous lawyer that I recall very clearly telling me, you know, with these small family companies, or family companies with these closely held corporations, it is just too often true, they create problems for themselves by doing things just on their own and by not going through more formalities and not dotting "I"s and dotting the "T"s, and that is exactly what we have here. I mean, we have -- we've had seven years where we thought we owned it and they want to act like, oh, you knew back in 2020 and I'm letting you know that we filed documents and signed them for the years

2020, 2021, 2022, 2023, 2024, always, always knowing we owned it, okay, that Berry GP owned it. And now they're coming up with these documents that they go, oh, we emailed them to you. Well, an email is not a resolution from a corporation. An email is not a majority vote. An email is not a transfer and so that is why we filed in our pleading, in your court, a request that there be a declaration. And, you know, maybe, you know -- so far all they've said, Your Honor, their defense has not been, oh, yeah, yeah, we did, we really, really did vote on it, I remember the vote. They've not said that. What they've said is, well, we sent an email and attached it. I mean, surely you read it. That's just not Texas law and that's not -- again, sometimes these closely held corporations get in situations of their own making and that is clearly what Lawrence Berry did here. There's just, there is no vote. There was no vote, there is no majority approval. So we feel like, not only do we -- and I think the threshold is for a TRO. We're supposed to show a probable right of relief. We don't think it's just probable. We think it may be, as a matter of law, that that is an invalid transfer, but we certainly think we've shown evidence of a probable right of relief. And until we get to an adjudication of that, it's very clear in our mind that the status quo

for years and years is it's ours, it's Berry GP's property, and we don't need them interfering with our business and interfering by going around and polluting a marketplace in a way that gets us a multimillion asset turned upside down in a hurry.

That being said, Your Honor, I think that that's really a good summary of where we are. The harm, I think we've put appropriate pleadings together on the irreparable harm. And specifically, the Court may recall, and the cases are cited in the briefing, that when you get into matters of governance, there's really a presumption, or it is, I think irreparable harm as a matter of law. In other words, when you start getting into the governance issues, if you're cut out and you should be able to be in control of your asset, then that is irreparable because of the harm that can happen during that period of time. There's good case law on that.

There's also, Your Honor, this property that is the Axis property and Redfish Bay Terminal property where the permit is approved for is the same land we've been fighting about in your lawsuit for more than a year, okay? And we did overlays, I'm not going to get too far in that. But the real point being that this dispute also involves and this ownership issue also

involves real property and there's a good line of cases on TROs that says that anytime you're dealing with real property, that it is irreparable harm, okay, because real property is regarded as unique. And so we understand we're going to have to fight about ownership. We understand that there's a dispute out there. They contest it, but what we need is -- they ran out, and I -- I'll say, I meant to put it up, it's Exhibit 20 -- Exhibit 20, I believe.

Exhibit 20, what they did, Your Honor, is now they've gone out and filed for the first time in November of 2024. They went out -- first they went and got a TRO that said don't disturb the status quo. And then they went out and filed, with Lawrence's name on it, but it's signed by Ted Powers, that the lawsuit up in Harris County they've already conceded that he's the friendly defendant, that they agree with each. They don't disagree on the facts. They went out and filed a new document with the Texas Secretary of State saying they're in charge. It is -- we have, again, I think we've gone high road. We've had this discussion with my clients and I'll just say it this way. We have gone high road. We've not gone over there, and well, I'm going to file, and you file, and I file, and you file, and who filed last. And we're trying to go high road

here. But the long last peaceable status quo that is properly preserved by a TRO is the seven years when we thought we owned it and we maintain that paperwork with the Texas Supreme Court. I'm sorry, with the Texas Secretary of State. So we do, we think it is vital to our ability to have any future in this project so that it doesn't get sucked up into litigation and miss its window for development. It is critical. We believe that TRO be granted and then give them an opportunity to, you know, come in and fully fight it in the only lawsuit where the owner is. We're not in the lawsuit. Berry GP has not been sued up there in Harris County. They didn't even sue the people that own it and they want to try go claim it up there.

Your case -- and I'm sure the Court is very well aware, you said it exactly right, dominant jurisdiction is about not letting two courts' jurisdiction collide. I'm sure you're familiar with the general rule that the first filed case has a dominant jurisdiction. We feel very confident that when this gets fully fleshed out, that your court is the only court of dominant jurisdiction and that we're in the right place because this is the only case where Berry GP who owns the asset has any pleadings on file.

So thank you, Your Honor.

THE COURT: Okay. Mr. Reasoner.

MR. REASONER: Yes, Your Honor. May I proceed?

THE COURT: You may.

MR. REASONER: Barrett Reasoner on behalf of Lawrence Berry, and I, let me say, you know, Mr. -- facetiously, I think -- Mr. Allison talking about our response is indicating he's a bad person. He's a friend. I don't believe that. I do believe, however, they have -- what they've done here is wrong and it's gamesmanship trying to circumvent a ruling that they didn't like in a case involving a party who is not here before this Court and over whom this Court respectfully does not have jurisdiction.

It was remarkable that in their filing, in their TRO and motion for temporary injunction, there was simply no mention of the case filed by Ted Powers and an entity he owns called Allied Ports and they're represented by Alistair Dawson of Beck Redden, Mr. Powers and Allied Ports are. But as we indicated in our filing, that's pending before Judge Adrogué in the Business Court. And Mr. Allison, all of these arguments on dominant jurisdiction, and he has a former Houston federal judge whose his co-counsel there, they briefed it thoroughly, like this Court is a smart judge who

heard extensive argument, asked for some supplemental briefing. And at the end of the day on January 17th, she denied their motion to abate, motion to transfer, and motion to remand.

And in part, one of the things that did not come up here is that in Mr. Powers' agreements, Mr. Powers has an investment agreement which he says documents his 20 percent ownership, and apparently, now, Marty Berry is claiming that he didn't sign that, it's a forgery.

THE COURT: Hold on. Hold on, Mr. Reasoner, hold on just a second.

MR. REASONER: Sorry.

(Recess.)

THE COURT: Is everybody ready? I'm sorry to interrupt you, Mr. Reasoner.

MR. REASONER: Just to -- is Doug -- Doug is there. Wait, I lost him.

THE COURT: There he is.

MR. REASONER: All right. Just to reset, Your Honor, again, this gentleman Ted Powers and his position is that the brothers brought me in to help develop this potentially lucrative project, this terminal project, and I had a -- he says, I have a compensation agreement and an investment agreement, and

the investment agreement included a 20 percent ownership after certain, I believe it was after certain costs were recouped. So that's his contention. And critically important here, Your Honor, is he had, his investment agreement, at least on its face that I believe -- I believe they'll be testimony to support that all three brothers signed that. And I think now, I don't know whether Marty Berry is saying I don't remember or it's forged, we'll see when he testifies next week. But, in any event, in that, along with his compensation agreement -- he has some hourly compensation along the way for work done on the project, had exclusive jurisdiction in Harris County, exclusive jurisdiction. And that's why -- that's why, I think in part, the Court denied, you know, for there to be dominant jurisdiction, you have to have a situation where jurisdiction is proper in the other venue and that case being Nueces County here.

And while the Court didn't elaborate, the Court heard extensive argument on the exclusive jurisdiction in Mr. Powers' documents, and again, ultimately denied all of Mr. Allison's motions on the venue and jurisdiction piece, which he has obviously free to mandamus or appeal, and I think alluded to the fact that he might do that.

But that is why the case wound up there and why this, in effect, an end run. Because if you look at the relief that's being asked for here, Your Honor, it includes trying to prohibit Mr. Lawrence Berry whose been subpoenaed for next week in that case from representing or suggesting to others any right of ownership or control of Axis Midstream except for Berry GP's 100 percent ownership and sole control.

All right. So they're trying to --

THE COURT: You're saying freedom of speech violation?

MR. REASONER: That's -- that's one thing that comes to mind.

THE COURT: Well, that's what you said in your -- in your response. That's --

MR. REASONER: Yes.

THE COURT: -- one of the things you said.

MR. REASONER: Yes, sir, absolutely, Your Honor.

THE COURT: I read it. I didn't have much time to read it, but I did read through it and I think that's one of your positions.

MR. REASONER: Absolutely right, Your Honor.

The other thing that I also wanted to

emphasize is, arguably, that would preclude him from testifying truthfully at the hearing next week, so that's why, you know, if he can't say anything contrary to Mr. Allison's view on ownership, that would inhibit his ability to testify as he sees it truthfully. And obviously, Mr. Allison and whoever else will be there to fully and vigorously cross-examine him in the Business Court case. But that's why I say that when you -- when you file something like this and don't even disclose that this other case exists, but try to preclude someone from taking a position that is squarely going to be raised and addressed in the other case, that's why I said it is an attempt to abandon that proceeding improperly so.

And I think the sequence of events, Your Honor, is critical here. You talked about the timeline a bit with Mr. Allison.

We filed our case on behalf of Lawrence in November of 2023. And in January, they filed their counterclaim, and again, that was focused on -- on Orca, on companies owned by Lawrence. You may vaguely recall testimony about that in the hearing, about Orca companies. But on no discussion, no claim in any way, shape or form about ownership interest of Axis or the Lone Star Port's project. When they did that, Your

Honor, when they added that claim was as a last ditch effort in the Business Courts on December 3rd of 2024, they amended. So in their second amended petition, which was filed December 3rd, 2024, just right before the December 6th hearing, they added some claims about Axis to this case, to our case in Nueces County, and so trying to say, look, Judge, there are claims about that here in Nueces County.

THE COURT: Well, there would have to be a claim for -- I mean, right? I mean, I think they would have had to have done that for them to even make a pitch that I could do this, right?

MR. REASONER: Right, but they were making the pitch before they had any such claim. They were just trying to say, well, even though we hadn't pled, it really isn't related. But again, Mr. Powers, who brought those claims, has an exclusive jurisdiction provision in his agreements. And that's why, you know, Mr. Allison you heard him say very loosely, "they," "they got a TRO." Well, that was Mr. Powers that got a TRO because an Axis meeting had been noticed and he -- and talked about management, ownership, et cetera, and that that was noticed. And he said, "Wait a minute, I have ownership I need to protect here." He said, "They also did the Secretary of State filing." Again, that's

Mr. Powers who filed that. So what they're trying to do is, in effect, ask this Court to enjoin actions by a party over who is not in this proceeding, he is in the Harris County --

(Zoom cut out.)

COURT REPORTER: Did we lose him?

THE COURT: I lost Mr. Reasoner.

COURT REPORTER: I have the last thing he said.

(Mr. Reasoner's Zoom returns.)

THE COURT: Mr. Reasoner, we lost you for a second. What's the last thing he said?

(Court reporter reads back last comments.)

THE COURT: Did you hear that? The last thing we heard from you is: He is not in this proceeding, meaning Powers, I guess. He is in the Harris County case and then -- and then, you froze and then it went black, so.

MR. REASONER: I apologize, Your Honor.

THE COURT: Oh, sure.

MR. REASONER: What I was saying is so, in effect, they're asking this Court to enjoin actions by a person who is by an individual over whom this Court does not have jurisdiction. And remember that Marty Berry and Bonnie Berry are in the Harris County proceeding.

Nobody contends that directly or indirectly, Marty, Bonnie and Lawrence all have ownership in this project. What's at issue in that case is that Mr. Powers says that he did and he has documents to that effect and is asking the Court there to take action as to -- as to that Axis ownership. That's what central to that case.

And there -- on the ownership piece, Your Honor, the only testimony that we have had so far, honestly, is Mr. Allison's.

THE COURT: Actually, we haven't had any testimony.

MR. REASONER: Right, I'm trying to -- I'm kind of being cute here, Your Honor.

THE COURT: Right.

MR. REASONER: I was going to say, we've had Mr. Allison's testimony which, while eloquent, is not, just like mine is not, that's not -- that's not testimony. That's going to be heard next week.

THE COURT: Yeah, I agree with you. Like I like to say, all we've had so far is lawyers talking.

MR. REASONER: Yes.

THE COURT: Eloquently speaking, both of you, by the way.

MR. REASONER: Well --

THE COURT: Great lawyers, both of you, but

nonetheless, no evidence yet.

MR. REASONER: Yes. And, Your Honor, absolutely true. And so that -- that is what going to be discussed, presumably next week, is the ownership issue, the significance of the documents. And I'm not here to litigate before you, Judge, the significance of the -- the April 21, 2020 documents. But I will say, you know, my understanding of the law and is, that it is not nearly as clear-cut on the piece of the validity of certain transfers. I mean, the in -- and I'm not going to take you through all my exhibits, Your Honor, but if you look at --

THE COURT: Hold on, hold on. Hold on, hold on, hold on.

MR. REASONER: Okay.

THE COURT: Let me get there because I really like to follow along and it really helps me as you're going through things. Let's see here.

MR. REASONER: Yes, Your Honor, and I apologize, I would like to have had the exhibits to you and get you a hard copy.

THE COURT: No, it's okay. I can pull them up here. So which exhibits do you want to go through?

MR. REASONER: Well, I was just going to look at two exhibits quickly, Your Honor, on Exhibit P.

THE COURT: Hold on, let me get there. It's the second page. Let me pull it up. Do you see that?

MR. REASONER: Yes, that's perfect, Your Honor, thank you. I definitely -- I don't think I'll ever mention in a CLE that I had to ask the judge to put up my exhibits.

THE COURT: Well, I get a lot of practice with this thing.

MR. REASONER: That's not very good forum, so I apologize.

But, Judge, if you go to the first attachment there, under Transfer of Interests and Change of Manager Agreement which is the first page after this email.

THE COURT: This right here?

MR. REASONER: Yes, yes. And this is -- this is a transfer between Berry GP and Redfish Bay Terminal Inc. And if you go to the next page of that document, that is signed --

THE COURT: See, I looked at this. It says, Dennis Berry. Well, obviously, he's not available to testify. What -- what signature is this?

MR. REASONER: That's Lawrence Berry, Your Honor.

THE COURT: Okay.

MR. REASONER: That's Lawrence Berry. So --

THE COURT: And he -- well --

MR. REASONER: And obviously, I guess, you know, there will be witness testimony as to what Dennis did or didn't do, perhaps handwriting analysis, that sort of thing.

THE COURT: Well, there may be somebody else that was there.

MR. REASONER: Yes, exactly, exactly. And that's something that will presumably come out in the testimony next week.

And, again, the transfer is signed by Lawrence Berry. There -- there will be, I think, testimony, perhaps pro and con, about his authority to do so and the knowledge and approval of that, and that's -- when you go to Exhibit Q, Your Honor.

THE COURT: Okay, hold on. I will tell you this, no matter how we slice this thing, this was not done in the careful proper fashion. I mean, I don't think there's any doubt about that. It -- it -- it leaves things -- when things are not done in the careful proper fashion, we end up here.

MR. REASONER: Well, and Your Honor, I

think, you know, two things. One, in these closely held and family companies, there are, you know --

THE COURT: It happens. No, it happens.

MR. REASONER: Yeah.

THE COURT: It happens. I've seen it over and over and over again and over again. It happens. But these rules -- I mean, I don't have school you on the law. You know that these rules and these protections, you know, I mean, they can be -- they can be won and lost with lack of care.

MR. REASONER: Absolutely, Your Honor. And my only point today is that is not a TRO matter for this Court today.

THE COURT: I'm just making a comment. I just, you know, I -- I've seen this -- I've seen this a hundred times and I know you have too.

MR. REASONER: One hundred percent, Your Honor. And all I was saying, and again, this was on Exhibit Q --

THE COURT: Okay, well, let me pull it up. Let me pull it up so we can all see it. Okay. I think it's up.

MR. REASONER: Yes. And this is where -- this is again where you have Mr. Powers sending to a couple of potential investors and copying Dennis and

Marty Berry. These corporate documents showing the ownership, as he describes it, and showing documents, such as the first attachment is the Operating Agreement of Axis Midstream Holdings that is signed by Lawrence Berry for both entities, for both Lone Star Port Enterprises and Axis Midstream on --

THE COURT: Well, there's 181 pages to this, but let's see here.

MR. REASONER: Yes, sir, it's page --

THE COURT: Oh, here, I just passed it.

MR. REASONER: Yes, sir.

THE COURT: There we go. Right?

MR. REASONER: Yes, sir.

THE COURT: It's signed by Lawrence Berry.

MR. REASONER: For both entities. And obviously, one of the fact issues perhaps at the hearing next week will be, well -- they'll say, well, he was sneaking around signing for both, and you can see the other side saying, wait a minute, if you're sneaking around, why is it being sent to these very -- these very other people here and copied, so that which I presume would be used for an argument that there was authority, an actual authority for him to get approval for him to sign on behalf of the entities. But that's -- again, I'm getting down into the weeds on that point and you

make a good point that privately held companies should do things in a more Exxon-ish way, if you will.

THE COURT: Yeah, I was going to say, you know, I promise, like Exxon, Toyota, these companies, they don't miss on these things but it's because they've got a team of lawyers that are just sitting there watching everything all the time.

MR. REASONER: They sometimes have other issues of their own.

THE COURT: Oh, they have their own troubles. They have their own troubles. This just isn't one of them, generally.

MR. REASONER: But so then getting back, Judge, to the issues before you on the TRO and that's -- that's the -- you know, the question is not whether, well, does this look like it could have been done better, do you have questions about who had authority to do what. That's not the issue for you here. The issue is, is there some probable or imminent harm that they've shown, and the answer to that is no, Your Honor, they have not. They don't demonstrate that in any way, shape or form. They're -- Mr. Berry did not sign any documents filed with the Secretary of State. He has shown no intention to --

THE COURT: When you say Mr. Berry, you

mean?

MR. REASONER: I'm sorry, Lawrence Berry. That's a vague term in this case, isn't it? Lawrence Berry. Lawrence Berry has done nothing of that sort in terms of filing something with the Secretary of State. He has not sought to call a meeting. Although, again, as the shareholder, as an aside, you could probably do so, but he's shown no intent to do that. And in terms of statements, his plan is to honor the subpoena and testify truthfully next week. So there is no -- while counsel passionately argues his position as to why he thinks he'll win next week on -- on whether Mr. Powers has ownership, and all of that, he doesn't show you any imminent harm as to why this Court should get involved and potentially abandon those proceedings.

And again, on the probable right to relief, that's something that they failed to show as well. In a situation where, you know, you look at the full corporate documentation in their other transfers, and there's information that these gentleman were privy to it, that's something that Mr. Marty Berry will be examined about and his claim that things are a forgery and all that. The point is it's a hotly contested fact issue in a hearing next week in a separate proceeding, and it is improper, we would argue, Your Honor, to ask

this Court to, in effect, enter some ruling that would alter the course of that proceeding or allow Mr. Allison to come in and say, wait, Judge, please reconsider your dominant jurisdiction. Look, Judge, Galvan just entered an order yesterday precluding things that you can and can't do. I mean, that is not a proper use of a temporary restraining order and the Court should deny it here. Thank you.

THE COURT: Okay. Well...

MR. ALLISON: May I respond, briefly, or not?

THE COURT: Well, if you want to.

MR. ALLISON: I'll just keep it very --

THE COURT: I guess, basically, what we have here is this: We have, from your side, paperwork being filed all the way through 2024 indicating that -- that -- that Axis was owned 100 percent over here. And then, and then, apparently, there's this deal that was done and it's unclear -- unclear, I guess, really. It needs to be, you know, sorted out in court on this Powers fella is a valid -- did it actually happen? Is it an actual deal? Did it occur? Is it true that the other brother signed off? I mean, if it's true that they did sign off and that the -- and that the -- and that within the agreement they had placed Harris County

as the venue as part of the agreement, then I guess Harris County is the venue for that dispute. I mean, but -- I mean, that's kind of what it looks like to me that's where this whole thing is.

MR. ALLISON: And we do. We're going to have that fight. And the question is, what's -- where do we go to preserve the status quo and we're -- Berry GP is not in the Harris County lawsuit, and Berry GP owns it, and Berry GP has filed the right pleading with Your Honor to demonstrate or to ask for the relief and make sure we own it.

And I'm going to quote, Your Honor, from a case called *In re Coronado Energy* which is at 341 S.W.3d 479 and it is San Antonio Court of Appeals. And I'm going to do this because they complain that, well, we didn't point out that specific thing in our pleading, which of course, we got 30 subsidiaries he's running off into the sunset with. In that case it says, and I'll quote. "It is not required that the precise issue and all of the parties be included in the first filed or the first suit before the second suit is filed provided that the claims in the first suit can be amended to bring in all the necessary and proper parties and claims."

So it is very clear that the first filed -- I'm not quoting anymore. It's very clear, Your Honor,

that we have a right to amend our pleadings. That this is -- the fight that we're talking about having, I'll point out the documents you were looking at with Mr. Reasoner a moment ago, those key proposed purported transfer documents, they don't have Ted Powers' name on it. He's not in that fight. They don't have Allied Ports. That's the plaintiff up there in Harris County. He's not in that fight. It's the names on that document relate to Berry GP, relate to Redfish Bay Terminal, relate to Lawrence. Those are the people that are in this lawsuit and we have properly pleaded it. And I'll point out, even though -- what they really want you to do -- let me say it this way, let me say it affirmatively first. We have properly pleaded it. The Court's jurisdiction's invoked. Nobody's really arguing you don't have jurisdiction. What they're trying to argue is that somehow the second filed lawsuit in Harris County, you shouldn't -- you shouldn't interfere with that, Judge.

THE COURT: Oh, I think that's what they're trying to say.

MR. ALLISON: That's what -- but all of the case law -- and again, we're not even here on a plea to your jurisdiction. All of the case law -- and I really do, I know Your Honor's background. I feel pretty darn

confident that you know the general rule is and there's no exceptions here, none of them pleaded or even suggested. First filed case have dominant jurisdiction. All of the parties to the dispute about that, those specific documents, all the parties about it are here and they're not even up there. This is the right place to be.

And look, by the way, the proposed order, I modified it so it's clear. Nobody's trying to say he can't go testify or can't be --

THE COURT: Well, I certainly wouldn't do that. I mean, I certainly wouldn't allow him not to testify. That wouldn't be fair. And I'm not -- I -- there's no way I was ever going to do that.

MR. ALLISON: I modified the proposed order to basically what we want him not to do which is really going to ruin the project, cost us millions. What we don't want him to do is go to people and say, hey, I got a great deal, I want to sell you a piece of it, and I want you to invest in it when it's not even his deal. We've removed him from everybody board.

MR. REASONER: And, Your Honor -- I'm sorry, go ahead and finish, Doug. I apologize.

MR. ALLISON: And my point is, the bigger point is, we're not even here on it. Nobody's saying

you don't have jurisdiction. Your Honor, we pleaded it, we're here, it's the right case, right place, right time, and quite frankly, all of the cases contemplate I go to the second filed location suit first. If the plea's not granted, I'm supposed to come in front of you. And, quite frankly, I think we have more than demonstrated at this point. I have an idea we're going to really put the judge's mind at ease up there now when she reads this transcript about how, I mean, obviously, the Court's jurisdiction is colliding and the first file has dominant jurisdiction, and I am going to file a motion to reconsider, but that's not for Your Honor to decide. The only thing in front of Your Honor is do you have jurisdiction? Yes, of course you do, you're the first filed. You never lose jurisdiction. And do we have a pleading proper? Yes. Do we have an application? Yes. Have we demonstrated status quo? Yes. Is there -- the case law does say there's irreparable harm when it has to do with real property and when it has to do with ownership and control of entities like this.

So, respectfully, we are in -- in serious need, we believe, of injunctive relief. And I have an idea, when we have our status conference next week with the judge in Harris County, that we'll continue to move

forward in a judicious way with all parties.

MR. REASONER: And, Your Honor, if I may just very briefly. And I normally let the aspersions that are cast at my client pass, but I think what is jeopardizing this project is Marty Berry trying to freeze out an individual who has a legitimate claim to an ownership interest in the project, Mr. Powers, and that's what's being litigated there. The exact cases, the exact arguments of, well, I'm not required to plead it exactly, it's still dominant. He argued those thoroughly in front of Judge Adrogué. And there were other cases -- he says this very clear, there were other cases that were cited in the other direction and that's something he can absolutely raise on appeal. That's not something that this Court should decide.

The testimony, you know, if his folks want to say the signature is false, or in the argument he said, I don't think Marty reads a lot of his emails. And Marty wants to say, I don't read my emails. Whatever he wants to say, that is a fact issue that will be fought out in that case on that issue. And Mr. Powers' case 100 percent deals with the ownership because he's saying, I own 20 percent of this entity, and they are saying on the other side, no, it's owned 100 percent by Berry GP, you've got nothing. So that's

front and center --

THE COURT: But I thought that --

MR. REASONER: -- in that case.

THE COURT: I thought that Berry GP wasn't in that case.

MR. REASONER: They are not. Marty is saying and Marty -- Mr. Allison is not --

THE COURT: Maybe I got it wrong.

MR. REASONER: On behalf of Marty, and Bonnie is making that argument very forcefully and will be next week.

MR. ALLISON: We have no standing to make that argument probably.

MR. REASONER: Well, you have. I mean, you're going to argue about the ownership and you have. Of course you will.

THE COURT: Well, okay. Anything else?

MR. REASONER: Nothing further. Sorry.

THE COURT: That's okay. Okay. Well...

MR. ALLISON: Your Honor, we have submitted a proposed order. We do have a blank for the proposed bond. We also did add language in it that we think makes clear that it is not a limitation on his ability to testify in any court proceedings. That's where we are and request entry of it.

THE COURT: Okay.

MR. REASONER: And we don't believe they've met their burden, Your Honor, and respectfully ask you to deny it.

THE COURT: You're asking me to deny it based upon the fact that they haven't approved a probable right of recovery as well as --

MR. REASONER: Imminent harm.

THE COURT: -- imminent harm?

MR. REASONER: Sorry.

THE COURT: Both?

MR. REASONER: Yes, sir.

THE COURT: Okay. Well, thanks, gentlemen. Have a good weekend.

MR. ALLISON: May we be excused?

THE COURT: Yes, sir. See you later.

(Proceedings adjourned.)

THE STATE OF TEXAS          *

COUNTY OF NUECES            *


          I, Sara E. Rivera, Official Court Reporter, in and for the 94th District Court of Nueces County, State of Texas, do hereby certify that the above and foregoing contains a true and correct transcription of all portions of evidence and other proceedings requested in writing by counsel for the parties to be included in this volume of the Reporter's Record, in the above-styled and numbered cause, all of which occurred in open court or in chambers and were reported by me.

          I further certify that this Reporter's Record of the proceedings truly and correctly reflects the exhibits, if any, admitted by the respective parties.

          WITNESS MY OFFICIAL HAND, this the 25th day of January, 2025.



          /s/ Sara E. Rivera
          SARA E. RIVERA, Texas CSR 4626
          Expiration date:  4/30/2026
          Official Court Reporter
          94th District Court
          901 Leopard Street, Room 901
          Corpus Christi, Texas 78401
          361-888-0658
          Email: sara.rivera@nuecescountytx.gov

# APPENDIX 39

| | | |
|---|---|---|
| LAWRENCE BERRY, individually and as Trustee of the ALLEN LAWRENCE BERRY TRUST, directly and derivatively on behalf of BECON, INC.; LDMA LIMITED PARTNERSHIP; and BERRY GP, INC.; | § § § § § § | IN THE DISTRICT COURT OF |
| *Plaintiff,* | § § § | |
| BERRY GP, INC.; LDMA LIMITED PARTNERSHIP; and BECON, INC.; | § § § | |
| | § | NUECES COUNTY, TEXAS |
| *Nominal Plaintiffs,* | § § | |
| v. | § § | |
| | § | |
| MARTY BERRY, MICHAEL HUMMELL, BERRY GP, INC., BERRY OPERATING COMPANY LLC, and BERRY CONTRACTING LP; | § § § § | **JURY TRIAL DEMANDED** |
| | § § | |
| *Defendants.* | § | 94th JUDICIAL DISTRICT |

## ORDER DENYING
## APPLICATION FOR TEMPORARY RESTRAINING ORDER

BEFORE THE COURT is Berry GP, Inc. ("Berry GP") and Redfish Bay Terminals, Inc.'s ("RBT" and together with Berry GP, "Movants") Application for Temporary Restraining Order ("Application"). The Court has considered Movants' Application, Plaintiff's Response, any associated briefing and evidence, and the arguments of counsel, and finds that Movants' Application should be DENIED.

SIGNED this 27 day of January, 2025.

_____
JUDGE PRESIDING

1

# APPENDIX 40

E-filed in the Office of the Clerk
for the Business Court of Texas
1/28/2025 3:54 PM
Accepted by: Beverly Crumley
Case Number: 24-BC11A-0025

CAUSE NO. 24-BC11A-0025

| | | |
|---|---|---|
| ALBERT THEODORE POWERS; | § | IN THE BUSINESS COURT |
| ALLIED PORTS LLC, | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | 11A – STATE OF TEXAS |
| | § | |
| AXIS MIDSTREAM HOLDINGS LLC; | § | |
| ALLEN LAWRENCE BERRY; | § | |
| MARVIN GLENN BERRY; and | § | |
| BONNIE BERRY, as successor in | § | |
| interest to DENNIS WAYNE BERRY | § | |
| | § | |
| *Defendants.* | § | HONORABLE SOFIA ADROGUE |

**(Emergency)**
**PLEA IN ABATEMENT**
**MOTION TO ABATE**

NOW COMES Bonnie Berry ("B.Berry") and makes and files this Plea in Abatement / Motion to Abate ("Motion") – subject to B.Berry's Motion to Transfer Venue previously filed – and in this lawsuit (the "Harris County Lawsuit") would respectfully show unto this Honorable Court as follows:

**I.**

1. This Harris County Lawsuit involves a dispute about control, management, and ownership of Axis Midstream Holdings LLC.

2. In a lawsuit pending in Nueces County, Texas, Berry GP ("Berry GP") Inc. claims to be owner and in control of Axis Midstream Holdings LLC. Berry GP Inc. is owner and in control of Axis Midstream Holdings LLC.

3. By a filing with the Texas Secretary of State, Lone Star Ports Enterprises LLC ("LSPE") claims to be an owner and in control of Axis Midstream Holdings LLC.

4. Neither Berry GP nor LSPE are parties to this lawsuit.

5. Pursuant to Texas Rule of Civil Procedure 39:

> "[a] person who is subject to service of process shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already party's subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. If he has not been so joined, the court shall order that he be made a party. If he should join as a plaintiff but refuses to do so, he may be made a defendant, or, in a proper case, and involuntary plaintiff."

6. Pursuant to Texas Civil Practice and Remedies Code ("TCPRC") 37.006:

> "37.006. PARTIES. (a) When declaratory relief is sought, all persons who have or claim any interest that would be affected by the declaration must be made parties. A declaration does not prejudice the rights of a person not a party to the proceeding.

7. Berry GP and LSPE are necessary and indispensable parties to this lawsuit, if this Court has jurisdiction to consider matters relating to ownership and control of Axis Midstream Holdings LLC. As noted in TRCP 39, the court "If he has not been so joined, the court shall order that he be made a party. If he should join as a plaintiff but refuses to do so, he may be made a defendant, or, in a proper case, and involuntary plaintiff."

8. In the absence of Berry GP and LSPE, this case is properly abated until such time as all necessary, indispensable persons/entities are made parties to the action.

9. This motion is specifically verified by the Answer already on file on behalf of B.Berry.

WHEREFORE, PREMISES CONSIDERED, B.Berry prays for all relief requested herein, and for such other and further relief to which B.Berry may be justly entitled.

2

Respectfully submitted,

**LAW OFFICES OF DOUGLAS ALLISON**
403 N. Tancahua Street
Corpus Christi, Texas 78401
T:      361-888-6002
F:      361-888-6651
E:      doug@dallisonlaw.com

BY:     */s/ Douglas A. Allison*
        **DOUGLAS A. ALLISON**
        State Bar No. 01083500

**ROBERTS MARKLAND LLP**
2555 N. MacGregor Way
Houston, Texas 77004
E:      vg@robertsmarkland.com

BY:     */s/ Vanessa D. Gilmore*
        **VANESSA D. GILMORE**
        State Bar No. 07960010

ATTORNEYS FOR BONNIE BERRY

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served upon all counsel of record in accord with the Texas Rules of Civil Procedure on January 28, 2025.

 /s/ Douglas A. Allison
DOUGLAS A. ALLISON

3

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Kim Brunkenhoefer on behalf of Douglas Allison
Bar No. 1083500
kim@dallisonlaw.com
Envelope ID: 96704627
Filing Code Description: No Fee Documents
Filing Description: Plea in Abatement
Status as of 1/28/2025 3:59 PM CST

Associated Case Party: AlbertTheodorePowers

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Alistair Dawson | 5596100 | adawson@beckredden.com | 1/28/2025 3:54:52 PM | SENT |
| Mary Raffetto | | mkraffetto@beckredden.com | 1/28/2025 3:54:52 PM | SENT |
| Michael McClellan | 24109525 | jmcclellan@beckredden.com | 1/28/2025 3:54:52 PM | SENT |
| Madeline Gay | | mgay@beckredden.com | 1/28/2025 3:54:52 PM | SENT |

Associated Case Party: Allied Ports LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Roland Garcia | 7645250 | garciar@gtlaw.com | 1/28/2025 3:54:52 PM | SENT |
| Steven Higginbotham | | higginbothams@gtlaw.com | 1/28/2025 3:54:52 PM | SENT |

Associated Case Party: Axis Midstream Holdings

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Michael Hummell | 10271100 | hummellm@bayltd.com | 1/28/2025 3:54:52 PM | SENT |

Associated Case Party: AllenLawrenceBerry

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Barrett H.Reasoner | | breasoner@gibbsbruns.com | 1/28/2025 3:54:52 PM | SENT |
| Michael R.Absmeier | | mabsmeier@gibbsbruns.com | 1/28/2025 3:54:52 PM | SENT |
| Sydney Ballesteros | | sballesteros@gibbsbruns.com | 1/28/2025 3:54:52 PM | SENT |
| Cameron Roth | | CRoth@gibbsbruns.com | 1/28/2025 3:54:52 PM | SENT |
| Bruce Baldree | | bbaldree@gibbsbruns.com | 1/28/2025 3:54:52 PM | SENT |

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Kim Brunkenhoefer on behalf of Douglas Allison
Bar No. 1083500
kim@dallisonlaw.com
Envelope ID: 96704627
Filing Code Description: No Fee Documents
Filing Description: Plea in Abatement
Status as of 1/28/2025 3:59 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Stephanie Sanchez | | sanchezst@gtlaw.com | 1/28/2025 3:54:52 PM | SENT |
| Rosa Brennan | | rbrennan@gibbsbruns.com | 1/28/2025 3:54:52 PM | SENT |
| Roxanne Graham | | rgraham@gibbsbruns.com | 1/28/2025 3:54:52 PM | SENT |
| Christina Pena | | cpena@gibbsbruns.com | 1/28/2025 3:54:52 PM | SENT |
| Becky Young | | Becky.Young@gtlaw.com | 1/28/2025 3:54:52 PM | SENT |
| Business Court 11A | | BCDivision11A@txcourts.gov | 1/28/2025 3:54:52 PM | SENT |
| Liz Poirrier | | epoirrier@beckredden.com | 1/28/2025 3:54:52 PM | SENT |
| Vanessa Gilmore | | vg@robertsmarkland.com | 1/28/2025 3:54:52 PM | SENT |
| Liz Poirrier | | epoirrier@beckredden.com | 1/28/2025 3:54:52 PM | SENT |

Associated Case Party: MarvinGlennBerry

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Douglas Allison | 1083500 | doug@dallisonlaw.com | 1/28/2025 3:54:52 PM | SENT |
| Kim Brunkenhoefer | | kim@dallisonlaw.com | 1/28/2025 3:54:52 PM | SENT |
| Susan Gonzales | | susan@dallisonlaw.com | 1/28/2025 3:54:52 PM | SENT |

# APPENDIX 41

| | | |
|---|---|---|
| LAWRENCE BERRY, individually and derivatively on behalf of BERRY GP, INC. | § § § | IN THE DISTRICT COURT |
| | § | |
| Plaintiff, | § | |
| | § | |
| BERRY GP, INC., | § | |
| | § | |
| Nominal Plaintiff, | § | NUECES COUNTY, TEXAS |
| | § | |
| v. | § | |
| | § | |
| MARTY BERRY, ROBERT RICKETT, ROBERT POWERS, MICHAEL HUMMELL, BERRY GP, INC., BERRY OPERATING COMPANY, LLC and BERRY CONTRACTING LOP | § § § § § | |
| | § | |
| Defendants. | § | 94TH JUDICIAL DISTRICT |

## COUNTER-PLAINTIFF BERRY GP's SUPPLEMENTAL, and THIRD PARTY PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES Berry GP Inc. ("Berry GP"), Defendant and Counter-Plaintiff herein, and makes and files this Counter-Plaintiff Berry GP's Supplemental and Third-Party Petition complaining of Lone Star Ports Enterprises LLC ("Lone Star"), and in support of same would show:

I.

## PARTIES

1. Berry GP Inc. ("Berry GP") is a Texas corporation with its principal office at 1414 Corn Products Road, Corpus Christi, Texas 78409. Berry GP is one of the "Berry Entities" as may be referenced herein.

1

2.     Berry Operating Company LLC ("Berry Operating") is a Texas limited liability company with its principal office at 1414 Corn Products Road, Corpus Christi, Texas 78409. Berry Operating is one of the "Berry Entities" as may be referenced herein.

3.     Berry Contracting LP (d/b/a Bay Ltd. ("Bay Ltd.")) is a Texas limited partnership with its principal office at 1414 Corn Products Road, Corpus Christi, Texas 78409. Bay Ltd. is one of the "Berry Entities" as may be referenced herein.

4.     Marty Berry ("M.Berry") is a natural person who is presently an Officer, Director, and shareholder of Berry GP, Berry Operating, and Bay Ltd. Marty Berry resides in Nueces County, Texas.

5.     A. Lawrence Berry ("L.Berry") is a natural person who resides in Harris County, Texas. A. Lawrence Berry has already appeared in these proceedings and thus notice of these further proceedings and this filing will be serv ed upon legal counsel for ALB Trust: Mr. Barrett Reasoner, Gibbs & Bruns LLP, 1100 Louisiana, Suite 5300, Houston, Texas 77002. Service shall be by electronic means, and in such manner as complies with the Texas Rules of Civil Procedure.

6.     Allen Lawrence Berry, as Trustee of the Allen Lawrence Berry (2007) Trust ("ALB Trust") is a trust wherein Allen Lawrence Berry serves as trustee of the ALB Trust and is – along with others – a beneficiary of the Trust. ALB Trust has already appeared in these proceedings and thus notice of these proceedings and this filing will be served upon legal counsel for ALB Trust: Mr. Barrett Reasoner, Gibbs & Bruns LLP, 1100 Louisiana, Suite 5300, Houston, Texas 77002. Service shall be by electronic means, and in such manner as complies with the Texas Rules of Civil Procedure.

6.     Lone Star Ports Enterprises LLC ("LSPE") is a Delaware limited liability company with its principal office at 16192 Coastal Highway, Lewes, Delaware 19958. Defendant Lone Star Ports

2

Enterprises LLC is being added as a third-party defendant in this matter since Lone Star Ports Enterprises LLC has claimed an ownership interest in Axis Midstream Holdings LLC. Defendant LSPE may be given notice of these proceedings and this third-party petition by service upon Defendant LSPE's registered agent for service. Service shall in registered mail upon this registered agent, return receipt requested, and in such manner as complies with the Texas Rules of Civil Procedure. Service is requested at this time.

6.      Berry GP, Berry Operating, Bay Ltd., Marty Berry, A. Lawrence Berry, ALB Trust, and Lone Star Ports Enterprises LLC may be sometimes referred to as the "Parties," or any one of them referred to as a "Party."

7.      L.Berry is the original Plaintiff in this legal action by having filed Plaintiffs' Original Verified Petition and Application for Temporary Restraining Order and Temporary Injunction ("Plaintiffs' Verified Petition"). The legal action initiated by Plaintiffs' Verified Petition was filed in Harris County, Texas, but promptly transferred to Nueces County, Texas. A Counter-Plaintiffs' Original Petition Asserting Counter-Claims was filed as counter-claim to Plaintiffs' Verified Petition in compliance with Texas Rule of Civil Procedure ("TRCP") 97. L.Berry, adding Lawrence Berry in his capacity as trustee of the Allen Lawrence Berry Trust ("Trust"), then filed Plaintiffs' First Amended Verified Petition and Application for Temporary Injunction. The Counter-Plaintiffs' First Amended Original Petition Asserting Counter-Claims was filed as counter-claim to Plaintiffs' First Amended Verified Petition and Application for Temporary Injunction in compliance with Texas Rule of Civil Procedure ("TRCP") 97. At this time, Counter-Plaintiff Berry GP files this supplemental and third-party petition to add Defendant LSPE given Berry GP is owner of Axis Midstream Holdings LLC – but Defendant LSPE apparently claims otherwise.

## II.

### JURISDICTION AND VENUE

8.      This Court has jurisdiction over all Parties.  Specifically, Berry GP, Berry Operating, and Bay Ltd. are legal entities formed in Texas that maintain their principal offices in Texas.  M.Berry and L.Berry reside in Texas.  All Parties have sufficient contacts with the State of Texas and, therefore, are subject to the jurisdiction of this Court.

9.      Venue is proper in Nueces County, Texas, pursuant to TCPRC Chapter 15, section 15.002(a)(1) as Nueces County is the location where all or a substantial part of the events or omissions giving rise to the claims occurred; and section 15.011 inasmuch as Counter-Plaintiffs seek to recover an interest in and/or quiet title to real property. See Exhibit C (with attachment). Moreover, venue is proper in Nueces County, Texas, pursuant to TCPRC Chapter 15, section 15.063(3).  See Exhibit B.

## III.

### DISCOVERY

10.     Discovery should be conducted in accordance with Level 3, as permitted by TRCP 109.4.

## IV.

### ADDITIONAL, SUPPLEMENTAL FACTS

11.  Axis Midstream Holdings LLC ("Axis") was formed by Allen Lawrence Berry ("Lawrence") on September 12, 2017.  In September 2017, control and ownership of Axis was transferred by Lawrence to the Allen Lawrence Berry (2007) Trust ("ALB Trust").  Thereafter, control and ownership of Axis was transferred by ALB Trust to Gansevoort Investments LLC. On or about November 30, 2017, all control and all ownership of Axis was transferred to Berry GP.  None of these transactions (from Lawrence to Trust to Gansevoort to Berry GP) are in dispute, and all of

4

these transactions ultimately caused Berry GP to be the sole Member of Axis, and the sole Manager of Axis beginning November 30, 2017. Simply stated, Axis Midstream Holdings LLC – as is true of almost all Berry Companies – became one of the several Berry Companies owned by Berry GP, controlled by Berry GP, and invested in by Berry GP (millions of dollars invested, some directly and some by other Berry Companies). A more detailed review confirms Berry GP's ownership and control of Axis Midstream Holdings LLC:

- November 30, 2017: All of Axis' membership interest and control of Axis transferred to Berry GP. (restated, and not in dispute).

- December 1, 2017: Axis' bank account established at IBC Bank (same bank used by Berry GP), by signatures of Marty Berry, Lawrence Berry, and Ed Martin (then-CEO of Berry GP). This bank account continued to exist for all years pertinent to this dispute

- December 6, 2017: Change in Registered Office/Agent filed with Texas Secretary of State, naming Charles A. Vanaman (Berry Entity employee) as new registered agent for Axis; and identifying 1414 Valero Way, Corpus Christi, Texas as new business address for Axis (same as Berry GP's business address).

- February 28, 2018: Berry GP, through Berry Entities, began making payments in support of project for which Axis sought (and has since acquired) United States Army Corps of Engineers ("USACE") permit allowing for project development (supported by millions of dollars in investment from Berry GP and related entities).

- 2018 Texas Franchise Tax Public Information Report evidencing: (1) Axis' principal office is 1414 Corn Product Road (now Valero Way), Corpus Christi, Texas (also Berry GP's principal office address); (2) Axis' principal place of

5

business is 1414 Corn Product Road, Corpus Christi, Texas (also Berry GP's principal place of business); (3) Axis' President is Lawrence, and Vice-Presidents are Marty and Dennis; (4) that "Name of owned (parent) corporation . . ." is "Berry GP Inc." ("Percentage of Ownership – 100.00"); (5) Axis' registered agent is Charles Vanaman (Berry Entity employee); and (6) all signed by Diane Decou (Berry Entity employee).

- February 4, 2020:  Change in Registered Office/Agent filed with Texas Secretary of State, naming Mike Hummell (Berry GP General Counsel) as new registered agent for Axis; and no change in the business address of Axis (1414 Valero Way, Corpus Christi, Texas).

- Year End October 31, 2021 (Report Year 2022)

  o Texas Franchise Tax Report filing for Berry GP and subsidiaries show "Axis Midstream Holdings LLC" as an "affiliate" of Berry GP – as such Berry GP is performing compliance reporting for "Axis Midstream Holdings LLC;"

  o Same Texas Franchise Tax Report document shows Berry GP's "Percentage of Ownership" of "Axis Midstream Holdings LLC" is "100.000."

  o Same Texas Franchise Tax Report document shows Axis Midstream Holdings LLC's business address as 1414 Valero Way, Corpus Christi, Texas (also Berry GP's business address), and list three (3) Managers:

Lawrence, Marty, and Dennis – and, again, identify "Berry GP Inc." as having a "Percentage of Ownership" of "100.000."

- Finally, the footnote on the Texas Franchise Tax Report states (Year 2022): "AXIS MIDSTREAM (FEIN: 82-XXXX615) IS OWNED 100% BY BERRY GP, INC. . . . ."

- 2021 Texas Franchise Tax Public Information Report evidencing: (1) Axis' principal office at 1414 Valero Way, Corpus Christi, Texas (also Berry GP's principal office address); (2) Axis' principal place of business at 1414 Valero Way, Corpus Christi, Texas (also Berry GP's principal place of business); (3) Axis' President is Lawrence, and Vice-Presidents are Marty and Dennis; (4) that "Name of owned (parent) corporation . . ." is "Berry GP Inc." ("Percentage of Ownership – 100.000"); (5) Axis' registered agent is Mike Hummell (Berry GP's and Axis' General Counsel); and (6) all signed by Diane Decou (Berry Entity employee).

- Year End October 31, 2022 (Report Year 2023)

  - Texas Franchise Tax Report filing for Berry GP and subsidiaries shows "Axis Midstream Holdings LLC" as an "affiliate" of Berry GP – as such, Berry GP is performing compliance reporting for "Axis Midstream Holdings LLC;"

  - Same Texas Franchise Tax Report document shows Berry GP's "Percentage of Ownership" of "Axis Midstream Holdings LLC" is "100.000."

  - Same Texas Franchise Tax Report document shows Axis' business address is 1414 Valero Way, Corpus Christi, Texas (same Berry GP's business

7

address), and list three (3) Managers: Lawrence, Marty, and Dennis – and, again, identify "Berry GP Inc." as having a "Percentage of Ownership" of "100.000."

- o Finally, the footnote on the Texas Franchise Tax Report states (Report Year 2023): "AXIS MIDSTREAM (FEIN: 82-XXXX615) IS OWNED 100% BY BERRY GP, INC. . . . ."

- November 29, 2022, Tonya Fulghum emailed Mike Hummell (General Counsel for Axis and Berry GP) to "correct" Texas Secretary of State paperwork for Axis Midstream Holdings LLC (email exchanges making clear that Tonya believes Axis is a Berry GP owned company).

- December 13, 2022: "Certificate of Amendment" naming Lawrence as President; Dennis, Marty, Jim Klein, Mike Hummell, and Robert Powers as Vice-Presidents; Jim Klein as CFO; Mike Hummell as General Counsel; and Crissy Hinojosa as Secretary, of Axis Midstream Holdings LLC.

- 2022 Texas Franchise Tax Public Information Report (signed January 24, 2023) evidencing: (1) Axis' principal office at 1414 Valero Way, Corpus Christi, Texas (also Berry GP's principal office address); (2) Axis' principal place of business at 1414 Valero Way, Corpus Christi, Texas (also Berry GP's principal place of business); (3) Axis' President is Lawrence, and Vice-Presidents are Marty, Dennis, Jim Klein, Robert Powers, and Mike Hummell (the last three (3) are Berry Entity employees); (4) that Mike Hummell is General Counsel, Jim Klein is CFO, and Crissy Hinojosa is Secretary (all Berry Entity employees); (5) that the "Name of owned (parent) corporation . . ." is "Berry GP Inc." ("Percentage of Ownership –

8

100.0"); (5) Axis' registered agent is Mike Hummell  (Berry GP's and Axis' General Counsel); and (6) all signed by Emily Smith (Berry Entity employee).

- 2023 Texas Franchise Tax Public Information Report evidencing (signed November 15, 2023):  (1) Axis' principal office at 1414 Valero Way, Corpus Christi, Texas (also Berry GP's principal office address); (2) Axis' principal place of business at 1414 Valero Way, Corpus Christi, Texas (also Berry GP's principal place of business address); (3) Axis' President is Lawrence, and Vice-Presidents are Marty,  Dennis, Jim Klein, Robert Powers, and Mike Hummell (the last three (3) are Berry Entity employees); (4) that Mike Hummell is General Counsel, and Jim Klein is CFO (both Berry Entity employees); (5) that the "Name of owned (parent) corporation . . ." is "Berry GP Inc." ("Percentage of Ownership – 100.000"); (5) Axis' registered agent is Mike Hummell  (Berry GP's and Axis' General Counsel); and (6) all signed by James Klein (Berry Entity  employee).

- January 2024:  IBC Bank account records show Axis Midstream Holdings LLC's address as 1414 Valero Way, Corpus Christi, Texas (same as Berry GP's address), and reconciliation of

IBC account record accomplished by Berry Entity employees (further confirming Axis is a Berry GP owned company).

- April 3, 2024: Texas Secretary of State document confirming Axis' officers: Lawrence as President; Dennis, Marty, Robert Powers, Mike Hummell, and James Klein as Vice-Presidents; James Klein as CFO; and Mike Hummell as General Counsel.

- November 4, 2024: Texas Secretary of State document confirming Mike Hummell (General Counsel for Berry GP and Axis) as registered agent for Axis.

Berry GP would show the evidentiary record is overwhelming. Since transfer of ownership and control of Axis Midstream Holdings LLC to Berry GP (November 30, 2017), the *status quo* has been that Berry GP is owner of Axis Midstream Holdings LLC and controlled by Berry GP by and though Axis' Managers selected by Berry GP. Axis' bank accounts (2017 – 2024) confirm that ownership and control rests with Berry GP. Axis' legal filings with the Texas Secretary of State in 2017, 2018, 2020, 2021, 2022, 2023, and 2024 repeatedly and consistently confirm that ownership and control of Axis rests with Berry GP (inclusive of express language that Berry GP is 100% owner of Axis Midstream Holdings LLC). Texas Franchise Tax Reports show that Berry GP is paying taxes owed for itself and its affiliated companies, including Axis Midstream Holdings LLC (these reports also with express language that Berry GP is 100% owner of Axis Midstream Holdings LLC). And Berry GP would show that Berry GP's actions speak louder than words, and that Berry GP's (and related Berry Entities') paying millions of dollars in support of Axis' permit (and the Lone Star Ports project, generally) evidence an emphatic understanding that Berry GP

owns Axis Midstream Holdings LLC. Berry GP would show by these allegations and evidence in support that Berry GP is 100% owner of Axis Midstream Holdings LLC.

12. Berry GP would show that Berry GP's seven (7) years of quiet ownership and control of Axis Midstream Holdings LLC has been interrupted by Defendant LSPE. Defendant LSPE now claims that Berry GP no longer owns or controls Axis Midstream Holdings LLC. Defendant LSPE now claims that Axis is owned by Lone Star Ports Enterprises LLC, by reliance upon two (2) documents:

(1) "Transfer of Interest and Change of Manager Agreement" from Berry GP to Redfish Bay Terminals Inc. ("RBT") – **a document whose execution would require both Berry GP Board of Directors' approval by majority vote and RBT Board of Directors' approval by majority vote (which neither Board of Directors approved, and no one contends otherwise);** and

(2) "Transfer of Interests and Change of Manager Agreement" from RBT to Lone Star Ports Holdings LLC (intermediary to Lone Star Ports Enterprises LLC) – **a document whose execution would, at a minimum, require RBT Board of Directors' approval by majority vote (which never occurred, and no one contends otherwise).**

Berry GP's petition already on file makes clear that both the above-reference purported transfers of ownership interest and control are invalid.[1] *It makes no sense whatsoever that Berry GP, or RBT, would invest millions of dollars in Axis only to give it away to Defendant LSPE.* As of November 2024, Berry GP learned of the two (2) documents referenced above. As of December

---

[1] Berry GP's Petition, pursuant to Texas Civil Practice & Remedies Code ("TCPRC") section 37.004, seek declaration that transfers / conveyances / contracts / Manager appointments executed/accepted by Lawrence (e.g., purportedly involving Axis Midstream Holdings LLC, wholly owned/Managed by Berry GP and/or Redfish Bay Terminal Inc.) without majority Board of Directors' approval are void, void ab initio, voidable, invalid, and/or of no legal force or effect.

2024, Berry GP learned of a new "Certificate of Amendment" document apparently filed November 19, 2024, with the Texas Secretary of State – purportedly on behalf of Axis Midstream Holdings LLC – to completely reverse what has been Axis Midstream Holdings LLC's *status quo* of ownership and control for the past seven (7) years. Specifically, the filing by or on behalf of Defendant LSPE of the new "Certificate of Amendment" endeavor to: (1) remove Mike Hummell as registered agent of Axis, and replace him (Mike) with Gretchen Reed (Lawrence's employee); (2) change Axis' long-standing business address from 1414 Valero Way, Corpus Christi, Texas (Axis' and Berry GP's business address) to 5005 Riverway Drive, Houston, Texas (Lawrence's business address); (3) remove Marty, Dennis, Jim Klein, Mike Hummell, and Robert Powers as Vice-Presidents of Axis (casting-aside their service in support of Axis since 2017, for most of them), and remove Mike Hummell as General Counsel of Axis, and remove James Klein as CFO and remove Crissy Hinojosa as Secretary of Axis; and (5) name Lone Star Ports Enterprises LLC "as the Sole Member and Manager" of Axis. Defendant LSPE's claim of ownership and control of Axis Midstream Holdings LLC is a false claim, and this petition now adds Defendant LSPE so that the transfer documents identified above may be declared void – and so that Berry GP's ownership of Axis Midstream Holdings LLC is judicially confirmed.

## VIII.
## DECLARATORY ACTION

13. Counter-Plaintiff Berry GP, pursuant to Texas Civil Practice & Remedies Code ("TCPRC") section 37.004, seeks declaration that transfers / conveyances / contracts / Manager appointments executed/accepted by Counter-Defendant L.Berry (e.g., purportedly involving Orca Assets GP LLC, and/or Axis Midstream Holdings LLC (as wholly owned/Managed by Berry GP and/or Redfish Bay Terminal Inc.), and/or others)) without majority Board of Directors approval are void, void ab initio, voidable, invalid, and/or of no legal force or effect.

12

14. This Counter-Plaintiff Berry GP Supplemental and Third-Party Petition is a supplemental pleading, not an amended pleading, and Berry GP thus seeks all relief requested herein in addition to all relief pray for in its current petition on file.

WHEREFORE, PREMISES CONSIDERED, Counter-Plaintiffs pray for all relief as requested herein and all relief as requested in other pleadings/petition on file, for costs of court in addition thereto, and for such other and further relief – both at law and in equity – to which Counter-Plaintiff Berry GP may show themselves justly entitled as against Counter-Defendants (L.Berry and the ALB Trust) and Defendant LSPE.

Respectfully submitted,

LAW OFFICE OF DOUGLAS ALLISON

By: */s/ Douglas A. Allison*
    Douglas A. Allison
    State Bar No. 01083500
    doug@dallisonlaw.com
    403 N. Tancahua Street
    Corpus Christi, Texas 78401
    Telephone: (361) 888-6002
    Facsimile: (361) 888-6651

    ATTORNEY FOR MARTY BERRY,
    BERRY GP, INC., BERRY
    OPERATING COMPANY, LLC and
    BERRY CONTRACTING LOP

### CERTIFICATE OF SERVICE

I hereby certify that on the 28th day of January 2025, a true and correct copy of the above was served upon the attorneys of record in the above entitled and numbered cause, via e-service.

    */s/ Douglas A. Allison*
    Douglas A. Allison

13

# APPENDIX 42

## TRANSFER OF INTERESTS AND CHANGE OF MANAGER AGREEMENT

**THIS TRANSFER OF INTERESTS AND CHANGE OF MANAGER AGREEMENT** is made and entered into as of this 21st day of April, 2020 (the "**Effective Date**"), by and between Berry GP, Inc. a Texas corporation (the "**Transferor**"), and Redfish Bay Terminal, Inc, a Texas corporation (the "**Transferee**").

### RECITALS:

**WHEREAS**, Transferor owns One Hundred Percent (100%) of all equity and operating interests in Transferee; and

**WHEREAS**, Transferor owns One Hundred Percent (100%) of all equity and operating interests in Axis Midstream Holdings, LLC, a Texas limited liability company ("**Axis**"); and

**WHEREAS**, Transferor is the sole Member and Manager of Axis; and

**WHEREAS**, Transferor wishes to transfer to Transferee all equity and operating interests in Axis; and

**WHEREAS**, Transferee wishes to acquire from Transferor all equity and operating interests in Axis; and

**WHEREAS**, simultaneously with the transfer by Transferor to Transferee of all equity and operating interests in Axis, Transferor wishes to cease being the sole Member and Manager of Axis; and

**WHEREAS**, simultaneously with the transfer by Transferor to Transferee of all equity and operating interests in Axis, Transferee wishes to commence being the sole Member and Manager of Axis;

**NOW THEREFORE**, in consideration of the foregoing and other good and valuable consideration, the receipt and sufficiency of which hereby are acknowledged, the Transferor and the Transferee hereby agree as follows:

1. **Transfer of Operating Interests**. Effective as of the Effective Date, Transferor hereby irrevocably transfer to Transferee all equity and operating interests in Axis, free and clear of all liens, charges, pledges, options, mortgages, deeds of trust, hypothecations, encumbrances, security interests, claims, limitations, restrictions, or other rights or interests of any kind (including any restrictions on the right to vote, sell, or otherwise dispose of such right or interest). After such transfer, Transferor shall have no further direct interest in the equity and operating interests in Axis and Transferee shall own One Hundred Percent (100%) of all equity and operating interests in Axis.

2. **Acceptance of Operating Interests**. Effective as of the Effective Date, Transferee hereby accepts the transfer from Transferor of all equity and operating interests in Axis.

Confidential

After such transfer, Transferee shall own One Hundred Percent (100%) of all equity and operating interests in Axis.

3. **Cessation By Transferor as Member and Manager**. Effective as of the Effective Date and simultaneously with the transfer by Transferor to Transferee of all equity and operating interests in Axis, Transferor shall cease to be the sole Member and Manager of Axis.

4. **Commencement By Transferee as Member and Manager.** Effective as of the Effective Date and simultaneously with the transfer by Transferor to Transferee of all equity and operating interests in Axis, Transferee shall commence being the sole Member and Manager of Axis.

    **IN WITNESS WHEREOF**, the signatories to this Transfer of Interests and Change of Managers Agreement, intending to be bound, have executed this Agreement as of the date first written above.

For and on behalf of
**BERRY GP, INC.**
a Texas corporation


By       
Name: _____


For and on behalf of
**REDFISH BAY TERMINAL, INC.**
a Texas corporation


By       
Name:  Dennis W. Berry

Confidential

ALB_001058

# APPENDIX 43

BYLAWS OF

BERRY CONTRACTING, INC.

I.

TITLE: The title of the corporation is Berry Contracting, Inc.

II.

LOCATION: The location of its principal office shall be 1414 Corn Products Road in the City of Corpus Christi, Nueces County, Texas

III.

CORPORATE SEAL: The corporate seal of the company shall have inscribed thereon: "Berry Contracting, Inc."

IV.

DIRECTORS: The property and business of the company will be managed and controlled by a board of directors consisting of not less than three nor more than seven members. They shall hold office until the next annual meeting of the shareholders or until their successors are elected and have qualified.

V.

POWERS OF DIRECTORS: The board of directors shall have the management of the business of the company and in addition to the powers and authorities by these bylaws expressly conferred upon them, may exercise all such powers and do all such acts and things as may be exercised or done by the corporation, but subject, nevertheless, to the provisions of the statute, of the charter and of these bylaws and to any regulations from time to time made

Unofficial Copy Office of Marilyn Burgess District Clerk

by the shareholders, provided that no regulations so made shall invalidate any prior act of the directors which would have been valid if such regulations had not been made.

Without prejudice to the general powers conferred by the last preceding clause and other powers conferred by these bylaws, it is hereby expressly declared that the board of directors shall have the following powers, that is to say:

To purchase and otherwise acquire for the company and property, rights or privileges which the company is authorized to acquire, at such prices and on such terms and conditions and for such consideration as they think proper. At their discretion, to pay for any property or rights acquired by the company, either wholly or partially, in money or in stocks, bonds, debentures, or other securities of the company.

To appoint, and at their discretion, remove or suspend, such subordinate managers, officers, assistants, clerks, agents, and servants, permanently or temporarily, as they may from time to time think fit, and to determine their duties and fix, and from time to time change their salaries or emoluments, and to require security in such instances and in such amounts as they think proper.

To confer, by resolution, upon any officer of the company the right to choose, remove or suspend such subordinate officers, agents or factors.

To appoint any person or persons to accept and hold in trust for the company any property belonging to the company or in

Unofficial Copy Office of Marilyn Burgess District Clerk

which it is interested or for any other purpose, and to execute and do all such duties and things as may be requisite in relation to any such trust.

To create, make and issue mortgages, bonds, deeds of trust, trust agreements and negotiable or transferable instruments and securities, secured by mortgage or otherwise, and to do every other act and thing necessary to effectuate the same.

To determine who shall be authorized to sell on behalf of the company bills, notes, receipts, acceptances, endorsements, checks, releases, contracts and documents.

From time to time to provide for the management of the affairs of the company in such manner as they think proper and in particular, from time to time to delegate any of the powers of the board of directors to any committee, officer or agent, and to appoint any person to be the agent of the company with such powers, including the powers to subdelegate, and upon such terms as may be thought proper.

## VI.

MEETINGS OF THE DIRECTORS:  The directors elected at the annual meeting of the shareholders shall meet immediately follow-ing each such meeting for the purpose of electing officers and considering any other business that may come before the board.

Other meetings of the directors may be held at such times, at such places and upon such notice as may be determined from time to time by the board.

Unofficial Copy Office of Marilyn Burgess District Clerk

A majority of the whole board of directors shall be necessary to constitute a quorum for the transaction of business at all meetings.

*VI-A added Aug 11, 1981*

## VII.

MEETINGS OF THE SHAREHOLDERS:  Meetings of the shareholders shall be held in the City of Corpus Christi, Nueces County, Texas, unless otherwise specified in the notice of any such meeting or waiver thereof.

All shareholders entitled to vote may vote at all meetings, either in person or by proxy in writing.  All proxies shall be filed with the secretary of the meeting before being voted upon. A majority of the shareholders in amount of stock issued and out-standing, represented by the holders in person or by proxy, shall be requisite at all meetings to constitute a quorum for an election of directors or the transaction of other business.

The annual meeting of the shareholders shall be held on the second Tuesday of each August at 10 o'clock a.m. in each year, beginning with the year 1963, if not a legal holiday, and if a legal holiday, then on the day following, when they shall elect by a plurality vote, by ballot, a board of directors to serve for one year and until their successors are elected and have quali-fied, each shareholder being entitled to vote for each share of stock standing registered in his or her name on the twentieth day preceding the election, exclusive of the date of such election.

Notice of the annual meeting shall be mailed by the secretary to each shareholder entitled to vote at his or her last known post

Unofficial Copy Office of Marilyn Burgess District Clerk

office address, at least ten days prior to the meeting.

Special meetings of the shareholders may be called by the president, and shall be called at the request in writing or by vote of a majority of the board of directors or at the request in writing of the holders of a majority of the stock of the company issued and outstanding. Notice of each special meeting, indicating briefly the object or objects thereof, shall be mailed by the secretary to each shareholder at his or her last known post office address at least five days prior to the meeting.

## VIII.

STANDING COMMITTEES: The board of directors may appoint from their number, standing committees and may invest them with all their own powers, subject to such conditions as they may pre-scribe, and all committees thus appointed shall keep regular min-utes of their transactions and shall cause them to be recorded in books to be kept for that purpose in the office of the company and shall report the same to the board of directors at their regular meeting.

## IX. *amended Aug 11, 1981*

OFFICERS: The officers of the company shall consist of a president, one or more vice presidents, a secretary and treasurer, and one or more assistant secretaries or treasurers, and such subordinate officers as may from time to time be elected or ap-pointed by the board of directors. Any person may hold more than one such office, except that the president and secretary shall not be the same person.

Unofficial Copy Office of Marilyn Burgess District Clerk

OFFICERS - HOW CHOSEN:  At the first meeting after their election and annually thereafter beginning on the second Tuesday of August, 1963, the directors shall elect the officers of the corporation, such officers to hold office for one year and until their successors are elected and have qualified. They shall be subject to removal during their respective terms of office for cause and may be removed at any time by a majority vote of the directors then in office.

## XI.

PRESIDENT:  The president shall be the chief executive officer of the company; he shall preside at all meetings of the directors; he shall have general and active management of the business of the company; and shall see that all orders and resolutions of the board are carried into effect.  He shall execute all contracts and agreements authorized by the board.  He shall have the general supervision and direction of all the other officers of the company and shall see that their duties are properly performed.  He shall be ex-officio member of all standing committees and shall have the general powers and duties of supervision and management usually vested in the office of the president of a corporation.

The president shall submit a report of the operations of the company for the fiscal year to the directors at their first regular meeting in each year, and to the shareholders at their

Unofficial Copy Office of Marilyn Burgess District Clerk

annual meeting, and from time to time shall report to the

directors all matters within his knowledge which the interests

of the company may require to be brought to their notice.

XI-A - *added aug 11, 1981*
XII *amended aug 11, 1981*

VICE PRESIDENT: Any vice president shall be vested with

all the powers and shall perform all the duties of the president

in his absence, and shall perform such other duties as may be pre-

scribed by the board of directors.

XII-A *added aug 11, 1981*
XIII.

SECRETARY: The secretary shall attend all sessions of the

board and act as clerk thereof and record all votes and the

minutes of all proceedings in a book to be kept by him for that

purpose and shall perform like duties for the standing committees

when required. He shall keep in safe custody the seal of the

company and when authorized to do so shall affix the seal of

said corporation to any instrument requiring the same, and the

seal when so affixed shall be attested by the signature of the

secretary.

He shall see that proper notice is given of all meetings

of the shareholders of the company and of the board of directors

and shall perform all such other duties as may be prescribed

from time to time by the board of directors or the president.

XIV.

TREASURER: The treasurer shall keep full and accurate

records of receipts and disbursements in books of accounts be-

longing to the company and shall deposit all money and other

valuable effects in the name and to the credit of the company

Unofficial Copy Office of Marilyn Burgess District Clerk

in the depository or depositories designated from time to time by resolution of the board of directors.

He shall disburse funds of the company as may be ordered by the board, or the president, taking proper vouchers for such disbursements, and shall render to the president and directors at the regular meetings of the board, or whenever they may require it, an account of all his transactions as treasurer and of the financial condition of the company. He shall keep the accounts of stock registered and transferred in such form and manner and under such regulations as the board of directors may prescribe. If required by the board of directors, he shall give the company a bond in form and in a sum with security satisfactory to the board of directors, for the faithful performance of the duties of his office and the restoration to the company, in case of his death, resignation or removal from office, of all books, papers, vouchers, money and other property of whatever kind in his possession belonging to the company. He shall perform such other duties as the board of directors may from time to time prescribe or require.

XV *Amended Aug 11, 1981*

VACANCIES: If the office of any director, or of the president, vice president, any secretary or treasurer or other officer or agent, one or more, becomes vacant by reason of death, resignation, retirement, disqualification, removal from office or otherwise, the directors in office, although less

Unofficial Copy Office of Marilyn Burgess District Clerk

than a quorum, by a majority vote, may choose a successor or successors who shall hold office for the unexpired term in respect of which such vacancy occurred.

XVI. *Amended Aug 11, 1981*

DUTIES DELEGATED: In the case of the absence of any officer of the company, the board of directors may delegate the powers and duties of such officer to any other officer or to any director for the time being.

XVII.

CERTIFICATE OF STOCK: Every shareholder shall have a certificate, signed by the president or vice president, and either the treasurer or the secretary, certifying the number of shares owned by him in such corporation.

XVIII.

TRANSFERS OF STOCK: All transfers of the stock of the company shall be made as required by the Uniform Stock Transfer Act. Certificates shall be surrendered and cancelled at the time of transfer. No transfer of stock shall be made within ten days next preceding the day appointed for paying a dividend.

XIX.

LOSS OF CERTIFICATES: In the case of loss or destruction of a certificate of stock, another may be issued in its place upon proof of such loss or destruction and the giving of a satisfactory bond of indemnity. The provisions of the Uniform Stock Transfer Act as to court order may be required.

XXI.

DIVIDENDS: Dividends upon the capital stock of the

Unofficial Copy Office of Marilyn Burgess District Clerk

company when earned may be declared by the board of directors at any regular or special meeting. Before the payment of any dividends or making any distribution of profits there may be set aside out of the net profits of the company such sum or sums as the directors from time to time in their absolute discretion think proper as a reserve fund to meet contingencies, or for equalizing dividends, or for any such other purpose as the directors may think conducive to the best interest of the company.

## XXII.

CHECKS FOR MONEY: All checks, drafts, or orders for the payment of money shall be signed as directed by resolution of the board of directors from time to time.

## XXIII.

DEPOSITORY: A depository or depositories for the corporation shall be designated from time to time by the board of directors, and requested and directed to honor checks, drafts or other orders for the payment of money drawn in this corporation's name, including those payable to the individual order of any person or persons who name or names appear thereon as signed or signers thereof, when bearing or purporting to bear the signature of any person or persons authorized to sign the same by resolution of the board of directors, and said depository or depositories shall be entitled to honor and to charge this corporation with such checks, drafts, or other orders so drawn

until and unless such authority and designation is revoked by resolution of the board of directors of said corporation and upon due notice to said depository or depositories.

## XXIV.

BOOKS AND RECORDS: The books, accounts and records of the company shall be open to inspection by the shareholders at all reasonable times which are to be fixed by resolution of the board of directors.

## XXV. *Amended Aug. 9, 1966*

NOTICE: Whenever under the provisions of the statute or by these bylaws notice is required to be given to any director, officer or shareholder, it shall not be construed to mean personal notice, but such notice may be given in writing by depositing the same in the post office or letter box in a postpaid, sealed wrapper, addressed to such director, officer or shareholder at his or her address as the same appears in the books of the cor- poration; and the time when the same shall be mailed shall be deemed to be the time of the giving of such notice.

## XXVI. *Amended Aug. 9, 1966*

WAIVER OF NOTICE: Whenever any notice whatever is given or required to be given to any director, officer or shareholder, a waiver thereof in writing, signed by said shareholder, director, or officer, whether before or after the time stated in said waiver, shall be deemed equivalent thereto.

## XXVII.

AMENDMENT OF BYLAWS: These bylaws may be amended at any

Unofficial Copy Office of Marilyn Burgess District Clerk

time and from time to time by a majority of the entire board of directors then in office at any regular or special meeting of the board of directors or by the vote of a majority of the shareholders in amount of the stock then issued and outstanding at any regular or special meeting of the shareholders.

By-Laws approved as correct:

_Marvin L. Berry_

Marvin L. Berry, President

By-Laws attested as duly adopted:

_Mattie L. Boyce_

Mattie L. Boyce, Secretary-Treas.

Unofficial Copy Office of Marilyn Burgess District Clerk

## AMENDMENT TO THE BY-LAWS
## BERRY CONTRACTING, INC.

BE IT RESOLVED that the By-Laws of Berry Contracting, Inc. be amended as follows:

That Article XXV and XXVI be amended by adding the following phrase to said Article XXVI:

"Attendance in person or by proxy at any meeting of shareholders, either annual or special, shall constitute waiver of notice of such shareholders meeting and it will not be necessary for a formal written waiver of notice to be executed by such shareholders."

"Attendance in person at any directors meeting, whether annual, regular, special or called, shall constitute waiver of notice of call of such meeting and shall not be necessary for such director so attending in person to execute a formal written waiver of notice of same."

By-Laws adopted this 9th day of August, 1966, at the annual meeting of shareholders and a copy ordered signed and affixed to the By-Laws of the Corporation.

Certified correct:

ATTEST:

Marvin L. Berry, President and
Chairman of Shareholders Meeting

Mattie L. Boyce, Secretary of
Shareholders Meeting and Secretary-
Treasurer of Corporation

Unofficial Copy Office of Marilyn Burgess District Clerk

OFFICERS – HOW CHOSEN AND REMOVED:  The President, Executive
Vice President, Vice Presidents and the Secretary of the Corporation
shall be elected by the Board of Directors at either its annual
meeting (to be held on the second Tuesday of August of each year
immediately following the annual meeting of the Shareholders) and
shall serve for one year or until their successors have been
elected provided however, that vacancies may be filled or new officers
elected at any special meeting of the Board of Directors called for
such purpose.  All other Corporation employees shall be appointed by
the President.  The salaries and emoluments of all officers shall be
determined by the President subject only to the right of review by
the Board of Directors on the written request of a majority of the
entire Board of Directors, but provided that no such review shall
have retroactive effect on any officer.  Any officer may be removed
by a majority vote of the Board of Directors.

## XI-A
## (New Section)

EXECUTIVE VICE PRESIDENT:  There is hereby created the office
of Executive Vice President.  The Executive Vice President shall
be a person thoroughly familiar with the broad spectrum of activities
and projects of the Corporation and its subsidiary entities and shall
be a person knowledgeable in the business and professional affairs
of the Corporation.  The Executive Vice President shall act for, as
and in the place of the President in the event of absence or dis-
ability of the President.  In addition, the Executive Vice President
shall supervise the Vice Presidents, the Secretary, managers,
departments and activities as directed by the President and is
vested with broad executive management of the Corporation subject
to direction of the Board of Directors and the President.

## XII
## (As Amended)

VICE PRESIDENT:  If both the President and the Executive Vice
President be absent, disabled or unable to serve or fulfill their
duties, any vice president may and shall serve in the place of and
perform all or any of the duties of the President and/or Executive
Vice President; and shall, in addition, perform such regular and
other duties, including supervision of departments, as may be
prescribed by the Board of Directors or delegated or assigned by
the President or Executive Vice President.

## XII-A
## (New Section)

GENERAL COUNSEL:  There is herewith created the office of
General Counsel of Berry Contracting, Inc.  The person appointed
General Counsel may be also designated as Vice President and shall
receive such compensation and be employed on such terms and conditions
as may be properly designated.  The General Counsel shall supervise
the Legal Department of the Corporation, shall be responsible for and
direct the legal affairs of the Corporation including drafting and
preparation of documents and instruments, shall provide legal counsel
to the Corporation, and shall direct and hangle litigation and shall

-2-

VACANCIES: If the office of any director or any officer becomes vacant by reason of death, resignation, retirement, disqualification or removal from office or otherwise, the Directors then in office, although less than a quorum may, by a majority vote, choose a successor or successors who shall hold such office for the unexpired term of such officer or officers and until their successors be nominated and elected.

## XVI
(As Amended)

DUTIES DELEGATED: In the case of the absence of any officer of the Company, the Board of Directors or the President may delegate for temporary purposes the powers and duties of such officer to any other officer or to any other Director.

I, R. W. Black, being Secretary of Berry Contracting, Inc. do certify that the foregoing amendments to the Bylaws of Berry Contracting, Inc. were duly, lawfully and legally adopted at an annual meeting of the Board of Directors held pursuant to the Bylaws on the 11th day of August, 1981.

WITNESS my hand and the seal of the corporation.

R. W. BLACK, Secretary

Unofficial Copy Office of Marilyn Burgess District Clerk

-3-

## AMENDMENT TO THE BY-LAWS
## BERRY CONTRACTING, INC.

BE IT RESOLVED that the By-Laws of Berry Contracting, Inc. be amended as follows:

That Article IV be amended as follows:

The Board of Directors shall consist of not less than two directors.

By-Laws adopted this 9th day of August 1982.

CERTIFIED CORRECT:

Marvin L. Berry, President and
Chairman of Shareholders Meeting

ATTEST:

D. E. Spangler, Secretary-Treasurer

Unofficial Copy Office of Marilyn Burgess District Clerk

# APPENDIX 44

Transcript immediately requested at conclusion of hearing; will

supplement when transcript is received from court reporter.

# APPENDIX 45

## TRANSFER OF INTERESTS AND CHANGE OF MANAGER AGREEMENT

**THIS TRANSFER OF INTERESTS AND CHANGE OF MANAGER AGREEMENT** is made and entered into as of this 21st day of April, 2020 (the "**Effective Date**"), by and between Redfish Bay Terminal, Inc. a Texas corporation (the "**Transferor**"), and Lone Star Ports Holdings, LLC, a Delaware limited liability company (the "**Transferee**").

## RECITALS:

**WHEREAS**, Transferor owns One Hundred Percent (100%) of all equity and operating interests in Transferee; and

**WHEREAS**, Transferor owns One Hundred Percent (100%) of all equity and operating interests in Axis Midstream Holdings, LLC, a Texas limited liability company ("**Axis**"); and

**WHEREAS**, Transferor is the sole Member and Manager of Axis; and

**WHEREAS**, Transferor wishes to transfer to Transferee all equity and operating interests in Axis; and

**WHEREAS**, Transferee wishes to acquire from Transferor all equity and operating interests in Axis; and

**WHEREAS**, simultaneously with the transfer by Transferor to Transferee of all equity and operating interests in Axis, Transferor wishes to cease being the sole Member and Manager of Axis; and

**WHEREAS**, simultaneously with the transfer by Transferor to Transferee of all equity and operating interests in Axis, Transferee wishes to commence being the sole Member and Manager of Axis;

**NOW THEREFORE**, in consideration of the foregoing and other good and valuable consideration, the receipt and sufficiency of which hereby are acknowledged, the Transferor and the Transferee hereby agree as follows:

1. **Transfer of Operating Interests**. Effective as of the Effective Date, Transferor hereby irrevocably transfer to Transferee all equity and operating interests in Axis, free and clear of all liens, charges, pledges, options, mortgages, deeds of trust, hypothecations, encumbrances, security interests, claims, limitations, restrictions, or other rights or interests of any kind (including any restrictions on the right to vote, sell, or otherwise dispose of such right or interest). After such transfer, Transferor shall have no further direct interest in the equity and operating interests in Axis and Transferee shall own One Hundred Percent (100%) of all equity and operating interests in Axis.

2. **Acceptance of Operating Interests**. Effective as of the Effective Date, Transferee hereby accepts the transfer from Transferor of all equity and operating interests in Axis.

Confidential

After such transfer, Transferee shall own One Hundred Percent (100%) of all equity and operating interests in Axis.

3. **Cessation By Transferor as Member and Manager**. Effective as of the Effective Date and simultaneously with the transfer by Transferor to Transferee of all equity and operating interests in Axis, Transferor shall cease to be the sole Member and Manager of Axis.

4. **Commencement By Transferee as Member and Manager.** Effective as of the Effective Date and simultaneously with the transfer by Transferor to Transferee of all equity and operating interests in Axis, Transferee shall commence being the sole Member and Manager of Axis.

**IN WITNESS WHEREOF**, the signatories to this Transfer of Interests and Change of Managers Agreement, intending to be bound, have executed this Agreement as of the date first written above.

For and on behalf of
**REDFISH BAY TERMINAL, INC.**
a Texas corporation


By _____
Name: _____


For and on behalf of
**LONE STAR PORTS HOLDINGS, LLC,**
a Delaware limited liability company


By _____
Name: _____

Confidential

# APPENDIX 46

# BYLAWS
## of
## REDFISH BAY TERMINAL, INC.


## ARTICLE I - OFFICES

1.01 - **Principal Offices.** The principal offices of the corporation shall be at Beasley Road and Ocean Drive, Aransas Pass, Texas 78336.

1.02 - **Other Offices.** The corporation also may have offices at such other places, both within and without the State of Texas, as the Board of Directors may from time to time decide are necessary or proper for the business of the corporation.


## ARTICLE II - SHAREHOLDERS

2.01 - **Place of Meetings.** All meetings of the shareholders, for any purpose shall be held at such time and place, within or without the State of Texas, as shall be stated in the notice of the meeting or in a duly executed waiver of notice thereof.

2.02 - **Annual Meetings.** Annual meetings of the shareholders shall be held at company offices on the second Tuesday of November or as otherwise designated by the Board of Directors. At the meeting, the shareholders shall elect a Board of Directors and transact such other business as properly may be brought before the meeting.

2.03 - **Special Meetings.** Special meetings of the shareholders may be called for any purpose at any time by the President, or at the request in writing of any member of the Board of Directors, or at the request in writing of holders of not less than ten percent (10%) of all the shares entitled to vote at the meeting. A request directed to either the President or the Secretary shall state the purposes of the proposed meeting. Business transacted at any special meeting of the shareholders shall be confined to the purposes stated in the notice of the meeting.

2.04 - **Shareholders Lists.** At least ten (10) days before each meeting of shareholders, a complete list of the shareholders entitled to vote at the meeting, arranged in alphabetical order, with the address of each and the number of voting shares held by each, shall be prepared by the officer or agent having charge of the stock transfer books. For a period of ten (10) days prior to the meeting, the list shall be kept on file at the principal office of the corporation and shall be subject to inspection by any shareholder at any time during usual business hours. The list also shall be produced and kept open at the time and place of the meeting and shall be subject to inspection by any shareholder during the whole time of the meeting.

2.05 - **Notice of Meetings.** Written notice stating the place, day and hour of the meeting, and in the case of a special meeting the

purposes for which the meeting is called, shall be delivered not less than ten (10) nor more than fifty (50) days before the date of the meeting, either personally or by mail, by or at the direction of the President, the Secretary, or the officer or persons calling the meeting, to each shareholder of record entitled to vote at such meeting. If mailed, such notice shall be deemed to be delivered when deposited in the United States Mail, postage prepaid, addressed to the shareholder at his address as it appears on the stock transfer books of the corporation.

2.06 - **Quorum of Shareholders.** The holders of a majority of the shares issued and outstanding and entitled to vote at such meeting, present in person or represented by proxy, shall be requisite and shall constitute a quorum for the transaction of business at all meetings of the shareholders, except as otherwise provided by statute or the Articles of Incorporation or the Bylaws. If a quorum is not present or represented at any meeting of the shareholders, the shareholders entitled to vote thereat, present in person or represented by proxy, shall have the power to adjourn the meeting from time to time without notice other than announcement at the meeting, until a quorum is present or represented. At any continuation of a meeting following such adjournment, at which a quorum is present or represented, any business may be transacted which might have been transacted at the meeting as originally notified.

2.07 - **Action by Shareholders.** When a quorum is present at any meeting, the vote of the holders of a majority of the shares having voting power, present in person or represented by proxy, shall decide any question brought before such meeting unless the question is one upon which a different vote is required by statute or the Articles of Incorporation or these Bylaws. The shareholders present at a duly organized meeting may continue to transact business until adjournment, notwithstanding the withdrawal of enough shares to leave less than a quorum.

2.08 - **Voting and Proxies.** Subject to provisions in the Articles of Incorporation allowing cumulative voting in the election of directors, each outstanding share having voting power shall be entitled to one vote on each matter submitted to a vote at a meeting of the shareholders. A shareholder may vote either in person or by proxy executed in writing by the shareholder or by his duly authorized attorney in fact, but no proxy shall be valid after eleven (11) months from the date of its execution unless otherwise expressly provided in the proxy. Each proxy shall be revocable unless expressly provided in the proxy. Each proxy shall be revocable unless expressly provided therein to be irrevocable, and in no event shall it remain irrevocable for a period of more than eleven (11) months. Each proxy shall be filed with the Secretary of the corporation prior to or at the time of the meeting. Any vote must be taken by written ballot upon the oral or written request of any shareholder.

**2.09 - Action by Unanimous Written Consent.** Any action required or permitted by statute to be taken at a meeting of the shareholders may be taken without a meeting if a consent in writing, setting forth the action so taken, shall be signed by all of the shareholders entitled to vote with respect to the subject matter thereof, and such consent shall have the same force and effect as a unanimous vote of the shareholders. Any such signed consent, or a copy thereof, shall be placed in the minute book of the corporation.

**2.10 - Telephone Meetings.** In the absence of an express objection by a participant therein, meetings of the Board of Directors or shareholders may be held by means of conference telephone or similar communications equipment if all persons participating in the meeting can hear each other.

## ARTICLE III - DIRECTORS

**3.01 - Powers of Directors.** The business and affairs of the corporation shall be managed by its Board of Directors, which may exercise all powers of the corporation and do all lawful acts and things as are not by statute or by the Articles of Incorporation or by these Bylaws directed or required to be exercised or done by the shareholders.

**3.02 - Number and Qualification.** The number of directors which shall constitute the Board of Directors is four (4). Directors need not be shareholders of the corporation or residents of the State of Texas. The number of directors may be increased or decreased from time to time by amendment of the Bylaws, but no decrease shall have the effect of shortening the term of any incumbent director. The directors shall be elected at the annual meeting of the shareholders, and each director elected shall serve until his successor shall have been elected and qualified.

**3.03 - Filling Vacancies.** Any vacancy occurring in the Board of Directors by reason of death, resignation or removal may be filed by affirmative vote of a majority of the remaining directors, although such majority may constitute less than a quorum of the Board of Directors, or by affirmative vote of a majority of the shareholders if thee are no remaining directors. A director elected to fill a vacancy shall be elected for the unexpired term of his predecessor in office. Any directorship to be filled by reason of an increase in the number of directors shall be filled by election at an annual meeting or a special meeting of shareholders called for that purpose.

**3.04 - Resignation of Directors.** Any director may resign from his office at any time by delivering his written resignation to the Secretary, and such resignation shall be effective immediately upon delivery to the Secretary.

3.05 - **Removal of Directors.** Any director may be removed, with or without cause, at any special or annual meeting of the shareholders, by affirmative vote of a majority of the number of shares of the shareholders present in person or by proxy at such meeting and entitled to vote for the election of such director, if notice of intention to act upon such mater shall have been given in the notice calling such meeting.

3.06 - **Place of Meeting.** Regular or special meetings of the Board of Directors may be held either within or without the State of Texas.

3.07 - **Chairman of the Board.** The Chairman of the Board, if one be elected by the Board, shall preside at all meetings of the Board of Directors and shall have such other powers and duties as may from time to time be prescribed by the Board of Directors, upon written direction given to him pursuant to resolution duly adopted by the Board of Directors.

3.08 - **Annual Meetings.** The first meeting of each newly elected Board of Directors shall be held at such time and place as shall be fixed by the vote of the shareholders at the annual meeting, and no notice of such meeting shall be necessary to the newly elected directors in order legally to constitute the meeting, provided a quorum shall be present. If the shareholders fail to fix the time and place of such first meeting, it shall be held without notice immediately following the annual meeting of the shareholders, and at such time and place unless by unanimous consent of the directors then elected and servicing, such time or place shall be changed.

3.09 - **Regular Meetings.** Regular meetings of the Board of Directors may be held without notice at such time and place as shall from time to time be determined by the Board.

3.10 - **Special Meetings.** Special meetings of the Board of Directors may be called by the Chairman of the Board of Directors or the President and shall be called by the Secretary on the written request of two (2) directors. Notice of any special meeting of the Board of Directors shall be given to each director at least three (3) days before the date of the meeting.

3.11 - **Quorum of Directors.** At all meetings of the Board of Directors a majority of the directors shall constitute a quorum for the transaction of business, and the act of a majority of the directors present at any meeting at which there is a quorum shall be the act of the Board of Directors. If a quorum shall not be present at any meeting of the directors, the directors present thereat may adjourn the meeting from time to time, without notice other than announcement at the meeting, until a quorum shall be present.

3.12 - **Committees.** The Board of Directors, by resolution passed by a majority of the entire Board, may from time to time designate members of the Board to constitute committees, including an

executive committee, which shall in each case consist of such number of directors not less than two (2) and shall have and may exercise such powers, as the Board may determine and specify in the respective resolutions appointing them. A majority of all the members of any such committee may determine this action and fix the time and place of any meeting, unless the Board of Directors shall otherwise direct. The Board of Directors shall have power at any time to change the number and the members of any such committee, to fill vacancies, and to discharge any such committee.

3.13 - **Action by Unanimous Written Consent.** Any action required or permitted to be taken at a meeting of the Board of Directors or any committee may be taken without a meeting, if a consent in writing setting forth the action so taken is signed by all the members of the Board of Directors or such committee, as the case may be.

3.14 - **Compensation of Directors.** By resolution of the Board of Directors, the directors may be paid their expenses, if any, of attending each meeting of the Board, and may be paid a fixed sum for attending each meeting of the Board or a stated salary for serving as a director. No such payment shall preclude any director from serving the corporation in any other capacity and receive compensation therefor. Members of the executive committee or of special or standing committees may, by resolution of the Board of Directors, be allowed like compensation for attending committee meetings.

3.15 - **Minutes of Meetings.** The Board of Directors shall keep regular minutes of its proceedings, and such minutes shall be placed in the minute book of the corporation. Committees of the Board of Directors shall maintain a separate record of the minutes of their proceedings.

## ARTICLE IV - NOTICES

4.01 - **Method of Giving Notice.** Any notice to directors or shareholders shall be in writing and shall be delivered personally or mailed to the directors or shareholders at their respective addresses appearing on the books of the corporation. Notice by mail shall be deemed to be given at the time when the same shall be deposited in the United States mail, postage prepaid.

4.02 - **Waiver of Notice.** Any notice required to be given may be subject to a waiver thereof in writing, signed by the person or persons entitled to such notice, whether before or after the time stated therein; and such waiver shall be deemed equivalent to the giving of such notice in a timely manner. Any such signed waiver of notice, or a signed copy thereof, shall be placed in the minute book of the corporation. Attendance of such persons at any meeting shall constitute a waiver of notice of such meeting, except where the persons attend for the express purpose of objecting that the meeting is not lawfully convened.

## ARTICLE V - OFFICERS

5.01 - **Qualifications.**   The officers of the corporation need not be shareholders of the corporation or residents of the State of Texas.   The Board of Directors shall elect a President, one or more Vice Presidents, a Secretary, a Treasurer, a General Counsel, and such other officers, including a Chairman of the Board and assistant officers, as it may deem desirable to have to conduct the affairs of the corporation.   Any two (2) or more offices may be held by the same person, except that the offices of President and Secretary may not be held by the same person.

5.02 - **Compensation of Officers.**   The salaries of all officers of the corporation shall be fixed by the Board of Directors.   The Board of Directors shall have the power to enter into contracts for the employment and compensation of officers on such terms as the Board deems advisable.   No officer shall be disqualified form receiving a salary or other compensation by reason of the fact that he is also a director of the corporation.

5.03 - **Terms and Vacancies.**   The officers of the corporation shall hold office until their successors are elected or appointed and qualified or until their death, resignation, or removal from office.   Any vacancy occurring in any office of the corporation by death, resignation, removal, or otherwise, may be filled by the Board of Directors.

5.04 - **Removal of Officers.**   Any officer elected or appointed by the Board of Directors may be removed at any time by the Board, but such removal shall be without prejudice to the contract rights, if any, of the person so removed.   Election or appointment of an officer or employee shall not of itself create contract rights. Any officer may be removed, either with or without cause, by the Board of Directors at any regular or special meeting, or except in the case of an officer chosen by the Board of Directors, by any officer upon whom such power of removal may be conferred by the Board of Directors.

5.05 - **Resignation of Officers.**   Any officer may resign at any time by giving written notice to the Board of Directors, to the President, or to the Secretary of the corporation.   Any such resignation shall take effect at the date of the receipt of such notice or at any time later specified; and unless otherwise specified, the acceptance of such resignation shall not be necessary to make it effective.

5.06 - **General Authority of Officers.**   The Board of Directors, except as otherwise provided in these Bylaws, may authorize any officer to enter into any contract or execute and deliver any instrument in the name of and on behalf of the corporation, and such authority may be general or confined to specific instances. Unless so authorized, no officer, agent, or employee shall have any power or authority to bind the corporation by any contract or

Bylaws
Redfish Bay Terminal, Inc.                                                    Page 6

engagement, to pledge its credit, or to render it liable pecuniarily for any purpose or in any amount.

5.07 - **Duties of President.** The President shall be the chief executive officer of the corporation, shall have general and active management and control of the business and affairs of the corporation, and shall see that all orders and resolutions of the Board of Directors are carried into effect. He shall preside at all meetings of the shareholders, and in the absence of a Chairman of the Board, at all meetings of the Board of Directors. He shall call regular and special meetings of the shareholders and directors in accordance with law and these Bylaws and shall preside at such meetings. He shall appoint, discharge, and fix the compensation of officers, agents, and employees other than those appointed by the Board of Directors. He shall sign all certificates representing shares of stock in the corporation. He shall perform other duties as may be prescribed from time to time by the Board of Directors.

5.08 - **Duties of Vice Presidents.** The Vice Presidents, in the order of their seniority, unless otherwise determined by the Board of Directors, shall in the absence or disability of the President perform the duties and have the authority and exercise the powers of the President. They shall perform such other duties and have such other authority and powers as the Board of Directors may from time to time prescribe, or as the President may from time to time delegate.

5.09 - **Duties of General Counsel.** The General Counsel shall supervise the Legal Department of the corporation, shall be responsible for and direct the legal affairs of the corporation including drafting and preparation of documents and instruments, shall provide legal counsel to the corporation, and shall direct and handle litigation and shall generally perform the duties of corporate attorney under the direction of the President and the Board of Directors. The General Counsel shall be a licensed attorney at law and a person schooled and knowledgeable in general corporation law and other activities in which the company engages. If the General Counsel is also named Vice President, he shall perform such executive duties as pertains to the office of Vice President and as be assigned and being in addition to that of General Counsel.

5.10 - **Duties of Secretary.** The Secretary shall attend all meetings of the Board of Directors and of shareholders and record all business transacted at such meetings in a minute book to be kept for that purpose; and he shall perform like duties for the standing committees when required. He shall give, or cause to be given, notice of all meetings of the shareholders and special meetings of the Board of Directors; and shall perform such other duties as may be prescribed by the Board of Directors or President, under whose supervision he shall be. He shall keep and take custody of the seal of the corporation, and when authorized by the Board of Directors, shall affix the name to any instrument requiring it, and when so affixed, it shall be attested by his

signature or by the signature of an assistant secretary or of the Treasurer.

**5.11 - Duties of Assistant Secretaries.** The assistant secretaries, in the order of their seniority, unless otherwise determined by the Board of Directors, shall in the absence or disability of the Secretary perform the duties and have the authority and exercise the powers of the Secretary. They shall perform such other duties and have such other powers as the Board of Directors may from time to time prescribe or as the President or Secretary from time to time may delegate.

**5.12 - Duties of Treasurer.** The Treasurer shall have the custody of the corporation's funds and securities; shall keep full and accurate accounts and records of receipts, disbursements, and other transactions in books belonging to the corporation; and shall deposit all funds and other valuable effects in the name and to the credit of the corporation in such depositories as may be designated by the Board of Directors. The Treasurer shall disburse funds of the corporation as may be ordered by the Board of Directors, taking proper vouchers for such disbursements, and shall render to the President and the Board of Directors, at the regular meetings of the Board or whenever they may require it, an account of all his transactions as Treasurer and of the financial condition of the corporation. The Treasurer shall perform such other duties and have such other authority as the Board of Directors may from time to time prescribe, or as the President may from time to time delegate.

**5.13 - Duties of Assistant Treasurers.** The Assistant Treasurers, in the order of their seniority, unless otherwise determined by the Board of Directors, shall in the absence or disability of the Treasurer perform the duties and have the authority and exercise the powers of the Treasurer. They shall perform such other duties and have such other powers as the Board of Directors may from time to time prescribe or as the President or Treasurer may from time to time delegate.

**5.14 - Execution of Instruments.** All documents, instruments, or writings of any nature shall be signed, executed, verified, acknowledged, and delivered by such officer or officers, or such agent or agents of the corporation, and in such manner as the Board of Directors from time to time may determine. All notes, drafts, acceptances, checks, endorsements, and all evidence of indebtedness of the corporation whatsoever shall be signed by such officer or officers or such agent or agents of the corporation, and in such manner as the Board of Directors from time to time may determine. Endorsements for deposit to the credit of the corporation in any of its duly authorized depositories shall be made in such manner as the Board of Directors may from time to time determine.

## ARTICLE VI - STOCK CERTIFICATES

6.01 - **Form of Certificates.** Certificates shall be delivered representing all shares to which shareholders are entitled. Certificates for shares of the stock of the corporation shall be in such form as shall be required by law and as shall be approved by the Board of Directors. Every certificate for shares issued by the corporation must be signed by the President or a Vice President and the Secretary or an Assistant Secretary. Such certificates shall bear a legend or legends in the form and containing the restrictions required to be thereon by the Texas Business Corporation Act, by the Securities Act of the State of Texas and any applicable registration acts and as required by the U.S. Securities Act of 1933 and subsequent acts affecting sales, issuance, registration and transfer of securities. Each certificate shall be consecutively numbered and shall be entered into the books of the corporation as it is issued. Each certificate shall state on the face thereof the holder's name, the number and class of shares, the par value of such shares, and such other matters as may be required by law, the Articles of Incorporation or these Bylaws.

6.02 - **Lost Certificate.** The Board of Directors may, upon making of an affidavit of the fact by a person claiming loss or destruction, direct a new certificate or certificates to be issued in place of any certificate previously issued by the corporation alleged to have been lost or destroyed. In so doing, the Board of Directors may in its discretion and as a condition precedent to the issuance (a) require the owner of the lost or destroyed certificate, or his legal representative, to advertise the same in such manner as it shall require; and/or (b) to give the corporation a bond (with a surety or sureties satisfactory to the corporation) in such sum as it may direct, as indemnity against any claim, or expense resulting from any claim, that may be made against the corporation with respect to the certificates alleged to have been lost or destroyed.

6.03 - **Transfer of Shares.** Shares of stock shall be transferable on the books of the corporation only by the holder thereof in person or by his duly authorized attorney. Upon surrender to the corporation or its transfer agent of a certificate representing shares properly endorsed or accompanied by proper evidence of succession, assignment, or authority to transfer, the corporation or its transfer agent shall issue a new certificate to the person entitled thereto, cancel the old certificates, and record the transaction upon its books.

6.04 - **Record Ownership Conclusive.** The corporation shall be entitled to treat the holder of any share or shares of stock as the holder in fact thereof, and accordingly shall not be bound to recognize any equitable or other claim to or interest in such share or shares on the part of any other person, whether or not it has express or other notice thereof, except as otherwise provided by law or by any stock purchase and redemption agreement to which the

stock may be subject, if such agreement has been formally executed or accepted by the Corporation.

6.05 – **Closing Transfer Books.**    The Board of Directors shall have the power to close the stock transfer book of the corporation for a period not exceeding fifty (50) days preceding the date of any meeting of the shareholders, or the date for payment of any dividend, or the date for the allotment of rights, or the date when any change or conversion or exchange of capital stock shall go into effect.    In lieu of closing the stock transfer books, the Board of Directors may fix in advance of a date, not exceeding fifty (50) days preceding the date of any meeting of shareholders, or the date for the payment of any dividend, or the date for allotment of rights, or the date when any change or conversion or exchange of capital stock shall go into effect.    Such date shall serve as a record date for determination of the shareholders entitled to notice of and to vote any such meeting, or entitled to receive payment of any such dividends, or any such allotment or rights, or to exercise the rights in respect to any such change, conversion, or exchange of capital stock.    In such case, only shareholders of record on the date so fixed shall be entitled to notice of and to vote at such meeting, or to receive payment of such dividend or allotment of rights, or to exercise such rights, as the case may be; notwithstanding any transfer of stock on the books of the corporation after any such record date fixed as herein provided.

6.06 – **Securities Act Restrictions.**        Each shareholder, by accepting issuance of stock in the corporation, shall be deemed to have agreed that no transfer thereof may be made under any circumstances until and unless such shares shall have been registered under the Securities Act of 1933 or the Texas Securities Act, or the corporation shall have been provided with an opinion of counsel satisfactory to it that such registration is not required. The provisions of this paragraph shall be reflected by suitable legend on all certificates representing stock in the corporation.


## ARTICLE VII – MISCELLANEOUS PROVISIONS

7.01 – **Dividends.**      Dividends may be declared by the Board of Directors at any regular or special meeting and may be paid in cash, in property, or in shares of the corporation, subject to the provisions of the Articles of Incorporation and to the laws of the State of Texas.   The declaration and payment of dividends shall be at the discretion of the Board of Directors.

7.02 – **Reserves.**      Before payment of any dividend, the Board of Directors may create and set aside funds and reserves such as the directors, from time to time and in their absolute discretion, believe proper to provide for contingencies, or to equalize dividends, or to repair or maintain any property of the corpora-tion, or for any other purpose they believe beneficial to the corporation.  The directors may modify or abolish any such reserve or fund in the manner in which it was created.

7.03 - **Records.**    The corporation shall keep correct and complete books and records of account; and shall keep minutes of the proceedings of its shareholders and Board of Directors; and shall keep at its registered office or principal place of business, or at the office of its transfer agent or registrar, a record of its shareholders, giving the names and addresses of all shareholders and the number and class of the shares held by each.

7.04 - **Taxable Year.**    The taxable year of the corporation shall be fixed by resolution of the Board of Directors.

7.05 - **Statement of Condition.**    The Board of Directors shall present at each annual meeting of shareholders a full and clear statement of the business and condition of the corporation, including a reasonably detailed balance sheet, income statement, and surplus statement.

7.06 - **Seal.**    The corporation's seal shall be in such form as may be prescribed by the Board of Directors.  The seal may be used by causing it, or a facsimile thereof, to be impressed or affixed, or in any manner reproduced.

7.07 - **Indemnification for Judgments.**    The corporation shall indemnify any person who serves as a director, officer, agent, or employee of the corporation against expenses actually and necessarily incurred by such person; and against any amount paid in satisfaction of judgment in connection with any action, suit, or proceedings in which he is made a party by reason of being or having been such a director, officer, agent, or employee; except in relation to matters as to which he shall be adjudged in such action, suit, or proceeding to be liable for gross negligence or willful misconduct in the performance of his duties.

7.08 - **Indemnification for Settlements.**    The corporation also may reimburse to any such person described in the preceding paragraph the reasonable costs of settlement of any such proceeding, if it is found by a majority of the directors not involved in the proceeding that it was in the interest of the corporation to make such settlement, and that such person was not guilty of gross negligence or willful misconduct.    These rights of indemnification and reimbursement shall not be exclusive of any other right to which such person may be entitled by law, bylaw, agreement, shareholder's vote or otherwise.


## ARTICLE VIII - AMENDMENT AND CONSTRUCTION

8.01 - **Amendment.**    The power to alter, amend, or repeal the Bylaws or adopt new bylaws, subject to repeal or change by action of the shareholders, shall be vested in the Board of Directors.

8.02 - **Severability.**    If any portion of these Bylaws shall be invalid or inoperative, then so far as is reasonable, the remainder of these Bylaws shall be considered valid and operative, and effect

shall be given to the intent manifested by the portion held invalid or inoperative.

Unanimously adopted at the organization meeting of the Board of Directors on the 29th day of June 1992.

APPROVED CORRECT:

D. W. Berry

ATTEST:

K. L. Berry

lgl\rbtbylaw

# APPENDIX 47

Transcript was immediately requested at conclusion of hearing; will supplement when transcript is available from court reporter.

# APPENDIX 48

E-filed in the Office of the Clerk
for the Business Court of Texas
1/31/2025 10:05 AM
Accepted by: Beverly Crumley
Case Number: 24-BC11A-0025

## CAUSE NO. 24-BC11A-0025

| | | |
|---|---|---|
| **ALBERT THEODORE POWERS;** | § | **IN THE BUSINESS COURT** |
| **ALLIED PORTS LLC,** | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| **v.** | § | **ELEVENTH DISTRICT** |
| | § | |
| **AXIS MIDSTREAM HOLDINGS,** | § | |
| **LLC; ALLEN LAWRENCE BERRY;** | § | |
| **MARVIN GLENN BERRY; AND** | § | |
| **BONNIE BERRY, as successor in** | § | |
| **interest to DENNIS WAYNE BERRY** | § | |
| | § | |
| *Defendants.* | § | **HARRIS COUNTY, TEXAS** |

## NOTICE OF CONTINUATION OF HEARING ON PLAINTIFFS' APPLICATION FOR A TEMPORARY INJUNCTION

Please take notice that an oral hearing to consider Plaintiffs' Application for a Temporary Injunction will continue on Friday, February 14, 2025, beginning at 9:00 a.m. each day before Judge Sofia Adrogué. The hearing will take place at the Fourteenth Court of Appeals at the 1910 Courthouse, Houston, Texas.

DATED: January 31, 2025          Respectfully submitted,

*/s/ Alistair B. Dawson*
Alistair B. Dawson
State Bar No. 05596100
M. Jake McClellan
State Bar No. 24109525
Madeline E. Gay
State Bar No. 24138681
E-mail: adawson@beckredden.com
E-mail: jmcclellan@beckredden.com
E-mail: mgay@beckredden.com
1221 McKinney Street, Suite 4500
Houston, Texas 77010-2010
Telephone:    (713) 951-3700
Telecopier:    (713) 951-3720

**ATTORNEYS FOR PLAINTIFFS**

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that a true and correct copy of this document was served on counsel of record in this matter in accordance with Rules 21 and 21a of the Texas Rules of Civil Procedure on this 31st day of January, 2025.

*/s/ M. Jake McClellan*
M. Jake McClellan

2

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Lisa Verm on behalf of Alistair Dawson
Bar No. 5596100
lverm@beckredden.com
Envelope ID: 96831838
Filing Code Description: Notice
Filing Description: Notice of Continuation of Hearing on Plaintiffs' Application for a Temporary Injunction
Status as of 1/31/2025 10:10 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Barrett H.Reasoner | | breasoner@gibbsbruns.com | 1/31/2025 10:05:38 AM | SENT |
| Michael R.Absmeier | | mabsmeier@gibbsbruns.com | 1/31/2025 10:05:38 AM | SENT |
| Stephanie Sanchez | | sanchezst@gtlaw.com | 1/31/2025 10:05:38 AM | SENT |
| Rosa Brennan | | rbrennan@gibbsbruns.com | 1/31/2025 10:05:38 AM | SENT |
| Douglas Allison | 1083500 | doug@dallisonlaw.com | 1/31/2025 10:05:38 AM | SENT |
| Alistair Dawson | 5596100 | adawson@beckredden.com | 1/31/2025 10:05:38 AM | SENT |
| Roland Garcia | 7645250 | garciar@gtlaw.com | 1/31/2025 10:05:38 AM | SENT |
| Michael Hummell | 10271100 | hummellm@bayltd.com | 1/31/2025 10:05:38 AM | SENT |
| Mary Raffetto | | mkraffetto@beckredden.com | 1/31/2025 10:05:38 AM | SENT |
| Michael McClellan | 24109525 | jmcclellan@beckredden.com | 1/31/2025 10:05:38 AM | SENT |
| Roxanne Graham | | rgraham@gibbsbruns.com | 1/31/2025 10:05:38 AM | SENT |
| Christina Pena | | cpena@gibbsbruns.com | 1/31/2025 10:05:38 AM | SENT |
| Kim Brunkenhoefer | | kim@dallisonlaw.com | 1/31/2025 10:05:38 AM | SENT |
| Susan Gonzales | | susan@dallisonlaw.com | 1/31/2025 10:05:38 AM | SENT |
| Bruce Baldree | | bbaldree@gibbsbruns.com | 1/31/2025 10:05:38 AM | SENT |
| Sydney Ballesteros | | sballesteros@gibbsbruns.com | 1/31/2025 10:05:38 AM | SENT |
| Cameron Roth | | CRoth@gibbsbruns.com | 1/31/2025 10:05:38 AM | SENT |
| Becky Young | | Becky.Young@gtlaw.com | 1/31/2025 10:05:38 AM | SENT |
| Madeline Gay | | mgay@beckredden.com | 1/31/2025 10:05:38 AM | SENT |
| Business Court 11A | | BCDivision11A@txcourts.gov | 1/31/2025 10:05:38 AM | SENT |
| Liz Poirrier | | epoirrier@beckredden.com | 1/31/2025 10:05:38 AM | SENT |
| Vanessa Gilmore | | vg@robertsmarkland.com | 1/31/2025 10:05:38 AM | SENT |

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Lisa Verm on behalf of Alistair Dawson
Bar No. 5596100
lverm@beckredden.com
Envelope ID: 96831838
Filing Code Description: Notice
Filing Description: Notice of Continuation of Hearing on Plaintiffs' Application for a Temporary Injunction
Status as of 1/31/2025 10:10 AM CST

Case Contacts

| Vanessa Gilmore | | vg@robertsmarkland.com | 1/31/2025 10:05:38 AM | SENT |
|---|---|---|---|---|
| Liz Poirrier | | epoirrier@beckredden.com | 1/31/2025 10:05:38 AM | SENT |
| Steven Higginbotham | | higginbothams@gtlaw.com | 1/31/2025 10:05:38 AM | SENT |

# APPENDIX 49

| | | |
|---|---|---|
| LAWRENCE BERRY, individually and derivatively on behalf of BERRY GP, INC. | § § § § | IN THE DISTRICT COURT |
| Plaintiff, | § § | |
| BERRY GP, INC., | § § | |
| Nominal Plaintiff, | § § § | NUECES COUNTY, TEXAS |
| v. | § § § | |
| MARTY BERRY, ROBERT RICKETT, ROBERT POWERS, MICHAEL HUMMELL, BERRY GP, INC., BERRY OPERATING COMPANY, LLC and BERRY CONTRACTING LOP | § § § § § § | |
| Defendants. | § | 94TH JUDICIAL DISTRICT |

## INTERVENORS' ORIGINAL PETITION IN INTERVENTION

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES Redfish Bay Terminals Inc. ("RFB") and Canada Project Holdings Inc. ("CPH"), Intervenors herein, and make and file this Intervenors' Original Petition in Intervention complaining of Lone Star Ports Enterprises, LLC ("LSPE"), Redfish Bay Properties, LLC ("RBP"), and Harbor Island Properties, LLC ("HIP"), and in support of same would show:

I.

## PARTIES

1.     Redfish Bay Terminals Inc. ("RFB") is a Texas corporation with its principal office at 1414 Corn Products Road (aka 1414 Valero Way), Corpus Christi, Texas 78409.  RFB is 100% owned by Berry GP Inc. ("Berry GP"), an entity already a party to these proceedings.  As such, RFB is

one of the "Berry Entities" as may be referenced herein. RFB owns certain real property interests near Aransas Pass, Texas, and these real property interests are the subject of this intervention.

2.      Canada Projects Holdings Inc. ("CPH") is a Texas corporation with its principal office at 1414 Valero Way, Corpus Christi, Texas 78409. CPH holds a lease on a tract of land located on Harbor Island, Nueces County, Texas, and this leasehold interest is the subject of this intervention.

3.      Berry GP Inc. ("Berry GP") is a Texas corporation with its principal office at 1414 Corn Products Road, Corpus Christi, Texas 78409. Berry GP is one of the "Berry Entities" as may be referenced herein. Berry GP is already a party to these legal proceedings and will be given notice of the filing of this Intervenors' Original Petition in Intervention by service through Nueces County's electronic service system.

4.      Berry Operating Company LLC ("Berry Operating") is a Texas limited liability company with its principal office at 1414 Corn Products Road, Corpus Christi, Texas 78409. Berry Operating is one of the "Berry Entities" as may be referenced herein. Berry Operating is already a party to these legal proceedings and will be given notice of the filing of this Intervenors' Original Petition in Intervention by service through Nueces County's electronic service system.

5.      Berry Contracting LP (d/b/a Bay Ltd. ("Bay Ltd.")) is a Texas limited partnership with its principal office at 1414 Corn Products Road, Corpus Christi, Texas 78409. Bay Ltd. is one of the "Berry Entities" as may be referenced herein. Bay Ltd. is already a party to these legal proceedings and will be given notice of the filing of this Intervenors' Original Petition in Intervention by service through Nueces County's electronic service system.

6.      Marty Berry ("M.Berry" or "Marty") is a natural person who is presently a Director and Officer of Berry GP, Berry Operating, Bay Ltd., and RFB. Marty Berry resides in Nueces County, Texas. Marty Berry has already answered and appeared in these legal proceedings. As such,

2

notice of the filing of this Intervenors' Original Petition in Intervention will be given by service upon Marty's legal counsel of record through the Nueces County electronic service system.

7. Allen Lawrence Berry ("L.Berry" or "Lawrence") is a natural person who resides in Harris County, Texas. Allen Lawrence Berry has already answered and appeared in these legal proceedings. As such, notice of the filing of this Intervenors' Original Petition in Intervention will be given by service upon Lawrence's legal counsel of record through the Nueces County electronic service system: Mr. Barrett Reasoner, Gibbs & Bruns LLP, 1100 Louisiana, Suite 5300, Houston, Texas 77002.

8. Allen Lawrence Berry (2007) Trust ("ALB Trust" or "Trust") is a duly formed trust with Allen Lawrence Berry as its trustee. The ALB Trust has already answered and appeared in these legal proceedings. As such, notice of the filing of this Intervenors' Original Petition in Intervention will be given by service upon the ALB Trust's legal counsel of record through the Nueces County electronic service system: Mr. Barrett Reasoner, Gibbs & Bruns LLP, 1100 Louisiana, Suite 5300, Houston, Texas 77002.

9. Lone Star Ports Enterprises LLC ("LSPE") is a Delaware limited liability company with its principal office at 16192 Coastal Highway, Lewes, Delaware 19958. Defendant Lone Star Ports Enterprises LLC has claimed an ownership interest in Axis Midstream Holdings LLC and thus is named as a Defendant in this lawsuit. Defendant LSPE may be given notice of these proceedings and the filing of this Intervenors' Original Petition in Intervention through its registered agent for service: Harvard Business Services, Inc., 16192 Coastal Hwy., Lewes, DE 19958, by personal service. As such, Lone Star Ports Enterprises LLC ("LSPE") may be served with notice of these proceedings by issuance of citation and service of process — with a copy of this Intervenors' Original Petition in Intervention attached thereto — upon its registered agent for service at the

3

address indicated and, in such manner, as complies with the Texas Rules of Civil Procedure. Service is requested at this time.

10.     Redfish Bay Properties LLC ("RBP") is a Delaware limited liability company with its principal place of business at 5005 Riverway Drive, Suite 440, Houston, Texas 77056. Defendant Redfish Bay Properties LLC wrongfully claims an interest in real property owned by RFB near Aransas Pass, Texas, and thus is named as a Defendant in this lawsuit. Defendant RBP may be given notice of these proceedings and the filing of this Intervenors' Original Petition in Intervention through its registered agent for service: Harvard Business Services, Inc., 16192 Coastal Hwy., Lewes, DE 19958, by personal service. As such, Redfish Bay Properties LLC ("RBP") may be served with notice of these proceedings by issuance of citation and service of process — with a copy of this Intervenors' Original Petition in Intervention attached thereto — upon its registered agent for service at the address indicated and, in such manner, as complies with the Texas Rules of Civil Procedure. Service is requested at this time.

11.     Harbor Island Properties LLC ("HIP") is a Delaware limited liability company with its principal place of business at 5005 Riverway Drive, Suite 440, Houston, Texas 77056. Defendant Harbor Island Properties LLC wrongfully claims right to CPH's leasehold interest in a tract of land on Harbor Island, Nueces County, Texas, and thus is named as a Defendant in this lawsuit. Defendant HIP may be given notice of these proceedings and the filing of this Intervenors' Original Petition in Intervention through its registered agent for service: Harvard Business Services, Inc., 16192 Coastal Hwy., Lewes, DE 19958, by personal service. As such, Harbor Island Properties LLC ("HIP") may be served with notice of these proceedings by issuance of citation and service of process — with a copy of this Intervenors' Original Petition in Intervention attached thereto —

4

upon its registered agent for service at the address indicated and, in such manner, as complies with the Texas Rules of Civil Procedure. Service is requested at this time.

12. Intervenors have only recently learned that other legal entities (LSPE, RBP, and HIP) claim ownership and/or control of assets owned and controlled by Berry GP and/or Intervenors. As such, Intervenors file this Intervenors' Original Petition in Intervention seeking a declaration pursuant to Texas Civil Practice & Remedies Code ("TCPRC"), Chapter 37, of Intervenors' rights, status, and other legal relations to RFB's real property interests[1] and CPH's leasehold interest.[2]

## II.

## JURISDICTION AND VENUE

13. This Court has jurisdiction over all parties. All parties have sufficient contacts with the State of Texas and, therefore, are subject to the jurisdiction of this Court.

14. Venue is proper in Nueces County, Texas, pursuant to TCPRC Chapter 15, section 15.002(a)(1) as Nueces County is the location where all or a substantial part of the events or omissions giving rise to the claims occurred; and section 15.011 as Intervenors seek to recover an interest in and/or quiet title to real property. Moreover, venue is proper in Nueces County, Texas, pursuant to TCPRC Chapter 15, section 15.063(3).

## III.

## DISCOVERY

15. Discovery should be conducted in accordance with Level 3, as permitted by TRCP 190.4.

## IV.

---

[1] To the extent any legal action taken or relief requested herein may be characterized as a trespass to try title lawsuit, then Intervenors hereby assert all such claims and request all such relief – inclusive of those claims that may be brought pursuant to Texas Property Code Chapter 22.

[2] Per Texas Civil Practice & Remedies Code, section 37.006, "all persons who have or claim any interest that would be affected by the declaration must be made parties." Thus, RBP and HIP are being added as parties to this lawsuit by this Intervenors' Original Petition in Intervention. The inclusion of all such parties is also required by Texas Rule of Civil Procedure 39.

**ADDITIONAL FACTS**

16.  For many years, RFB has enjoyed quiet ownership and control of real property located near Aransas Pass, Texas (more than 200 acres) on and near the intercoastal waterway, the "RFB Land").  RFB recently learned that RBP now claims ownership and/or control of the RFB Land.  Worse yet, RBP's claim of ownership/control is part of a larger scheme by Lawrence and others to solicit hundreds of millions of dollars to develop a project – *using RFB's Land which RBP does not own or control.*  This must stop, and RFB's ownership/control of the RFB Land is properly confirmed by declaration pursuant to TCPRC Chapter 37.  Alternatively, this action may proceed as a trespass to try title claim by RFB.

17.  For several years, CPH has enjoyed quiet access and control of its leasehold interest in real property located on Harbor Island, Nueces County, Texas (a lease for approximately 62 acres on Harbor Island, Texas (the "CPH Lease Tract")).  CPH recently learned that HIP now claims right to and/or control of the CPH Lease Tract.  Worse yet, HIP's claim of right and control is part of a larger scheme by Lawrence and others to solicit hundreds of millions of dollars to develop a project – *using the CPH Lease Tract which HIP does not hold or control.*  This must stop, and CPH's right to and control of the leasehold estate in the CPH Lease Tract is properly confirmed by declaration pursuant to TCPRC Chapter 37.  Alternatively, this action may proceed as a trespass to try title claim by CPH.

**V.**
**DECLARATORY ACTION**

18.    Intervenor RFB, pursuant to Texas Civil Practice & Remedies Code ("TCPRC"), Chapter 37, seeks declaration that the RFB Land for which RFB is record title owner be confirmed as RFB owned real property; and that further declaration confirm RBP has no right, title, or interest whatsoever in the RFB Land.  Intervenor RFB, also pursuant to TCPRC, seeks declaration that

6

any transfer/conveyance/contract/Manager appointment executed/accepted by Lawrence, in whole or in part, related to Axis Midstream Holdings LLC without Berry GP and RFB majority Board of Directors' approval are void, void ab initio, voidable, invalid, and/or of no legal force or effect.

19.     Intervenor CPH, pursuant to TCPRC Chapter 37, seeks declaration that CPH's leasehold interest in the CPH Lease Tract be confirmed as a leasehold interested held by CPH; and that further declaration confirm HIP has no right, title, or interest (including any leasehold interest) whatsoever in the CPH Lease Tract.

WHEREFORE, PREMISES CONSIDERED, Redfish Bay Terminals Inc. and Canada Projects Holdings Inc. pray for all relief as requested herein, for costs of court in addition thereto, attorneys' fees, and for such other and further relief – both at law and in equity – to which these Intervenors may show themselves justly entitled as against Lawrence, the ALB Trust, RBP, HIP, and LSPE.

Respectfully submitted,

**LAW OFFICE OF DOUGLAS ALLISON**

By: */s/ Douglas A. Allison*
       Douglas A. Allison
       State Bar No. 01083500
       doug@dallisonlaw.com
       403 N. Tancahua Street
       Corpus Christi, Texas 78401
       Telephone: (361) 888-6002
       Facsimile: (361) 888-6651

       ATTORNEY FOR REDFISH BAY
       TERMINALS INC., AND CANADA
       PROJECTS HOLDINGS INC.

7

## CERTIFICATE OF SERVICE

I hereby certify that on the 5th day of February 2025, a true and correct copy of the above was served upon the attorneys of record in the above entitled and numbered cause, via e-service.

_/s/ Douglas A. Allison_
Douglas A. Allison

# APPENDIX 50

---------- Forwarded message ---------
From: **Albert Theodore Powers** <atpowers@allied-pacific-group.com>
Date: Fri, Apr 24, 2020 at 3:00 PM
Subject: Lone Star Ports Group - Assets and Liabilities
To: Scott Baker <1952scottrbaker@gmail.com>, Bill Schoppe <billwschoppe@gmail.com>, Robert Blaney <rtblaney@flash.net>
Cc: Lawrence Berry <alb@riverway.us>, Tonja Fulghum <tfulghum@riverway.us>, Boyd Butch <butchboyd@butchboydlawfirm.com>, Dennis Berry <berryd@bayltd.com>, Berry Marvin (Marty) <captberry@aol.com>


Good Afternoon Gentlemen,

As requested, I attach an Excel file that lists the assets and liabilities of the various Lone Star Ports group companies. If you have any questions, please don't hesitate to give me a call.

We look forward to your comments on the draft Investment Agreement that we sent to you last week.

Best wishes to each of you for a pleasant weekend.

Best regards,

Ted

--
Albert Theodore Powers
Allied Pacific Group
Email: atpowers@allied-pacific-group.com

New York
Telephone: +(1) (212) 899-9889
Mobile: +(1) (212) 899-9888
Hong Kong
Telephone: +(852) 8108-8380
Mobile: +(852) 9099-3909



--
Albert Theodore Powers
Email: atpowers@allied-pacific-group.com
Telephone: +(1) (212) 899-9888

---------- Forwarded message ---------
From: **Albert Theodore Powers** <atpowers@allied-pacific-group.com>
Date: Fri, Apr 24, 2020 at 3:00 PM
Subject: Lone Star Ports Group - Assets and Liabilities
To: Scott Baker <1952scottrbaker@gmail.com>, Bill Schoppe <billwschoppe@gmail.com>, Robert Blaney
<rtblaney@flash.net>
Cc: Lawrence Berry <alb@riverway.us>, Tonja Fulghum <tfulghum@riverway.us>, Boyd Butch
<butchboyd@butchboydlawfirm.com>, Dennis Berry <berryd@bayltd.com>, Berry Marvin (Marty)
<captberry@aol.com>


Good Afternoon Gentlemen,

As requested, I attach an Excel file that lists the assets and liabilities of the various Lone Star Ports group companies. If
you have any questions, please don't hesitate to give me a call.

We look forward to your comments on the draft Investment Agreement that we sent to you last week.

Best wishes to each of you for a pleasant weekend.

Best regards,

1

Ted


--
Albert Theodore Powers
Allied Pacific Group
Email: atpowers@allied-pacific-group.com

New York
Telephone: +(1) (212) 899-9889
Mobile: +(1) (212) 899-9888
Hong Kong
Telephone: +(852) 8108-8380
Mobile: +(852) 9099-3909


--
Albert Theodore Powers
Email: atpowers@allied-pacific-group.com
Telephone: +(1) (212) 899-9888

Lone Star Ports Holdings, LLC
Consolidated Assets and Liabilities
As of April 24, 2020

## Lone Star Ports Holdings, LLC

**Assets**
All Equity and Operating Interests in Lone Star Ports Ventures, LLC

**Liabilities**
0

## Lone Star Ports Ventures, LLC

**Assets**
All Equity and Operating Interests in Lone Star Ports Enterprises, LLC
Goodwill of Lone Star Ports Group
Lone Star Ports Tradename, Website, Name Registrations, etc.

**Liabilities**
0

## Lone Star Ports Enterprises, LLC

**Assets**
All Equity and Operating Interests in Lone Star Ports, LLC (Delaware), Lone Star Ports, LLC (Texas), Midway Junction
Properties, LLC, Redfish Bay Properties, LLC, Harbor Island Properties, LLC, and Axis Midstream Holdings, LLC

**Liabilities**
0

## Midway Junction Properties, LLC

**Assets**
Freehold Ownership of 52.0352 acres in San Patricio County, Texas

**Liabilities**
0

## Redfish Bay Properties, LLC

**Assets**
Freehold Ownership of +/- 276.9 acres in Aransas Pass, Texas

Surveys
  Hydrographic and Topographic
  Magnetometer
  Side Scan Sonar
  Geotechnical Survey and Marine Borings for Redfish Bay Site and Underwater Redfish Bay Pipeline

**Liabilities**
A small area on the property on which an existing storage tank is located is currently the subject of a 2-year contract with TYR Logistics, LLC. The landlord leases the tank and provides throughput services to TYR. There are ongoing negotiations to construct and lease to TYR an additional storage tank under an additional 2-year contract. The landlord also currently provides barge storage and related services in, and adjacent to, the slip on the property to Redfish Barge & Fleeting under an agreement that expires in March 2021. No Other Liabilities.

## Harbor Island Properties, LLC

**Assets**
Commercial Ground Lease Agreement with ERF Port Aransas, Inc.
*Dated August 7, 2018 for Wood Group Tract*
*64.468 acres (54.5 net acres) on Harbor Island, Nueces County, Texas*
*10-Year Term with right of tenant to extend for four 10-year Extension Terms*

**Liabilities**
Rental Payments and other obligations under the Lease; No Other Liabilities

## Lone Star Ports, LLC

**Assets**

Amended & Restated Lease Agreement with Port of Corpus Christi Authority (POCCA) of Nueces County, Texas

Includes obligation of POCCA to pay $200 Million to develop and construct two VLCC capable Berths and Docks
Effective December 10, 2019; Replacing Prior Lease Effective May 15, 2019; further extended by letter agreement on March 31, 2020
10-Year Term with right of Tenant to extend for four 10-Year Extension Terms

United States Army Corps of Engineers (USACE) Permit - Applied for by POCCA and Pending (Section 10 -
Construction of Berths and Docks/Section 404 - Dredging and Filling in of Wetlands/Section 408-Waterway
Easement/Section 103- Offshore Disposal)

Pond Engineering Report

Texas Commission for Environmental Quality (TCEQ) New Source Review (NSR) Air Permit
(application submitted May 2019 and pending)
For the Terminal / Vapor Combustion Units on the POCCA Site

2019 TCEQ Draft Permit
Modeling Files
2019 Second Public Notice
TCEQ Project Correspondence
2019 First Public Notice
2019 Initial TCEQ Application Submittal
2019 Calculation Update
2019 Site Layout
2019 Draft Permit for Preliminary
2019 Additional Information Requests
2019 Draft Permit 2
2019 Draft Permit 3
Lone Star Ports kmz file
Technical Review File

**Liabilities**

Rental Payments, Wharfage, Guaranty, and other obligations under the Lease; No Other Liabilities

## Axis Midstream Holdings, LLC

**Assets**

Midway Junction - Standard Oil and Gas Air Permit (issued by TCEQ 2nd Q 2019)

Redfish Bay (Aransas Pass) - Standard Oil and Gas Permit (issued by TCEQ 2nd Q 2019)

USACE Permit Applied for and Pending for Entire Pipeline from Midway Junction to Wood Tract Docks -
(Section 10 - Construction of Docks and Berths/Section 404 - Dredging and Filling in of Wetlands/Section 408 -
Waterway Easement/Section 103 - Offshore Disposal)

Initial USACE Section 404/10 Regulatory Permit Application
  Wetlands Delineation Reports
  Nautical Cultural Resources Report
  Special Aquatic Sites Report
  Terrestrial Cultural Resources Report (limited)
  Threatened and Endangered Species Report
  GIS Files

**Liabilities**

0

USACE 408 Real Estate Application

February 14, 2020 Submittal
Response to Public Notice
Attachment A - Revised Permit Drawings
Attachment B - Updated Construction Methodology Plan
Attachment C - Alternatives Analysis

April 24, 2020 Submittal
Attachment A - Updated USACE Application for Department of the Army Permit: 4345
Attachment B - USACE Form 4345 Supplemental Information
Attachment C - Updated Permit Drawings
Attachment D - Environmental Analysis for the Offshore Disposal of Dredged Material
Attachment E - Proposed Sampling and Analysis Plan of Dredged Material Proposed for Ocean Disposal
Attachment F - Updated Consistency Determination with the Texas Coastal Management Program
Attachment G - Updated Compensatory Mitigation Approach

Texas RRC T-4 Pipeline Permit #10096 Nueces, San Patricio County

Texas RRC T-4 Pipeline Permit #10097 Nueces, San Patricio County

Intellectual Property
Right of Way Studies and Identification
Land Survey Permissions and Status related to Harbor Island
Harbor Island Dock Facility Detailed Design
Harbor Island Crude Terminal - Engineering Design Estimated to be 90% Complete
    Civil Design
    Pipeline Alignments
    Architechural Design
    Fire Protection Study
    Mechanical
    Instrumentation and Electrical
Harbor Island Power Supply - Engineering Design Estimated to be 30% Complete
Lone Star Ports System Operations Philosophy
Controls Philosophy (Engineering Plan)
Ship Scheduling Procedure (created to support Commercial development)
Process Flow Diagrams for Midway Junction, Redfish Bay, and Harbor Island Facilities
Plot Plans for Midway Junction,, Redfish Bay, and Harbor Island Facilities
Aransas Pass Facility Station - Preliminary Layout and Hydraulic Calculation
Midway Facility Station - Preliminary Layout and Hydraulic Calculation
Preliminary Pricing Model
3D Design Engineering and Market Animation (Conceptual)
Legislative Consulting
Environmental Site Assessments Phase I (Midway Junction to Harbor Island Pipeline and Facilities)
Buffer Zones for Surveys
Property Tract Surveys
Tank Layouts and Cultural Site (Combined)
Project Documents (Various Miscellaneous)
Pipeline Route
Archeological Files, Goodwin Survey and Site Wetlands
Pipeline and Facility Footprints including Emergency Access Road

# APPENDIX 51

**Plaintiffs' Exhibit**

**08**

24-BC11A-0025



# LONE STAR PORTS PROJECT – HOLDING STRUCTURE

| Redfish Bay Terminals, Inc. | Capella Investments, LLC | Arcturus Investments, LLC | Sirius Investments, LLC | Allied Ports, LLC |
|---|---|---|---|---|
| 20% | 20% | 20% | 20% | 20% |

**Lone Star Ports Holdings, LLC**

100%

**Lone Star Ports Ventures, LLC**

100%

**Lone Star Ports Enterprises, LLC**

| 100% | 100% | 100% | 100% | 100% |
|---|---|---|---|---|
| Midway Junction Properties, LLC | Redfish Bay Properties, LLC | Harbor Island Properties, LLC | Lone Star Ports, LLC | Axis Midstream Holdings, LLC |

# APPENDIX 52

E-filed in the Office of the Clerk
for the Business Court of Texas
11/27/2024 1:23 PM
Accepted by: Beverly Crumley
Case Number: 24-BC11A-0025

**CAUSE NO. 24-BC11A-0025**

| | | |
|---|---|---|
| ALBERT THEODORE POWERS; ALLIED PORTS LLC, | § § § | IN THE BUSINESS COURT |
| *Plaintiffs,* | § § | |
| v. | § § § | ELEVENTH DIVISION |
| AXIS MIDSTREAM HOLDINGS, LLC; ALLEN LAWRENCE BERRY; MARVIN GLENN BERRY; AND BONNIE BERRY, as successor in interest to DENNIS WAYNE BERRY | § § § § § § | |
| *Defendants.* | § § | HARRIS COUNTY, TEXAS |

**PLAINTIFFS' VERIFIED THIRD AMENDED PETITION AND APPLICATION FOR TEMPORARY RESTRAINING ORDER AND TEMPORARY INJUNCTION**

**SUMMARY OF PLAINTIFFS' CLAIMS**

Plaintiffs Albert Theodore Powers ("Powers") and Allied Ports LLC ("Allied") file this lawsuit to protect their management rights and 20% interest in a crude oil delivery system and terminal project. The three Berry brothers entered into agreements with Powers wherein he and/or Allied was entitled to, among other things, a 20% ownership interest in a company called Lone Star Ports Holdings, LLC in connection with what is referred to as the Lone Star Ports Project. After working for years on the Project – and with the Project on the verge of taking off, Defendants Marvin Glenn Berry ("Marty") and Bonnie Berry, as successor in interest to Dennis Wayne Berry ("Bonnie"), have made clear they will not honor their agreements or acknowledge Allied's ownership interest in Lone Star Ports Holdings, LLC even though their own brother Defendant Allen Lawrence Berry ("Lawrence") acknowledges Plaintiffs' interest. Further, as set forth below, Marty and Bonnie are improperly trying to take control of Defendant Axis Midstream Holdings,

1

LLC ("Axis") by improperly and without authority purporting to call a meeting of Axis for the purpose of changing the Manager and officers of Axis and otherwise taking control of Axis for their own benefit to the exclusion of the Plaintiffs. In so doing, Marty and Bonnie are improperly interfering with the governance of Axis. Plaintiffs need immediate assistance from the Court to enjoin Defendants from conducting any unauthorized and improper meetings in which Marty and Bonnie intend to illegally and without authority transfer management, ownership and control of Axis into Berry GP, Inc. or another Berry-controlled entity outside the agreed holding structure for the Project and/or transfer the ownership, assets, tangible or intangible rights, or permits for the Project to another Berry controlled interest or otherwise interfere with the governance of Axis. What limited documents have been obtained thus far confirm that the Berry Defendants plan to take control of the Project and deprive Plaintiffs of their management and ownership interests. Without the Court's intervention, Plaintiffs will be irreparably harmed and will have no adequate remedy for the loss of their rights and interest.

## PARTIES

1.      Plaintiff Albert Theodore Powers is an individual residing in New York, New York. At the time of the events that are the subject of this lawsuit, he was a resident of New York, New York.

2.      Plaintiff Allied Ports, LLC is a Delaware limited liability company and designee of Powers' interest under the agreements with the Berry Defendants. Its registered agent's address is 16192 Coastal Hwy, Lewes, Delaware 19958.

3.      Defendant Marvin Glenn Berry is an individual residing in Nueces County, Texas. He can be served at 1414 Corn Products Road, Corpus Christi, Texas or wherever he may be found.

2

Defendant Marvin Glenn Berry may also be served through his counsel Doug Allison, Law Office of Douglas Allison,403 N. Tancahua St., Corpus Christi, Texas 78401.

4.      Defendant Bonnie Berry is an individual residing in Nueces County, Texas.  On information and belief,[1] she is the widow and successor in interest to Dennis Wayne Berry, who is deceased.  She can be served at 1414 Corn Products Road, Corpus Christi, Texas or wherever she may be found.  Defendant Bonnie Berry may also be served through her counsel Doug Allison, Law Office of Douglas Allison,403 N. Tancahua St., Corpus Christi, Texas 78401.

5.      Defendant Allen Lawrence Berry is an individual residing in Harris County, Texas. He can be served at 5005 Riverway, Suite 440, Houston, Texas 77056 or wherever he may be found.  Defendant Allen Lawrence Berry may also be served through his counsel Barrett Reasoner, Gibbs & Bruns, 1100 Louisiana Street, Suite 5300 Houston, Texas 77002.

6.      When appropriate, Marty, Bonnie, and Lawrence will be referred to collectively as the "Berry Defendants."

7.      Defendant Axis Midstream Holdings, LLC is a Texas limited liability company.  Its sole member and manager is Lone Star Ports Enterprises, LLC.  Axis has already been served through its alleged registered agent, Mike H. Hummell, at 1414 Valero Way, Corpus Christi, Texas 78409.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction because the relief sought is within the jurisdictional limits of this Court.  At this time, Plaintiffs seek monetary and non-monetary declaratory relief and attorneys' fees and expenses in excess of $10,000,000.  Tex. R. Civ. P. 47; Tex. Gov't Code 25A.001(14) (Qualified Transaction).

---

[1] Throughout this Petition, references to the "Berry Defendants" includes actions taken by Dennis Wayne Berry, whose interest in the Project discussed further below is now understood to be owned by his widow, Bonnie Berry.

9.     Venue is proper in this district because Powers, a citizen of New York, and the Berry Defendants, citizens of Texas, entered into agreements with a mandatory forum selection clause wherein each party consented to "exclusive jurisdiction" in Harris County, Texas to the exclusion of other courts and waived objections to Harris County as the forum and venue for the claims asserted in this lawsuit and others that may arise under the agreements. *See* **Ex. 2** (the "Investment Agreement") at § 5(a). Alternatively, the written agreements underlying Plaintiffs' claims constitute a "major transaction" providing for venue in Harris County, Texas. Tex. Civ. Prac. & Rem. Code § 15.020.[2] Venue is additionally proper because one of the defendants is a citizen of Harris County, Texas, and a substantial part of the events giving rise to Plaintiffs' claims occurred in Harris County, Texas. Tex. Civ. Prac. & Rem. Code §15.002.

## FACTS

10.     In 2018, Defendant Lawrence came up with the idea of creating a crude oil delivery and export facility in and around the Corpus Christi Port (the "Project"). Lawrence and his brothers Marty and Dennis decided to pursue the Project. The Project has been touted by the Port of Corpus Christi as a "state-of-the-art petroleum export terminal" and the "deepest-draft safe harbor crude export facility in the nation when commissioned."[3]

11.     On October 31, 2018, Defendant Lawrence telephoned Plaintiff Powers in New York and requested him to come to Houston because he and his brothers needed Powers' expertise for the Project. The Berry Defendants had previously worked with Powers (who was at the time of the prior engagement a business transaction lawyer). The Berry Defendants engaged Plaintiff

---

[2] While this lawsuit is based on agreements between Plaintiffs and the Berry Defendants, Plaintiffs are aware of a separate lawsuit pending in Corpus Christi among several members of the Berry family and employees of some of the companies that the Berry Defendants jointly own together. Plaintiffs are not parties to that lawsuit and do not seek to adjudicate any of the claims and issues being decided in that lawsuit.

[3] https://portofcc.com/port-of-corpus-christi-commission-approves-50-year-lease-agreement-with-carlyle-group-joint-venture/ (last accessed October 30, 2024).

4

Powers to represent them and advise them in shaping, structuring, securing financing for, and furthering development of the Project. The Berry Defendants sought Powers' expertise because they were in the process of negotiating with a private equity firm to obtain financing for the Project.

12. Powers met with Lawrence Berry in Houston in November 2018 to, among other things, discuss Powers' compensation in connection with his role in the Project. They agreed that Powers would be paid a base compensation of $100,000 per month plus expenses and receive a 20% interest in the Project subject to priority distributions to the Berry Defendants. This agreement was confirmed by the Berry Defendants at a later meeting in early December 2018.

13. This agreement was later memorialized in a written Compensation Agreement and written Investment Agreement in 2019 (collectively, the "Agreements"), confirming the compensation of $100,000 per month plus expenses and a 20% interest in the Project subject to priority distributions to the Berry Defendants of $250,000,000 plus a 10% preferred return on the outstanding balance of such amount. **Ex. 1**; **Ex. 2**. At the time that the Agreements were executed by the parties, Powers believed that the Project had a value in excess of $400,000,000. Thus, the value of Powers' ownership interest in the Project was in excess of $80,000.000.

14. At first, all parties performed the Agreements. Powers spent most of his working time in Houston where he stayed in an apartment paid for by the Berry Defendants, and he worked tireless hours on the Project. In addition, Powers was paid the $100,000 monthly stipend for his work for eighteen months and was reimbursed for expenses as set forth in the Agreements.[4] Powers has been paid more than $2,000,000 by the Berry Defendants under the Agreements.

---

[4] In January 2020, the Berry Defendants terminated the monthly compensation portion of the Compensation Agreement effective April 30, 2020, but requested that Powers continue to work on the Project. The Berry Defendants agreed that they would continue to reimburse Powers for his expenses incurred. Knowing he had an ownership interest in the Project, Powers agreed to do so. In response to the communication from the Berry Defendants, Powers confirmed that the termination of the monthly payment had no impact on the ownership interest in the Project under the terms of the Investment Agreement. The Berry Defendants continued to pay Powers' expenses under the agreement until June 2023, when the last payment from the Berry Defendants was received.

5

15. Powers' work involved developing and implementing a structure for the Project and trying to arrange a financing package for the Project. On behalf of the Berry Defendants and himself, Powers created several entities for the Project. The formation of these entities was paid for by the Berry Defendants. Powers also drafted operating agreements for those entities. Those documents were shared and fully discussed with all of the Berry Defendants. Never once did any of the Berry Defendants ever complain or assert that the holding structure being created and put in place by Powers was wrong or inconsistent with the agreement of the parties. In addition, there were various meetings (many of which took place in Houston, Texas) between Powers and the Berry Defendants to discuss the Project and the structure of the Project. In addition, Powers negotiated the terms of a potential transaction with a private equity firm on behalf of the Berry Defendants and himself. Eventually, in February 2019, Powers' efforts resulted in a signed term sheet with a well-respected private equity firm, the Carlyle Group, though that transaction ultimately was not completed. The term sheet with the Carlyle Group values the interest of the Berry Defendants in the Project at a minimum of $400,000,000 meaning that Plaintiffs' ownership interest in Lone Star Holdings, LLC and in the Project is worth at least $80,000,000. Under the terms of the Carlyle term sheet, the Berry Defendants were to receive at least $320,000,000 for their interest in the Project.

16. The Investment Agreement anticipates that Powers would create and structure the entities involved in the Project. **Ex. 2** at ¶¶ 1-2. Accordingly, Powers and the Berry Defendants set about to structure the chain of entities to hold different interests. Pursuant to the Investment Agreement, Powers formed and designated Plaintiff Allied Ports LLC to own his 20% interest. In

most of the documents exchanged between the parties, the agreed holding structure for the Project was as follows:



17.    In this agreed structure for the Project, the five owners of the Project are listed along the top.  Redfish Bay Terminals, Inc. ("Redfish") is believed to be owned or beneficially owned by Berry GP, Inc. (the Berry Defendants' company), Capella is believed to be beneficially owned by or for the benefit of Lawrence and his family, Arcturus is believed to be beneficially owned by or for the benefit of Bonnie (through Dennis) and her family, Sirius is believed to be beneficially owned by or for the benefit of Marty and his family, and Allied Ports is owned by Powers.  Thus, the Parties agreed that the Project is owned in equal percentages by the three Berry Defendants, Powers (subject to the $250 million hurdle and the 10% priority return thereon) and Redfish.  This structure was reaffirmed and further memorialized in two separate written Amended and Restated Operating Agreements of Lone Star Ports Holdings, LLC (including the current Operating Agreement) and has been in place for more than five years.  Now that the permit for the Project has been obtained from the U.S. Army Corps of Engineers, the Project is worth significantly more

7

than when the Carlyle Group entered into its term sheet. Indeed, counsel for Marty and Bonnie Berry recently announced to Judge Palmer in the 215th District Court that the Project has a value in excess of $1 billion. Using that valuation (and the true value may be more), the value of Plaintiffs' ownership interest in Lone Star Holdings, LLC and in the Project is worth more than $200 million.

18. Of the several entities formed, in particular focus in this lawsuit (and the temporary relief sought) is Defendant Axis. Axis holds intangible property of the Project, including the permitting rights associated with development of the Project. Axis's sole Member and Manager is Lone Star Ports Enterprises, LLC ("LSPE"), which through the chain of entities above is ultimately managed by Plaintiffs.[5] Most importantly, none of the Berry Defendants (including Marty and Bonnie) have individual ownership or management rights in Axis. Relevant to this dispute, only LSPE has the right to call a meeting of Axis – and Marty and Bonnie have no right to call such a meeting.

19. During the first six years of the development of the Project, almost all of the work was performed by Lawerence, Powers, staff, and third-party consultants. Very little, if any, of the work was done by Marty or Dennis Berry. However, things changed in 2024 when Marty and Bonnie sensed that the most important Federal permit for the Project was about to be approved. Now, Marty and Bonnie contend that the Project is owned by the Berry Defendants and that the Plaintiffs have no ownership interest in the Project. On July 26, 2024, Powers was alerted that a meeting was being called of the "Shareholders, Directors and Owners" of some of the entities involved in the Project, including Axis. *See* **Ex. 6**. Notably, none of the owners of Axis actually

---

[5] LSPE's sole Member and Manager is Lone Star Ports Ventures, LLC ("LSPV"). LSPV's sole Member and Manager is Lone Star Ports Holdings, LLC ("LSPH"). LSPH has five Members, each owning 20% of the membership units. Plaintiff Allied Ports LLC is LSPH's sole Manager. Plaintiff Powers is the sole Manager of Allied Ports LLC.

called the meeting and those who purported to call the meeting are not owners or managers of Axis and have no legal authority to call such a meeting. In response to the attempt to call this meeting, Powers notified the Berry Defendants that he was a 20% owner of the Project and that he wanted to attend any meetings that involved the Project. *See* **Ex. 7**. Powers did attend the meeting that took place on August 6, 2024. During the course of that meeting, Powers once again described the holding structure for the Project, that Allied Ports LLC owned 20% of Lone Star Ports Holdings, LLC and that Axis was owned and managed by Lone Star Ports Enterprises, LLC. None of the Berry Defendants challenged Plaintiffs' ownership interest in the Project (or in Lone Star Ports Holdings, LLC) and none of the Berry Defendants disputed Powers' description of the holding structure for the Project. Nor did any of the Berry Defendants object to Powers' request to be notified of any future meetings to discuss or address any aspect of the Project.

20. Despite the information that was shared with the Berry Defendants at the August 6, 2024 meeting setting forth the holding structure for the Project, on August 28, 2024, Mike Hummell, the General Counsel of Berry GP, Inc. wrote to Lawerence expressing that the Project was ***only*** owned by the Berry Defendants:

> The Berry Companies appreciate your stated willingness to make sure that each of the companies owned jointly by you, Dennis (now Bonnie) and Marty are properly papered to reflect that ownership and management rest exclusively with the three of you. As of this writing I have not seen anything to reflect follow through on your commitment. For entities which list you as sole manager, you can make the changes without the need for any additional meetings. Some of the entities reflected involvement of people that were not or have not been approved by the Owners. Getting these matters clarified is good for everybody.

9

**Ex. 3**. Stated differently, the Berry Companies were now trying to proceed with the Project without including Plaintiffs and were seeking to deprive the Plaintiffs of the ownership that they had earned.

21. In the same letter, Hummell suggested that ownership and control of the Project should be transferred to Berry GP or any Berry-owned entity. *See id.* ("I suggest you, Bonnie and Marty consider consolidating ownership into a Berry entity to reflect this.").

22. In the same letter, Hummell recognized that Berry GP, Marty, or Bonnie did not own Axis and that it was instead owned by Lone Star Ports Enterprises LLC—one of the entities in the chain of ownership created as contemplated by the Investment Agreement. *Id*. The letter further requested that Lawrence provide Marty and Bonnie "with the name or names of the true owner of Axis Midstream Holdings, LLC." *Id*.

23. On October 22, 2024, the Project received monumental news—the Department of the Army issued Axis a permit for construction of the Project. Almost six years of work was beginning to take shape. But just one day later, Berry GP's General Counsel Hummell sent an email (acting for Berry GP, Marty, and Bonnie) indicating that he was "going to file paperwork" to change the ownership of Axis *solely* to the Berry Defendants, even after he previously recognized that the Berry Defendants did not own Axis. **Ex. 4**. Changing the ownership of Axis is part of an overall plan to divest Plaintiffs of their interest by breaching the Investment Agreement by taking Axis out of the established and agreed ownership chain of the Project now that the permit has been issued.

24. Marty and Bonnie purported to call a "meeting of owners" of Axis for November 6, 2024, where they intended to take action on (1) "Appointment and/or removal of Company Managers" and (2) Appointment and/or removal of Officers." **Ex. 5**. This meeting was obviously

improper given Marty and Bonnie are admittedly not "owners" of Axis. Further, Marty and Bonnie intentionally did not provide notice of this meeting to Powers as he had previously requested. Moreover, changing the ownership and management would effectively divest Plaintiffs of their ownership and management rights in the Project, which constitutes a breach of the Investment Agreement. Moreover, the purported meeting of Axis violates the governing documents of Axis which give the sole right to call such a meeting to LSPE. As such, the action of Defendants Marty and Bonnie Berry affect the internal affairs of Axis. On October 31, 2024, Judge Reeder, sitting as the Ancillary Judge for Harris County, issued a Temporary Restraining Order that, among other things, restrained the November 6, 2024 meeting from moving forward. For the reasons set forth below, Plaintiffs assert their causes of action and seek the Court's assistance to enjoin the defendants from interfering with their ownership rights in the Project, interfering with the appropriate governance and internal affairs of Axis or otherwise interfering with the Project.

## CAUSES OF ACTION
### COUNT I- DECLARATORY JUDGMENT

25. Plaintiffs reallege and incorporate all preceding allegations.

26. Plaintiffs seek a declaratory judgment to determine the rights, status, or other legal relations of the parties related to the ownership, the applicable operating agreements, and holding structure of the project at issue. See Tex. Civ. Prac. & Rem. Code § 37.004(a). A dispute exists between the parties, as the Investment Agreement sets forth the proper entity structure, ownership, and management of the Project. Importantly, the Investment Agreement may be construed by the Court before there has been an actual breach. Tex. Civ. Prac. & Rem. Code 37.004.

27. Plaintiffs seek the following declarations:

11

a. The Compensation Agreement is a valid, enforceable, agreement against Lawrence Berry, Marty Berry, and Bonnie Berry (as successor to Dennis Berry);

b. The Investment Agreement is a valid, enforceable agreement against Lawrence Berry, Marty Berry, and Bonnie Berry (as successor to Dennis Berry);

c. The Investment Agreement provides that Plaintiff Powers owns, through his designee, Allied Ports, LLC, a twenty percent (20%) interest in the Project (as defined in the Investment Agreement) subject to "priority distributions to the Berry Defendants or their designees of Two Hundred Fifty Million United States Dollars ($250,000,000) plus a ten percent (10%) cumulative preferred return on the outstanding balance of such amount."

d. Transferring ownership, management, and control of Axis or any other interest of the entities involved in the Project inconsistent with the entity structure provided under the Investment Agreement constitutes a breach of the Investment Agreement.

## COUNT II- BREACH OF CONTRACT

28. Plaintiffs reallege and incorporate all preceding allegations.

29. Under the Compensation Agreement, Powers is entitled to be paid for the expenses he has incurred and continues to incur in connection with this work on the Project. Powers performed and continues to perform by providing the services set forth in the Agreements.

30. Lawrence, Marty, and Bonnie (through Dennis) have failed to pay Powers' expenses incurred under the Compensation Agreement breaching the Agreements.

31.   Powers has been damaged in an amount that exceeds the jurisdictional limits of this Court.

<h2 style="text-align:center">REQUEST FOR TEMPORARY INJUNCTION</h2>

32.   Plaintiffs reallege and incorporate all preceding allegations.

33.   Marty and Bonnie have breached and/or intend to breach their agreements with Plaintiffs and have expressed their intent to proceed with a course of action that will result in additional breaches in the future.  More specifically, Marty and Bonnie have expressed (through the General Counsel of their company) their intent to take the Project for the three Berry Defendants and to deprive Plaintiffs of their ownership interest.  As part of this plan to steal Plaintiffs' interest in the Project, Marty and Bonnie have devised a plan to either transfer Axis to another Berry entity or transfer assets held by Axis to another Berry entity.  If Marty and Bonnie are allowed to proceed to transfer ownership, management, and control of Axis to themselves, Plaintiffs will be deprived of their agreed to and bargained for management rights and 20% interest in the Project.  Indeed, "loss of management rights over a company are unique, irreplaceable, and cannot be measured by a certain pecuniary standard." *Cheniere Energy, Inc. v. Parallax Enterprises LLC*, 585 S.W.3d 70, 83 (Tex. App.—Houston [14th Dist.] 2019, pet. dism'd); *see also Sonwalker v. St. Luke's Sugarland P'ship, L.L.P.*, 394 S.W.3d 186, 201 (Tex. App.—Houston [1st Dist.] 2012, no pet.) (holding that termination of interest in a limited liability partnership would irreparably injure the Plaintiff because the Plaintiff would lose management rights like selecting a governing board and blocking major actions).

34.   If Defendants are not immediately enjoined from violating the Investment Agreement, Plaintiffs will suffer concrete, particularized and irreparable harm.  Plaintiffs will lose

their management rights and 20% interest, both of which are unique and cannot be purchased on the open market.

35. Therefore, absent Court intervention, Plaintiffs will have no adequate remedy at law. The only adequate relief, while the merits of the claims are being determined, is to maintain the status quo of ownership of Axis and all other entities and assets associated with the Project. Otherwise, Plaintiffs bargained-for rights and interest could be irreparably lost forever.

36. The injury to Plaintiffs should Defendants be allowed to proceed with breaching their agreements would greatly outweigh any injury (to the extent there is injury at all) to Defendants in delaying any change in ownership of Axis or of any other entity, property, or tangible or intangible rights associated with the Project until the Court rules on the merits of Plaintiffs' claims.

37. To preserve the status quo and Plaintiffs' rights during the pendency of this action, Plaintiffs respectfully request that the Court grant and enter a temporary injunction precluding Defendants, their employees, agents, representatives, and any others acting on their behalf from taking any of the following actions unless expressly permitted by this Court to do so:

    a. Holding any meetings or taking any action for or on behalf of Axis unless called by or approved by the Manager Lone Star Ports Enterprises, LLC;

    b. Changing, altering, or transferring in any way the permit (SWG-2018-00789) issued to Axis;

    c. Changing, altering, or transferring in any way the ownership, management, or tangible or intangible rights of Axis;

14

d.  Changing, altering, or transferring in any way the ownership, management, assets, or tangible or intangible rights held by the entities formed for the Project which is the subject of this lawsuit;

e.  Holding any meetings that in any way seek to affect the management or ownership interest of Powers or Allied Ports, LLC in the Project or in any of the entities formed for the Project;

f.  Taking any action that would impact or affect Powers' or Allied Ports, LLC's 20% ownership interest in the Project that is the subject of this lawsuit or in any of the entities formed for the Project;

## CONDITIONS PRECEDENT

38.  All conditions precedent have been performed or have been excused or waived.

## ATTORNEYS' FEES

39.  Plaintiffs invokes and pleads Chapters 37 and 38 of the Civil Practices and Remedies Code of the State of Texas and requests an award of attorneys' fees thereunder.

40.  Plaintiffs had to retain the undersigned law firm to file this lawsuit and protect their rights. Plaintiffs request that this Court grant such attorney's fees as this Court may deem reasonable and necessary for representing it in this action and for any appeals thereafter.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury in this action of all claims so triable.

## PRAYER FOR RELIEF

Plaintiffs request the following relief:

A.  A Declaration that:

a. The Compensation Agreement is a valid, enforceable, agreement against Lawrence Berry, Marty Berry, and Bonnie Berry (as successor to Dennis Berry);

b. The Investment Agreement is a valid, enforceable agreement against Lawrence Berry, Marty Berry, and Bonnie Berry (as successor to Dennis Berry);

c. The Investment Agreement provides that Plaintiff Powers owns, through his designee, Allied Ports, LLC, a twenty percent (20%) interest in the Project (as defined in the Investment Agreement) subject to "priority distributions to the Berry Defendants or their designees of Two Hundred Fifty Million United States Dollars ($250,000,000) plus a ten percent (10%) cumulative preferred return on the outstanding balance of such amount."

d. Transferring ownership, management, and control of Axis or any other interest of the entities involved in the Project inconsistent with the entity structure provided under the Investment Agreement constitutes a breach of the Investment Agreement.

B. Compensatory damages in an amount to be proven at trial;

C. Temporary and Injunctive Relief precluding Defendants, their employees, agents, representatives, and any others acting on their behalf from taking any of the following actions unless expressly permitted by this Court to do so:

a. Holding any meetings or taking any action for or on behalf of Axis unless called by or approved by the Manager Lone Star Ports Enterprises, LLC;

b. Changing, altering, or transferring in any way the permit (SWG-2018-00789) issued to Axis;

c. Changing, altering, or transferring in any way the ownership, management, or tangible or intangible rights of Axis;

d. Changing, altering, or transferring in any way the ownership, management, assets, or tangible or intangible rights held by the entities formed for the Project which is the subject of this lawsuit;

e. Holding any meetings that in any way seek to affect the management or ownership interest of Powers or Allied Ports, LLC in the Project or in any of the entities formed for the Project;

f. Taking any action that would impact or affect Powers' or Allied Ports, LLC's 20% ownership interest in the Project that is the subject of this lawsuit or in any of the entities formed for the Project;

D. An award of attorneys' fees in an amount to be proven at trial;

E. Pre- and post-judgment interest; and

F. All such other and further costs and relief as the Court deems just and proper.

DATED: November 27, 2024

Respectfully submitted,

*/s/ Alistair B. Dawson*
Alistair B. Dawson
State Bar No. 05596100
M. Jake McClellan
State Bar No. 24109525
Madeline E. Gay
State Bar No. 24138681
E-mail: adawson@beckredden.com
E-mail: jmcclellan@beckredden.com
E-mail: mgay@beckredden.com
1221 McKinney Street, Suite 4500
Houston, Texas 77010-2010
Telephone:     (713) 951-3700
Telecopier:    (713) 951-3720

**ATTORNEYS FOR PLAINTIFFS**

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of this document was served on counsel of record in this matter in accordance with Rules 21 and 21a of the Texas Rules of Civil Procedure on this 27th day of November, 2024.

*/s/ M. Jake McClellan*
M. Jake McClellan

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Lisa Verm on behalf of Alistair Dawson
Bar No. 5596100
lverm@beckredden.com
Envelope ID: 94778675
Filing Code Description: Amended Filing
Filing Description: Plaintiffs' Verified Third Amended Petition and Application for Temporary Restraining Order and Temporary Injunction
Status as of 11/27/2024 2:07 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Barrett H.Reasoner | | breasoner@gibbsbruns.com | 11/27/2024 1:23:20 PM | SENT |
| Michael R.Absmeier | | mabsmeier@gibbsbruns.com | 11/27/2024 1:23:20 PM | SENT |
| Rosa Brennan | | rbrennan@gibbsbruns.com | 11/27/2024 1:23:20 PM | SENT |
| Douglas Allison | 1083500 | doug@dallisonlaw.com | 11/27/2024 1:23:20 PM | SENT |
| Alistair Dawson | 5596100 | adawson@beckredden.com | 11/27/2024 1:23:20 PM | SENT |
| Michael Hummell | 10271100 | hummellm@bayltd.com | 11/27/2024 1:23:20 PM | SENT |
| Michael McClellan | 24109525 | jmcclellan@beckredden.com | 11/27/2024 1:23:20 PM | SENT |
| Sydney Ballesteros | | sballesteros@gibbsbruns.com | 11/27/2024 1:23:20 PM | SENT |
| Madeline Gay | | mgay@beckredden.com | 11/27/2024 1:23:20 PM | SENT |
| Business Court 11A | | BCDivision11A@txcourts.gov | 11/27/2024 1:23:20 PM | SENT |
| Roxanne Graham | | rgraham@gibbsbruns.com | 11/27/2024 1:23:20 PM | SENT |
| Christina Pena | | cpena@gibbsbruns.com | 11/27/2024 1:23:20 PM | SENT |
| Kim Brunkenhoefer | | kim@dallisonlaw.com | 11/27/2024 1:23:20 PM | SENT |
| Susan Gonzales | | susan@dallisonlaw.com | 11/27/2024 1:23:20 PM | SENT |
| Bruce Baldree | | bbaldree@gibbsbruns.com | 11/27/2024 1:23:20 PM | SENT |

# APPENDIX 53

CAUSE NO.: 2024DCV-0045-C

| | | |
|---|---|---|
| LAWRENCE BERRY, individually and as Trustee of the ALLEN LAWRENCE BERRY TRUST, directly and derivatively on behalf of BECON, INC.; LDMA LIMITED PARTNERSHIP; and BERRY GP, INC.; | § § § § § § § | IN THE DISTRICT COURT OF |
| *Plaintiff,* | § § | |
| BERRY GP, INC.; LDMA LIMITED PARTNERSHIP; and BECON, INC.; | § § § | |
| *Nominal Plaintiffs,* | § § § | NUECES COUNTY, TEXAS |
| v. | § § § | |
| MARTY BERRY, MICHAEL HUMMELL, BERRY GP, INC., BERRY OPERATING COMPANY LLC, and BERRY CONTRACTING LP; | § § § § § | **JURY TRIAL DEMANDED** |
| *Defendants.* | § § § | 94th JUDICIAL DISTRICT |

### ALLEN LAWRENCE BERRY'S RESPONSE IN OPPOSITION TO APPLICATION FOR TEMPORARY RESTRAINING ORDER AND TEMPORARY INJUNCTION

### I.      INTRODUCTION

Plaintiff and Counter-Defendant Allen Lawrence Berry (herein after "Lawrence") files this Response in Opposition to Counter-Plaintiffs' Berry G.P., Inc. ("Berry GP") and Redfish Bay Terminals' ("RBT," and together with Berry GP "Movants") Application for Temporary Restraining Order and Temporary Injunction. Movants' Application seeking to enjoin Lawrence from challenging Berry GP's ownership of Axis Midstream Holdings, LLC (hereinafter "Axis") is nothing more than an unconcealed attempt to end run around a recently filed order in Judge Adrogué's 11th District Texas Business Court in a separate lawsuit filed by third parties relating to the ownership of Axis and the Lone Star Ports Project.

1

Glaringly absent from Movants' Application to this Court is **<u>any</u>** mention of the earlier Petition and Request for Temporary Injunction filed in Harris County District Court on October 31, 2024, by Albert Theodore Powers ("Ted Powers") and his company Allied Ports, LLC ("Allied Ports"), which was later removed to the 11th District Business Court by Lawrence (the "Business Court Lawsuit"). The Business Court Lawsuit was filed against Lawrence as well as against Bonnie Berry and Marty Berry—both Counter-Plaintiffs in this litigation—and specifically seeks injunctive relief relating to the ownership and management of Axis. Also absent from Movants' Application is any disclosure to this Court that ***for the past several months*** the Business Court has entertained and ultimately rejected Marty and Bonnie Berry's proffered dominant jurisdiction arguments to abate and/or transfer that Axis-related Business Court Lawsuit to the Court here in Nueces County.[1]

Finally, and most incredibly, Movants failed to inform this Court that on January 17, 2025, Judge Adrogué signed an order denying Marty and Bonnie Berry's motions to abate and transfer the Business Court Lawsuit, and that she has now set Plaintiffs Ted Powers and Allied Port's Application for a Temporary Injunction relating to the ownership and control of Axis for an evidentiary hearing next week, on January 29 and 30. Without disclosing any of these facts, and a mere four days after Judge Adrogué's Order and one week before said Injunction Hearing, Movants Berry GP and RBT now seek to have this Court interfere with the Business Court's jurisdiction by enjoining Lawrence's conduct, speech, and potential testimony related to the ownership of Axis that is the very centerpiece of the Injunction Hearing proceeding in Judge Adrogué's Court next week. Such gamesmanship is entirely improper and should be rejected.

---

[1] For the avoidance of doubt, Ted Powers, one of the two Plaintiffs in the Harris County Business Court Lawsuit, has no relation to the former CEO of Berry GP, Rob Powers, who was formerly a Defendant in this Lawsuit.

Further, Movants' Application is not only an improper circumvention of Judge Adrogué's recent ruling; it is also improper because Berry GP and RBT cannot prove imminent or probable harm, nor can they demonstrate a probable right to relief. For these reasons and the reasons stated below, Movants' Application should be denied.

## II.      FACTUAL BACKGROUND

### A.      Undisclosed Facts Relating to the Existing Business Court Lawsuit Related to Axis

On November 27, 2023, Plaintiff Lawrence filed this lawsuit—directly and derivatively on behalf of Becon, Inc.; LDMA Limited Partnership; and Berry GP—and sued Marty Berry, Mike Hummell and three Berry Entities (as nominal defendants) for various breaches of fiduciary duties and self-dealing transactions related to those three Berry Entities,[2] and sought injunctive relief against those defendants. *See generally* Pls.' 2nd Am. Pet. (filed 10/11/24) (the "Nueces County Lawsuit").[3] None of Lawrence's claims in this Nueces County Lawsuit relate to Axis or the Lone Star Ports Project (hereinafter "the Project"). Indeed, Ted Powers, Allied Ports, Axis, the Project,

---

[2] Berry GP; Berry Operating Company LLC; and Berry Contracting LP are defined in the Nueces County Lawsuit as the "Berry Entities." *See* Ex. 4 ¶ 1. The other Berry entities at issue in this Lawsuit are LDMA Limited Partnership and Becon, Inc. *See id.* ¶¶ 25-27.

[3] Specifically, in this lawsuit, Lawrence alleged that:
- Marty, with the assistance of Hummell and other management, imperiled a longstanding Berry GP line of credit in excess of $50 million, causing the line of credit to be placed in default, *see id.* ¶¶ 3, 45-56;
- Marty, with the assistance of Hummell and other management, colluded in secret to authorize $75 million in self-dealing loans between Berry GP and Marty and Dennis, *see id.* ¶¶ 37-41;
- Marty has been secretly usurping Berry GP corporate opportunities by buying cranes through a personally owned business named Western Gulf Equipment and then leasing them back to Berry GP, *see id.* ¶¶ 3, 72, 117; and
- Marty and the other defendants, in violation of the Berry GP bylaws, secretly attempted to sell a valuable Berry GP dock facility without notice to or approval of the Berry GP Board of Directors, *see id.* ¶¶ 3, 104.

and the Investment and Consulting Agreements regarding that Project are not mentioned anywhere in Lawrence's Petition in this Nueces County lawsuit. *See id.*[4]

On January 23, 2024, Marty and the three named Berry Entities filed counterclaims against Lawrence. *See* Counter-Pls.' 1st Am. Pet. (filed 4/15/24). They alleged mismanagement and conversion by Lawrence related to the use of funds pertaining to a series of companies Lawrence owns, referred to as "Orca." *See* Ex. 5 ¶¶14-20. Again, these counter-claims were entirely focused on the Orca transaction and were unrelated to the ownership interests of Axis or the Lone Star Ports Project.

On October 31, 2024, Ted Powers and Allied Ports filed their Original Petition and Motion for a Temporary Restraining Order and Temporary Injunction against Axis and the Berry Defendants in the 215th District Court of Harris County, Texas, Cause No. 2024-76060. *See* Ex. A (Oct. 31, 2024 Petition and Application for TRO). They did so when they learned that Marty and Bonnie Berry attempted to improperly call a meeting of Axis. *See id.* ¶ 22. That Harris County Business Court Lawsuit centers on the alleged breach of an Investment Agreement and Consulting Agreement and on Ted Powers' and Allied Ports' claimed 20% ownership and management

---

[4] Indeed, as the Court may recall from the lengthy three-day hearings on Lawrence's Application for an Injunction, on February 16, March 22, and March 25, 2024, that nowhere in the hundreds of pages of testimony and evidence admitted was Powers, Allied Ports, Axis, or the Investment and Compensation Agreements even mentioned. And the Lone Star Ports Project was mentioned only once in passing in response to a background question regarding what Lawrence's assistant, Tonja Fulghum, was currently working on for Lawrence. *See* Ex. 8, at 268:1-2 (3/25/24 Transcript).

interests in the Project. Plaintiffs' claims in the Business Court Lawsuit also center on the proper ownership and control of Axis, one of the Project entities. *See id.*, *e.g.*, ¶¶ 18[5] & 22-23.[6]

Plaintiffs in the Business Court Lawsuit secured a temporary restraining order in Harris County on the same day and subsequently amended their petition and request for a temporary injunction, with the latest amendment on November 27, 2024. *See* Ex. B (Pls.' 3rd Am. Pet.).

On November 8, 2024, Marty and Bonnie filed a Motion to Transfer Venue ("Motion to Transfer") and a Plea in Abatement/Motion to Abate ("Motion to Abate"), followed by a Motion for Leave to File Motion to Transfer Venue on November 11, 2024. *See* Exs. C & D.

After a short hearing on November 12, 2024—which did not delve into the merits of any pending motions or the Plaintiffs' application for injunctive relief—the 215th District Court of Harris County extended the temporary restraining order to November 28, 2024. *See* Ex. E (11/14/24 Order).

Lawrence then timely removed that lawsuit to the 11th Division of the Business Court of Harris County on November 15, 2024. *See* Ex. F (11/15/24 Notice of Removal).

Marty and Bonnie Berry then filed their Motion to Remand in the Business Court Lawsuit on November 20, 2024, incorporating most of their arguments from their previously filed Motion to Transfer and Motion to Abate. *See generally* Ex. G (Motion to Remand). That Motion to

---

[5] "Of the several entities formed, in particular focus in this lawsuit (and the temporary relief sought) is Defendant Axis. Axis was formed to hold intangible property of the Project, including the permitting rights associated with development of the Project. Axis's sole Member and Manager is Lone Star Ports Enterprises, LLC ("LSPE"), which through the chain of entities above is ultimately managed by Plaintiff Allied Ports, LLC."

[6] "Changing the ownership of Axis is part of an overall plan to divest Plaintiffs of their interest by breaching the Investment Agreement by taking Axis out of the established and agreed to ownership chain of the Project now that the permit has been issued. Marty and Bonnie have purported to call a "meeting of owners" of Axis for November 6, 2024, where they intend to take action on (1) "Appointment and/or removal of Company Managers" and (2) Appointment and/or removal of Officers." Ex. 5. This meeting is obviously improper given Marty and Bonnie are admittedly not "owners" of Axis."

5

Remand contended that the Court here in Nueces County had dominant jurisdiction over the claims asserted in the Business Court Lawsuit. *See generally id*. Plaintiffs Ted Powers and Allied Ports and Defendant Lawrence responded to those arguments, arguing that no dominant jurisdiction could exist in Nueces County because (i) venue was improper in Nueces County (and was only proper in Harris County) and thus it could not have dominant jurisdiction as a matter of law; and (ii) that there was no substantial overlap between this suit and the Business Court Lawsuit that would warrant such a finding. *See* Ex. H (ALB's Response to Motion to Remand); Ex. I (Plaintiffs' Response to Plea in Abatement).

As a last -ditch effort to create some purported overlap between the Nueces County Lawsuit and the Business Court Lawsuit, Counter-Plaintiffs amended their counterclaims in this Nueces County Lawsuit on December 3, 2024, just before the hearing on their Motions to Remand, Transfer, and Abate to include references to Axis ownership. *See* Counter-Pls.' 2d Am. Pet. (filed 12/3/24).

After full briefing on these issues, Judge Adrogué held a lengthy hearing on December 6, 2025. Judge Adrogué then requested additional briefing from the parties to the Business Court Lawsuit, which was submitted on January 9, 2025. *See* Exs. J & K (Moving Parties' & Responding Parties' Briefs on Signature Issue).

On January 17, 2025, Judge Adrogué signed an order denying the Motions to Abate, Transfer, and Remand. *See* Ex. L. She has set aside January 29 and January 30 for the consideration of Plaintiffs Ted Powers' and Allied Port's Application for Injunctive Relief as it relates to Axis and the Project. *See* Ex. M (Notice of Hearing).

As part of that hearing set for January 29 and 30, Ted Powers and Allied Ports are seeking the following injunctive relief, *which includes any changes to the ownership or management of Axis* and the Lone Star Ports Project:

> To preserve the status quo and Plaintiffs' rights during the pendency of this action, Plaintiffs respectfully request that the Court grant and enter a temporary injunction precluding Defendants, their employees, agents, representatives, and any others acting on their behalf from taking any of the following actions unless expressly permitted by this Court to do so:
>
> a. ***Holding any meetings or taking any action for or on behalf of Axis unless called by or approved by the Manager Lone Star Ports Enterprises, LLC***;
>
> b. ***Changing, altering, or transferring in any way the permit (SWG-2018-00789) issued to Axis***;
>
> c. ***Changing, altering, or transferring in any way the ownership, management, or tangible or intangible rights of Axis***;
>
> d. Changing, altering, or transferring in any way the ownership, management, assets, or tangible or intangible rights held by the entities formed for the Project which is the subject of this lawsuit;
>
> e. ***Holding any meetings that in any way seek to affect the management or ownership interest of Powers or Allied Ports, LLC in the Project or in any of the entities formed for the Project***;
>
> f. Taking any action that would impact or affect Powers' or Allied Ports, LLC's 20% ownership interest in the Project that is the subject of this lawsuit or in any of the entities formed for the Project.

Ex. B ¶ 37 (Pls. Third Am. Pet. and Application for TRO and Injunctive Relief) (emphasis added).

Lawrence is currently under subpoena by Plaintiffs in the Business Court Lawsuit and plans to testify fully and truthfully as to his understanding of the true ownership of Axis. *See* Ex. N (Subpoena).

In their Application to this Court, Movants seek to enjoin Lawrence "and all those acting in concert with him" from "(1) filing any document with the Texas Secretary of State changing, modifying, or altering any information about Axis Midstream Holdings LLC, absent a majority vote of its Manager/Member (Berry GP or RBT); (2) calling for or holding any Members' meetings

7

purportedly on behalf of Axis Midstream Holdings LLC; (3) taking any action (through any person or company, including Lone Star Ports Enterprises LLC) purportedly as Member(s) and/or Manager(s) of Axis Midstream Holdings LLC; and (4) representing or suggesting to others any right of ownership or control of Axis Midstream Holdings LLC, except for Berry GP's (RBT's) 100% ownership and sole control – all such injunctive relief pending further Order from this Court or a final adjudication of the merits." *See* Movants' Application for TRO & TI (filed 01/21/2025) at 20-21.

**B.      The Corporate Documents and Conduct of the Parties Confirm that Axis is NOT 100% Owned by Berry GP.**

On September 20, 2017, Lawrence as the sole member of Axis transferred a 100% interest in Axis to Gansevoort ("Gansevoort") Investments LLC. *See* Movants' Ex. 3 ("Transfer Agreement"). On November 30, 2017, Lawrence as the Manager of Gansevoort transferred 100% interest in Axis to Berry GP. *See* Movants' Ex. 5 ("Transfer Agreement").

In 2018, Lawrence conceived the idea to create a state-of-the-art, crude oil delivery facility, earlier referred to here as the Lone Star Ports Project (the "Project"), and his brothers Marty and Dennis decided to pursue the Project with him. In October of that same year, Lawrence and his brothers engaged Ted Powers to assist in structuring and securing financing for the Project. Of the several entities formed related to the Project, Axis holds intangible property of the Project, including the permitting rights associated with development of the Project. *See* Ex. O (Lone Star Ports Project Organizational Chart).

As part of the structuring of the Project, on April 21, 2020, Berry GP transferred 100% of its interest in Axis to RBT. *See* Ex. P (Transfer of Interest Agreement and Change of Manager). On that same day, RBT transferred 100% of its interest to Lone Star Ports Holdings LLC. *Id*. (attaching Transfer of Interest and Change of Manager Agreements). Lone Star Ports Holdings

8

LLC then transferred 100% of its interest in Axis to Lone Star Ports Enterprises. *See id.* These documents were signed by Lawrence and Dennis at the Berry GP offices in Corpus Christi, while the Berry brothers were all together. The documents were then sent by Ted Powers to a potential third-party investor—Scott Baker—on April 23, 2020, with Lawrence, Dennis, and Marty copied on the emails, representing to Baker that the documents reflected the current ownership structure of the Project. *Id.*; *see also* Ex. Q (email attaching Axis, LSPE, and LSPV Operating Agreements). At no point did Marty or Dennis object that the documents were invalid or that the structure represented therein was improper.

Under the structure reflected in the April 21, 2020 documents signed by Dennis and Lawrence, and represented as accurate to a third-party investor, Axis' sole Member and Manager is Lone Star Ports Enterprises, LLC ("LSPE").[7] Only LSPE has the right to call a meeting of Axis.

Thus, as of April 21, 2020, the corporate documents reflect Berry GP was no longer the 100% interest owner or manager of Axis.

### III. ARGUMENT

**A. Movants Seek to Improperly Enjoin Lawrence Regarding Axis**

**1. Movants Fail to Disclose the Business Court Lawsuit and Attempt to End Run That Court's Order**

Movants Berry GP and RBT's Application is nothing more than an improper attempt to circumvent and disregard the carefully considered Order issued by Judge Adrogué relating to the Business Court Lawsuit which centers on the ownership and management of Axis and the Project. *See* Ex. L (1/17/25 Business Court Order). Plaintiffs Ted Powers and Allied Ports filed their

---

[7] LSPE's sole Member and Manager is Lone Star Ports Ventures, LLC ("LSPV"). LSPV's sole Member and Manager is Lone Star Ports Holdings, LLC ("LSPH").

original TRO and Application for Temporary Injunction after learning that Marty and Bonnie Berry had improperly called a meeting of Axis which they had no authority to do and were claiming a 100% ownership interest in Axis. *See* Ex. A (Pls.' Oct. 31, 2024 TRO). Marty, Bonnie, and Axis then sought to abate the Business Court Lawsuit in favor of this Nueces County lawsuit or otherwise transfer the Business Court Lawsuit to this Court. *See* Exs. C & D (Motions to Abate/Transfer/Remand). After pages upon pages of briefing and hours of argument, on January 17, 2025, the Business Court declined to transfer, abate, or remand the Business Court Lawsuit. *See* Ex. L (1/17/25 Business Court Order).

Further, after weeks of scheduling attempts, the Business Court set Ted Powers' and Allied Port's application for injunctive relief for hearing on January 29-30, 2025 (the "Injunction Hearing"). Ownership and management of Axis will be a central issue at the Injunction Hearing. Lawrence has been subpoenaed by Plaintiffs in the Business Court Lawsuit to attend and testify at the Injunction Hearing as to his understanding of the ownership of Axis. *See* Ex. N (Subpoena). He plans to testify fully and truthfully. As detailed above in Part II.B, Lawrence understands that Axis is **<u>not</u>** 100% owned by Berry GP, which is confirmed by the documents and conduct of the parties in the real time.

As part of this Application—filed long after the Business Court Lawsuit, just days after Judge Adrogué's ruling and little more than a week before the Injunction Hearing—Berry GP and RBT now seek to enjoin Lawrence "and all those acting in concert with him" from "representing or suggesting to others any right of ownership or control of Axis Midstream Holdings LLC, except for Berry GP's (RBT's) 100% ownership and sole control." *See* (Movants' Application for TRO & TI (filed 01/21/2025) at 2. That Movants fail to disclose either the existence of the Business Court Lawsuit to this Court or the critical fact that the Injunction Hearing is set in the Business

10

Court ***next week*** pertaining to the ownership and management of Axis—the very subject of Movants' Application—confirms the procedural impropriety of Movants' gambit.

The aim of Movants' Application is to have this Court unwittingly issue a potentially conflicting order that would circumvent Judge Adrogué's ruling that this Court does not have dominant jurisdiction over the issue of Axis' management and control. It is a plain attempt to upend proceedings in the Business Court Lawsuit and frustrate next week's Injunction Hearing. Such gamesmanship and manipulation of the Texas legal system is entirely improper and should be denied.

**2.      The Application Seeks an Improper Restraint on Lawrence's Speech**

Movants' injunctive relief impermissibly seeks a prior restraint on Lawrence's future speech, which is presumptively unconstitutional. The law is clear: an administrative or judicial order that forbids certain future communications constitutes a prior restraint on speech. *See Alexander v. United States*, 509 U.S. 544, 550 (1993). Article One, Section Eight of the Texas Constitution provides that "[e]very person shall be at liberty to speak, write or publish his opinions on any subject, being responsible for the abuse of that privilege . . . ." TEX. CONST. art. I, § 8; *see Davenport v. Garcia*, 834 S.W.2d 4, 10 (Tex.1992) (explaining that Texas Constitution provides greater right to free speech than its federal counterpart). Accordingly, prior restraints on speech are presumptively unconstitutional and rarely allowed. *See Davenport*, 834 S.W.2d at 10; *Kinney v. Barnes*, 443 S.W.3d 87, 89 (2014) ("[P]rior restraints are a heavily disfavored" and "it is also well settled that prior restraints are rarely permitted in Texas due to their capacity to chill protected speech."); *San Antonio Express–News v. Roman*, 861 S.W.2d 265, 267 (Tex. App.—San Antonio 1993, orig. proceeding). Only in the narrowest of circumstances will Texas courts allow such injunctive relief.

Here, Movants' requested injunctive relief effectively seeks to have this Court issue a gag order over Larence's testimony in another court proceeding as to his understanding of Axis' ownership—all without even informing the Court of the existence of that Injunction Hearing, let alone offering any rationale for why such a restraint on speech is warranted. Gag orders in civil judicial proceedings are valid only when imminent and irreparable harm to the judicial process will deprive litigants of a just resolution of their dispute, and the judicial action represents the least restrictive means to prevent that harm. *See, e.g.*, *Grisby v. Coker*, 904 S.W.2d 619, 620 (Tex. 1995) (citing *Davenport*, 834 S.W.2d at 9). Such a restraint is antithetical to Texas Constitutional law, which abhors such injunctive relief unless it falls within the extremely narrow exceptions on restraint—none of which have even been identified, let alone established here. Indeed, one could not imagine any court being allowed to prevent a witness from testifying under oath fully and truthfully as to the contested facts at issue in a pending lawsuit.

**B.      No Probable or Imminent Harm Exists**

Movants' Application also independently fails because Berry GP and RBT cannot demonstrate any true probable or imminent harm from Lawrence as related to Axis. In their Application, Movants point to various Secretary of State Filings regarding changes of registered agents and addresses in support of their imminent harm arguments. *See* (Movants' Application for TRO & TI (filed 01/21/2025), at 12-13. Movants incorrectly attribute those filings to Lawrence and likewise incorrectly direct the injunctive relief against Lawrence on that issue. Lawrence did not file any documents with the Texas Secretary of State seeking to change or modify any information about Axis. Indeed, this is plain from Movants' own exhibits, which indicate they were filed by Ted Powers, not Lawrence:

12



*See* Movants' Ex. 20, at 3. Lawrence has not evidenced any intention to file any such documents with the Secretary of State, and Movants cite nothing the contrary.

Thus, Movants improperly seek to enjoin conduct by parties (Axis and/or Ted Powers) that are not under this Court's jurisdiction, but who are instead parties to the Business Court Lawsuit. Again, this fact highlights why Movants' Application is nothing more than a ploy to circumvent the Business Court, which ***does*** maintain jurisdiction over those other parties. Other than his plan to testify fully and truthfully under oath at the Business Court Temporary Injunction Hearing on January 29-30 as to the ownership of Axis, Lawrence does not intend to take any of the other actions alleged by Movants.[8] Because Berry GP and RBT have failed to demonstrate any probable or imminent harm, the Application should be denied.

**C.     No Probable Right to Relief Exists**

As Movants acknowledge, injunctive relief is only warranted if a party can demonstrate a probable right to relief. They have failed to meet that burden. Notably absent from Movants'

---

[8] Moreover, Movants cannot demonstrate that the Court is permitted to enjoin Lawrence from ***attempting*** to call any Members' meetings on behalf of Axis. Even if the Court were to credit their argument that Berry GP is the sole owner of Axis (which it is not), Lawrence is still an owner of Berry GP and would have the right to call a meeting of Axis members.

Application is reference to the various transfers and operating agreements that were executed by Lawrence and Dennis in the Berry GP offices and circulated in April 2020 to Lawrence, Marty, Dennis, and a potential third-party investor. *See* Part II.B, above. Those transfers and agreements unequivocally demonstrate that Berry GP transferred its 100% interest in Axis to RBT, that RBT then transferred its interest to LSPH, and that LSPH then transferred its interest in Axis to LSPE. *See* Exs. P & Q. The full corporate record not only shows that as of April 21, 2020, neither Berry GP nor RBT was the sole owner of Axis, but that Marty and Dennis Berry were ***aware of this fact in the real time*** and were representing to a potential third-party investor that the Port ownership structure was true and accurate.

Movants' after-the-fact attempt to ignore or explain away the indisputable existence of Berry GP and RBT's transfers of ownership simply underscores that, at a minimum, there is a hotly contested fact question to be resolved in the Business Court Lawsuit. Movants have failed to meet their burden of showing a probable right to recovery based on the current corporate documents, which plainly show that Berry GP is not the sole owner of Axis.

Because the overwhelming record evidence demonstrates that Axis is neither 100% owned nor managed by Berry GP or RBT, Movants have failed to meet their burden to show a probable right for relief, and their Application must fail.

## IV. CONCLUSION

For these reasons, Lawrence respectfully submits that Movants' Application for a TRO and Temporary Injunction should be denied in its entirety.

Date: January 23, 2025

Respectfully submitted,

By: */s/ Barrett Reasoner*
Barrett Reasoner
State Bar No. 16641980
breasoner@gibbsbruns.com

14

Michael Absmeier
State Bar No. 24050195
mabsmeier@gibbsbruns.com
L. Bruce Baldree
State Bar No. 24116064
bbaldree@gibbsbruns.com
**GIBBS & BRUNS LLP**
1100 Louisiana, Suite 5300
Houston, Texas 77002
Tel: 713.650.8805
Fax: 713.750.0903

and

Butch Boyd
State Bar No. 00783694
butchboyd@butchboydlawfirm.com
**BUTCH BOYD LAW FIRM**
2905 Sackett Street
Houston, Texas 77098
Tel: 713.589.8477

and

Gabi S. Canales
State Bar No. 24012376
gabilaw14@gmail.com
**Gabi Canales Law Office**
5262 South Staples St., Suite 100
Corpus Christi, Texas 78411
Tel: 361.887.4700
Fax: 361.887.4761

**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I hereby certify that on January 23, 2025, a true and correct copy of this document was served on all counsel of record pursuant to the Texas Rules of Civil Procedure.

/s/ *Bruce Baldree*
L. Bruce Baldree

15

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Roxanne Graham on behalf of Bruce Baldree
Bar No. 24116064
rgraham@gibbsbruns.com
Envelope ID: 96558778
Filing Code Description: Response
Filing Description: Allen Lawrence Berry's Response In Opposition To Application For Temporary Restraining Order And Temporary Injunction
Status as of 1/24/2025 1:08 PM CST

Associated Case Party: Lawrence Berry

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Barrett H.Reasoner | | breasoner@gibbsbruns.com | 1/24/2025 9:42:17 AM | SENT |
| Michael R.Absmeier | | mabsmeier@gibbsbruns.com | 1/24/2025 9:42:17 AM | SENT |
| Rosa Brennan | | rbrennan@gibbsbruns.com | 1/24/2025 9:42:17 AM | SENT |
| Roxanne Graham | | rgraham@gibbsbruns.com | 1/24/2025 9:42:17 AM | SENT |
| Christina Pena | | cpena@gibbsbruns.com | 1/24/2025 9:42:17 AM | SENT |
| Bruce Baldree | | bbaldree@gibbsbruns.com | 1/24/2025 9:42:17 AM | SENT |
| Butch Boyd | | butchboyd@butchboydlawfirm.com | 1/24/2025 9:42:17 AM | SENT |
| Katrina Chamblee-Boyd | | katrinaboyd@butchboydlawfirm.com | 1/24/2025 9:42:17 AM | SENT |
| Sydney Ballesteros | | sballesteros@gibbsbruns.com | 1/24/2025 9:42:17 AM | SENT |
| Cameron Roth | | CRoth@gibbsbruns.com | 1/24/2025 9:42:17 AM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Shanna Gohlke | | gohlkes@bayltd.com | 1/24/2025 9:42:17 AM | SENT |

Associated Case Party: Marty Berry

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Douglas  Allison | | doug@dallisonlaw.com | 1/24/2025 9:42:17 AM | SENT |
| Kim Brunkenhoefer | | kim@dallisonlaw.com | 1/24/2025 9:42:17 AM | SENT |
| Susan  Gonzales | | susan@dallisonlaw.com | 1/24/2025 9:42:17 AM | SENT |

Associated Case Party: Michael Hummell

**Automated Certificate of eService**
This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

Roxanne Graham on behalf of Bruce Baldree
Bar No. 24116064
rgraham@gibbsbruns.com
Envelope ID: 96558778
Filing Code Description: Response
Filing Description: Allen Lawrence Berry's Response In Opposition To
Application For Temporary Restraining Order And Temporary Injunction
Status as of 1/24/2025 1:08 PM CST

Associated Case Party: Michael Hummell

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Van  Huseman | | vhuseman@husemanlawfirm.com | 1/24/2025 9:42:17 AM | SENT |
| John Swallow | | jswallow@husemanlawfirm.com | 1/24/2025 9:42:17 AM | SENT |

# APPENDIX 54

# EXHIBIT 1



# APPENDIX 55

E-filed in the Office of the Clerk
for the Business Court of Texas
12/3/2024 4:24 PM
Accepted by: Beverly Crumley
Case Number: 24-BC11A-0025

CAUSE NO. 24-BC11A-0025

| | | |
|---|---|---|
| ALBERT THEODORE POWERS; ALLIED PORTS LLC, | § § § | IN THE BUSINESS COURT |
| *Plaintiffs*, | § § § | |
| v. | § § § | 11A – STATE OF TEXAS |
| AXIS MIDSTREAM HOLDINGS LLC; ALLEN LAWRENCE BERRY; MARVIN GLENN BERRY; and BONNIE BERRY, as successor in interest to DENNIS WAYNE BERRY | § § § § § § § | |
| *Defendants.* | § | HONORABLE SOFIA ADROGUE |

DEFENDANTS' NOTICE / FILING OF EVIDENCE AND EXHIBITS IN SUPPORT OF
MOVANTS' MOTION TO REMAND, DISMISS, and/or TRANSFER VENUE, and
MARTY BERRY'S PLEA IN ABATEMENT / MOTION TO ABATE

NOW COMES Martin Glenn Berry ("Marty") and Bonnie Berry ("Bonnie"), Defendants

below and sometimes together referred to as "Movants" having filed Movants' Motion to Remand,

Dismiss, and/or Transfer Venue; and Marty and Bonnie having together filed a separate Motion to

Transfer Venue; and Marty Berry having filed a separate Plea in Abatement / Motion to Abate; and

file this Defendants' Notice / Filing of Evidence and Exhibits in Support Movants' Motion to

Remand, Dismiss, and/or Transfer Venue (and Motion to Transfer Venue) and Plea in Abatement /

Motion to Abate, as follows:

**I.**
**NOTICE OF AND FILING OF EXHIBITS / EVIDENCE**

Marty and Bonnie hereby file the following evidence in support of all matters scheduled

for consideration on December 6, 2024; to wit:  Movants' Motion to Remand, Dismiss, or Transfer

Venue; Marty's and Bonnie's Motion to Transfer Venue; and Marty's Plea in Abatement / Motion to Abate, and attach the following exhibits as evidence in these matters:

1. Organizations Chart;

2. Axis Midstream Holdings LLC's ("Axis") Permit Application package;

3. Map of real property owned by Berry Companies for Axis / Lone Star Ports LLC ("LSP") Project (orange shading indicates tracts held nominally in name of Robert Rickett) (all real property subject to Temporary Injunction ruling by Judge Robert Galvan (Nueces County));

4. Overlay of Exhibit 4 onto Exhibit 2 (slide 32);

5. February 13, 2024, email: Lawrence's attorney's email discussing dismissal of Robert Rickett from Nueces County lawsuit (securing Axis / LSP Project land as quid pro quo);

6. Plaintiffs' (Theodore ("Ted") Powers, Allied Ports LLC) Verified Original Petition and Application for Temporary Restraining Order and Temporary Injunction ("Plaintiffs' Original Petition (215th, Harris County)"), filed on or about October 31, 2024;

7. Exhibit 1 to Plaintiffs' Original Petition (the "Compensation Agreement"), signed by Lawrence Berry and Ted Powers only (signature lines for Marty Berry and Dennis Berry shown as blank) (execution date not stated);

8. Exhibit 2 to Plaintiffs' Original Petition (the "Investment Agreement"), signed by Lawrence Berry and Ted Powers only (signature lines for Marty Berry and Dennis Berry shown as blank) (execution date not stated);

9. Exhibit 6 to Plaintiffs' Original Petition (Amended and Restated Operating Agreement of Harbor Island Properties LLC ("HIP") or Axis Midstream Holdings LLC, referred to as "Axis OA"), ostensibly signed on April 21, 2020, by Lawrence Berry for Lone Star Ports

2

Enterprises LLC ("LSPE") and by Lawrence Berry for Axis Midstream Holdings LLC (incomplete / lacking exhibits) (in camera);

10. Exhibit 7 to Plaintiffs' Original Petition (Amended and Restated Operating Agreement of Lone Star Ports Holdings LLC ("LSPH"), referred to as "LSPH OA"), ostensibly signed on April 20, 2020: (a) for Redfish Bay Terminal Inc. ("RBT") by Lawrence Berry; (b) for Capella Investments LLC ("Capella") by Lawrence Berry; (c) for Arcturus Investments LLC ("Arcturas") by Lawrence Berry; (d) for Sirius Investments LLC ("Sirius") by Lawrence Berry; (d) for LSPH by Lawrence Berry; and (e) for Allied Ports LLC ("Allied") by Ted Powers (document incomplete / lacking exhibits) (in camera);

11. Temporary Restraining Order signed by Judge Lauren Reeder (Harris County) on October 31, 2024 ("TRO (Reeder 2024)") (restraining Marty Berry (et al) from "[c]hanging, altering, or transferring in any way the ownership, property, or tangible or intangible rights of any entity associated with the Project . . . ;"

12. Plaintiffs' Verified First Amended Petition and Application for Temporary Restraining Order and Temporary Injunction ("Plaintiffs' First Amended Petition (215th, Harris County)") filed on or about November 11, 2024;

13. Plaintiffs' Verified Second Amended Petition and Application for Temporary Restraining Order and Temporary Injunction ("Plaintiffs' Verified Second Amended Petition and Application for Temporary Restraining Order and Temporary Injunction) filed on or about November 13, 2024;

14. Plaintiffs' Verified Third Amended Petition and Application for Temporary Restraining Order and Temporary Injunction ("Plaintiffs' Third Amended Petition (BC-11A)") filed on or about November 27, 2024;

15. Plaintiffs' (L.Berry's) Original Verified Petition and Application for Temporary Restraining Order and Temporary Injunction ("L.Berry's Original Petition"), filed on or about November 27, 2023, in Harris County;

16. Temporary Restraining Order signed by Judge Lauren Reeder (Harris County) on or about November 27, 2023 ("TRO (Reeder 2023)") (restraining Marty Berry / Robert Rickett / Berry GP (et al) from "selling, mortgaging, or otherwise encumbering any of the Berry Entities' real property . . . ");

17. Amended Temporary Restraining Order signed by Judge Tanya Garrison (Harris County) on or about December 7, 2023 ("Amended TRO (Garrison 2023)") (restraining Marty Berry / Robert Rickett / Berry GP (et al) from "selling any of the Berry Entities' real property;" and " . . . from modifying the composition of the Board of Directors of the Berry Entities");

18. Agreed Order to Transfer L.Berry's Harris County lawsuit from Harris County to Nueces County ("Agreed Transfer 2023");

19. Plaintiffs' (L.Berry's (Nueces County)) Second Amended Petition ("L.Berry's Second Amended Petition"), filed on or about October 11, 2024;

20. Counter-Plaintiffs' (Marty Berry / Berry GP (Nueces County)) First Amended Original Petition Asserting Counter-Claims ("M.Berry / Berry GP (et al) First Amended Counter-Petition"), filed on or about April 15, 2024;

21. Transcript of hearing on L.Berry's Application for Temporary Injunction (Nueces County), February 16, 2024; March 22, 2024; and March 25, 2024;

22. Transcript (excerpt only) of Judge Robert Galvan's ruling on L.Berry's Application for Temporary Injunction (Nueces County), March 25, 2024 (refusing to enjoin removal of director; partially granting injunctive relief as to sale of Berry Companies' property);

23. Legal discovery propounded by Marty Berry / Berry GP (et al) to Lawrence Berry and Allen Lawrence Berry (2007) Trust ("Lawrence's Trust") (Nueces County), requesting production of documents on Berry-Related Companies, including Axis, Lone LSP, Gansevoort Investments LLC ("Gansevoort," a previous owner of Axis), Midway Junction Properties LLC ("Midway"), and others;

24. "L.Berry's Document Production in Nueces County Lawsuit" (1,549 pages of documents produced by L.Berry in the Nueces County lawsuit relating to legal entities on Powers' / Allied Port LLC's organization chart) (in camera)[1];

25. Counter-Plaintiffs' (Marty Berry/Berry GP (Nueces County)) Second Amended Original Petition Asserting Counter-Claims ("M.Berry/Berry GP Second Amended Counter-Petition"), filed on or about December 3, 2024 (requesting declaration that any purported transfers by L.Berry without majority of Board of Directors' approval be declared void);

26. ALB 001181 – ALB 1210: Amended and Restated Operating Agreement of LSPE (referred to as "LSPE OA"), ostensibly signed April 21, 2020, for LSPE by Lawrence Berry and for LSPV by Lawrence Berry (incomplete / lacking exhibits) (in camera);

27. ALB 0007563 (document transfers 100% ownership and 100% control of Axis from Gansevoort Investments LLC to Berry GP) (in camera);

---

[1] The calculation of number of pages is a total of the sum of the number of pages identified by searching the following terms: Capella, Sirius, Arcturus, Axis, LSP, LSPH, LSPE, LSPV. If more than one search term appears on the same page, then this single page is counted twice.

28. ALB 0001057 (document purports to transfer 100% ownership and 100% control of Axis from Berry GP to RBT) (in camera);

29. Berry GP by-laws (action requires majority of directors' vote) (in camera);

30. ALB 0001061 (document purports to transfer 100% ownership and 100% control of Axis from RBT to LSPH) (in camera);

31. RBT Bylaws (action requires majority of directors' vote) (in camera);

32. February 7, 2019: Term Sheet (Carlyle) (confirming Lawrence, Marty, and Dennis own Project);

33. May 27, 2019: Email from Ted to Marty (et al);

34. September 25, 2019: Letter from Lawrence, Marty, Dennis to Carlyle;

35. ALB 000905 (September 15, 2022, email circulating DocuSign for LSPE OA and Transfer from LSPV to LSPE) (in camera);

36. March 16, 2021 Letter from Port of Corpus Christi Authority ("POCCA") to LSP terminating lease;

37. January 8, 2024: Email from Gretchen Reed to Jim Klein (reimbursements for Axis / LSP Project);

38. August 2, 2024: email exchange with Gary Ramirez (no response providing Investment Agreement);

39. Email exchanges as between Nueces County attorneys relating to Axis ownership/ control issue (prior to date of Plaintiffs' filing of new (2nd) Harris County petition);

40. Informal transcription of Axis meeting (discussing Axis ownership / control issues) (August 6, 2024));

41. Excel spreadsheet summarizing Berry GP's (and related companies') investment in Project (in camera);

42. Plaintiffs (LSP, Lawrence, Marty, Dennis) Original Petition complaining of Carlyle (signed and filed by Butch Body, September 24, 2019) (confirming Lawrence, Marty, and Dennis own 100% of LSP and "Project Companies");

43. Plaintiffs (LSP, Lawrence, Marty, Dennis) First Amended Petition complaining of Carlyle (signed and filed by Butch Boyd, October 7, 2019) (confirming Lawrence, Marty, and Dennis own 100% of LSP and "Project Companies");

44. Orca Assets GP LLC Organizational Meeting ("Membership Interest . . . to Allen Lawrence Berry 2007 Trust – 100%");

45. ICI/Orca Assets GP LLC Purchase and Sale Agreement (ICI transfer of $23 million (net value) in exchange for non-recourse promissory note which remains substantially unsatisfied);

46. May 13, 2020 email with attached Organization Chart (LSP International);

47. Letter terminating Ted Powers' agreements, if any (requested from Plaintiffs)

48. Sirius Investments LLC: Formation documents, and Operating Agreement (requested from Plaintiffs);

49. Arcturas Investments LLC: Formation documents, and Operating Agreement (requested from Plaintiffs);

50. Affidavit of Michael Hummell in support of motions requesting transfer of venue; and

51. Various Collection of Emails (in camera)

Exhibit numbers correspond to the numerical references, above.

7

Respectfully Submitted,

**LAW OFFICES OF DOUGLAS ALLISON**
403 N. Tancahua Street
Corpus Christi, Texas 78401
T:      361-888-6002
F:      361-888-6651
E:      doug@dallisonlaw.com

BY:      */s/ Douglas A. Allison*
**Douglas A. Allison**
State Bar No. 01083500

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that a true and correct copy of the foregoing document has been served upon all counsel of record for the parties in accordance with the Texas Rules of Civil Procedure on this the 3rd day of December, 2024.

 /s/ Douglas A. Allison
**DOUGLAS A. ALLISON**

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Susan Gonzales on behalf of Douglas Allison
Bar No. 1083500
susan@dallisonlaw.com
Envelope ID: 94898854
Filing Code Description: No Fee Documents
Filing Description: Defs' Notice of Filing of Evidence and Exhibits -PART 1 (1-11)
Status as of 12/3/2024 4:40 PM CST

Associated Case Party: AllenLawrenceBerry

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Barrett H.Reasoner | | breasoner@gibbsbruns.com | 12/3/2024 4:24:13 PM | SENT |
| Michael R.Absmeier | | mabsmeier@gibbsbruns.com | 12/3/2024 4:24:13 PM | SENT |
| Sydney Ballesteros | | sballesteros@gibbsbruns.com | 12/3/2024 4:24:13 PM | SENT |
| Bruce Baldree | | bbaldree@gibbsbruns.com | 12/3/2024 4:24:13 PM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Rosa Brennan | | rbrennan@gibbsbruns.com | 12/3/2024 4:24:13 PM | SENT |
| Business Court 11A | | BCDivision11A@txcourts.gov | 12/3/2024 4:24:13 PM | SENT |
| Roxanne Graham | | rgraham@gibbsbruns.com | 12/3/2024 4:24:13 PM | SENT |
| Christina Pena | | cpena@gibbsbruns.com | 12/3/2024 4:24:13 PM | SENT |

Associated Case Party: MarvinGlennBerry

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Douglas Allison | 1083500 | doug@dallisonlaw.com | 12/3/2024 4:24:13 PM | SENT |
| Kim Brunkenhoefer | | kim@dallisonlaw.com | 12/3/2024 4:24:13 PM | SENT |
| Susan Gonzales | | susan@dallisonlaw.com | 12/3/2024 4:24:13 PM | SENT |

Associated Case Party: AlbertTheodorePowers

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|

EXHIBIT 2



PROPOSED
MIDWAY
TANK FARM

P.O.B.
PROPOSED
1-2" FIBER OPTIC LINE
2-36" CRUDE OIL PIPELINES

P.O.B.
PROPOSED
1-6" GAS SUPPLY PIPELINE

PROPOSED
ARANSAS PASS
STAGING FACILITY

P.O.E.
PROPOSED
1-2" FIBER OPTIC LINE
2-36" CRUDE OIL PIPELINES

P.O.B.
PROPOSED
1-2" FIBER OPTIC LINE
1-6" GAS SUPPLY PIPELINE
1-16" REMIX PIPELINE
2-42" CRUDE OIL PIPELINES

P.O.E.
PROPOSED
1-2" FIBER OPTIC LINE
1-6" GAS SUPPLY PIPELINE
1-16" REMIX PIPELINE
2-42" CRUDE OIL PIPELINES

PROPOSED
HARBOR
ISLAND
TERMINAL

0'  500'  10,000'      20,000'

NOTE: THE CONTENT OF THIS DRAWING IS DESIGNED SPECIFICALLY FOR THE PURPOSE OF SECURING FEDERAL, STATE AND LOCAL ENVIRONMENTAL/ REGULATORY AUTHORIZATIONS ONLY.

Date: 12/27/2018
Revised: 04/23/2020

## VICINITY MAP
PLs & Facility.: Midway T.F. to Harbor Island

# U.S. ARMY CORPS OF ENGINEERS PERMIT APPLICATION
## SWG-2018-00789

# AXIS MIDSTREAM HOLDINGS, LLC
## Proposed Pipelines & Facilities
## MIDWAY to HARBOR ISLAND PROJECT
### SAN PATRICIO & NUECES COUNTIES, TEXAS

AXIS MIDSTREAM



PROPOSED 102,229' OF 2-36" PIPELINES

DETAIL A

EDGE OF TWS
20' 20' 40'
PERMANENT ROW
36" PIPELINE
2" FIBER OPTIC LINE
36" PIPELINE
PERMANENT ROW
20' 30'
EDGE OF TWS
130'

BEGINNING OF ROUTE

COUNTY ROAD 2004

Gas Well

SEE DETAIL A

M.P. 0.97

MP 1

1-2" FIBER OPTIC LINE
2-36" CRUDE PIPELINES

PIPELINE CROSSING
WORKSPACE

PROPOSED
MIDWAY
TANK FARM
(SEE SHT. 31 OF 41)

P.O.B.
1-2" FIBER OPTIC LINE
2-36" PIPELINES
X= 1,339,182.09'
Y= 17,219,888.37'
LAT: 27° 54' 23.27"
LON: 97° 24' 3.97"

50

51

COUNTY ROAD 3365

0'    400'   800'        1600'

PROPOSED PIPELINES    WORKSPACE    FACILITY

NOTE: THE CONTENT OF THIS DRAWING IS DESIGNED SPECIFICALLY FOR THE PURPOSE OF SECURING FEDERAL, STATE AND LOCAL ENVIRONMENTAL/ REGULATORY AUTHORIZATIONS ONLY.

Date: 12/27/2018
Revised: 04/23/2020

PLAN VIEW
PLs: Midway T.F. to Aransas

U.S. ARMY CORPS OF ENGINEERS
PERMIT APPLICATION
SWG-2018-00789

AXIS MIDSTREAM

AXIS MIDSTREAM HOLDINGS, LLC
Proposed Pipelines & Facilities
MIDWAY to HARBOR ISLAND PROJECT
SAN PATRICIO & NUECES COUNTIES, TEXAS



COUNTY ROAD 1906

DETAIL A

EDGE OF TWS
PERMANENT ROW
36" PIPELINE
2" FIBER OPTIC LINE
36" PIPELINE
PERMANENT ROW
EDGE OF TWS

M.P. 0.97

M.P. 2.39

COUNTY ROAD 3463

MP 1

MP 2

SEE DETAIL A

PIPELINE CROSSING WORKSPACE

1-2" FIBER OPTIC LINE
2-36" CRUDE PIPELINES

WATERBODY #1

PIPELINE CROSSING WORKSPACE

0'     400'     800'     1600'

PROPOSED PIPELINES        WORKSPACE        FACILITY

NOTE: THE CONTENT OF THIS DRAWING IS DESIGNED SPECIFICALLY FOR THE PURPOSE OF SECURING FEDERAL, STATE AND LOCAL ENVIRONMENTAL/ REGULATORY AUTHORIZATIONS ONLY.

Date: 12/27/2018
Revised: 04/23/2020

PLAN VIEW
PLs: Midway T.F. to Aransas

U.S. ARMY CORPS OF ENGINEERS
PERMIT APPLICATION
SWG-2018-00789

AXIS MIDSTREAM HOLDINGS, LLC
Proposed Pipelines & Facilities
MIDWAY to HARBOR ISLAND PROJECT
SAN PATRICIO & NUECES COUNTIES, TEXAS

AXIS MIDSTREAM



DETAIL A

San Patricio Memorial Gardens (Cem)

SEE DETAIL A

PIPELINE CROSSING WORKSPACE

EDGE OF TWS
20' 20' 40'
PERMANENT ROW
36" PIPELINE
2" FIBER OPTIC LINE
36" PIPELINE
130'
PERMANENT ROW
EDGE OF TWS
20' 30'

M.P. 2.39

COUNTY ROAD 3567

COUNTY ROAD 1906

MP 4

MP 3

M.P. 4.36

CR 3677

1-2" FIBER OPTIC LINE
2-36" CRUDE PIPELINES

WATERBODY #2

0'    400'    800'    1600'

—— PROPOSED PIPELINES    ▢ WORKSPACE    ⊏ ⊐ FACILITY

NOTE: THE CONTENT OF THIS DRAWING IS DESIGNED SPECIFICALLY FOR THE PURPOSE OF SECURING FEDERAL, STATE AND LOCAL ENVIRONMENTAL/ REGULATORY AUTHORIZATIONS ONLY.

Date: 12/27/2018
Revised: 04/23/2020

PLAN VIEW
PLs: Midway T.F. to Aransas

**U.S. ARMY CORPS OF ENGINEERS PERMIT APPLICATION SWG-2018-00789**

AXIS MIDSTREAM

**AXIS MIDSTREAM HOLDINGS, LLC**
Proposed Pipelines & Facilities
MIDWAY to HARBOR ISLAND PROJECT
SAN PATRICIO & NUECES COUNTIES, TEXAS



DETAIL A

EDGE OF TWS
PERMANENT ROW
36" PIPELINE
2" FIBER OPTIC LINE
36" PIPELINE
PERMANENT ROW
EDGE OF TWS

MP 5

M.P. 4.36

M.P. 5.95

WATERBODY #3

1-2" FIBER OPTIC LINE
2-36" CRUDE PIPELINES

COUNTY ROAD 3677

COUNTY ROAD 1612

SEE DETAIL A

39

38

40

| 0' | 400' | 800' | 1600' |

PROPOSED PIPELINES  WORKSPACE  FACILITY

NOTE: THE CONTENT OF THIS DRAWING IS DESIGNED SPECIFICALLY FOR THE PURPOSE OF SECURING FEDERAL, STATE AND LOCAL ENVIRONMENTAL/ REGULATORY AUTHORIZATIONS ONLY.

Date: 12/27/2018
Revised: 04/23/2020

PLAN VIEW
PLs: Midway T.F. to Aransas

## U.S. ARMY CORPS OF ENGINEERS PERMIT APPLICATION SWG-2018-00789

AXIS MIDSTREAM

# AXIS MIDSTREAM HOLDINGS, LLC
Proposed Pipelines & Facilities
MIDWAY to HARBOR ISLAND PROJECT
SAN PATRICIO & NUECES COUNTIES, TEXAS



DETAIL A

EDGE OF TWS
PERMANENT ROW
36" PIPELINE
2" FIBER OPTIC LINE
36" PIPELINE
PERMANENT ROW
EDGE OF TWS

MP 7

M.P. 5.95

MP 6

PIPELINE CROSSING WORKSPACE

SEE DETAIL A

PRIVATE ROAD 3749

1-2" FIBER OPTIC LINE
2-36" CRUDE PIPELINES

M.P. 7.67

WATERBODY #4

US HWY 181

0'    400'    800'    1600'

PROPOSED PIPELINES      WORKSPACE      FACILITY

NOTE: THE CONTENT OF THIS DRAWING IS DESIGNED SPECIFICALLY FOR THE PURPOSE OF SECURING FEDERAL, STATE AND LOCAL ENVIRONMENTAL/ REGULATORY AUTHORIZATIONS ONLY.

Date: 12/27/2018
Revised: 04/23/2020

PLAN VIEW
PLs: Midway T.F. to Aransas

U.S. ARMY CORPS OF ENGINEERS
PERMIT APPLICATION
SWG-2018-00789

AXIS MIDSTREAM

AXIS MIDSTREAM HOLDINGS, LLC
Proposed Pipelines & Facilities
MIDWAY to HARBOR ISLAND PROJECT
SAN PATRICIO & NUECES COUNTIES, TEXAS



DETAIL A

EDGE OF TWS
20' 20'
40'
PERMANENT ROW
36" PIPELINE
2" FIBER OPTIC LINE
36" PIPELINE
130'
PERMANENT ROW
20'
30'
EDGE OF TWS

M.P. 7.67

MP 8

SEE DETAIL A

1-2" FIBER OPTIC LINE
2-36" CRUDE PIPELINES

30

M.P. 8.90

MP 9

0'   400'   800'   1600'

—— PROPOSED PIPELINES   ☐ WORKSPACE   ⌐ ⌐ FACILITY

NOTE: THE CONTENT OF THIS DRAWING IS DESIGNED SPECIFICALLY FOR THE PURPOSE OF SECURING FEDERAL, STATE AND LOCAL ENVIRONMENTAL/ REGULATORY AUTHORIZATIONS ONLY.

Date: 12/27/2018
Revised: 04/23/2020

PLAN VIEW
PLs: Midway T.F. to Aransas

**U.S. ARMY CORPS OF ENGINEERS PERMIT APPLICATION SWG-2018-00789**

**AXIS MIDSTREAM HOLDINGS, LLC**
Proposed Pipelines & Facilities
MIDWAY to HARBOR ISLAND PROJECT
SAN PATRICIO & NUECES COUNTIES, TEXAS

AXIS MIDSTREAM



DETAIL A

EDGE OF TWS
20' 20'
PERMANENT ROW
40'
36" PIPELINE
2" FIBER OPTIC LINE
36" PIPELINE
PERMANENT ROW
30'
20' 30'
EDGE OF TWS

M.P. 8.90

MP 9

SEE DETAIL A

PIPELINE CROSSING WORKSPACE

COUNTY ROAD 1722

M.P. 10.04

MP 10

1-2" FIBER OPTIC LINE
2-36" CRUDE PIPELINES

HIGHWAY 3284

X 28

X 27

X 29

0'    400'    800'    1600'

PROPOSED PIPELINES      WORKSPACE      FACILITY

**PLAN VIEW**
PLs: Midway T.F. to Aransas

NOTE: THE CONTENT OF THIS DRAWING IS DESIGNED SPECIFICALLY FOR THE PURPOSE OF SECURING FEDERAL, STATE AND LOCAL ENVIRONMENTAL/ REGULATORY AUTHORIZATIONS ONLY.

Date: 12/27/2018
Revised: 04/23/2020

**U.S. ARMY CORPS OF ENGINEERS PERMIT APPLICATION SWG-2018-00789**

AXIS MIDSTREAM

**AXIS MIDSTREAM HOLDINGS, LLC**
Proposed Pipelines & Facilities
MIDWAY to HARBOR ISLAND PROJECT
SAN PATRICIO & NUECES COUNTIES, TEXAS



DETAIL A

EDGE OF TWS
PERMANENT ROW
36" PIPELINE
2" FIBER OPTIC LINE
36" PIPELINE
PERMANENT ROW
EDGE OF TWS

20' 20' 40'
20' 130'
20' 30'

M.P. 11.70

Radio Tower (KTCA)

HIGHWAY 136

SEE DETAIL A

COUNTY ROAD 1722

27

M.P. 10.04

1-2" FIBER OPTIC LINE
2-36" CRUDE PIPELINES

PIPELINE CROSSING WORKSPACE

COUNTY ROAD 1836

25

MP 11

INTERSTATE 35

0'   400'   800'   1600'

—— PROPOSED PIPELINES     ☐ WORKSPACE     ⌐ ¬ FACILITY

NOTE: THE CONTENT OF THIS DRAWING IS DESIGNED SPECIFICALLY FOR THE PURPOSE OF SECURING FEDERAL, STATE AND LOCAL ENVIRONMENTAL/ REGULATORY AUTHORIZATIONS ONLY.

Date: 12/27/2018
Revised: 04/23/2020

PLAN VIEW
PLs: Midway T.F. to Aransas

U.S. ARMY CORPS OF ENGINEERS
PERMIT APPLICATION
SWG-2018-00789

AXIS MIDSTREAM

AXIS MIDSTREAM HOLDINGS, LLC
Proposed Pipelines & Facilities
MIDWAY to HARBOR ISLAND PROJECT
SAN PATRICIO & NUECES COUNTIES, TEXAS



EDGE OF TWS

PERMANENT ROW

36" PIPELINE
2" FIBER OPTIC LINE
36" PIPELINE

PERMANENT ROW

EDGE OF TWS

DETAIL A

SEE DETAIL A

MP 12

MP 13

INTERSTATE 35

M.P. 11.70

M.P. 13.16

PIPELINE CROSSING WORKSPACE

1-2" FIBER OPTIC LINE
2-36" CRUDE PIPELINES

COUNTY ROAD 4195

COUNTY ROAD 4241

PIPELINE

0'    400'    800'    1600'

PROPOSED PIPELINES    WORKSPACE    FACILITY

NOTE: THE CONTENT OF THIS DRAWING IS DESIGNED SPECIFICALLY FOR THE PURPOSE OF SECURING FEDERAL, STATE AND LOCAL ENVIRONMENTAL/ REGULATORY AUTHORIZATIONS ONLY.

Date: 12/27/2018
Revised: 04/23/2020

## PLAN VIEW
PLs: Midway T.F. to Aransas

## U.S. ARMY CORPS OF ENGINEERS PERMIT APPLICATION SWG-2018-00789

AXIS MIDSTREAM

# AXIS MIDSTREAM HOLDINGS, LLC
## Proposed Pipelines & Facilities
## MIDWAY to HARBOR ISLAND PROJECT
### SAN PATRICIO & NUECES COUNTIES, TEXAS

SWG-2018-00789; Axis Midstream Project Plans



DETAIL A

EDGE OF TWS
20' 20'
PERMANENT ROW
40'
36" PIPELINE
2" FIBER OPTIC LINE
36" PIPELINE
130'
PERMANENT ROW
20' 30'
EDGE OF TWS

M.P. 13.16

M.P. 14.58

COUNTY ROAD 4343

MC CAMPBELL

OIL GAS FIELD

OIL

MP 14

SEE DETAIL A

1-2" FIBER OPTIC LINE
2-36" CRUDE PIPELINES

PIPELINE CROSSING WORKSPACE

PIPELINE CROSSING WORKSPACE

0'     400'     800'          1600'

PROPOSED PIPELINES          WORKSPACE          FACILITY

NOTE: THE CONTENT OF THIS DRAWING IS DESIGNED SPECIFICALLY FOR THE PURPOSE OF SECURING FEDERAL, STATE AND LOCAL ENVIRONMENTAL/ REGULATORY AUTHORIZATIONS ONLY.

Date: 12/27/2018
Revised: 04/23/2020

PLAN VIEW
PLs: Midway T.F. to Aransas

**U.S. ARMY CORPS OF ENGINEERS PERMIT APPLICATION SWG-2018-00789**

**AXIS MIDSTREAM HOLDINGS, LLC**
Proposed Pipelines & Facilities
MIDWAY to HARBOR ISLAND PROJECT

SAN PATRICIO & NUECES COUNTIES, TEXAS

AXIS MIDSTREAM

# EXHIBIT 4





**EXHIBIT 3**

GRAPHIC SCALE

( IN FEET )
1 inch = 200 ft.

NOTES:

BEARINGS AND DISTANCES ARE BASED ON THE TEXAS STATE PLANE COORDINATE SYSTEM, NORTH AMERICAN DATUM OF 1927, SOUTH ZONE.

ELEVATIONS ARE BASED ON THE NORTH AMERICAN VERTICAL DATUM OF 1988.

o = SET 5/8" IRON ROD MARKED WITH A CAP STAMPED "RPLS 6198"

PLAT SHOWING SURVEY OF
270.62 ACRES
BURTON & DANFORTH SUBDIVISION
W. MCDONOUGH, A-184
W. MCDONOUGH, A-185
SAN PATRICIO COUNTY, TEXAS



EDGE OF TWS
PERMANENT ROW
36" PIPELINE
2" FIBER OPTIC LINE
36" PIPELINE
PERMANENT ROW
EDGE OF TWS
20' 20' 40' 130' 20' 30'

DETAIL A

M.P. 16.19

MP 16

WATERBODY #5

MP 15

SEE DETAIL A

WETLAND #1B

WETLAND #1A

1-2" FIBER OPTIC LINE
2-36" CRUDE PIPELINES

M.P. 14.58

PIPELINE

15

15

10

0'   400'   800'   1600'

PROPOSED PIPELINES     WORKSPACE     FACILITY

NOTE: THE CONTENT OF THIS DRAWING IS DESIGNED SPECIFICALLY FOR THE PURPOSE OF SECURING FEDERAL, STATE AND LOCAL ENVIRONMENTAL/ REGULATORY AUTHORIZATIONS ONLY.

Date: 12/27/2018
Revised: 04/23/2020

PLAN VIEW
PLs: Midway T.F. to Aransas

U.S. ARMY CORPS OF ENGINEERS
PERMIT APPLICATION
SWG-2018-00789

AXIS MIDSTREAM

AXIS MIDSTREAM HOLDINGS, LLC
Proposed Pipelines & Facilities
MIDWAY to HARBOR ISLAND PROJECT
SAN PATRICIO & NUECES COUNTIES, TEXAS



DETAIL A

EDGE OF TWS
PERMANENT ROW
36" PIPELINE
2" FIBER OPTIC LINE
36" PIPELINE
PERMANENT ROW
EDGE OF TWS

1-2" FIBER OPTIC LINE
2-36" CRUDE PIPELINES

SEE DETAIL A

WETLAND #1B

WATERBODY #5

WETLAND #2

WETLAND #3

WATERBODY #6

MP 17

BEASLEY

MOONEY

MORGAN

KENNEY

M.P. 16:19

M.P. 17.39

0'    400'    800'    1600'

PROPOSED PIPELINES    WORKSPACE    FACILITY

NOTE: THE CONTENT OF THIS DRAWING IS DESIGNED SPECIFICALLY FOR THE PURPOSE OF SECURING FEDERAL, STATE AND LOCAL ENVIRONMENTAL/ REGULATORY AUTHORIZATIONS ONLY.

Date: 12/27/2018
Revised: 04/23/2020

PLAN VIEW
PLs: Midway T.F. to Aransas

U.S. ARMY CORPS OF ENGINEERS
PERMIT APPLICATION
SWG-2018-00789

AXIS MIDSTREAM HOLDINGS, LLC
Proposed Pipelines & Facilities
MIDWAY to HARBOR ISLAND PROJECT
SAN PATRICIO & NUECES COUNTIES, TEXAS

AXIS MIDSTREAM



DETAIL A

DETAIL B

1-2" FIBER OPTIC LINE
1-6" GAS SUPPLY PIPELINE
2-36" CRUDE PIPELINES

MP 18

WATERBODY #7

1-2" FIBER OPTIC LINE
2-36" CRUDE PIPELINES

M.P. 17.39

M.P. 18.52

HIGHWAY 361

MOONEY LANE

MORGAN LANE

AVENUE A

PIPELINE

Drive-in Theater

Cem

KENNY LANE

SEE DETAIL A

SEE DETAIL B

P.O.B./TIE-IN
6" GAS SUPPLY PL
1.56 MILES
X= 1,411,005.28'
Y= 17,212,627.18'
LAT: 27° 53' 4.56"
LON: 97° 10' 44.33"

MORGAN

LANE

0'  400'  800'  1600'

PROPOSED PIPELINES    WORKSPACE    FACILITY

NOTE: THE CONTENT OF THIS DRAWING IS DESIGNED SPECIFICALLY FOR THE PURPOSE OF SECURING FEDERAL, STATE AND LOCAL ENVIRONMENTAL/ REGULATORY AUTHORIZATIONS ONLY.

Date: 12/27/2018
Revised: 04/23/2020

PLAN VIEW
PLs: Midway T.F. to Aransas

U.S. ARMY CORPS OF ENGINEERS
PERMIT APPLICATION
SWG-2018-00789

AXIS MIDSTREAM HOLDINGS, LLC
Proposed Pipelines & Facilities
MIDWAY to HARBOR ISLAND PROJECT
SAN PATRICIO & NUECES COUNTIES, TEXAS

AXIS MIDSTREAM



DETAIL B

EDGE OF TWS
PERMANENT ROW
36" PIPELINE
2" FIBER OPTIC LINE
36" PIPELINE
6" PIPELINE
PERMANENT ROW
EDGE OF TWS

P.O.E.
1-2" FIBER OPTIC
1-6" PIPELINE
2-36" PIPELINES
X= 1,417,145.16'
Y= 17,210,915.07'
LAT: 27° 52' 46.97"
LON: 97° 9' 36.12"

P.O.B.
1-2" FIBER OPTIC LINE
1-6" GAS SUPPLY PIPELINES
1-16" INTERMIX PIPELINES
2-42" CRUDE OIL PIPELINES
X= 1,418,522.59'
Y= 17,209,874.99'
LAT: 27° 52' 36.52"
LON: 97° 9' 20.90"
(± 28,215' IN LENGTH)

Gas Well

WATERBODY #7

SEE DETAIL B

M.P. 18.52

MP 19

PROPOSED ARANSAS PASS
STAGING FACILITY
BOUNDARY FOR DETAILS
SEE SHT. 32 OF 41

WETLAND #5

WETLAND #4

1-2" FIBER OPTIC LINE
1-6" GAS SUPPLY PIPELINE
2-36" CRUDE PIPELINES

Drive-in Theater

Cem

GULF INTRACOASTAL WATERWAY

BM 10

0'    400'    800'    1600'

— PROPOSED PIPELINES    WORKSPACE    FACILITY

NOTE: THE CONTENT OF THIS DRAWING IS DESIGNED SPECIFICALLY FOR THE PURPOSE OF SECURING FEDERAL, STATE AND LOCAL ENVIRONMENTAL/ REGULATORY AUTHORIZATIONS ONLY.

Date: 12/27/2018
Revised: 04/23/2020

PLAN VIEW
PLs: Midway T.F. to Aransas

U.S. ARMY CORPS OF ENGINEERS
PERMIT APPLICATION
SWG-2018-00789

AXIS MIDSTREAM

AXIS MIDSTREAM HOLDINGS, LLC
Proposed Pipelines & Facilities
MIDWAY to HARBOR ISLAND PROJECT
SAN PATRICIO & NUECES COUNTIES, TEXAS



P.O.B.—HDD
X= 1,418,263.22'
Y= 17,210,080.91'
LAT: 27° 52' 38.59"
LON: 97° 9' 23.76"

P.O.E.
1–2" FIBER OPTIC
1–6" PIPELINE
2–36" PIPELINES
X= 1,417,145.16'
Y= 17,210,915.07'
LAT: 27° 52' 46.97"
LON: 97° 9' 36.12"

P.O.B.
1–2" FIBER OPTIC LINE
1–6" GAS SUPPLY PIPELINES
1–16" INTERMIX PIPELINES
2–42" CRUDE OIL PIPELINES
X= 1,418,522.59'
Y= 17,209,874.99'
LAT: 27° 52' 36.52"
LON: 97° 9' 20.90"
(± 28,215' IN LENGTH)

WETLAND #8

WETLAND #7

WETLAND #6

WETLAND #5

300' X 200'
WORKSPACE

ESTUARINE
WETLAND #1

WETLAND #9

GULF INTRACOASTAL WATERWAY

PROPOSED ARANSAS PASS
STAGING FACILITY BOUNDARY
FOR DETAILS
SEE SHT. 32 OF 41

1–2" FIBER OPTIC LINE
1–6" GAS SUPPY PIPELINE
1–16" INTEREMIX PIPELINE
2–42" CRUDE PIPELINES

FOR HDD PLAN AND PROFILE
SEE SHT. 21 OF 41

M.P. 0.66

MP 1

SEAGRASS BED #1

SEAGRASS BED #2

260' X 300'
WORKSPACE

P.O.E.—HDD
X= 1,421,684.88'
Y= 17,207,336.81'
LAT: 27° 52' 11.06"
LON: 97° 9' 45.97"

0'    400'    800'    1600'

—— PROPOSED PIPELINES    ▭ WORKSPACE    ⌐¬ FACILITY

NOTE: THE CONTENT OF THIS DRAWING IS DESIGNED SPECIFICALLY
FOR THE PURPOSE OF SECURING FEDERAL, STATE AND LOCAL
ENVIRONMENTAL/ REGULATORY AUTHORIZATIONS ONLY.

Date: 12/27/2018
Revised: 04/23/2020

PLAN VIEW
PLs: Aransas To Harbor Island

**U.S. ARMY CORPS OF ENGINEERS
PERMIT APPLICATION
SWG-2018-00789**

**AXIS MIDSTREAM HOLDINGS, LLC**
Proposed Pipelines & Facilities
MIDWAY to HARBOR ISLAND PROJECT
SAN PATRICIO & NUECES COUNTIES, TEXAS

AXIS MIDSTREAM

N

EDGE OF WORKING
ROW/TURBITIY CURTAIN

PERM. ROW

PERM. ROW

60'

75' TRENCHING SIDE

75' TEMP. SPOIL SIDE

150' ENTIRE WORKING ROW

ROW/TURBITIY CURTAIN
EDGE OF WORKING

**DETAIL C**

RANSOM ISLAND

SEAGRASS BED #1

M.P. 0.66

MP 1

260' X 300'
WORKSPACE

A'

SEE SHT. 22 OF 41

A

SEAGRASS BED #2

SEE DETAIL C

1-2" FIBER OPTIC LINE
1-6" GAS SUPPY PIPELINE
1-16" INTEREMIX PIPELINE
2-42" CRUDE PIPELINES

M.P. 1.88

B

C

SEE SHT. 22 OF 41

SEE SHT. 22 OF 41

SEAGRASS BED #5

B

C

SEAGRASS BED #3

SEAGRASS BED #4

P.O.E.-HDD
X= 1,421,684.88'
Y= 17,207,336.81'
LAT: 27° 52' 11.06"
LON: 97° 9' 45.97"

REDFISH BAY

PIPELINE TO BE INSTALLED
WITHIN EXISTING OIL FIELD
CANAL, CHANNEL & SLIP.

0'    400'    800'    1600'

PROPOSED PIPELINES     WORKSPACE     FACILITY

NOTE: THE CONTENT OF THIS DRAWING IS DESIGNED SPECIFICALLY
FOR THE PURPOSE OF SECURING FEDERAL, STATE AND LOCAL
ENVIRONMENTAL/ REGULATORY AUTHORIZATIONS ONLY.

Date: 12/27/2018
Revised: 04/23/2020

**PLAN VIEW**
PLs: Aransas To Harbor Island

# U.S. ARMY CORPS OF ENGINEERS
# PERMIT APPLICATION
# SWG-2018-00789



AXIS MIDSTREAM

# AXIS MIDSTREAM HOLDINGS, LLC
## Proposed Pipelines & Facilities
## MIDWAY to HARBOR ISLAND PROJECT
### SAN PATRICIO & NUECES COUNTIES, TEXAS

DETAIL C

EDGE OF WORKING ROW/TURBITIY CURTAIN

PERM. ROW
PERM. ROW

60'
75' TRENCHING SIDE
75' TEMP. SPOIL SIDE
150' ENTIRE WORKING ROW

ROW/TURBITIY CURTAIN EDGE OF WORKING

M.P. 1.88

MP 2

SEE SHT. 23 OF 41

D'
D

SEE DETAIL C

REDFISH BAY

1-2" FIBER OPTIC LINE
1-6" GAS SUPPY PIPELINE
1-16" INTEREMIX PIPELINE
2-42" CRUDE PIPELINES

SEAGRASS BED #6

E'
E
SEE SHT. 23 OF 41

M.P. 3.09

MP 3

PIPELINE TO BE INSTALLED WITHIN EXISTING OIL FIELD CANAL, CHANNEL & SLIP.

0'    400'    800'    1600'

——— PROPOSED PIPELINES    [ ] WORKSPACE    [- -] FACILITY

NOTE: THE CONTENT OF THIS DRAWING IS DESIGNED SPECIFICALLY FOR THE PURPOSE OF SECURING FEDERAL, STATE AND LOCAL ENVIRONMENTAL/ REGULATORY AUTHORIZATIONS ONLY.

Date: 12/27/2018
Revised: 04/23/2020

PLAN VIEW
PLs: Aransas To Harbor Island

U.S. ARMY CORPS OF ENGINEERS
PERMIT APPLICATION
SWG-2018-00789



AXIS MIDSTREAM

AXIS MIDSTREAM HOLDINGS, LLC
Proposed Pipelines & Facilities
MIDWAY to HARBOR ISLAND PROJECT
SAN PATRICIO & NUECES COUNTIES, TEXAS



DETAIL C

EDGE OF WORKING
ROW/TURBITIY CURTAIN

PERM. ROW

PERM. ROW

60'

75' TRENCHING SIDE

75' TEMP. SPOIL SIDE

150' ENTIRE WORKING ROW

ROW/TURBITITY CURTAIN
EDGE OF WORKING

DETAIL D

PIPELINE PROTECTION
ROCK, CONCRETE MATS
OR OTHER SUITABLE MATERIAL
15,927 cu. yds.

NATURAL GROUND EL.

SEE SHT. 23 OF 41

M.P. 3.09

SEE DETAIL C

1-2" FIBER OPTIC LINE
1-6" GAS SUPPY PIPELINE
1-16" INTEREMIX PIPELINE
2-42" CRUDE PIPELINES

SEE SHT. 24 OF 41

SEAGRASS BED #7

SEE SHT. 24 OF 41

SEE DETAIL D

SMOOTH CORD
GRASS

MP 4

BLACK MANGROVE #3

ESTUARINE WETLAND #2

M.P. 4.62

TIDAL FLAT

SEE SHT. 24 OF 41

BLACK MANGROVE #2

BLACK MANGROVE #1

PIPELINE TO BE INSTALLED
WITHIN EXISTING OIL FIELD
CANAL, CHANNEL & SLIP.

0'   400'   800'   1600'

PROPOSED PIPELINES    WORKSPACE    FACILITY

NOTE: THE CONTENT OF THIS DRAWING IS DESIGNED SPECIFICALLY
FOR THE PURPOSE OF SECURING FEDERAL, STATE AND LOCAL
ENVIRONMENTAL/ REGULATORY AUTHORIZATIONS ONLY.

Date: 12/27/2018
Revised: 04/23/2020

PLAN VIEW
PLs: Aransas To Harbor Island

**U.S. ARMY CORPS OF ENGINEERS
PERMIT APPLICATION
SWG-2018-00789**

AXIS MIDSTREAM

**AXIS MIDSTREAM HOLDINGS, LLC**
Proposed Pipelines & Facilities
MIDWAY to HARBOR ISLAND PROJECT
SAN PATRICIO & NUECES COUNTIES, TEXAS



PAGE 20 OF 39

PIPELINE PROTECTION
ROCK, CONCRETE MATS
OR OTHER SUITABLE MATERIAL
15,927 cu. yds.

NATURAL GROUND EL.

DETAIL D

END OF ROUTE

M.P. 4.62

ESTUARINE WETLAND #2

BLACK MANGROVE #3

BLACK MANGROVE #2

TIDAL FLAT

SEE DETAIL D

MP 5

SEE SHT. 24 OF 41

1-2" FIBER OPTIC LINE
1-6" GAS SUPPY PIPELINE
1-16" INTEREMIX PIPELINE
2-42" CRUDE PIPELINES

P.O.E.
1-2" FIBER OPTIC LINE
1-6" GAS SUPPLY PIPELINES
1-16" INTERMIX PIPELINES
2-42" CRUDE OIL PIPELINES
X= 1,418,522.59'
Y= 17209874.99'
LAT: 27° 52' 36.52"
LON: 97° 9' 20.90"

PROPOSED HARBOR ISLAND
TERMINAL BOUNDARY
FOR DETAILS SEE
SHT. 34 & 35 OF 41

0'    400'    800'    1600'

PROPOSED PIPELINES       WORKSPACE       FACILITY

NOTE: THE CONTENT OF THIS DRAWING IS DESIGNED SPECIFICALLY FOR THE PURPOSE OF SECURING FEDERAL, STATE AND LOCAL ENVIRONMENTAL/ REGULATORY AUTHORIZATIONS ONLY.

Date: 12/27/2018
Revised: 04/23/2020

PLAN VIEW
PLs: Aransas to Harbor Island

U.S. ARMY CORPS OF ENGINEERS
PERMIT APPLICATION
SWG-2018-00789

AXIS MIDSTREAM

AXIS MIDSTREAM HOLDINGS, LLC
Proposed Pipelines & Facilities
MIDWAY to HARBOR ISLAND PROJECT
SAN PATRICIO & NUECES COUNTIES, TEXAS

SWG-2018-00789; Axis Midstream Project Plans

Sheet 20/39

## PLAN
SCALE: 1" = 1000'

PROPOSED HDD ENTRY
X= 1,418,263.22'
Y= 17,210,080.91'
LAT: N027° 52' 38.59"
LON: W097° 09' 23.76"

CORE B-1
X= 1,418,490.10'
Y= 17,210,051.96'
LAT: N027° 52' 38.28"
LON: W097° 09' 21.24"

1301+000

PROPOSED AXIS PIPELINES

260'X300'

300'X200'

1302+000

GULF INTRACOASTAL WATERWAY

PROPOSED HDD EXIT
X= 1,421,684.88'
Y= 17,207,336.81'
LAT: N027° 52' 11.06"
LON: W097° 08' 45.97"

1000'   0'   1000'
SCALE

### SECTION
SCALE: N.T.S.

DRILL A
DRILL B    DRILL C
20' MIN.
20' MIN.    20' MIN.

### LEGEND

SILTY SAND – SM

FAT CLAY – CH

CLAYEY SAND

DRILL A
DRILL B & C

## PROFILE
HORIZONTAL SCALE: 1" = 1000'
VERTICAL SCALE: 1" = 250'

4386'

0+00 DRILL ENTRY
EL. 5.86'
CORE B-1
~EL. 4.5'
~EL. -115.5'
12'
~120.00'

13+36 WATERWAY TOE
13+99 C/L WATERWAY
14+63 WATERWAY TOE

EXCLUSION ZONE

43+86 P.I. & HDD EXIT
EL. (-)7.34'

P.C.1   P.C.1   R2400'
P.T.1   R4200'
P.T.1

40' MIN.
20' MIN.

R4200'   R2400'
R4200'   P.C.2
P.C.2   P.T.2
P.T.2

PROPOSED AXIS PIPELINES

20.00
0.00
-20.00
-40.00
-60.00
-80.00
-100.00
-120.00
-140.00

### SPECIFICATIONS:
CARRIER PIPE:
DRILL A BUNDLE
  16.000" O.D. *
  6.625" O.D. *
  2" FIBER OPTIC CABLE
DRILL B
  42.000" O.D. *
DRILL C
  42.000" O.D. *
* PIPE WALL THICKNESS AND COATING TO BE DETERMINED.

### GENERAL NOTES:
1) GRID PROJECTION BASED UPON TEXAS STATE PLANE COORDINATE SYSTEM, CENTRAL ZONE (GRID UNITS IN FEET) GEODETIC DATUM: NAD 1983, CLARKE SPHEROID, 1866.
2) CONTRACTOR IS RESPONSIBLE FOR FIELD VERIFYING ALL FOREIGN PIPELINE CROSSINGS AND COVER PRIOR TO CONSTRUCTION.
3) 3 PROPOSED HDD WILL BE INSTALLED IN THE EASEMENT. DRILL A WILL CONSIST OF A BUNDLED ON 16.000" O.D., ONE 6.625" O.D. AND 2" O.D. DRILL B WILL BE A 42.000" O.D. PIPELINE AND DRILL C WILL BE A 42.000" O.D. PIPELINE.
4) THE CONTRACTOR WILL BE RESPONSIBLE FOR DETERMINING THE ORDER OF THE DRILLS.
5) THE ENGINEER'S SEAL AFFIXED TO THIS DRAWING REPRESENTS THE ENGINEERING DESIGN OF THE 3 HDD PROFILES SHOWN ON THIS DRAWING. THE DESIGN IS BASED UPON THE SURVEY INFORMATION PROVIDED BY GULLETT & ASSOCIATES DISPLAYED HEREIN. THE ISSUANCE OF THIS DRAWING IS NOT INTENDED AS A SURVEYING DOCUMENT AND SHOULD NOT BE USED FOR ESTABLISHMENT OR RECORD OF BOUNDARY, EASEMENTS OR ANY OTHER SURVEYING PURPOSE.

NOTE: THE CONTENT OF THIS DRAWING IS DESIGNED SPECIFICALLY FOR THE PURPOSE OF SECURING FEDERAL, STATE AND LOCAL ENVIRONMENTAL/ REGULATORY AUTHORIZATIONS ONLY.

Date: 12/27/2018
Revised: 04/23/2020

## PLAN PROFILE
PLs: GIWW HDD

# U.S. ARMY CORPS OF ENGINEERS PERMIT APPLICATION SWG-2018-00789



AXIS MIDSTREAM

# AXIS MIDSTREAM HOLDINGS, LLC
Proposed Pipelines & Facilities
MIDWAY to HARBOR ISLAND PIPELINES & TERMINAL
SAN PATRICIO & NUECES COUNTIES, TEXAS

SECTION A–A' (HDD EXIT SITE)

SECTION B–B'

SECTION C–C'

HORIZONTAL SCALE: 1"–60'
VERTICAL SCALE: 1"–20'

NOTE:
TRENCH SIDE SLOPES ARE 3:1.

| NOTE: THE CONTENT OF THIS DRAWING IS DESIGNED SPECIFICALLY FOR THE PURPOSE OF SECURING FEDERAL, STATE AND LOCAL ENVIRONMENTAL/ REGULATORY AUTHORIZATIONS ONLY. | Date: 12/27/2018 Revised: 04/23/2020 | CROSS-SECTIONS PLs: Aransas Fac. to Harbor Island |
|---|---|---|

**U.S. ARMY CORPS OF ENGINEERS PERMIT APPLICATION SWG-2018-00789**



AXIS MIDSTREAM

# AXIS MIDSTREAM HOLDINGS, LLC
Proposed Pipelines & Facilities
MIDWAY to HARBOR ISLAND PIPELINES & TERMINAL
SAN PATRICIO & NUECES COUNTIES, TEXAS



SECTION D–D'

SECTION E–E'

SECTION F–F'

HORIZONTAL SCALE: 1"–60'
VERTICAL SCALE: 1"–20'

NOTE:
TRENCH SIDE SLOPES ARE 3:1.

NOTE: THE CONTENT OF THIS DRAWING IS DESIGNED SPECIFICALLY FOR THE PURPOSE OF SECURING FEDERAL, STATE AND LOCAL ENVIRONMENTAL/ REGULATORY AUTHORIZATIONS ONLY.

Date: 12/27/2018
Revised: 04/23/2020

CROSS-SECTIONS
PLs: Aransas Fac. to Harbor Island

**U.S. ARMY CORPS OF ENGINEERS**
**PERMIT APPLICATION**
**SWG-2018-00789**

AXIS MIDSTREAM

# AXIS MIDSTREAM HOLDINGS, LLC
Proposed Pipelines & Facilities
MIDWAY to HARBOR ISLAND PIPELINES & TERMINAL
SAN PATRICIO & NUECES COUNTIES, TEXAS

SECTION G–G'

SECTION H–H'

SECTION I–I'

SECTION J–J'

HORIZONTAL SCALE: 1"–60'
VERTICAL SCALE: 1"–20'

NOTE:
TRENCH SIDE SLOPES ARE 3:1.

| NOTE: THE CONTENT OF THIS DRAWING IS DESIGNED SPECIFICALLY FOR THE PURPOSE OF SECURING FEDERAL, STATE AND LOCAL ENVIRONMENTAL/ REGULATORY AUTHORIZATIONS ONLY. | Date: 12/27/2018 Revised: 04/23/2020 | CROSS-SECTIONS PLs: Aransas Fac. to Harbor Island |
|---|---|---|

**U.S. ARMY CORPS OF ENGINEERS PERMIT APPLICATION SWG-2018-00789**



AXIS MIDSTREAM

# AXIS MIDSTREAM HOLDINGS, LLC
## Proposed Pipelines & Facilities
### MIDWAY to HARBOR ISLAND PIPELINES & TERMINAL
SAN PATRICIO & NUECES COUNTIES, TEXAS



INSTALLATION OF PIPELINE #1

TEMPORARY R.O.W. BOUNDARY

TEMPORARY R.O.W. BOUNDARY

TRENCH SPOIL

SPOIL SETBACK

5'

WELDING SHACK

SEGREGATED TOPSOIL

SEGREGATED TOPSOIL

7'-9'

| 30' SPOIL AREA | 5' SPOIL SETBACK | 30' DITCH | 55' WORKING SIDE AND TRAVEL LANE | 10' |
|---|---|---|---|---|

| 30' TEMPORARY CONSTRUCTION R.O.W. | 20' | 40' | 40' TEMPORARY CONSTRUCTION R.O.W. |
|---|---|---|---|

60' PERMANENT R.O.W.

130' CONSTRUCTION R.O.W.

**NOTES:**

1. ALTHOUGH THE DIMENSIONS SHOWN ARE TYPICAL, SOME VARIATIONS MAY EXIST DUE TO SITE SPECIFIC CONDITIONS. UNLESS OTHERWISE INDICATED ON THE ALIGNMENT SHEETS, THE MAXIMUM WIDTH OF THE CONSTRUCTION RIGHT-OF-WAY SHALL BE AS SHOWN IN THE TABLE FOR THE APPROPRIATE PIPE DIAMETER.

2. TOPSOIL AND SUBSOIL SHALL BE SEGREGATED WITHIN WETLAND, RESIDENTIAL, AGRICULTURAL, PASTURES, HAYFIELDS AND OTHER AREAS AT LANDOWNER'S OR LAND MANAGING AGENCY'S REQUEST.

3. 6" PIPELINE (NOT SHOWN) WILL BE PLACED IN DITCH WITH 1 FT WALL TO WALL SEPARATION WITH EITHER 36" PIPELINE #1 OR #2 DEPENDING ON CONTRACTOR SEQUENCE PREFERENCE AT TIME OF INSTALLATION.



TERRESTRIAL PIPELINE
TYPICAL CONSTRUCTION PLAN

TEMPORARY R.O.W. BOUNDARY

TEMPORARY R.O.W. BOUNDARY

TRENCH SPOIL

SEGREGATED TOPSOIL

SPOIL SETBACK

5'

SEGREGATED TOPSOIL

AXIS PIPELINE NO. 1

7'-9'

| 10' | 40' SPOIL AREA | 5' SPOIL SETBACK | 30' DITCH | 45' WORKING SIDE AND TRAVEL LANE |
|---|---|---|---|---|

| 30' TEMPORARY CONSTRUCTION R.O.W. | 20' | 20' | 20' | 40' TEMPORARY CONSTRUCTION R.O.W. |
|---|---|---|---|---|

60' PERMANENT R.O.W.

130' CONSTRUCTION R.O.W.

INSTALLATION OF PIPELINE #2

NOTE: THE CONTENT OF THIS DRAWING IS DESIGNED SPECIFICALLY FOR THE PURPOSE OF SECURING FEDERAL, STATE AND LOCAL ENVIRONMENTAL/ REGULATORY AUTHORIZATIONS ONLY.

Date: 12/27/2018
Revised: 04/23/2020

**TYPICAL CROSS-SECTION**
PLs: Midway T.F. to Aransas Fac.

**U.S. ARMY CORPS OF ENGINEERS
PERMIT APPLICATION
SWG-2018-00789**



AXIS MIDSTREAM

**AXIS MIDSTREAM HOLDINGS, LLC**
Proposed Pipelines & Facilities
MIDWAY to HARBOR ISLAND PIPELINES & TERMINAL
SAN PATRICIO & NUECES COUNTIES, TEXAS

EDGE OF ROAD

PLAN VIEW
NOT TO SCALE

PIPELINE

ARO COATING

ROAD BED

DRILLING RIG EXIT SITE LIMITS

OPEN CUT TRENCH

CONSTRUCTION R.O.W.

EXTRA WORK SPACE

100'

MARKER (TYP.)

EDGE OF ROAD

C/L ROAD

R.O.W. LIMIT

DIRECTION OF BORE

R.O.W. LIMIT

SILT FENCE OR STRAW BALES

PIPELINE

50' SETBACK FROM ROAD R.O.W.

ROAD BED

100'

OPEN CUT TRENCH

DRILL STRING

EXTRA WORK SPACE

50' SETBACK FROM ROAD R.O.W.

SILT FENCE OR STRAW BALES

CONSTRUCTION R.O.W.

DRILLING RIG ENTRY SITE LIMITS

PLAN VIEW
NOT TO SCALE

NOTES:

1. EXTRA WORK SPACE NOT LOCATED IN WETLAND WHEN POSSIBLE AND PRACTICAL.

2. RIGHT-OF-WAY LIMITS AS SHOWN ON ALIGNMENT SHEETS.

3. WORK AREA WILL BE TEMPORARILY MATTED FOR MARSH AREAS.

| NOTE: THE CONTENT OF THIS DRAWING IS DESIGNED SPECIFICALLY FOR THE PURPOSE OF SECURING FEDERAL, STATE AND LOCAL ENVIRONMENTAL/ REGULATORY AUTHORIZATIONS ONLY. | Date: 12/27/2018<br>Revised: 04/23/2020 | TYPICAL CONST. LAYOUT<br>PLs: Road Crossing Bore |
| --- | --- | --- |

## U.S. ARMY CORPS OF ENGINEERS PERMIT APPLICATION SWG-2018-00789



AXIS MIDSTREAM

# AXIS MIDSTREAM HOLDINGS, LLC
## Proposed Pipelines & Facilities
## MIDWAY to HARBOR ISLAND PIPELINES & TERMINAL
### SAN PATRICIO & NUECES COUNTIES, TEXAS

EDGE OF RAILROAD

PIPELINE

ARO COATING

RAILROAD BED

**PLAN VIEW**
NOT TO SCALE

DRILLING RIG EXIT SITE LIMITS

CONSTRUCTION R.O.W.

OPEN CUT TRENCH

MARKER (TYP.)

EXTRA WORK SPACE

100'

SILT FENCE OR STRAW BALES

EDGE OF RAILROAD BED

R.O.W. LIMIT

DIRECTION OF BORE

R.O.W. LIMIT

PIPELINE

50' SETBACK FROM RAILROAD R.O.W.

RAILROAD BED

100'

OPEN CUT TRENCH

DRILL STRING

EXTRA WORK SPACE

50' SETBACK FROM RAILROAD R.O.W.

SILT FENCE OR STRAW BALES

CONSTRUCTION R.O.W.

DRILLING RIG ENTRY SITE LIMITS

**PLAN VIEW**
NOT TO SCALE

**NOTES:**

1. EXTRA WORK SPACE NOT LOCATED IN WETLAND WHEN POSSIBLE AND PRACTICAL.

2. RIGHT-OF-WAY LIMITS AS SHOWN ON ALIGNMENT SHEETS.

3. WORK AREA WILL BE TEMPORARILY MATTED FOR MARSH AREAS.

| NOTE: THE CONTENT OF THIS DRAWING IS DESIGNED SPECIFICALLY FOR THE PURPOSE OF SECURING FEDERAL, STATE AND LOCAL ENVIRONMENTAL/ REGULATORY AUTHORIZATIONS ONLY. | Date: 12/27/2018<br>Revised: 04/23/2020 | **TYPICAL CONST. LAYOUT**<br>PLs: Railroad Crossing Bore |
|---|---|---|

**U.S. ARMY CORPS OF ENGINEERS PERMIT APPLICATION SWG-2018-00789**



AXIS MIDSTREAM

# AXIS MIDSTREAM HOLDINGS, LLC

Proposed Pipelines & Facilities
MIDWAY to HARBOR ISLAND PIPELINES & TERMINAL

SAN PATRICIO & NUECES COUNTIES, TEXAS

DRILLING RIG EXIT SITE LIMITS

CONSTRUCTION R.O.W.

50' MIN SETBACK

STRAW BALES

SILT FENCE

EXIT PIT

PIPELINE

SHORELINE

WATER

TOP OF BANK
EDGE OF WATER

EXTRA WORK SPACE

## PLAN VIEW
SCALE: NOT TO SCALE

WATER

SHORELINE

ENTRY PIT

R.O.W. LIMIT

DIRECTION OF DRILL

DRILL STRING

SHORELINE

WATER

SILT FENCE OR STRAW BALES AS REQUIRED

50' MINIMUM SETBACK FROM TOP OF BANK

R.O.W. LIMIT

EXTRA WORK SPACE

CONSTRUCTION R.O.W.

WATER

SHORELINE

50' MINIMUM SETBACK FROM TOP OF BANK

SILT FENCE OR STRAW BALES AS REQUIRED

## PLAN VIEW
NOT TO SCALE

DRILLING RIG ENTRY SITE LIMITS

NOTES:
1. EXTRA WORK SPACE NOT LOCATED IN WETLANDS WHEN POSSIBLE.

| NOTE: THE CONTENT OF THIS DRAWING IS DESIGNED SPECIFICALLY FOR THE PURPOSE OF SECURING FEDERAL, STATE AND LOCAL ENVIRONMENTAL/ REGULATORY AUTHORIZATIONS ONLY. | Date: 12/27/2018 Revised: 04/23/2020 | TYPICAL CONST. LAYOUT PLs: Waterbody Crossing |
|---|---|---|

## U.S. ARMY CORPS OF ENGINEERS PERMIT APPLICATION SWG-2018-00789



AXIS MIDSTREAM

## AXIS MIDSTREAM HOLDINGS, LLC
Proposed Pipelines & Facilities
MIDWAY to HARBOR ISLAND PIPELINES & TERMINAL
SAN PATRICIO & NUECES COUNTIES, TEXAS

DRILLING SUPPORT BARGE

DIRECTION OF BARGE

TRANSITION PIPE DITCH

EXCAVATED EXIT PIT

PIPE PRE-LAID ON BOTTOM

WATER

SHORELINE

TURBIDITY CONTAINMENT AS REQUIRED BY REGULATORY AGENCY

DRILL STRING

300'

ENTRY PIT

DRILL RIG

200'

SHORELINE

WATER

DRILLING RIG ENTRY SITE LIMITS

# HORIZONTAL DIRECTIONAL DRILLING LAND TO WATER

SCALE: N.T.S
CONDENSED FOR ILLUSTRATIVE PURPOSES

| NOTE: THE CONTENT OF THIS DRAWING IS DESIGNED SPECIFICALLY FOR THE PURPOSE OF SECURING FEDERAL, STATE AND LOCAL ENVIRONMENTAL/ REGULATORY AUTHORIZATIONS ONLY. | Date: 12/27/2018<br>Revised: 04/23/2020 | TYPICAL CONST. LAYOUT<br>PLs: Land to Water |
|---|---|---|

**U.S. ARMY CORPS OF ENGINEERS
PERMIT APPLICATION
SWG-2018-00789**



AXIS MIDSTREAM

# AXIS MIDSTREAM HOLDINGS, LLC

Proposed Pipelines & Facilities
MIDWAY to HARBOR ISLAND PIPELINES & TERMINAL

SAN PATRICIO & NUECES COUNTIES, TEXAS

EDGE OF WORKSPACE

EDGE OF WORKSPACE

BARGE
CONTROL
TOWER

LINE–UP

WELDING

LAY BARGE

NDE

PIPE COATING

DIRECTION OF TRAVEL

STINGER

SUBSEA
PIPELINE

SPOIL

## TYPICAL PIPELINE LAY BARGE SPREAD

SCALE
CONDENSED FOR ILLUSTRATIVE PURPOSES

NOTE: THE CONTENT OF THIS DRAWING IS DESIGNED SPECIFICALLY FOR THE PURPOSE OF SECURING FEDERAL, STATE AND LOCAL ENVIRONMENTAL/ REGULATORY AUTHORIZATIONS ONLY.

Date: 12/27/2018
Revised: 04/23/2020

### TYPICAL CONST. LAYOUT
PLs: Shallow Water Lay Barge

## U.S. ARMY CORPS OF ENGINEERS PERMIT APPLICATION SWG-2018-00789



AXIS MIDSTREAM

# AXIS MIDSTREAM HOLDINGS, LLC
Proposed Pipelines & Facilities
MIDWAY to HARBOR ISLAND PIPELINES & TERMINAL

SAN PATRICIO & NUECES COUNTIES, TEXAS

SWG-2018-00789; Axis Midstream Project Plans

SPACE RESERVED FOR PUMP,
MANIFOLD AND PIGGING EQUIPMENT

175' BUFFER

2579.4'

DEPARTING
PIPELINES

CONTAINMENT BERM

| TK-1 264' DIA 500K BBL | TK-2 264' DIA 500K BBL | TK-3 264' DIA 500K BBL | TK-4 264' DIA 500K BBL | TK-11 188' DIA 250K BBL | TK-12 132' DIA 100K BBL |

1024'

1029.9'

| TK-5 222' DIA 350K BBL | TK-6 222' DIA 350K BBL | TK-7 188' DIA 250K BBL | TK-8 188' DIA 250K BBL | TK-9 188' DIA 250K BBL | TK-10 188' DIA 250K BBL |

CONTAINMENT BERM

2593.6'

175' BUFFER

FM 893

DRAINAGE DITCH

DRAINAGE DITCH

WINDFARM ACCESS RD.

AGRICULTURE ACCESS RD.

DRAINAGE DITCH

DRAINAGE DITCH

MIDWAY SITE LAYOUT

150' 50' 0 200'
100' 100'

NOTE: THE CONTENT OF THIS DRAWING IS DESIGNED SPECIFICALLY FOR THE PURPOSE OF SECURING FEDERAL, STATE AND LOCAL ENVIRONMENTAL/ REGULATORY AUTHORIZATIONS ONLY.

Date: 12/27/2018
Revised: 04/23/2020

**PLAN VIEW**
Midway Tank Farm

**U.S. ARMY CORPS OF ENGINEERS
PERMIT APPLICATION
SWG-2018-00789**



AXIS MIDSTREAM

**AXIS MIDSTREAM HOLDINGS, LLC**
Proposed Pipelines & Facilities
MIDWAY to HARBOR ISLAND PIPELINES & TERMINAL
SAN PATRICIO & NUECES COUNTIES, TEXAS



ARANSAS PASS STAGING FACILITY

RAILROAD

TK-0350 222' DIA 350K BBL
TK-0351 222' DIA 350K BBL
TK-0352 222' DIA 350K BBL
TK-0501 264' DIA 500K BBL
TK-0502 264' DIA 500K BBL
TK-0505 264' DIA 500K BBL
TK-0354 222' DIA 350K BBL
TK-0353 222' DIA 350K BBL
TK-0504 264' DIA 500K BBL
TK-0503 264' DIA 500K BBL
TK-0251 75' DIA 25K BBL
TK-0250 75' DIA 25K BBL

175' BUFFER
175' BUFFER
175' BUFFER
175 BUFFER
CONTAINMENT
CONTAINMENT

E. BEASLEY AVE.
RELOCATED E.BEASLEY AVE.
EXISTING PIPELINES

Fire Water Site Rainwater to be collected here (1.5 AC)

PROPOSED ARANSAS PASS STAGING FACILITY EMERGENCY ACCESS ROAD SEE SHEET 33 OF 41 FOR DETAILS

GULF INTERCOASTAL WATERWAY

### EQUIPMENT LEGEND

| ITEM | DESCRIPTION |
|---|---|
| 1. | OPERATIONS CENTER, 50' X 60' |
| 2. | WAREHOUSE/SHOP, 80' X 100' |
| 3. | PIG LAUNCHER AND RECEIVER AREA |
| 4. | SHIP LOADING PUMP 1 & 2 AREA |
| 5. | TRANSFER PUMP |
| 6. | MCC BUILDING 1, 2 & 3. 16' X 100' |
| 7. | FIRE SUPPRESSION EQUIPMENT AREA |
| 8. | RECEIVER/CHECK METER SITE, INCOMING |
| 9. | FIREWATER POND, 1.5 ACRES |
| 10. | POWER GENERATION |
| 11. | OUTGOING METERS 1 & 2 |
| 12. | OUTGOING METERS 1 & 2 |

WETLAND AREA

600'  300'  0'  600'
SCALE: 1" = 600'

C/L EXISTING ROAD — WETLAND BOUNDARY — C/L E. BEASLEY AVE. — C/L RELOCATED E. BEASLEY AVE.

BACKFILL TO EL.+6'
EXISTING GROUND PROFILE
BACKFILL TO EL.+6'

20' 10' 0' −10' −20'

R1 CROSS SECTION
SCALE: 1"=150'
VERT. SCALE: 1"=75'

NOTE: THE CONTENT OF THIS DRAWING IS DESIGNED SPECIFICALLY FOR THE PURPOSE OF SECURING FEDERAL, STATE AND LOCAL ENVIRONMENTAL/ REGULATORY AUTHORIZATIONS ONLY.

Date: 12/27/2018
Revised: 04/23/2020

## PLAN VIEW/CROSS-SECTION
Aransas Pass Staging Facility

# U.S. ARMY CORPS OF ENGINEERS PERMIT APPLICATION SWG-2018-00789

# AXIS MIDSTREAM HOLDINGS, LLC
Proposed Pipelines & Facilities
MIDWAY to HARBOR ISLAND PIPELINES & TERMINAL
SAN PATRICIO & NUECES COUNTIES, TEXAS

AXIS MIDSTREAM

WATERBODY #8

ESTUARINE WETLAND #3

PROPOSED 15' WING

20'

RIP RAP

PROPOSED EMERGENCY ACCESS ROAD

15' WING

ESTUARINE WETLAND #4

3-48" CONCRETE BOX CULVERTS 40' LONG

PLAN

1000.0'

EXISTING ROAD

NATURAL GROUND

12" OF LIMESTONE AGGREGATE

WETLAND BOUNDARY

SEE DETAIL A

EXISTING ROAD

EXISTING ROAD

10' 5' 0 -5' -10'

10' 5' 0 -5' -10'

PROFILE

HORIZONTAL SCALE: 1"-60'

VERTICAL SCALE: 1"-20'

12" OF LIMESTONE AGGREGATE

EARTHEN FILL

OHW

ELEV. (-)1.00'

EXCAVATION

3-48" CONCRETE BOX CULVERTS 40' LONG

DETAIL A

NOTES:

| LIMESTONE AGGREGATE (EAST SIDE) | 195 CU. YDS. |
| LIMESTONE AGGREGATE (IN WETLANDS) | 540 CU. YDS. |
| EARTHEN FILL FOR ROAD | 163 CU. YDS. |
| RIP-RAP | 17 CU. YDS. |
| EXCAVATION FOR CULVERTS | 102 CU. YDS. |

NOTE: THE CONTENT OF THIS DRAWING IS DESIGNED SPECIFICALLY FOR THE PURPOSE OF SECURING FEDERAL, STATE AND LOCAL ENVIRONMENTAL/ REGULATORY AUTHORIZATIONS ONLY.

Date: 12/27/2018
Revised: 04/23/2020

PLAN VIEW/CROSS SECTION
ACCESS ROAD — ARANSAS FAC.

**U.S. ARMY CORPS OF ENGINEERS PERMIT APPLICATION SWG-2018-00789**



AXIS MIDSTREAM

**AXIS MIDSTREAM HOLDINGS, LLC**
Proposed Pipelines & Facilities
MIDWAY to HARBOR ISLAND PIPELINES & TERMINAL
SAN PATRICIO & NUECES COUNTIES, TEXAS



PROPOSED BULKHEAD

PROPERTY LINE

SLOPE 3:1

76.18'

−60' MLLW (DESIGN DEPTH)

SLOPE 3:1

255.00'

EXISTING GRADE ASSUMED TO BE EL. +14.0'

PROPERTY LINE

TIE BACKS

PROPERTY LINE

105.00'

76.18'

197.00'

−54' MLLW (DESIGN DEPTH)

105.00' 198.02'

SLOPE 3:1

130.00'

DOCKING DETAILS ADAPTED FROM 12/2018 DATA PROVIDED BY LLOYD ENGINEERS, INC.

CURRENT PLANNED DREDGE = −54'+4' +2' = -60' MLLW

350'  175'  0'  350'

SCALE:  1" = 350'

NOTE: THE CONTENT OF THIS DRAWING IS DESIGNED SPECIFICALLY FOR THE PURPOSE OF SECURING FEDERAL, STATE AND LOCAL ENVIRONMENTAL/ REGULATORY AUTHORIZATIONS ONLY.

Date: 12/27/2018
Revised: 04/23/2020

PLAN VIEW
Harbor Island Marine Terminal

**U.S. ARMY CORPS OF ENGINEERS PERMIT APPLICATION SWG-2018-00789**

AXIS MIDSTREAM

**AXIS MIDSTREAM HOLDINGS, LLC**
Proposed Pipelines & Facilities
MIDWAY to HARBOR ISLAND PIPELINES & TERMINAL
SAN PATRICIO & NUECES COUNTIES, TEXAS

Ȼ CORPUS CHRISTI SHIP CHANNEL



EQUIPMENT LEGEND

| ITEM | DESCRIPTION |
|---|---|
| 1. | OFFICE |
| 2. | 16" PIG LAUNCHER/RECEIVER |
| 3. | 42" PIG LAUNCHER/RECEIVER #1 |
| 4. | 42" PIG LAUNCHER/RECEIVER #2 |
| 5. | METER SKID #1 |
| 6. | METER SKID #2 |
| 7. | COMBUSTOR UNIT #1 |
| 8. | COMBUSTOR UNIT #2 |
| 9. | CONTROL BUILDING |
| 10. | 80K BBL. TANK |
| 11. | 80K BBL. TANK |

CROSS HATCHED AREA DEPICTS EXCAVATION BOUNDARY

℄ CORPUS CHRISTI SHIP CHANNEL

BATHYMETRIC CONTOUR DATA ADAPTED FROM NAISMITH MARINE SERVICES DATA 01/2018

500'   250'   0'   500'
SCALE: 1" = 500'

1313'

ELEV. 0.00' MLLW

EL.-2'   EL.-60   EL.-60'   EL.+14'   EL.-60'

A CROSS SECTION
SCALE: 1"=150'

NOTE: THE CONTENT OF THIS DRAWING IS DESIGNED SPECIFICALLY FOR THE PURPOSE OF SECURING FEDERAL, STATE AND LOCAL ENVIRONMENTAL/ REGULATORY AUTHORIZATIONS ONLY.

Date: 12/27/2018
Revised: 04/23/2020

PLAN VIEW/CROSS SECTION
Harbor Island Marine Terminal

U.S. ARMY CORPS OF ENGINEERS
PERMIT APPLICATION
SWG-2018-00789

AXIS MIDSTREAM HOLDINGS, LLC
Proposed Pipelines & Facilities
MIDWAY to HARBOR ISLAND PIPELINES & TERMINAL
SAN PATRICIO & NUECES COUNTIES, TEXAS

AXIS MIDSTREAM



DOCKING DETAILS ADAPTED FROM 12/2018
DATA PROVIDED BY LLOYD ENGINEERS, INC.

MIRAFI 500X FABRIC

65.0'  105.0'

EL. +10.0'
℄ EL. +3.0'
DRAINS @ EL. +2.0'
EL. 0.00'
EL. −12' MLLW (INITIAL DREDGE DEPTH)
EL. −54' MLLW (DREDGE DEPTH)

30"∅x¾" W.T.

TIP EL. −70.0'
AZ26 INFILL SHEETS
TIP EL. −100.0'

TIP EL. −96.0'
60"∅x¾" W.T. X 100' LG.

TIP EL. −116.0'

**B** TYPICAL OVERALL BULKHEAD SECTION
SCALE: 1"=100'

TIE BACKS

**B**
-

**C**
-

120.0'

12.0'
46.5'
60.0'   100.0'
17.0'
36.5'
30.0'  60.0'  30.0'
12.0'

**1** SHIP DOCK INSET
SCALE: 1"=75'

204.3'  150.0'  260.5'  260.5'  150.0'  165.3'

15.0'

BREASTING LINE

SEE INSET "1"

SEE INSET "2"  BREASTING LINE

130.0'

15.0'

50.0' 50.0' 114.8'  114.8' 50.0' 50.0'

24.0'

24.0'

30"∅X1"WT PIPE BRACES (TYP.)

30"∅x1" WT PIPE BRACES (TYP.)

60"∅x1"PIPE JACKET (TYP)

**2** TYP. MOORING DOLPHIN
INSET AT EL +2.00'
SCALE: N.T.S.

150'  75'  0'  150'
SCALE: 1" = 150'

60"∅x1"PIPE JACKET (TYP)

24.0'

W24X104 (TYP)

24.0'

1¼" GRATING (TYP)

30"∅x1" WT PIPE BRACES (TYP.)

MCS 1150 G2.0 FENDER SYSTEM

**2** TYP. MOORING DOLPHIN
INSET AT EL +15.75'
SCALE: N.T.S.

NOTE: THE CONTENT OF THIS DRAWING IS DESIGNED SPECIFICALLY FOR THE PURPOSE OF SECURING FEDERAL, STATE AND LOCAL ENVIRONMENTAL/ REGULATORY AUTHORIZATIONS ONLY.

Date: 12/27/2018
Revised: 04/23/2020

PLAN VIEW/CROSS SECTIONS
Harbor Island: Structures

**U.S. ARMY CORPS OF ENGINEERS PERMIT APPLICATION SWG-2018-00789**

AXIS MIDSTREAM

**AXIS MIDSTREAM HOLDINGS, LLC**
Proposed Pipelines & Facilities
MIDWAY to HARBOR ISLAND PIPELINES & TERMINAL
SAN PATRICIO & NUECES COUNTIES, TEXAS



① APPROACH AND PIPE TRESTLE ENLARGED PLAN
  - SCALE: 1"=30'-0"

1.0' SQ. CURB AND GUARDRAIL

Ⅽ APPROACH TRESTLE

50.0'  50.0'  50.0'  50.0'  26.3'

7.5'  8.5'

36"Ø PILE (TYP.)

EL. +10.0'
EL. +25.0'

Ⓒ APPROACH TRESTLE SECTION
  - SCALE: 1"=30'-0"

30'  15'  0'  30'
SCALE:  1" = 30'

DOCKING DETAILS ADAPTED FROM 12/2018
DATA PROVIDED BY LLOYD ENGINEERS, INC.

NOTE: THE CONTENT OF THIS DRAWING IS DESIGNED SPECIFICALLY FOR THE PURPOSE OF SECURING FEDERAL, STATE AND LOCAL ENVIRONMENTAL/ REGULATORY AUTHORIZATIONS ONLY.

Date: 12/27/2018
Revised: 04/23/2020

PLAN VIEW/CROSS SECTIONS
Harbor Island: Structures

U.S. ARMY CORPS OF ENGINEERS
PERMIT APPLICATION
SWG-2018-00789

AXIS MIDSTREAM HOLDINGS, LLC
Proposed Pipelines & Facilities
MIDWAY to HARBOR ISLAND PIPELINES & TERMINAL
SAN PATRICIO & NUECES COUNTIES, TEXAS

AXIS MIDSTREAM

**Proposed Temporary and Permanent Impacts to Waters of the U.S.**

| Feature ID | Cowardin Classification | Temporary Impact Area (Ac) | Permanent Impact Area (Ac) | Associated Project Component |
|---|---|---|---|---|
| Black Mangrove #1 | E2SS Wetland | 0.00 | 0.03 | Pipeline Installation (trenched) [1] |
| Black Mangrove #2 | E2SS Wetland | 0.00 | 0.34 | Pipeline Installation (trenched) [1] |
| Black Mangrove #3 | E2SS Wetland | 0.00 | 0.08 | Pipeline Installation (trenched) [1] |
| Estuarine Wetland #1 | E2EM Wetland | 0.00 | 0.23 | Aransas Pass Staging Facility (filled) [2] |
| Estuarine Wetland #2 | E2EM Wetland | 0.11 | 0.00 | Pipeline Installation (trenched) [3] |
| Estuarine Wetland #3 | E2EM Wetland | 0.00 | 0.09 | Aransas Pass Staging Facility Emergency Access Road (filled) [2] |
| Estuarine Wetland #4 | E2EM Wetland | 0.00 | 0.01 | Aransas Pass Staging Facility Emergency Access Road (filled) [2] |
| Seagrass Bed #1 | E1AB Seagrass | 0.00 | 1.45 | Pipeline Installation (trench) [4] |
| Seagrass Bed #2 | E1AB Seagrass | 0.00 | 0.02 | Pipeline Installation (trench) [4] |
| Seagrass Bed #3 | E1AB Seagrass | 0.00 | 0.04 | Pipeline Installation (trench) [4] |
| Seagrass Bed #4 | E1AB Seagrass | 0.00 | 0.11 | Pipeline Installation (trench) [4] |
| Seagrass Bed #5 | E1AB Seagrass | 0.00 | 0.32 | Pipeline Installation (trench) [4] |
| Seagrass Bed #6 | E1AB Seagrass | 0.00 | 2.31 | Pipeline Installation (trench) [4] |
| Seagrass Bed #7 | E1AB Seagrass | 0.00 | 3.59 | Pipeline Installation (trench) [4] |
| Smooth Cordgrass | E2EM Wetland | 0.02 | 0.00 | Pipeline Installation (trenched) [3] |
| Tidal Flat | E2US Tidal Flat | 10.64 | 0.00 | Pipeline Installation (trenched) [3] |
| Waterbody #1 | Perennial Stream | 0.00 | 0.00 | Pipeline Installation (bored) [5] |
| Waterbody #2 | Drainage Ditch | 0.08 | 0.00 | Pipeline Installation (trenched) [3] |
| Waterbody #3 | Drainage Ditch | 0.00 | 0.00 | Pipeline Installation (bored) [5] |
| Waterbody #4 | Drainage Ditch | 0.00 | 0.00 | Pipeline Installation (bored) [5] |
| Waterbody #5 | Perennial Stream | 0.24 | 0.00 | Pipeline Installation (trenched) [3] |
| Waterbody #6 | PUB Pond | 0.03 | 0.00 | Pipeline Installation (trenched) [3] |
| Waterbody #7 | PUB Pond | 0.15 | 0.00 | Pipeline Installation (trenched) [3] |
| Waterbody #8 | Tidal Stream | 0.00 | 0.02 | Aransas Pass Staging Facility Emergency Access Road (filled) [2] |
| Wetland #1A | PEM Wetland | 5.54 | 0.00 | Pipeline Installation (trenched) [3] |
| Wetland #1B | PEM Wetland | 2.03 | 0.00 | Pipeline Installation (trenched) [3] |
| Wetland #2 | PEM Wetland | 0.03 | 0.00 | Pipeline Installation (trenched) [3] |
| Wetland #3 | PEM Wetland | 0.05 | 0.00 | Pipeline Installation (trenched) [3] |
| Wetland #4 | E2EM Wetland | 0.10 | 0.00 | Pipeline Installation (trenched) [3] |
| Wetland #5 | E2EM Wetland | 5.77 | 0.00 | Pipeline Installation (trenched) [3] |
| Wetland #6 | E2EM Wetland | 0.00 | 0.92 | Aransas Pass Staging Facility (filled) [2] |
| Wetland #7 | E2EM Wetland | 0.00 | 0.07 | Aransas Pass Staging Facility (filled) [2] |
| Wetland #8 | E2EM Wetland | 0.00 | 0.20 | Aransas Pass Staging Facility (filled) [2] |
| Wetland #9 | E2EM Wetland | 0.00 | 15.80 | Aransas Pass Staging Facility (filled) [2] |

| | | Temporary | Permanent | |
|---|---|---|---|---|
| **TOTALS** | PEM Wetlands (4) | 7.65 | 0.00 | |
| | E2SS Wetlands (3) | 0.00 | 0.45 | |
| | E2EM Wetland (11) | 6.00 | 17.32 | |
| | PUB Pond (2) | 0.18 | 0.00 | |
| | E1AB Seagrass (7) | 0.00 | 7.84 | |
| | E2US Tidal Flat (1) | 10.64 | 0.00 | |
| | Perennial Stream (2) | 0.24 | 0.00 | |
| | Drainage Ditch (3) | 0.08 | 0.00 | |
| | Tidal Stream (1) | 0.00 | 0.02 | |
| | **Total Impacts (34)** | **24.78** | **25.63** | |

**Table Footnotes**

1. Impacts to this feature were considered permanent due to the required clearing of woody black mangrove vegetation within the construction workspace.
2. Impacts to this feature were considered permanent due to the required discharge of fill material to support the construction of the Aransas Pass Facility/Emergency Access Road.
3. Impacts to this feature were considered temporary as pre-construction contours and conditions will be restored following the completion of construction activities.
4. Impacts to all seagrass located within the construction footprint were considered permanent due to the proposed disturbance and temporary excavation of material. However, pre-construction contours and conditions will be restored following the completion of construction activities.
5. Both temporary and permanent impacts to this feature were avoided using HDD/boring pipeline installation techniques.

NOTES FOR TERRESTRIAL CROSS SECTIONS:

1.) PRIOR TO COMMENCEMENT OF EXCAVATION ACTIVITIES THE APPLICANT OR THEIR CONTRACTOR SHALL NOTIFY TEXAS811.
2.) SPOIL WILL BE TEMPORARILY STOCKPILED ADJACENT TO THE PIPELINE TRENCH AND USED AS BACKFILL UPON COMPLETION.

NOTES ON MARINE CROSS SECTIONS:

1.) PRIOR TO COMMENCEMENT OF EXCAVATION ACTIVITIES THE APPLICANT OR THEIR CONTRACTOR SHALL NOTIFY TEXAS811.
2.) SPOIL WILL BE TEMPORARILY STOCKPILED ADJACENT TO THE PIPELINE TRENCH AND USED AS BACKFILL UPON COMPLETION.
3.) PILE SUPPORTED SIGNS WILL BE DEPLOYED ADJACENT TO THE TEMPORARY SPOIL AREAS TO NOTIFY MARINERS OF THE POTENTIAL SUBMERGED HAZARD

NOTE: THE CONTENT OF THIS DRAWING IS DESIGNED SPECIFICALLY FOR THE PURPOSE OF SECURING FEDERAL, STATE AND LOCAL ENVIRONMENTAL/ REGULATORY AUTHORIZATIONS ONLY.

Date: 12/27/2018
Revised: 04/23/2020

**IMPACT TABLES & NOTES**
PLs & Fac: Midway T.F. to Harbor Island

**U.S. ARMY CORPS OF ENGINEERS PERMIT APPLICATION SWG-2018-00789**



AXIS MIDSTREAM

**AXIS MIDSTREAM HOLDINGS, LLC**
Proposed Pipelines & Facilities
MIDWAY to HARBOR ISLAND PROJECT
SAN PATRICIO & NUECES COUNTIES, TEXAS

SWG-2018-00789; Axis Midstream Project Plans



Harbor Island Terminal Facility

Harbor Island Terminal Dredge Footprint

Corpus Christi New Work ODMDS

**Vicinity Map**

1 in = 158 miles

Houston

San Antonio

**Legend**

▨ Harbor Island Terminal Dredge Footprint

▨ Harbor Island Terminal Site

■ Corpus Christi New Work ODMDS

— Corpus Christi Ship Channel Limits

Coordinate System: GCS WGS 1984
Datum: WGS 1984
Units: Degree

0   0.5   1   2
Miles

Proposed Dredge Material Placment Areas

Midway to Harbor Island Pipelines
& Facilities Project
Axis Midstream Holdings, LLC
USACE Permit No. SWG-2018-00789
San Patricio and Nueces Counties, Texas

| | |
|---|---|
| Date: Apr 22, 2020 | |
| Prepared By: C. Gerken | **LL**OYD |
| Project: Axis | ENGINEERING, INC. |
| 1 inch = 6,261.04 feet | |

SWG-2018-00789; Axis Midstream Project Plans



# Public Notice

| | | |
|---|---|---|
| **U.S. Army Corps Of Engineers** | Permit Application No: | SWG-2018-00789 |
| | Date Issued: | 7 July 2020 |
| **Galveston District** | Comments Due: | 6 August 2020 |

### U.S. ARMY CORPS OF ENGINEERS, GALVESTON DISTRICT

**PURPOSE OF PUBLIC NOTICE:** To inform you of a proposal for work in which you might be interested. It is also to solicit your comments and information to better enable us to make a reasonable decision on factors affecting the public interest. The U.S. Army Corps of Engineers (Corps) is not the entity proposing or performing the proposed work, nor has the Corps taken a position, in favor or against the proposed work.

**AUTHORITY:** This application will be reviewed pursuant to Section 10 of the Rivers and Harbors Act of 1899, Section 404 of the Clean Water Act, and Section 103 of the Marine Protection, Research, and Sanctuaries Act.

**APPLICANT:** Axis Midstream Holdings, LLC
5005 Riverway, Suite 110
Houston, Texas 77056
Telephone: (713) 623-2412
POC: Matt Marra

**AGENT:** Lloyd Engineering, Inc.
6565 West Loop South, Suite 708
Bellaire, Texas 77401
Telephone: (832) 426-4656
POC: Marisa Weber

**LOCATION:** The proposed project is located in Taft, Gregory, Ingleside, and Aransas Pass, in San Patricio County, Texas; the Gulf Intracoastal Waterway (GIWW); Redfish Bay; the Corpus Christi Ship Channel (CCSC); and terminates on Harbor Island in Port Aransas, Nueces County Texas. The project can be located on the U.S.G.S. quadrangle maps entitled: Taft, Gregory, Aransas Pass, Ingleside-On-the-Bay, and Port Aransas, Texas.

**PROJECT DESCRIPTION:** The applicant (Axis Midstream Holdings, LLC) proposes to construct a series of facilities and pipelines to store, transport, and load crude oil into marine transport vessels. The proposed project components are composed of:
    a. The Midway Tank Farm (Midway Facility) located south of the City of Taft, Texas.

b.  The Aransas Pass Staging Facility (Aransas Facility) located west of the City of Aransas Pass.

c.  A pipeline bundle that would connect the Aransas and Midway Facilities.  This pipeline bundle would consist of
    i.   one (1) 2-inch fiber optic;
    ii.  one (1) 6-inch gas supply (last mile); and
    iii. two (2) 36-inch crude oil pipelines.

d.  Harbor Island Loading Terminal (Harbor Island Terminal) located on the west side of the CCSC on Harbor Island in Port Aransas, Texas.

e.  A pipeline bundle that would connect the Aransas and Harbor Island Facilities. This pipeline bundle would consist of:
    i.   one (1) 2-inch fiber optic;
    ii.  one (1) 6-inch gas supply;
    iii. one (1) 16-inch intermix return; and
    iv.  two (2) 42-inch crude oil pipelines.

1.  The proposed 60-acre Midway Tank Farm (Sheet 31 of attached plans) project site would be located south of the intersection of Farm-to-Market (FM) 72 and FM 893 in Taft.  The facility will consist of multiple sized above ground bulk fluids storage tanks. The 60-acre site is currently being used for agriculture, specifically row crops, and is surrounded by wind energy turbines.  Midway was selected as the bulk storage site due to the growing nexus of crude oil pipeline infrastructure in this area.  Work associated with the construction of this facility is not regulated.

2.  Midway to Aransas Facility Pipelines:  The Midway to Aransas Facility Pipelines (Sheets 2-15 of attached plans) will consist of the installation of approximately 19.5 miles of one (1) 2-inch fiber optic line, one (1) 6-inch gas supply line, and two (2) 36-inch crude oil pipelines.  Each of the 36-inch pipelines are sized to move 80,000 barrels of crude per hour to the Aransas Pass Staging Facility.  The bundle would be installed mainly in agricultural fields starting at the Midway Tank Farm to FM 1069. From there to Aransas Pass, the bundle will parallel an existing pipeline corridor adjacent to a residential area located on Live Oak Ridge, north of Ingleside, Texas. The 6-inch gas supply pipeline will be installed and co-located with the two 36-inch pipelines from a tie-in point to the Aransas Pass Staging Facility.  The method of installation involves conventional trenching along with horizontal directional drilling (HDD) or the jack and bore method for roadway and waterway crossings.  The proposed construction ROW for this segment of the project is 130 feet.  The permanent ROW width is 60 feet with the additional 70 feet utilized as temporary workspace. Additional temporary construction workspace outside of the 130-foot wide ROW is proposed at various locations to accommodate foreign pipeline crossings, road crossings, waterway crossings, and points of inflexions (PI), etc., encountered along the route from the Midway Tank Farm to the Aransas Pass Staging Facility.  All these features require additional workspace for temporary spoil stockpiling, construction equipment installation, etc., which is needed to safely achieve the required crossings depths.  The proposed alignment involves nineteen (19) road crossings, seven (7) waterbody crossings, and six (6) wetland crossings.  No road crossing workspaces are located within wetlands.  Three (3) of the seven (7)

2

waterbody crossings will be crossed using HDD or the jack and bore method avoiding impacts to waters of the United States (WOUS). The remaining four (4) waterbodies within the alignment are proposed to be trenched. Six (6) wetlands were identified within this alignment. The installation of the proposed Midway to Aransas pipeline bundle would result in 14.01 acres of temporary trench and fill impacts in WOUS, including wetlands.

3. Aransas Pass Staging Facility (Latitude: 27.876527; Longitude: 97.158305 W): The approximate 60-acre Aransas Pass Staging Facility (Sheet 32 of attached plans) site is located south of the intersection of State Highway (SH) 361 and FM 2725 adjacent to the Gulf Intercostal Waterway (GIWW). The Aransas Pass Staging Facility is proposed to include multiple above ground bulk liquids storage tanks with associated piping, tank manifolds, incoming and outgoing pigging areas, two ship loading pumps, a recycle pump area, and an emergency access road. Of the 60-acre project site, approximately 17.33 acres are jurisdictional WOUS which are proposed to be permanently filled.

4. Aransas Facility to Harbor Island Pipelines: The Aransas Facility to Harbor Island Pipelines (Sheets 16-20 of attached plans) will consist of the installation of one (1) 2-inch diameter fiber optic line, one (1) 6-inch diameter gas supply pipeline, one (1) 16-inch diameter intermix return pipeline, and two (2) 42-inch diameter crude oil pipelines approximately 5.5 miles in length. The lines would be installed from the Aransas Facility across the GIWW and Redfish Bay and terminate at Harbor Island. The pipelines will be installed via HDD from the mainland below the GIWW and a portion of Redfish Bay spanning approximately 4,250 feet. From the HDD point of exit to Harbor Island the lines will be trenched and backfilled at a minimum depth of cover of 3 feet. The 42-inch diameter crude oil pipelines are designed to allow the loading of two marine vessels at a maximum rate of 80,000 barrels/hour. The 6-inch diameter gas supply pipeline will serve as a fuel source for the vapor destruction equipment. The 16-inch diameter intermix return pipeline will move product from the remix tanks at Harbor Island Terminal back to the Aransas Pass Staging Facility. The fiber optic lines will be installed to facilitate operational communications. Field instrumentation for automated valves, tank levels, etc., will be monitored and operated from within a centralized control room. The Aransas Facility to Harbor Island Pipelines require both water and land construction and installations. The construction requirements and sequence for installations for these pipelines can be broken down into five segments. The following sections describes each segment and the associated construction requirements.

   a. HDD across the GIWW (Sheet 21 of attached plans): The first portion of the Harbor Island route will consist of utilizing the HDD method from a land-based drilling location within the proposed Aransas Facility extending southeasterly approximately 4,250 feet to an exit within an abandoned oil and gas well slip in Redfish Bay. The pipelines will be installed in three separate drilling operations at various depths. The shallowest drill, the center HDD, will be a bundle drill consisting of the one (1) 2-inch diameter fiber optic conduit, one (1) 6-inch diameter gas supply pipeline, and the one (1) 16-inch diameter return remix line and will be

drilled first.  The two outermost and deepest drills will be the two (2) individual 42-inch diameter crude pipelines which will be installed separately during the second and third drills.  The pilot hole will be drilled from the Aransas Pass Staging Facility site to the oil and gas well slip within the proposed 200-foot by 300-foot HDD workspace.  The existing oil and gas slip will be utilized for the 260-foot by 300-foot HDD exit workspace.  The oil and gas slip access canal will be utilized for marine vessel access, assembly of the pipelines and for floatation of the HDD back-string.   Once the drilling operation is complete, the pipelines will be assembled, pre-hydrotested and pulled from the location canal back to the Aransas Pass Staging Facility.

b.  Installation within existing Oil and Gas Canal System (Sheet 17 of attached plans): To further avoid and minimize impacts during the installation of the series of pipelines, the applicant proposes to utilize a series of abandoned oil and gas canals on the northwest side and southeast side of Redfish Bay (approximate 5,000 linear feet).  As detailed in the permit drawings, a trench will be excavated within the canal bottoms and the excavated material will be temporarily stockpiled adjacent to the trench.  Excavation will be done with barge mounted dredging equipment.  The individual lines will be fabricated on a pipe lay barge and installed within the common trench.  The trench will be backfilled utilizing the stockpiled material to provide the required protective cover.  Excavation and spoil placement within the existing canal systems will avoid impacts to seagrass to the fullest extent practicable.   The proposed workspace is 150-foot wide, with 75 feet being designated as the trench/workspace, and 60 feet designated as temporary spoil placement area.  Turbidity curtains or other equivalent measures will be installed adjacent to the workspaces to reduce the potential for secondary impacts to adjacent seagrass habitats in addition to using the existing oil and gas access canals to minimize the required impacts to the seagrass beds.

c.  Installation across Redfish Bay (Sheet 18 of attached plans):  Similar to the oil and gas canal installation methodology, a 75-foot wide trench will be excavated within the bay bottom and excavated material will be temporarily stockpiled on the bay bottom adjacent to the trench.   Excavation will be done with barge mounted dredging equipment.  The individual lines will be fabricated on a pipe lay barge and installed within the common trench.  The trench will be backfilled utilizing the stockpiled material to provide the required protective cover.   During bay construction the work areas and temporary spoil placement sites will be marked, and signage maintained to provide for safe marine traffic.  Due to its location being at the mouth of the existing oil and gas access canal located on the south side of Redfish Bay, potential impacts to seagrass resources are unavoidable along this 5,800 linear foot segment.  The minimum workspace needed to install the pipelines across this area is being proposed to reduce impacts.

d.  Seagrass Shallows and Tidal Flat Installation (Sheets 19 of attached plans): When departing the most southerly canal reach, the pipelines are proposed to be installed within shallow open water of Redfish Bay onto the southern reach of Harbor Island and then easterly on the island roughly parallel to the Corpus Christi

4

Ship Channel for approximately 4,000 feet. This sandy area (tidal flat) is situated above mean high water and is generally devoid of vegetation. A trench will be excavated within the bay shallows and on the tidal flat utilizing a mechanical excavator on pontoons (marsh buggy). The excavated material will be temporarily stockpiled adjacent to the trench. In the bay shallows the individual lines will be fabricated on a pipe lay barge and pushed into the common trench to a tie-in point with the land-based segment. On the tidal flats, the lines will be assembled adjacent to the trench and placed within the trench by cranes. The trench would be backfilled utilizing the stockpiled material to provide the required protective cover. Within the shallow bay area, turbidity curtains or other equivalent measures would be installed adjacent to the workspaces to reduce secondary impacts to adjacent seagrass resources. On the tidal flats, industry standard terrestrial best management practices (e.g., silt curtains, haybales, etc.) would be utilized to reduce secondary adverse impacts from runoff. Seagrass would be impacted by the proposed alignment and are located just north of the point where the alignment turns easterly across the tidal flat area. Approximately 10.64 acres of tidal flats would be temporarily impacted during the installation. Construction across the tidal flats would also result in impacts to approximately 0.45 acres of black mangrove. Additionally, approximately 0.13 acres of estuarine wetlands would be impacted.

e. Installation within the Dredge Material Placement Area (Sheet 20 of attached plans): The pipeline approach to the Harbor Island Terminal within the existing DMPA would be installed by conventional land-based trench and backfill method. The trench would be excavated, and material placed adjacent to the trench within the workspace. The lines would be laid out adjacent to the trench, welded and placed into the common trench. All the lines would be hydrotested and then the trench backfilled utilizing the stockpiled material to provide the required protective cover. Standard terrestrial best management practices (e.g., silt curtains, hay bales, etc.) would be utilized to reduce secondary impacts from runoff. No impacts to WOUS, including wetlands, are proposed for this section of the Aransas to Harbor Island Pipelines.

5. Harbor Island Terminal (Latitude: 27.844767 N; Longitude: 97.083002 W): The Harbor Island Terminal is located 0.5 miles west of the intersection of Hwy 361 along the western slope of the Corpus Christi Ship Channel (between Stations 110+00 and 90+00) southwest of Port Aransas, Texas (Sheet 34 of attached plans). An approximately 20-acre site would contain the necessary infrastructure behind the two vessel berthing slips (piping, loading equipment, above ground bulk fluid remix tanks, etc.). A bulkhead would be constructed on the northwest and southwest sections of the vessel berthing slips. The berthing area would contain a 675-foot long by 17-foot wide approach trestle standing on 36-inch diameter pilings that leads to a 120-foot long by 100-foot wide terminal pier structure that would act as a ship dock platform. There would also be twenty one (21) 24-foot by 24-foot mooring dolphins installed. Refer to Sheet 36 and 37 for detailed plan and profile drawings of the proposed Harbor Island Terminal. The proposed Harbor Island Terminal is designed to accommodate up to two (2) Very Large Crude Carriers (VLCC) sized vessels.

5

The construction and operation of the Harbor Island Terminal would require the removal and relocation of approximately 5.6 million cubic yards (MCY) of new work material to provide the space necessary to safely maneuver and berth incoming and outgoing vessels. Dredging and excavation activities for the Harbor Island Terminal would occur within an approximate 82-acre dredge footprint to depths of -54 feet mean lower low water (MLLW), plus 4 feet advanced maintenance, and 2 feet of allowable overdredge (-60 feet MLLW).

The excavation/dredging activities will be accomplished in a phased approach. The first phase of dredging (Terrestrial) will involve the use of dragline bucket dredge and/or other earth moving equipment within an approximate 22.6-acre existing terrestrial area. In order to facilitate the terrestrial dredging, sheet piles will temporarily be placed across the slip width in order to dewater and isolate the northern terrestrial portion of the slip. Excavators will be used to remove material from the 22.6-acre existing terrestrial area to a depth of -25 feet MLLW. The top 6 feet of material located within the existing 22.6-acre terrestrial area totals approximately 0.22 MCY and would be separated for placement and or use on-site. The initial dredged material will be used for on-site buildup for the Harbor Island Terminal and construction of containment berms.

The second phase (Marine) of dredging will be accomplished via hydraulic cutter-head suction dredge. This phase involves removal of the temporary sheet pile in order to provide flotation across the overall 82-acre dredge footprint for the dredging vessels. Dredging will begin at the southern end of the slip area, adjacent to the ship channel and fan across the entire slip in a northerly direction. The material will be removed in layers across the slip until the desired depth of -54 feet MLLW, plus 4 feet advanced maintenance, and a 2 feet overdredge (-60 feet MLLW) is achieved.

The applicant conducted an alternatives analysis of potential dredged material disposal options to determine the most practical and feasible alternatives for the placement of dredged material associated with the construction of the Harbor Island Terminal. The above proposed project is the applicant's preferred alternative.

**PROPOSED COMPENSATORY MITIGATION:** The applicant has proposed a two part compensatory mitigation plan to offset the unavoidable impacts to jurisdictional waters of the US. The first conceptual permittee responsible mitigation plan is entitled *Mustang Island – Croaker Hole Sea Grass Restoration Plan* dated April 2020 (refer to attached plan in 73 sheets). The proposed mitigation plan would compensate for the potential unavoidable temporary impacts of 7.84 acres of seagrass beds and 0.33 acre of estuarine emergent *Spartina alterniflora* living shoreline wetlands associated with the proposed Midway to Harbor Island Pipeline and Terminal Project. The second conceptual compensation mitigation plan for additional permanent proposed project impacts associated with the Aransas Pass Staging Facility will be addressed in a separate mitigation plan. Mitigation for unavoidable temporary impacts to seagrass beds will use a minimum ratio of 2:1 (mitigation acre to impact acre).

**SECTION 103:**

**NEW WORK ODMDS:** The New Work Ocean Dredged Material Disposal Site (ODMDS) is located 3.4 miles offshore of Nueces County, Texas (refer to sheet 39) and 6,200 feet southwest of the centerline of the Outer Bar Channel. The site is rectangle-shaped and covers approximately 1.36 square nautical miles of open-ocean. Corner Coordinates are provided in Table 1. Placement of dredged material in the New Work ODMDS is limited to a 4,000 feet by 5,000 feet specified release zone. The release zone site corners are detailed in Table 2.

Table 1. New Work ODMDS Corner Coordinates

| New Work Corner | Latitude (NAD 83) | Longitude (NAD 83) |
|---|---|---|
| Northwest | 27.795307 | -97.003598 |
| Northeast | 27.787807 | -96.990542 |
| Southwest | 27.771697 | -97.020265 |
| Southeast | 27.763919 | -97.007209 |

Table 2. New Work Discharge Area Corner Coordinates

| New Work Corner | Latitude (NAD 83) | Longitude (NAD 83) |
|---|---|---|
| Northwest | 27.792472 | -97.004042 |
| Northeast | 27.786583 | -96.993992 |
| Southwest | 27.780584 | -97.012687 |
| Southeast | 27.774584 | -97.002492 |

The Corpus Christi New Work ODMDS was designated by the Environmental Protection Agency (EPA) in 1988 as the Homeport Project ODMDS. The purpose was to provide a disposal area for new work dredged material from the planned U.S. Navy's Homeport Project at Corpus Christi/Ingleside, Texas. Ultimately, the Homeport Project was never constructed.

In August of 2014, the name was changed from the Homeport Project ODMDS to Corpus Christi New Work ODMDS and the period of use and use restriction were changed to suitable dredged material from the greater Corpus Christi, Texas vicinity over an indefinite period of time.

In September of 2015 the use restrictions of several Texas ODMDS sites including the Corpus Christi New Work ODMDS, were modified to include suitable dredged material from the greater vicinity of the respective federal channels. The modification allowed the disposal of suitable dredged material by non-federal entities (port authorities, private parties, etc.) in Corpus Christi area. This change was made at the request of the US Army Corps of Engineers, Galveston District based on modeling showing that, absent expansion of ocean disposal use, the Corps would have insufficient future capacity at the nearshore placement areas typically used for operations and maintenance activities.

7

Since its initial designation, the Corpus Christi New Work ODMDS has been utilized once for disposal of dredged material. The Corpus Christi Ship Channel Improvement Project (CCSIC) site disposed of 4.7 MCY in 2020.

Designation of the ODMDS by the EPA does not constitute approval by the EPA for placement of materials at the site. Prior to each placement event, the concurrence by the EPA must be given after determination that the materials meet all environmental criteria and regulatory requirements pursuant to MPRSA.

**AUTHORIZED DISPOSAL EFFECTS**: Dredged material deposited at the site is expected to disperse and erode quickly. There are no significant environmental resources delineated within or immediately outside of the designated ODMDS. Since this site is dispersive in nature, the primary concern of the use of the site is the potential short-term buildup of dredged material, such that a hazard to navigation is presented. During the site selection process EPA excluded areas that would interfere with shipping, fishing, recreation, mineral extraction, desalinization, fish and shellfish culture, areas of special scientific importance and other legitimate uses of the ocean.

Another concern is short-term transport of the dredged material beyond the ODMDSs boundaries; specifically, the benthic community can be impacted if significant rapid movement of material off the site occurs, resulting in burial of benthic populations outside the site. In the 1987 designation of the ODMDS, the EPA concluded the primary environmental impact from use of the site would be burial of the benthic infaunal community at the site. Furthermore, the site was sized with a buffer zone developed to ensure that perturbations caused by disposal would be reduced to ambient conditions at the boundaries of the site.

The 2018 Site Management and Monitoring Plan (SMMP) added several additional requirements including use of bathymetric surveys before and every month during work, as well as specific methodologies for the time, location and method of placement of material in the disposal zone to ensure material placed in the site would not adversely affect the surrounding environment.

**CHARACTERISTICS AND COMPOSITION OF THE DREDGED MATERIAL**: In accordance with the February 1991 E*valuation of Dredged Material Proposed for Ocean Disposal Testing Manual* (Green Book) the applicant completed a Tier I analysis of the dredged material. A primary purpose of Tier I is to identify the contaminants of concern (if any) in that particular dredged material. This information is used to select subsequent analyses in Tiers II, III, and IV. Preliminary results submitted with the application indicates the material to be dredged at Harbor Island is predominantly fine sand with silt and clay.

The CCSIP tested the suitability of both new work material and maintenance material from the Corpus Christi Ship Channel for offshore disposal under Marine Protection, Research and Sanctuaries Act (MPRSA) Section 103. The results were documented in the *Sampling, Chemical Analysis, and Bioassessment in Accordance with MPSRA Section 103* report (2018 Report.) Based on the results of the sampling, testing, and

8

evaluation completed in 2018, site water, and elutriate, as well as toxicity and bioaccumulation testing, a lines of evidence analysis concluded that no adverse environmental effects would be expected from dredging or placement of the sediment from the project area into the New Work ODMDS.

**AVOIDANCE AND MINIMIZATION**:  The sediments proposed for transportation and disposal will be evaluated pursuant to Section 103 of the Marine Protection Research and Sanctuaries Act (MPRSA) and the EPA Region 6's RIA to ensure any dredged material transported is suitable for ocean disposal.  In addition, all work will be completed in accordance with the 2018 Corpus Christi New Work, Site Management and Monitoring Plan, as well as, any additional requirements from state and federal agencies.

**NOTES:**  This public notice is being issued based on information furnished by the applicant.  This project information has not been verified by the Corps.  As of the date of this Public Notice, the Corps has received but not yet verified the wetland delineation.  The applicant's plans are enclosed in 39 sheets.

A preliminary review of this application indicates that an Environmental Impact Statement (EIS) is not required.  Since permit assessment is a continuing process, this preliminary determination of EIS requirement will be changed if data or information brought forth in the coordination process is of a significant nature.

Our evaluation will also follow the guidelines published by the U.S. Environmental Protection Agency pursuant to Section 404 (b)(1) of the Clean Water Act (CWA).

**OTHER AGENCY AUTHORIZATIONS:**  The applicant has stated that the project is consistent with the Texas Coastal Management Program (CMP) goals and policies and will be conducted in a manner consistent with said Program.  The Texas Railroad Commission will determine if the project is consistent with the goals and policies of the CMP and will review this application under Section 401 of the CWA to determine if the work as well as return water from the upland contained dredge material placement areas would comply with State water quality standards.

The proposed project will require Section 408 coordination and review.  This is a requirement for activities that seek permission from the US Army Corps of Engineers pursuant to 33 USC 408 because the proposed project will alter or temporarily or permanently occupy or use a US Army Corps of Engineers federally authorized civil works project.  Changes to the proposed project, from the Section 408 process, may warrant additional coordination.

**NATIONAL REGISTER OF HISTORIC PLACES:**  The staff archaeologist has not reviewed the latest published version of the National Register of Historic Places, lists of properties determined eligible, and other sources of information.  The following is current knowledge of the presence or absence of historic properties and the effects of the undertaking upon these properties:  The staff archeologist is currently reviewing the applicant cultural resource information and will initiate consultation with the SHPO if necessary.

9

**THREATENED AND ENDANGERED SPECIES:** Threatened and/or endangered species and/or their critical habitat may be affected by the proposed work. Consultation with the U.S. Fish and Wildlife and/or the National Marine Fisheries Service will be initiated to assess the effects on listed endangered species.

**ESSENTIAL FISH HABITAT:** This notice initiates the Essential Fish Habitat consultation requirements of the Magnuson-Stevens Fishery Conservation and Management Act. Our initial determination is that the proposed action would have an adverse impact on Essential Fish Habitat or federally managed fisheries in the Gulf of Mexico. Our final determination relative to project impacts and the need for mitigation measures is subject to review by and coordination with the National Marine Fisheries Service.

**PUBLIC INTEREST REVIEW FACTORS:** This application will be reviewed in accordance with 33 CFR 320-332, the Regulatory Programs of the Corps of Engineers, and other pertinent laws, regulations and executive orders. The decision whether to issue a permit will be based on an evaluation of the probable impacts, including cumulative impacts, of the proposed activity on the public interest. That decision will reflect the national concern for both protection and utilization of important resources. The benefits, which reasonably may be expected to accrue from the proposal, must be balanced against its reasonably foreseeable detriments. All factors, which may be relevant to the proposal, will be considered: among those are conservation, economics, aesthetics, general environmental concerns, wetlands, historic properties, fish and wildlife values, flood hazards, floodplain values, land use, navigation, shore erosion and accretion, recreation, water supply and conservation, water quality, energy needs, safety, food and fiber production, mineral needs and, in general, the needs and welfare of the people.

**SOLICITATION OF COMMENTS:** The Corps of Engineers is soliciting comments from the public, Federal, State, and local agencies and officials, Indian tribes, and other interested parties in order to consider and evaluate the impacts of this proposed activity. Any comments received will be considered by the Corps of Engineers to determine whether to issue, modify, condition or deny a permit for this proposal. To make this decision, comments are used to assess impacts on endangered species, historic properties, water quality, general environmental effects, and the other public interest factors listed above. Comments are used in the preparation of an Environmental Impact Assessment and/or an Environmental Impact Statement pursuant to the National Environmental Policy Act. Comments are also used to determine the need for a public hearing and to determine the overall public interest of the proposed activity.

This public notice is being distributed to all known interested persons in order to assist in developing facts upon which a decision by the Corps of Engineers may be based. For accuracy and completeness of the record, all data in support of or in opposition to the proposed work should be submitted in writing setting forth sufficient detail to furnish a clear understanding of the reasons for support or opposition.

**PUBLIC HEARING:** The purpose of a public hearing is to solicit additional information to assist in the evaluation of the proposed project. Prior to the close of the comment period, any person may make a written request for a public hearing, setting forth the particular reasons for the request. The District Engineer will determine if the reasons identified for holding a public hearing are sufficient to warrant that a public hearing be held. If a public hearing is warranted, all known interested persons will be notified of the time, date, and location.

**CLOSE OF COMMENT PERIOD:** All comments pertaining to this Public Notice must reach this office on or before **6 August 2020**. Extensions of the comment period may be granted for valid reasons provided a written request is received by the limiting date. **If no comments are received by that date, it will be considered that there are no objections**. Comments and requests for additional information should reference our file number, **SWG-2018-00789**, and should be submitted to:

> Corpus Christi Field Office
> Regulatory Division, CESWG-RD-R
> U.S. Army Corps of Engineers
> 5151 Flynn Parkway, Suite 306
> Corpus Christi, TX 78411-4318
> 361-814-5847 Phone
> SWG201800789@usace.army.mil

> DISTRICT ENGINEER
> GALVESTON DISTRICT
> CORPS OF ENGINEERS

PERMIT APPLICATION #SWG-2018-00789

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Susan Gonzales on behalf of Douglas Allison
Bar No. 1083500
susan@dallisonlaw.com
Envelope ID: 94898854
Filing Code Description: No Fee Documents
Filing Description: Defs' Notice of Filing of Evidence and Exhibits -PART 1 (1-11)
Status as of 12/3/2024 4:40 PM CST

Associated Case Party: AlbertTheodorePowers

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Alistair Dawson | 5596100 | adawson@beckredden.com | 12/3/2024 4:24:13 PM | SENT |
| Michael McClellan | 24109525 | jmcclellan@beckredden.com | 12/3/2024 4:24:13 PM | SENT |
| Madeline Gay | | mgay@beckredden.com | 12/3/2024 4:24:13 PM | SENT |

Associated Case Party: Axis Midstream Holdings

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Michael Hummell | 10271100 | hummellm@bayltd.com | 12/3/2024 4:24:13 PM | SENT |

# APPENDIX 56

CAUSE NO.: 2024DCV-0045-C

| | | |
|---|---|---|
| LAWRENCE BERRY, individually and as Trustee of the ALLEN LAWRENCE BERRY TRUST, directly and derivatively on behalf of BECON, INC.; LDMA LIMITED PARTNERSHIP; and BERRY GP, INC.; | § § § § § § § | IN THE DISTRICT COURT OF |
| *Plaintiff,* | § § | |
| | § | NUECES COUNTY, TEXAS |
| BERRY GP, INC.; LDMA LIMITED PARTNERSHIP; and BECON, INC.; | § § § | |
| *Nominal Plaintiffs,* | § § § | |
| | § | **JURY TRIAL DEMANDED** |
| v. | § § | |
| MARTY BERRY; MICHAEL HUMMELL; BERRY GP, INC.; BERRY OPERATING COMPANY LLC; and BERRY CONTRACTING LP; | § § § § § | 94TH JUDICIAL DISTRICT |
| *Defendants.* | § § | |

**PLAINTIFF'S FIRST AMENDED VERIFIED PETITION
AND APPLICATION FOR TEMPORARY INJUNCTION**

TO THE HONORABLE JUDGE OF THIS COURT:

Lawrence Berry ("Lawrence" or "Plaintiff"), in his personal capacity and as Trustee of the Allen Lawrence Berry Trust, directly and derivatively on behalf of Becon, Inc., LDMA Limited Partnership, and Berry GP, Inc. (with Lawrence, "Plaintiffs"), files this First Amended Verified Petition and Application for Temporary Injunction against Marty Berry ("Marty"), Michael "Mike" Hummell ("Hummell"), Berry GP, Inc., Berry Operating Company LLC, and Berry Contracting LP (collectively, "Defendants"). Plaintiff asserts claims for breach of fiduciary duty, declaratory judgment, conversion, corporate waste, a demand for an equitable accounting, a

1

demand for books and records, and an application for temporary injunction as described herein. In support of these claims, Plaintiff respectfully shows as follows:

## I.    INTRODUCTION

1.    This action concerns the management and finances of several Texas companies—Berry GP, Inc.; Berry Operating Company LLC; and Berry Contracting LP (collectively, the "Berry Entities")—which are majority owned in equal shares by Plaintiff Lawrence Berry and his two brothers, Marty Berry ("Marty") and Dennis Berry ("Dennis"). In the past several months, it has become apparent that the Berry Entities have been unlawfully usurped, controlled, and mismanaged in secret by Defendants Marty Berry and Mike Hummell, Berry GP, Inc.'s Vice President and General Counsel.

2.    The Berry Entities operate a large organization of companies engaged in the construction, fabrication, and maintenance contracting industries throughout the United States, and have successfully done so since the 1950s. While the Berry Entities were founded and originally controlled by Lawrence's father, ownership passed to Lawrence and his brothers beginning in the 1990s.

3.    In recent months, Lawrence—an officer, director, and shareholder of the Berry Entities—has come to learn that Marty Berry, with assistance from Mike Hummell and other management personnel, has been mismanaging the Berry Entities' finances such that he imperiled a long-standing line of credit that represented the Berry Entities' primary source of operational funding, causing that line of credit to be placed in default. Further, Hummell and other management personnel colluded in secret to authorize self-dealing loan agreements from Marty and Dennis—themselves officers, directors, and shareholders of the Berry Entities—to the Berry Entities without notice or consultation with the other officers and directors. What is more, Marty

2

has been secretly usurping corporate opportunities by buying cranes through a personally owned company, and then leasing the cranes back to the Berry Entities in a series of undisclosed self-dealing transactions. Finally, presumably in an attempt to repay the self-interested loans, Defendants have recently begun secretly attempting to sell the company's real property, including an important and valuable dock facility, without notice to or authorization from the Board of Directors. This type of undisclosed engagement in self-dealing and ultra vires transactions violates the Defendants' fiduciary obligations and Texas law.

4.     When Lawrence inquired about this mismanagement and apparent covert self-dealing through valid requests for books and records information, his requests went ignored, in further violation of Texas law.

5.     Lawrence, both directly and derivatively on behalf of the Berry Entities, brings this lawsuit against Marty Berry, Hummell, and the Berry Entities, to recover damages, enforce his rights to inspect the Berry Entities' books and records, and to demand an accounting of the Berry Entities' finances.

## II.     DISCOVERY LEVEL

6.     Discovery should be conducted in accordance with a Level 3 tailored discovery control plan under Rule 190.4 of the Texas Rules of Civil Procedure.

## III.     JURISDICTION AND VENUE

7.     Plaintiff seeks monetary relief of over $1,000,000, including damages, penalties, costs, expenses, pre- and post-judgment interest, and attorney fees, as well as non-monetary relief. The relief sought by Plaintiff is within the jurisdiction of this Court.

8.     The Court has subject matter jurisdiction to hear this matter because the amount in controversy exceeds the jurisdictional minimum of this Court.

3

9. This Court has personal jurisdiction over Defendant Marty Berry because he is a resident of Texas and Plaintiff's claims against him arise directly from his contacts with and activities in this state.

10. This Court has personal jurisdiction over Defendant Michael Hummell because he is a resident of Texas and Plaintiff's claims against him arise directly from his contacts with and activities in this state.

11. This Court has personal jurisdiction over Defendant Berry Contracting LP because it is a Texas limited partnership headquartered in this state.

12. This Court has personal jurisdiction over Berry GP, Inc. because it is a Texas corporation headquartered in this state.

13. This Court has personal jurisdiction over Becon, Inc. because it is a Texas corporation headquartered in this state.

14. This Court has personal jurisdiction over LDMA Partnership because it is a Texas limited partnership.

15. This Court has personal jurisdiction over Defendant Berry Operating Company LLC because it is a Texas limited liability corporation headquartered in this state.

16. Venue is proper in Nueces County, Texas because it is the county of the Berry Entities' principal offices in this state.

## IV. PARTIES AND SERVICE

17. Plaintiff Lawrence Berry is an individual residing in Harris County, Texas. At all relevant times, Lawrence has owned shares of Berry GP, Inc., Berry Operating Company LLC, and Berry Contracting LP individually, through a series of holding companies, including Becon, Inc. and LDMA Limited Partnership. Lawrence is also the beneficial owner of the shares in those

4

companies held in the Allen Lawrence Berry Trust. Finally, at all relevant times, Lawrence has been an Officer, Director, partner, and/or shareholder of LDMA Limited Partnership; Becon, Inc.; Berry GP, Inc.; Berry Operating Company LL;, and Berry Contracting LP.

18. Nominal Plaintiff LDMA Limited Partnership is a Texas limited partnership with a registered address at 1414 Valero Way, Corpus Christi, Texas 78409. Berry GP, Inc. is its registered agent for service of process and it can be served at 1414 Valero Way, Corpus Christi, Texas 78409.

19. Nominal Plaintiff Becon, Inc. is a Texas corporation with a registered address at 1414 Corn Products Road, Corpus Christi, Texas 78409. Charles Vanaman is its registered agent for service of process and it can be served at 1414 Corn Products Road, Corpus Christi, Texas 78409.

20. Defendant Berry Contracting LP, doing business as Bay Ltd., is a Texas limited partnership with a registered address at 1414 Corn Products Road, Corpus Christi, Texas 78409. Berry GP, Inc. is its registered agent for service of process and it can be served at 1414 Corn Products Road, Corpus Christi, Texas 78409.

21. Defendant Berry Operating Company LLC is a Texas limited liability company with a registered address at 1414 Corn Products Road, Corpus Christi, Texas 78409. Mike Hummell is its registered agent for service of process and it can be served at 1414 Corn Products Road, Corpus Christi, Texas 78409.

22. Defendant Berry GP, Inc. is a Texas corporation with a registered address at 1414 Corn Products Road, Corpus Christi, Texas 78409. Mike Hummell is its registered agent for service of process and it can be served at 1414 Corn Products Road, Corpus Christi, Texas 78409.

23. Defendant Marty Berry is a natural person. Marty Berry is an Officer, Director, and shareholder of Berry GP, Inc., Berry Operating Company LLC, and Berry Contracting LP, and he

maintains custody and control over the corporate records of Berry GP, Inc., Berry Operating Company LLC, and Berry Contracting LP. Marty Berry can be served at his office at 1414 Corn Products Road, Corpus Christi, Texas 78409.

24. Defendant Mike Hummell is a natural person. He is the Vice President and General Counsel of Berry GP, Inc. Mr. Hummell can be served at his office at 1414 Corn Products Road, Corpus Christi, Texas 78409.

## V. STANDING

25. Plaintiff Lawrence Berry is a 19% limited partner of LDMA Limited Partnership ("LDMA"). Lawrence Berry is also the Trustee of the Allen Lawrence Berry Trust, which is a 11 2/3% limited partner of LDMA. LDMA owns Berry GP, Inc., which is the umbrella company over the Berry Entities and their subsidiaries.

26. Lawrence Berry is also a 1/3 shareholder of Becon, Inc., which is the 3% general partner of LDMA.

27. Lawrence Berry—in his personal capacity and as Trustee of the Allen Lawrence Berry Trust—has standing to bring these claims directly and derivatively on behalf of LDMA Limited Partnership, Becon, Inc., and Berry GP, Inc. pursuant to Texas Business Organizations Code §§ 21.563 & 153.413, as well as Texas common law providing for representative actions in closely held limited partnerships and corporations.

## VI. FACTUAL BACKGROUND

**A. The Berry Entities are a family operation.**

28. The Berry Entities and their subsidiaries are a group of companies focused on the construction, fabrication, and maintenance contracting industries throughout the United States.

6

The Berry Entities were founded in the 1950s by Lawrence Berry's father, Marvin Berry, who ran the organization for several decades.

29. Marvin Berry had four sons: Plaintiff Lawrence Berry, Marty Berry, Dennis Berry, and Kenneth Berry. When Marvin passed away in 1997, control of the Berry Entities began shifting to his sons, although the other brothers bought Kenneth out several years ago. LDMA sits at the top of the Berry organization. LDMA's 3% general partner is Becon, Inc., which is owned in equal shares by Lawrence, Marty, and Dennis. Lawrence, Marty, and Dennis are each direct 19% limited partners of LDMA, and each is also a beneficial owner of trusts which are 11 2/3% limited partners of LDMA. The remaining 5% limited partner of LDMA is Lone Star Equipment, Inc., which is a subsidiary of Berry Contracting LP. Dennis Berry passed away in 2024 and, on information and belief, his shares passed via his estate plan.

30. LDMA owns Berry GP, Inc., which in turn owns several holding companies which own Berry Operating Company LLC, which in turn functions as the 1% owner and general partner of Berry Contracting LP.

31. An organizational chart reflecting the structure and ownership of the various entities at issue is attached hereto as Exhibit A.

32. While the Berry Entities employ several officers who are not members of the Berry Family—including Robert Powers, who has served as President and Chief Executive Officer of Berry GP, Inc., and Defendant Hummell, who serves as Vice President and General Counsel of Berry GP, Inc.—ownership and control of the Berry Entities is vested with Lawrence and the other shareholders.

33. The Berry Entities are governed by the Board of Directors of Berry GP, Inc. (the "Board"), in accordance with the Bylaws of Berry GP, Inc., which are attached hereto as Exhibit B. The Board consists of directors Lawrence, Marty, and Dennis Berry's wife—Bonnie Berry.

**B.     Defendants have excluded Lawrence from key decisions related to the Berry Entities, including improper self-interested transactions.**

34. Despite Marvin Berry's wishes that the Berry Entities operate as a family business, it has become clear that Marty, with Hummell's assistance, has gone behind Lawrence's back to exclude him from key decisions related to the Berry Entities, instead choosing to engage in self-dealing and attempt major corporate transactions without informing the other officers and directors of his actions.

35. For instance, in the past several years, Defendants have, among many other things:

- Purported to approve the acquisition of major equipment such as cranes and "yellow iron" without Board discussion or authorization;

- Negotiated and purported to approve terms with major equipment lenders that include significant potential negative impacts to the Berry Entities without Board discussion or authorization;

- Marketed corporate aircraft owned by the Berry Entities for resale without Board discussion or authorization; and

- Deliberately dissolved the largest revenue producing division of the Berry Entities by systematically terminating key individuals material to that division's structure and revenue development.

36. Of particular concern, Lawrence recently came to learn that Marty has engaged in multiple improper self-dealing transactions with the Berry Entities.

37. Specifically, it appears that Rob Powers and Defendant Hummell approved and executed two loan agreements, each between Marty and Dennis on the one hand, and one of the Berry Entities on the other, by which Marty and Dennis loaned a total of approximately $75 million to the Berry Entities (the "Berry Loans"). For nearly a year, Defendants refused to provide the

8

loan documents or information about the loan terms despite requests from Lawrence. After being forced to file this lawsuit, Lawrence was finally provided with the purported loan documents and learned that Marty loaned $45 million and Dennis loaned $30 million to one or more of the Berry Entities.

38. Despite being an officer, director, and shareholder of the Berry Entities, Lawrence was never directly informed about the Berry Loans, never consulted about their propriety, and never asked to vote on them as an officer, director, or shareholder. Nor was Lawrence informed about the terms of the Berry Loans; how the proceeds of the Berry Loans were used; or how, when, and to what extent Marty and Dennis expected repayment from the Berry Entities with respect to the Berry Loans.

39. Review of the limited financial information to which Lawrence has been privy since the filing of this lawsuit indicates that the Berry Entities have made payments to Marty and Dennis in service of the Berry Loan. In particular, Marty approved payments to himself of at least $10 million in principal, despite the purported promissory note governing his loan indicating that the loan is not payable until December 31, 2024. Because the self-dealing loans were made without Board authorization and Defendants have largely refused to provide the requested documentation to Lawrence, the extent of further improper payments is presently unclear.

40. Prior to the filing of this lawsuit, the Berry Loan transactions were never discussed by the directors of Berry GP, Inc., were not voted on at any meeting of the directors, and do not appear in any minutes of Board meetings. In fact, it appears that Powers, Hummell, Marty, and Dennis were the only individuals at the Berry Entities who were aware that they were encumbering the Berry Entities with this $75 million unauthorized debt.

9

41.    Lawrence also recently came to learn that Defendant Marty Berry has been purchasing "rolling stock" equipment such as motor cranes through a company unaffiliated with the Berry Entities called Western Gulf Equipment LLC ("Western Gulf"). Western Gulf was originally established as a special purpose entity that would purchase a portion of a crane in Canada in conjunction with a Canadian affiliate of the Berry Entities, and then lease the crane back to that Canadian affiliate. This original transaction was fully disclosed and approved by the Board. However, Western Gulf now appears to have purchased at least six (6) additional cranes without first presenting the opportunity to the Board or the Berry Entities, and then leased those cranes back to the Berry Entities in a self-dealing transaction—again, without disclosing the transaction to the Board or seeking Board approval. According to the limited financial information presented to Lawrence, it appears that Western Gulf is leasing seven (7) cranes to the Berry Entities at a total rate of $449,000 per month. To date, the full extent of Marty's undisclosed, self-dealing transactions with Western Gulf remains unclear.

42.    Plaintiff understands that Western Gulf is wholly owned by Marty Berry and his wife, Courtenay Berry, and that the registered address for Western Gulf is the Berry Entities' headquarters in Corpus Christi. What is more, the registered agent for Western Gulf is Mike Hummell, indicating that Defendant Hummell is aware of Marty's self-dealing transactions perpetrated through Western Gulf. On information and belief, Marty uses corporate assets of the Berry Entities to operate Western Gulf for his own personal gain.

43.    Plaintiff also recently learned that Defendants have offered to sell some of the Berry Entities' vital real property assets, including a dock facility and adjacent real property that generates tens of thousands of dollars in monthly revenue, presumably in an effort to repay the unauthorized and self-interested loans. Plaintiff believes that Marty intends to sell the Berry real

10

property to raise funds for additional unauthorized self-dealing payments to himself in service of the Berry Loans.

44.     Plaintiff recently was made aware that in or around late May 2023, Defendants began an effort to sell the dock facility and other real property to at least one third party. In their communications to that third party, Defendants falsely represented that "the principals at Berry G.P. have decided to open two strategic properties to the marketplace." *See* Ex. C (May 30, 2023 Letter from Berry G.P. to Port of Corpus Christi). In truth, the decision to sell significant company assets was made unilaterally by Marty and without calling a Board meeting and without discussion with or notice to Lawrence.

**C.     Defendants have threatened the financial operations of the Berry Entities.**

45.     Until recently, the Berry Entities relied on a $50,000,000.00 revolving line of credit (the "LOC") with International Bank of Commerce ("IBC") for general operations. This LOC was governed by a loan agreement between several of the Berry Entities and IBC, dated March 31, 2019 (the "Loan Agreement").

46.     The Loan Agreement contained provisions allowing IBC to invoke default if certain conditions were not met, including particular thresholds for EBITDA and combined net profit after taxes.

47.     Under Defendants' mismanagement, the Berry Entities recently failed to meet certain of the thresholds detailed in the Loan Agreement.

48.     In fact, IBC recently made repeated requests to members of the Berry Entities' management team for information related to standard reporting as part of the Loan Agreement covenants. This includes quarterly financials, WIP reports, financial projections, and more. It appears as if the management team either refused or was unable to produce this information to

IBC. Further, when IBC made an effort to schedule a meeting with the Board of Directors to discuss the status of the Berry Entities in person, Marty did not show up, imperiling the 30-year banking relationship with IBC. Lawrence was never informed that IBC was sending repeated requests for information, that the Berry Entities were struggling to produce accurate or timely reporting, or that IBC had attempted to schedule meetings with the Board of Directors to discuss the problems in person.

49. Accordingly, on March 13, 2023, IBC sent a letter to the Berry Entities informing them that IBC had placed the LOC in default. IBC asserted that the Berry Entities had failed to achieve the minimum EBITDA and net profits targets for the 2022 fiscal year. Defendants did not share this letter with Lawrence at the time.

50. Because of these claimed defaults, IBC (1) elected to limit future advances to the Berry Entities on the LOC to $30 million rather than the full $50 million, and (2) accelerated maturation of the LOC to March 31, 2023, at which time IBC was going to require the entire balance to be due and payable.

51. Following this March 13, 2023 letter, IBC and counsel for the Berry Entities engaged in additional correspondence regarding the extension of the LOC. On March 28, 2023, IBC proposed an extension of the LOC to October 1, 2023, pursuant to several terms, including a reduction of the LOC from $50 million to $30 million, a requirement that the $75 million debt purportedly owed by the Berry Entities to Marty and Dennis be subordinated to the LOC debt owed to IBC, and a requirement that no payments be made on that debt until the Berry Entities' indebtedness to IBC was fully satisfied. On March 30, 2023, counsel for the Berry Entities responded and rejected many of these terms, including the subordination and repayment proposals.

Lawrence was not consulted regarding these decisions, nor was he made aware of the IBC proposal at the time.

52. As a result of the March 30, 2023 rejection letter from the Berry Entities, IBC appears to have placed the LOC into default. Despite being an officer, director, and shareholder of the Berry Entities, Lawrence was not informed of the precise status of the LOC with IBC, nor of the Berry Entities' plan for ensuring sufficient liquidity to fund its operations. Defendants apparently decided to keep Lawrence in the dark regarding the Berry Entities' financial status.

53. Following the collapse of the IBC banking relationship, Marty unilaterally caused the Berry Entities to repay himself $10 million in principal on his loan, despite the fact that the terms of the purported promissory note governing his loan did not require Berry GP to make any principal or interest payments to Marty until December 31, 2024.

54. Around the same time, Defendants began negotiations with Frost Bank to obtain a new revolving line of credit. As part of these negotiations, Defendants pledged the Berry Entities' real property as collateral, including the Entities' commercial property in Corpus Christi. Lawrence was not fully apprised of the situation with Frost Bank, nor was he initially consulted about or asked to approve the collateralization of any of the Berry Entities' real property.

55. Indeed, as part of the negotiations with Frost Bank, Marty executed a "Certificate of Corporate Resolutions" that purports to set forth "resolutions duly adopted either: (a) at a meeting of [Berry GP, Inc.'s] Board of Directors duly called and held, at which meeting a quorum was present and acting throughout, or (b) by unanimous written consent of the Board of Directors of [Berry GP, Inc.], which resolutions save not in any way been amended or modified[.]". *See* Ex. D. No such Board meeting was ever held, and Lawrence was never notified of or asked to approve

13

any written consents adopting the purported resolutions contained in this "Certificate of Corporate Resolutions."

56. Lawrence has since signed resolutions authorizing the creation of a Frost Bank relationship because it is in the best interest of the Berry Entities to receive outside financing.

**D.      Defendants refuse to honor Lawrence's legitimate requests for information related to the Berry Entities.**

57. On April 18, 2023, Lawrence sent an email to Powers and Jim Klein—CFO of Berry GP, Inc.—copying Marty and Dennis.  This email attached a memorandum of "Key Concerns" that the Berry Entities apparently received from IBC and requested information from Powers and Klein related to the financial condition of the Berry Entities.

58. Lawrence sent the information request so that he could better understand the Berry Entities' present financial condition and what may have caused the Berry Entities to purportedly fail to meet the thresholds included in the Loan Agreement with IBC.  Lawrence also requested information related to the Berry Loans, since he has still been kept in the dark as to the nature and terms of that debt.

59. As an officer, director, and shareholder of the Berry Entities, Lawrence is entitled to inspect the books and records of the Berry Entities, and a valid request such as the April 18, 2023 email should have been honored.  However, Lawrence never received a response to his April 18, 2023 request, much less access to any of the books and records he requested.

60. Lawrence has made numerous other requests for information since April 18, 2023, including since filing this lawsuit, but all have been ignored or refused.

**E.      Defendants attempt to ratify their own improper conduct.**

61. Immediately after filing his Original Petition on November 27, 2023, Plaintiff secured a hearing on the application for temporary restraining order and provided notice to

14

Defendants. The hearing took place on November 28, 2023 in the Harris County Ancillary Court before the Honorable Lauren Reeder. Despite receiving notice from Plaintiff nearly 24 hours previously, Defendants did not appear at the temporary restraining order hearing.

62. After considering Plaintiff's Original Petition and evidence, Judge Reeder granted the Berry TRO on November 28, 2023, enjoining Defendants from selling, mortgaging, or otherwise encumbering any of the Berry Entities' real property without the approval of the disinterested members of the Board of Directors.

63. On the evening of December 1, 2023, Defendants sent an email to Lawrence, attaching two "notices of special meetings."

64. The first purported to give notice that a "Special Meeting of the Board of Directors" of Berry GP, Inc. was called by Marty and Dennis Berry to be held on December 7, 2023 (the "Board Notice"). The Board Notice, which was signed by Marty and Dennis Berry, indicated that the purpose of the Board meeting was to discuss the following agenda items:

a. Defense and indemnity for Marty Berry, Robert Powers, Robert Rickett, and Mike Hummell in Cause No 2023-81703 in the District Court of Harris County, and any location to which such claims may be transferred;

b. Discussion and action regarding the employment contract of CEO Robert Powers;

c. Clarification and ratification concerning previous board action on loans from shareholders Dennis Berry and Marty Berry to Berry Contracting, L.P. and offer to Lawrence Berry to participate in said loans for up to 100%;

d. Clarification and ratification of previous board and employee action concerning the sale of the Berry Dock and adjacent real property, and of moving forward with the sale after resolution of pending litigation;

e. Discussion and action on marketing corporate aircraft and use of corporate aircraft pending sale;

f. Consider and take action on need to transfer title to property acquired in Robert Rickett's name, using Berry funds, to any Berry owned Company;

15

g. Discussions and ratification of previous board action concerning the discontinuation of banking relations with International Bank of Commerce;

h. Discussion and ratification of previous board action establishing a banking relationship with Frost Bank;

i. Discussion and ratification of previous board action establishing an operational credit line and any other action needed to provide security for loans;

j. Evaluation of accounts as to any and all director debt (individually or director owned or controlled entities) to any Berry owned Company and development of plans for repayment; and

k. Other business.

65. The second purported to give notice that a "Special Meeting of the Shareholders" of Berry GP, Inc. was called by Marty and Dennis Berry to be held on December 7, 2023 immediately following the Special Meeting of the Board of Directors (the "Shareholder Notice"). The Shareholder Notice, which was also signed by Marty and Dennis Berry, indicated that the purpose of the shareholder meeting was to discuss the following agenda items:

a. Discussion and action concerning the election of and/or removal of Directors.

66. The Special Meetings of the Board of Directors and Shareholders took place on December 7, 2023 while counsel for the parties were reaching agreement on the Agreed TRO. At the Special Meeting of the Board of Directors, Marty and Dennis Berry purported to ratify— frequently over Lawrence's objection—all of the topics and actions listed in the Board Notice. This included topics on which Marty and Dennis were unquestionably interested Directors, such as "defense and indemnity" and "loans from shareholders Dennis Berry and Marty Berry."

67. After the meeting, Defendant Hummell circulated proposed meeting minutes to the members of the Board, including Lawrence. The minutes incorrectly reflected that certain of the agenda items had passed, despite the fact that they required—and had not gotten—approval by disinterested members of the Board of Directors. Accordingly, Lawrence sent redlines of the

16

minutes back to Defendant Hummell in advance of the upcoming December 12, 2023 Board meeting, which properly reflected what had occurred at the December 7, 2023 meeting.

68. At the December 12, 2023 meeting, Defendant Hummell claimed that he "could not open" the redlines that Lawrence had sent—despite the fact that they were sent as PDFs. Further, Marty and Dennis purported to accept Hummell's incorrect meeting minutes, over Lawrence's objection.

69. The same conduct occurred again at the February 13, 2024 meeting of the Shareholders of Berry GP, Inc., at which Marty and Bonnie Berry purported to ratify post hoc a number of actions over Lawrence's objections. Several of those votes should not have passed, since they failed to garner approval from a majority of the disinterested shareholders.

## VII. CAUSES OF ACTION

### COUNT 1
### Breach of Fiduciary Duty
### (against Marty Berry and Mike Hummell)

70. Plaintiff incorporates the above paragraphs as if set forth herein in their entirety.

71. Defendant Marty Berry has been a shareholder, officer, and director of Berry GP, Inc. at all relevant times. Defendant Mike Hummell has served as Vice President and Chief Executive Officer of Berry GP, Inc. at all relevant times. In those positions, Marty and Hummell owe certain fiduciary duties to the Berry Entities, including the duty of loyalty and the duty of utmost good faith, fairness, and honesty. These duties that Marty and Hummell owe to the Berry Entities encompass obligations and/or duties to refrain from allowing self-dealing and to make full disclosure of information.

17

72.     While serving in their respective positions, Marty and Hummell have engaged in, directed, approved, and/or taken actions in contravention of the fiduciary duties they owe to the Berry Entities, including without limitation the following willful and intentional misconduct:

A.     Self-Dealing

  i.   Marty and Hummell approved and directed at least one of the Berry Entities to enter into loan agreements with Marty and Dennis—who are themselves officers, directors, and shareholders of Berry GP, Inc. and the other Berry Entities—without giving notice to or obtaining the consent or approval of Berry GP, Inc.'s Board;

  ii.  At a minimum, Marty's and Hummell's actions breached their fiduciary duties of loyalty to Berry GP, Inc. and amounted to self-dealing.

B.     Unauthorized Acts and Failure to Make Full and Adequate Disclosure

  i.   Marty and Hummell failed to disclose their unauthorized decision to sell vital company assets and the self-dealing Berry Loans and failed to properly seek or obtain board approval or approval of the sole disinterested director for those self-dealing transactions;

  ii.  Marty and Hummell similarly failed to disclose the Berry Entities' financial information to Lawrence before IBC held the Berry Entities in default with respect to the LOC.

C.     Usurpation of Corporate Opportunity and Self-Dealing

  i.   Marty directed his wholly owned company—Western Gulf Equipment—to purchase cranes without first presenting the opportunities to the Board or the Berry Entities.  Then, Marty directed Western Gulf to lease those cranes back

18

to the Berry Entities, without disclosing such lease transactions to the Board or seeking approval by the disinterested members of the Board. Mike Hummell participated in these actions as the registered agent for Western Gulf Equipment. These and other actions by Marty and Hummell amounted to breaches of their fiduciary duties of loyalty to the Berry Entities and to behave with the utmost good faith, fairness, and honesty.

73. The Berry Entities and Lawrence have been damaged by the Defendants' self-dealing, unauthorized acts, breaches of fiduciary duty, and failure to make full disclosure.

74. Because Berry GP, Inc., Becon, Inc., and LDMA Limited Partnership operate as closely held entities—and Defendants have concealed information and refused to share requested information with Lawrence—an officer, director, and shareholder—about the operations of the Berry Entities, justice requires treating this claim as a direct action by Lawrence, with any recovery being paid directly to Lawrence, pursuant to Tex. Bus. Org. Code §§ 21.563 and 153.413.

75. Alternatively, Plaintiff brings these claims derivatively on behalf of LDMA Limited Partnership, Becon Inc., and Berry GP, Inc.

## COUNT 2
### Demand for an Equitable Accounting

76. Plaintiff incorporates the above paragraphs as if set forth herein in their entirety.

77. As an officer and director of Berry GP, Inc. at all relevant times, Marty owed fiduciary duties to Berry GP, Inc. that give rise to grounds for an accounting. Additionally, as an officers of Berry GP, Inc. at all relevant times, Hummell owes fiduciary duties to Berry GP, Inc. that give rise to grounds for an accounting.

78. Defendants have provided Lawrence with almost no financial records related to the Berry Entities. The task of determining whether those records are accurate or complete, and the need to verify details about the concealment, wrongdoing, and mismanagement detailed above, is

19

likely to be complex. Adequate relief is unlikely to be obtained at law or through traditional discovery. Performing an accurate accounting for the Berry Entities is likely to require the creation of accurate financial records where none exist, as opposed to merely granting Plaintiff access to the Berry Entities' existing records.

79. Plaintiff therefore seek an order appointing an independent auditor and requiring the Berry Entities, Marty, and Hummell to prepare and present accurate financial records, which properly account for all corporate receipts, expenditures, assets, and liabilities for Berry GP, Inc. and its subsidiaries, including without limitation the other Berry Entities, since January 2023. *See* TEX. R. CIV. P. 172.

80. Plaintiff bring this claim derivatively on behalf of LDMA Limited Partnership, Becon Inc., and Berry GP, Inc.

## COUNT 3
## Demand for Books and Records

81. Plaintiff incorporates the above paragraphs as if set forth in their entirety.

82. At all relevant times, Plaintiff Lawrence Berry has been a shareholder of at least 5% of Berry GP, Inc. through his interests in LDMA Limited Partnership and Becon, Inc.

83. On April 18, 2023, Lawrence sent a good faith written demand to Defendants for books and records related to Berry GP, Inc. and its subsidiaries, including without limitation the other Berry Entities. However, this request was ignored, and Lawrence never received a response.

84. As a shareholder of Berry GP, Inc. for at least six months immediately preceding that April 18, 2023 demand, and as a holder of at least 5% of all of the outstanding shares in Berry GP, Inc., Lawrence is entitled to examine and copy Berry GP, Inc.'s books, records of account, minutes, and share transfer records. TEX. BUS. ORG. CODE § 21.218.

20

85. The Bylaws of Berry GP, Inc. do not alter or limit Lawrence's right to inspect Berry GP, Inc.'s books and records. Indeed, Section XXIV states that "the books, accounts and records of [Berry GP, Inc.] shall be open to inspection by the shareholders at all reasonable times[.]" *See* Ex. B, at 11.

86. Defendants never responded to Lawrence's lawful request, let alone provided any reason why Lawrence would not be entitled to inspect the books and records of Berry GP, Inc. and its subsidiaries.

87. Plaintiff Lawrence Berry therefore seeks an order compelling the production for examination of the books and records of Berry GP, Inc. and its subsidiaries, including but not limited to the other Berry Entities, pursuant to Section 21.218(c) of the Texas Business Organizations Code.

88. Plaintiff Lawrence Berry brings this claim directly and derivatively on behalf of LDMA Limited Partnership, Becon Inc., and Berry GP, Inc.

## COUNT 4
## Declaratory Judgment

89. Plaintiff incorporates the above paragraphs as if set forth in their entirety.

90. Pursuant to TEX. CIV. PRAC. & REM. CODE § 37.001 *et. seq.*, Plaintiff seeks a judicial declaration of his rights, status, and other legal relations with respect to Defendants under the Berry GP bylaws and laws of the State of Texas.

91. First, Plaintiff seeks a judicial declaration that the purported December 7, 2023 "ratifications" of the following agenda items were ineffectual, because they were not procured with the approval of a majority of the fully informed and disinterested members of the Board of Directors, nor were they approved in good faith by a vote of the disinterested shareholders after disclosure of all material facts:

21

a. Defense and indemnity for Marty Berry, Robert Powers, Robert Rickett, and Mike Hummell in Cause No 2023-81703 in the District Court of Harris County, and any location to which such claims may be transferred;

b. Clarification and ratification concerning previous board action on loans from shareholders Dennis Berry and Marty Berry to Berry Contracting, L.P. and offer to Lawrence Berry to participate in said loans for up to 100%;

c. Clarification and ratification of previous board and employee action concerning the sale of the Berry Dock and adjacent real property, and of moving forward with the sale after resolution of pending litigation;

d. Discussion and action on marketing corporate aircraft and use of corporate aircraft pending sale; and

e. Discussions and ratification of previous board action concerning the discontinuation of banking relations with International Bank of Commerce;

92.     Second, Plaintiff seeks a judicial declaration that the purported February 13, 2024 "ratifications" or "resolutions" were ineffectual, because they were not approved by a majority of the fully informed and disinterested members of the Board of Directors, nor were they approved in good faith by a vote of a majority of the fully informed and disinterested shareholders:

a. BE IT RESOLVED that all action previously taken by any Director of Berry GP, Inc. or any employee of Bay Ltd. to promote, advertise, or seek offers for the sale of the Berry Dock is hereby ratified.  The Board further determines that the Berry Dock and adjacent property is to remain listed for sale and that no sale shall take place pending the resolution of the TRO currently in place in Nueces County, Texas.

b. BE IT RESOLVED that the loans made to Berry GP Inc. by Dennis Berry and Marty Berry in July 2022 are recognized as fair, and in the best interest of Berry GP, and are ratified.

c. BE IT RESOLVED that the two (2) aircraft owned by Berry GP Inc. are to remain listed for sale, and are to be sold upon approval of an acceptable offer to purchase.

d. BE IT RESOLVED that all actions taken by any director of Berry GP, Inc. or any employee of Bay Ltd. including Robert Powers and Mike Hummell, in furtherance of discontinuing the banking relations between Berry GP, Inc. and International Bank of Commerce is hereby ratified.

e. BE IT RESOLVED that the acquisition of cranes or other equipment by Marty Berry, individually or through any company he owns or controls, and the

22

subsequent leasing of that company to any Berry company for performing the work of that Berry company, is approved. To the extent such conduct has occurred in the past, it is ratified.

93.  Each of the "ratifications" or "resolutions" detailed above required informed approval by a majority of the disinterested Directors or Shareholders, pursuant to TEX. BUS. ORGS. CODE § 21.418. However, they were not approved by a majority of the disinterested Directors or Shareholders, because Lawrence Berry objected.

94.  Plaintiff brings this claim individually and derivatively on behalf of LDMA Limited Partnership, Becon Inc., and Berry GP, Inc.

## COUNT 5
## Conversion

95.  Plaintiff incorporates the above paragraphs as if set forth in their entirety.

96.  Pursuant to Texas law, Defendants are liable to Plaintiff for conversion.

97.  Becon Inc., LDMA Limited Partnership and Berry GP, Inc. have the right to possess property of the Berry Entities.

98.  By unlawfully voting to indemnify themselves and advance themselves litigation costs—over the objection of Lawrence as the sole disinterested member of the Board for such vote—Defendants are depriving Plaintiffs of their rightful interest in the property of the Berry Entities.

99.  Lawrence's objection to the vote constitutes his demand for the return of the advanced litigation fees. Alternatively, demand was not required.

100.  As a result of Defendants' unlawful vote and improper squandering of the Berry Entities' money, LDMA Limited Partnership, Becon Inc., and Berry GP, Inc. have suffered damages within the jurisdictional limits of this Court. Further, under the Texas Damages Act and

23

Texas common law, Plaintiff is entitled to recover exemplary damages because Defendants acted with actual malice when converting the Berry Entities' property.

101. Because Berry GP, Inc., Becon, Inc., and LDMA Limited Partnership operate as closely held entities—and Defendants have concealed information and refused to share requested information with Lawrence—an officer, director, and shareholder—about the operations of the Berry Entities, justice requires treating this claim as a direct action by Lawrence, with any recovery being paid directly to Lawrence, pursuant to Tex. Bus. Org. Code §§ 21.563 and 153.413.

102. Alternatively, Plaintiff brings this claim derivatively on behalf of LDMA Limited Partnership, Becon Inc., and Berry GP, Inc.

## COUNT 6
## Corporate Waste (against Marty Berry)

103. Plaintiff incorporates the above paragraphs as if set forth in their entirety.

104. Defendant Marty Berry's use of corporate assets for personal applications constitutes corporate waste.

105. In particular, on information and belief, Defendant Marty Berry uses assets of the Berry Entities to operate his personally-owned company, Western Gulf Equipment. Defendant Marty Berry does not provide adequate consideration to the Berry Entities in return for these uses of Berry Entity assets, and instead further encumbers the Berry Entities by charging lease payments for the Berry Entities' use of Western Gulf cranes. There is no business justification for using the Berry Entities' corporate assets for Defendant Marty Berry's personal applications without adequate consideration.

106. Further, Defendant Marty Berry approved payments to himself from the Berry Entities of at least $10 million in principal on his undisclosed and improper self-dealing loan, despite the purported promissory note governing his loan indicating that the loan is not payable

24

until December 31, 2024.  There is no business justification for using the Berry Entities' corporate assets to make such voluntary payments for Marty's personal benefit, thus depriving the Berry Entities' of vital liquidity.

107.    Finally, on information and belief, Plaintiff understands that Defendant Marty Berry engages in additional corporate waste by using other Berry Entity assets for personal applications without adequate consideration.  However, because Plaintiff has been denied adequate access to the Berry Entities' books and records, the scope and extent of that additional corporate waste is not yet clear.  Plaintiff reserves the right to add additional claims for corporate waste after a proper accounting has been made and Plaintiff has been able to perform a fulsome review of the Entities' books and records.

108.    The Berry Entities and Lawrence have been damaged by Defendant Marty Berry's waste of corporate assets.

109.    Because Berry GP, Inc., Becon, Inc., and LDMA Limited Partnership operate as closely held entities—and Defendants have concealed information and refused to share requested information with Lawrence—an officer, director, and shareholder—about the operations of the Berry Entities, justice requires treating this claim as a direct action by Lawrence, with any recovery being paid directly to Lawrence, pursuant to Tex. Bus. Org. Code §§ 21.563 and 153.413.

110.    Alternatively, Plaintiff brings this claim derivatively on behalf of LDMA Limited Partnership, Becon Inc., and Berry GP, Inc.

### VIII.    APPLICATION FOR TEMPORARY INJUNCTION

111.    Plaintiff incorporates the above paragraphs as if set forth in their entirety.

112.    Plaintiff also incorporates its February 15, 2024 Brief in Support of Temporary Injunction as if set forth in its entirety.

25

113. Plaintiff attaches and incorporates by reference the Verification of Lawrence Berry, which verifies the allegations relevant to this application for injunctive relief.

114. Pursuant to Rules 680 and 681 of the Texas Rules of Civil Procedure and Texas Civil Practice and Remedies Code §§ 65.011(1), (3), and (5), Plaintiff requests that the Court issue a temporary injunction enjoining Defendants from selling any of the Berry Entities' real property without first giving two weeks written notice to Lawrence Berry, including details of the proposed transaction. Further, Plaintiff requests that the court issue a temporary injunction enjoining Defendants from removing Lawrence Berry from the Board of Directors of Berry GP, Inc. or any related entities. Plaintiff further requests that upon final trial on the merits, the Court award a permanent injunction against Defendants for the same activity.

115. By this filing, Plaintiff merely seeks to "preserve the status quo of the litigation's subject matter pending a trial on the merits." *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002). In the injunction context, "status quo" is defined as the "last, actual peaceable, non-contested status which preceded the pending controversy." *See In re Newton*, 146 S.W.3d 648, 651 (Tex. 2004) (citations omitted). Here, the status quo that should be preserved is that Plaintiff Lawrence Berry is one of the three Directors of Berry GP, Inc., he has not ratified or approved any of the Defendants' self-dealing or unauthorized actions as the only disinterested Director, and Defendants are not authorized to sell any of the Berry Entities' real property absent notice to and approval of the Berry GP Board of Directors.

116. To obtain a temporary injunction to preserve this status quo, Plaintiff must show a cause of action against Defendants, a probable right to relief, and probable injury. *See, e.g., Butnaru*, 84 S.W.3d at 204. The "probable injury" requirement has been divided into subcategories of: (1) imminent harm; (2) irreparable injury; and (3) inadequate remedy at law. *See id*. In cases

26

involving real or personal property such as this one, the movant need not show the lack of an adequate remedy at law. TEX. CIV. PRAC. & REM. CODE § 65.011(5).

> **A.** **Defendants have committed and threaten to commit further torts against Plaintiff. Plaintiff has a right to relief from such torts.**

117. Defendants are already liable for causes of action 1-5, above. If Defendants are permitted to direct the Berry Entities to sell the Berry Entities' real property without proper notice to Lawrence, they will continue to commit breaches of fiduciary duty and deprive the company of critical assets, causing additional damage to Plaintiff.

118. To be entitled to a temporary injunction, Plaintiff need not show that he will prevail at trial on these causes of action. Rather, Plaintiff must merely plead a cause or causes of action and present some evidence that tends to sustain them. *Intercont'l Terminals Co., LLC v. Vopak North America, Inc.*, 354 S.W.3d 887, 897 (Tex. App.—Houston [1st Dist.] 2011, no pet.). The unauthorized sale of the Berry Entities' unique and valuable real property—especially if done in furtherance of the repayment of the self-dealing Berry Loan—would not only bolster the causes of action above but would supply all the evidence necessary for Plaintiff to prevail on them.

119. Further, in the fiduciary self-dealing context at issue here, a "presumption of unfairness" attaches to the transactions of the fiduciary, shifting the burden to the defendant to prove the fairness of the transactions. *See Texas Bank & Trust Co. v. Moore*, 595 S.W.2d 502, 508-09 (Tex. 1980). If that presumption cannot be rebutted at the temporary injunction stage, then the injunction should be granted if the plaintiff has presented a prima facie case of the existence of a fiduciary relationship and a probable breach of that duty. *See Health Discovery Corp. v. Williams*, 148 S.W.3d 167, 169-70 (Tex. App.—Waco 2004, no pet.). Here, Lawrence will easily establish a prima facia case that Defendants owed fiduciary duties to the Berry Entities and to the other officers of the Berry Entities and that Defendants have breached those duties.

27

**B.      The harm facing Plaintiff is imminent.**

120.    For the purposes of obtaining an injunction, an injury is "imminent" if one has expressed "demonstrable intent to do that for which injunctive relief is sought," *Harbor Perfusion, Inc. v. Floyd*, 45 S.W.3d 713, 717-18 (Tex. App.—Corpus Christi 2001, no pet.), or if the "defendant will engage in the activity sought to be enjoined." *Schmidt v. Richardson*, 420 S.W.3d 442, 447 (Tex. App.—Dallas 2014, no writ).

121.    Defendants have already made unauthorized offers to sell real property belonging to the Berry Entities, including a unique and valuable commercial dock and other real property. Defendants are believed to be selling such assets to raise money for further unauthorized payments in service of the self-dealing Berry Loan. This past behavior, coupled with the Defendants recent purported Board and shareholder resolutions, demonstrates that Defendants intend to engage in activity that will undoubtedly alter the status quo—and irreparably harm Lawrence—if they are not enjoined from doing so until resolution of the merits of Plaintiff's claims.

**C.      The harm facing Plaintiff is irreparable.**

122.    If Defendants are not enjoined as requested above, the harm Plaintiff will suffer is irreparable. "An injury is irreparable if the injured party cannot be adequately compensated in damages or if the damages cannot be measured by any certain pecuniary standard." *Butnaru*, 84 S.W.3d at 204. Injury is likewise irreparable if "damages [are] not presently ascertainable or readily subject to calculation." *Wright v. Sport Supply Group, Inc.*, 137 S.W.3d 289, 294 (Tex. App.—Beaumont 2004, no pet.) (citing *Butnaru*, 84 S.W.3d at 204). The loss of management rights over a company can constitute irreparable harm, because those rights are "unique, irreplaceable, and 'cannot be measured by any certain pecuniary standard.'" *Cheniere Energy, Inc. v. Parallax Enters.*, 585 S.W.3d 70, 83 (Tex. App.—Houston [14th Dist.] 2019, pet. dism'd (citing

*Sonwalkar v. St. Luke's Sugar Land P'ship, L.L.P.*, 394 S.W.3d 186, 201 (Tex. App.—Houston [1st Dist.] 2012, no pet.)). Additionally, "a trial court may grant injunctive relief when the enjoined conduct threatens to disrupt an ongoing business." *Sonwalkar*, 394 S.W.3d at 199; *see also Intercont'l Terminals Co., LLC*, 354 S.W.3d at 896 ("[d]isruption to a business can be irreparable harm," and "assigning a dollar amount to such intangibles as a company's loss of clientele, goodwill, marketing techniques, and office stability, among others, is not easy.").

123. Further, trial courts typically grant injunctive relief in "actions involving real property because real estate is generally considered unique" and "irreplaceable," such that money damages are generally inadequate. *See Chenier Energy*, 585 S.W.3d at 76-77 (citing cases).

124. First, as explained above, Plaintiff has already been damaged by Defendants' actions, but the extent of that damage is not readily ascertainable because of Defendants intentional concealment of information and the lack of clear records detailing the financial status of the Berry Entities. Additionally, Defendants actions have already caused irreparable harm to the Berry Entities' decades-long banking relationship with IBC and could cause similar harm to the new banking relationship with Frost Bank. Assigning a dollar amount to remedy this kind of intangible but serious harm is not easy.

125. Second, Plaintiff understands that Defendants have pledged the Berry Entities' real property as collateral to secure an increase to the new Frost Bank line of credit. Should unauthorized self-dealing payments made in service of the Berry Loans imperil the line of credit with Frost Bank such that the company's real property interests are threatened, Plaintiff will be irreparably harmed as a result.

126. Third, Defendants have been secretly attempting sell—without notice to or authorization from the Board—other real property belonging to the Berry Entities, including the

company's valuable dock facility, presumably to raise funds to make additional self-dealing payments. If Defendants dispose of such real property without the requisite notice or approval, Plaintiff will be irreparably harmed.

**D.      Plaintiff lacks an adequate remedy at law, or in the alternative, is not required to prove lack of an adequate remedy at law.**

127.    Because Plaintiff moves for a temporary injunction under Section 65.011(5) of the Texas Civil Practice and Remedies Code, he is not required to prove lack of an adequate remedy at law. *See* TEX. CIV. PRAC. & REM. CODE § 65.011(5) ("A writ of injunction may be granted if: (5) irreparable injury to real or personal property is threatened, *irrespective of any remedy at law*.") (emphasis added).

128.    Alternatively, Plaintiff has no adequate remedy at law, so a temporary injunction must issue. An irreparable injury is one that, by definition, has no adequate remedy at law. *See, e.g., Kennedy v. Gulf Coast Cancer & Diag. Center at Southeast, Inc.*, 326 S.W.3d 352, 260 (Tex. App.—Houston [1st Dist.] 2010, no pet.) ("An injury is irreparable if there is no adequate remedy at law; if for example, a prevailing applicant could not be compensated adequately in damages or if damages cannot be measured by any certain pecuniary standard.") (citations omitted). As explained above, the injuries Plaintiff will suffer—including the likely loss of management rights and of unique and valuable real property belonging to the company—cannot be adequately compensated in damages, and Plaintiff thus has no adequate remedy at law.

129.    Further, to justify denial of an application for injunction, a remedy at law must be as "complete, practical, and efficient to the prompt administration of justice as is equitable relief." *Tex. Black Iron, Inc. v. Arawak Energy Int.'l Ltd.*, 572 S.W.3d 579, 584 (Tex. App.—Houston [14th Dist.] 2017, no pet.). Here, the equitable relief that Plaintiff seeks is for the purpose of avoiding harm that could not be responded to fully in money damages, including threatening the status of

the Berry Entities' real property interests and of Plaintiff's management rights in the Berry Entities. Damages would be an incomplete remedy at best, because the harm Defendants threatens to impose on Plaintiff is non-monetary in part. *See RWI Constr., Inc. v. Comerica Bank*, 583 S.W.3d 269, 275 (Tex. App.—Dallas Apr. 12, 2019, no pet.) ("Generally, an adequate remedy at law exists and injunctive relief is improper where any potential harm may be adequately cured by monetary damages.").

**E.      Plaintiff is entitled to a temporary injunction and is willing to post bond.**

130.    For the reasons set forth above, Plaintiff is entitled to a temporary injunction. Plaintiff requests that upon notice and hearing, the Court enjoin Defendants from (1) removing Lawrence Berry from the Board of Directors of Berry GP, Inc. or any related entities; and (2) voting on the sale of the Berry Entities' real property without first giving two weeks' written notice to Lawrence Berry, including details of the proposed transaction. Plaintiff further requests that upon final hearing, the Court award a permanent injunction against Defendants for the same conduct.

## IX.      ATTORNEY'S FEES

131.    Plaintiff Lawrence Berry is entitled to recover his attorneys' fees incurred in this matter pursuant to Sections 21.222 and 21.561 of the Texas Business Organizations Code and Section 37.009 of the Texas Civil Practice and Remedies Code.

## X.      JURY DEMAND

132.    Plaintiff hereby requests a jury trial.

## XI.      CONDITIONS PRECEDENT

133.    Plaintiff pleads that all conditions precedent to the relief requested have been satisfied, waived, excused, and/or are deemed as a matter of law to have been satisfied.

## XII. PRAYER

134. Plaintiff respectfully prays that Defendants be cited to appear and answer herein, and that the Court:

(1) Enter a temporary injunction restraining Defendants from (1) removing Lawrence Berry from the Board of Directors of Berry GP, Inc. or any related entities; and (2) voting on the sale of the Berry Entities' real property without first giving two weeks' written notice to Lawrence Berry, including details of the proposed transaction;

(2) Order that Plaintiff recover from Defendants the reasonable costs and expenses Plaintiff incurred in obtaining the temporary injunction;

(3) Order that Defendants produce the books and records of the Berry Entities for inspection by Plaintiff Lawrence Berry;

(4) Order that Plaintiff Lawrence Berry recover from Defendants the reasonable costs and expenses Plaintiff incurred in obtaining the books and records;

(5) Appoint an independent auditor and order Defendants to prepare and present accurate financial records, which properly account for all corporate receipts, expenditures, assets, and liabilities for Berry GP, Inc. and its subsidiaries, including without limitation the other Berry Entities, since January 2023;

(6) Set a trial date and upon final hearing enter a permanent injunction that enjoins Defendants from performing the acts described above, and order that Plaintiff have final judgment against Defendants for breach of fiduciary duty and award:

   (i) compensatory, actual, consequential, restitutionary, and disgorgement damages,

   (ii) exemplary damages,

   (iii) pre-judgment interest,

   (iv) post-judgment interest,

   (v) reasonable and necessary attorneys' fees and costs, and

   (vi) any other relief to which Plaintiff may show himself justly entitled.

Dated: March 14, 2024

Respectfully submitted,

By: */s/ Barrett Reasoner*

32

Barrett Reasoner
State Bar No. 16641980
breasoner@gibbsbruns.com
Michael Absmeier
State Bar No. 24050195
mabsmeier@gibbsbruns.com
L. Bruce Baldree
State Bar No. 24116064
bbaldree@gibbsbruns.com
**GIBBS & BRUNS LLP**
1100 Louisiana, Suite 5300
Houston, Texas 77002
Tel: 713.650.8805
Fax: 713.750.0903

and

Butch Boyd
State Bar No. 00783694
butchboyd@butchboydlawfirm.com
**BUTCH BOYD LAW FIRM**
2905 Sackett Street
Houston, Texas 77098
Tel: 713.589.8477

and

Gabi S. Canales
State Bar No. 24012376
gabilaw14@gmail.com
**GABI CANALES LAW OFFICE**
5262 South Staples St., Suite 100
Corpus Christi, Texas 78411
Tel: 361.887.4700
Fax: 361.887.4761

**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I hereby certify that on March 14, 2024, a true and correct copy of this document was served on all counsel of record pursuant to the Texas Rules of Civil Procedure.

_/s/ Bruce Baldree_
L. Bruce Baldree

33

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Christina Pena on behalf of Barrett Reasoner
Bar No. 16641980
cpena@gibbsbruns.com
Envelope ID: 85562149
Filing Code Description: Amended Petition
Filing Description: Plaintiff's First Amended Verified Petition and Application For Temporary Injunction
Status as of 3/20/2024 8:57 AM CST

Associated Case Party: Lawrence Berry

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Barrett H.Reasoner | | breasoner@gibbsbruns.com | 3/14/2024 1:36:43 PM | SENT |
| Michael R.Absmeier | | mabsmeier@gibbsbruns.com | 3/14/2024 1:36:43 PM | SENT |
| Roxanne Graham | | rgraham@gibbsbruns.com | 3/14/2024 1:36:43 PM | SENT |
| Christina Pena | | cpena@gibbsbruns.com | 3/14/2024 1:36:43 PM | SENT |
| Bruce Baldree | | bbaldree@gibbsbruns.com | 3/14/2024 1:36:43 PM | SENT |
| Sherry Rakestraw | | srakestraw@gibbsbruns.com | 3/14/2024 1:36:43 PM | SENT |
| Butch Boyd | | butchboyd@butchboydlawfirm.com | 3/14/2024 1:36:43 PM | SENT |
| Katrina Chamblee-Boyd | | katrinaboyd@butchboydlawfirm.com | 3/14/2024 1:36:43 PM | SENT |

Associated Case Party: Marty Berry

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Douglas Allison | | doug@dallisonlaw.com | 3/14/2024 1:36:43 PM | SENT |
| Kim Brunkenhoefer | | kim@dallisonlaw.com | 3/14/2024 1:36:43 PM | SENT |
| Susan Gonzales | | susan@dallisonlaw.com | 3/14/2024 1:36:43 PM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Shanna Gohlke | | gohlkes@bayltd.com | 3/14/2024 1:36:43 PM | SENT |
| Stephanie Jennings | | sjennings@porterhedges.com | 3/14/2024 1:36:43 PM | SENT |
| Cheri Deason | | cdeason@porterhedges.com | 3/14/2024 1:36:43 PM | SENT |

Associated Case Party: Robert Rickett

## <u>DECLARATION OF LAWRENCE BERRY</u>

My name is Allen Lawrence Berry. I am of sound mind and capable of making this declaration. I have read the foregoing First Amended Verified Petition and Application for Temporary Injunction and have personal knowledge of the facts and statements contained therein. I declare under penalty of perjury that the facts and statements contained therein are within my personal knowledge and true and correct.

Declarant states nothing further.

Executed in ___Houston Texas_____ on the 14th day of March, 2024.

DocuSigned by:

*Lawrence Berry*
C13985179A0B4F0...
Lawrence Berry

# EXHIBIT A



# EXHIBIT B

BYLAWS OF

BERRY CONTRACTING, INC.

I.

TITLE: The title of the corporation is Berry Contracting, Inc.

II.

LOCATION: The location of its principal office shall be 1414 Corn Products Road in the City of Corpus Christi, Nueces County, Texas

III.

CORPORATE SEAL: The corporate seal of the company shall have inscribed thereon: "Berry Contracting, Inc."

IV.

DIRECTORS: The property and business of the company will be managed and controlled by a board of directors consisting of not less than three nor more than seven members. They shall hold office until the next annual meeting of the shareholders or until their successors are elected and have qualified.

V.

POWERS OF DIRECTORS: The board of directors shall have the management of the business of the company and in addition to the powers and authorities by these bylaws expressly conferred upon them, may exercise all such powers and do all such acts and things as may be exercised or done by the corporation, but subject, nevertheless, to the provisions of the statute, of the charter and of these bylaws and to any regulations from time to time made

by the shareholders, provided that no regulations so made shall invalidate any prior act of the directors which would have been valid if such regulations had not been made.

Without prejudice to the general powers conferred by the last preceding clause and other powers conferred by these bylaws, it is hereby expressly declared that the board of directors shall have the following powers, that is to say:

To purchase and otherwise acquire for the company and property, rights or privileges which the company is authorized to acquire, at such prices and on such terms and conditions and for such consideration as they think proper. At their discretion, to pay for any property or rights acquired by the company, either wholly or partially, in money or in stocks, bonds, debentures, or other securities of the company.

To appoint, and at their discretion, remove or suspend, such subordinate managers, officers, assistants, clerks, agents, and servants, permanently or temporarily, as they may from time to time think fit, and to determine their duties and fix, and from time to time change their salaries or emoluments, and to require security in such instances and in such amounts as they think proper.

To confer, by resolution, upon any officer of the company the right to choose, remove or suspend such subordinate officers, agents or factors.

To appoint any person or persons to accept and hold in trust for the company any property belonging to the company or in

which it is interested or for any other purpose, and to execute and do all such duties and things as may be requisite in relation to any such trust.

To create, make and issue mortgages, bonds, deeds of trust, trust agreements and negotiable or transferable instruments and securities, secured by mortgage or otherwise, and to do every other act and thing necessary to effectuate the same.

To determine who shall be authorized to sell on behalf of the company bills, notes, receipts, acceptances, endorsements, checks, releases, contracts and documents.

From time to time to provide for the management of the affairs of the company in such manner as they think proper and in particular, from time to time to delegate any of the powers of the board of directors to any committee, officer or agent, and to appoint any person to be the agent of the company with such powers, including the powers to subdelegate, and upon such terms as may be thought proper.

## VI.

MEETINGS OF THE DIRECTORS: The directors elected at the annual meeting of the shareholders shall meet immediately following each such meeting for the purpose of electing officers and considering any other business that may come before the board.

Other meetings of the directors may be held at such times, at such places and upon such notice as may be determined from time to time by the board.

A majority of the whole board of directors shall be necessary to constitute a quorum for the transaction of business at all meetings. *VI-A added aug 11, 1981*

## VII.

MEETINGS OF THE SHAREHOLDERS: Meetings of the shareholders shall be held in the City of Corpus Christi, Nueces County, Texas, unless otherwise specified in the notice of any such meeting or waiver thereof.

All shareholders entitled to vote may vote at all meetings, either in person or by proxy in writing. All proxies shall be filed with the secretary of the meeting before being voted upon. A majority of the shareholders in amount of stock issued and outstanding, represented by the holders in person or by proxy, shall be requisite at all meetings to constitute a quorum for an election of directors or the transaction of other business.

The annual meeting of the shareholders shall be held on the second Tuesday of each August at 10 o'clock a.m. in each year, beginning with the year 1963, if not a legal holiday, and if a legal holiday, then on the day following, when they shall elect by a plurality vote, by ballot, a board of directors to serve for one year and until their successors are elected and have qualified, each shareholder being entitled to vote for each share of stock standing registered in his or her name on the twentieth day preceding the election, exclusive of the date of such election.

Notice of the annual meeting shall be mailed by the secretary to each shareholder entitled to vote at his or her last known post

office address, at least ten days prior to the meeting.

Special meetings of the shareholders may be called by the president, and shall be called at the request in writing or by vote of a majority of the board of directors or at the request in writing of the holders of a majority of the stock of the company issued and outstanding. Notice of each special meeting, indicating briefly the object or objects thereof, shall be mailed by the secretary to each shareholder at his or her last known post office address at least five days prior to the meeting.

## VIII.

STANDING COMMITTEES: The board of directors may appoint from their number, standing committees and may invest them with all their own powers, subject to such conditions as they may pre-scribe, and all committees thus appointed shall keep regular min-utes of their transactions and shall cause them to be recorded in books to be kept for that purpose in the office of the company and shall report the same to the board of directors at their regular meeting.

IX. amended Aug 11, 1981

OFFICERS: The officers of the company shall consist of a president, one or more vice presidents, a secretary and treasurer, and one or more assistant secretaries or treasurers, and such subordinate officers as may from time to time be elected or ap-pointed by the board of directors. Any person may hold more than one such office, except that the president and secretary shall not be the same person.

OFFICERS - HOW CHOSEN: At the first meeting after their election and annually thereafter beginning on the second Tuesday of August, 1963, the directors shall elect the officers of the corporation, such officers to hold office for one year and until their successors are elected and have qualified. They shall be subject to removal during their respective terms of office for cause and may be removed at any time by a majority vote of the directors then in office.

## XI.

PRESIDENT: The president shall be the chief executive officer of the company; he shall preside at all meetings of the directors; he shall have general and active management of the business of the company; and shall see that all orders and resolutions of the board are carried into effect. He shall execute all contracts and agreements authorized by the board. He shall have the general supervision and direction of all the other officers of the company and shall see that their duties are properly performed. He shall be ex-officio member of all standing committees and shall have the general powers and duties of supervision and management usually vested in the office of the president of a corporation.

The president shall submit a report of the operations of the company for the fiscal year to the directors at their first regular meeting in each year, and to the shareholders at their

annual meeting, and from time to time shall report to the directors all matters within his knowledge which the interests of the company may require to be brought to their notice.

XI-A - *added Aug 11, 1981*
XII *amended Aug. 11, 1981*

VICE PRESIDENT: Any vice president shall be vested with all the powers and shall perform all the duties of the president in his absence, and shall perform such other duties as may be prescribed by the board of directors.

XII-A *added Aug 11, 1981*
XIII.

SECRETARY: The secretary shall attend all sessions of the board and act as clerk thereof and record all votes and the minutes of all proceedings in a book to be kept by him for that purpose and shall perform like duties for the standing committees when required. He shall keep in safe custody the seal of the company and when authorized to do so shall affix the seal of said corporation to any instrument requiring the same, and the seal when so affixed shall be attested by the signature of the secretary.

He shall see that proper notice is given of all meetings of the shareholders of the company and of the board of directors and shall perform all such other duties as may be prescribed from time to time by the board of directors or the president.

XIV.

TREASURER: The treasurer shall keep full and accurate records of receipts and disbursements in books of accounts belonging to the company and shall deposit all money and other valuable effects in the name and to the credit of the company

in the depository or depositories designated from time to time by resolution of the board of directors.

He shall disburse funds of the company as may be ordered by the board, or the president, taking proper vouchers for such disbursements, and shall render to the president and directors at the regular meetings of the board, or whenever they may require it, an account of all his transactions as treasurer and of the financial condition of the company. He shall keep the accounts of stock registered and transferred in such form and manner and under such regulations as the board of directors may prescribe. If required by the board of directors, he shall give the company a bond in form and in a sum with security satisfactory to the board of directors, for the faithful performance of the duties of his office and the restoration to the company, in case of his death, resignation or removal from office, of all books, papers, vouchers, money and other property of whatever kind in his possession belonging to the company. He shall perform such other duties as the board of directors may from time to time prescribe or require.

XV *Amended Aug 11, 1981*

VACANCIES: If the office of any director, or of the president, vice president, any secretary or treasurer or other officer or agent, one or more, becomes vacant by reason of death, resignation, retirement, disqualification, removal from office or otherwise, the directors in office, although less

than a quorum, by a majority vote, may choose a successor or successors who shall hold office for the unexpired term in respect of which such vacancy occurred.

XVI. *Amended Aug 11, 1981*

DUTIES DELEGATED: In the case of the absence of any officer of the company, the board of directors may delegate the powers and duties of such officer to any other officer or to any director for the time being.

XVII.

CERTIFICATE OF STOCK: Every shareholder shall have a certificate, signed by the president or vice president, and either the treasurer or the secretary, certifying the number of shares owned by him in such corporation.

XVIII.

TRANSFERS OF STOCK: All transfers of the stock of the company shall be made as required by the Uniform Stock Transfer Act. Certificates shall be surrendered and cancelled at the time of transfer. No transfer of stock shall be made within ten days next preceding the day appointed for paying a dividend.

XIX.

LOSS OF CERTIFICATES: In the case of loss or destruction of a certificate of stock, another may be issued in its place upon proof of such loss or destruction and the giving of a satisfactory bond of indemnity. The provisions of the Uniform Stock Transfer Act as to court order may be required.

XXI.

DIVIDENDS: Dividends upon the capital stock of the

company when earned may be declared by the board of directors at any regular or special meeting. Before the payment of any dividends or making any distribution of profits there may be set aside out of the net profits of the company such sum or sums as the directors from time to time in their absolute discretion think proper as a reserve fund to meet contingencies, or for equalizing dividends, or for any such other purpose as the directors may think conducive to the best interest of the company.

## XXII.

CHECKS FOR MONEY: All checks, drafts, or orders for the payment of money shall be signed as directed by resolution of the board of directors from time to time.

## XXIII.

DEPOSITORY: A depository or depositories for the corporation shall be designated from time to time by the board of directors, and requested and directed to honor checks, drafts or other orders for the payment of money drawn in this corporation's name, including those payable to the individual order of any person or persons who name or names appear thereon as signed or signers thereof, when bearing or purporting to bear the signature of any person or persons authorized to sign the same by resolution of the board of directors, and said depository or depositories shall be entitled to honor and to charge this corporation with such checks, drafts, or other orders so drawn

until and unless such authority and designation is revoked by resolution of the board of directors of said corporation and upon due notice to said depository or depositories.

## XXIV.

BOOKS AND RECORDS: The books, accounts and records of the company shall be open to inspection by the shareholders at all reasonable times which are to be fixed by resolution of the board of directors.

## XXV. *Amended Aug 9, 1966*

NOTICE: Whenever under the provisions of the statute or by these bylaws notice is required to be given to any director, officer or shareholder, it shall not be construed to mean personal notice, but such notice may be given in writing by depositing the same in the post office or letter box in a postpaid, sealed wrapper, addressed to such director, officer or shareholder at his or her address as the same appears in the books of the corporation; and the time when the same shall be mailed shall be deemed to be the time of the giving of such notice.

## XXVI. *Amended Aug 9, 1966*

WAIVER OF NOTICE: Whenever any notice whatever is given or required to be given to any director, officer or shareholder, a waiver thereof in writing, signed by said shareholder, director, or officer, whether before or after the time stated in said waiver, shall be deemed equivalent thereto.

## XXVII.

AMENDMENT OF BYLAWS: These bylaws may be amended at any

time and from time to time by a majority of the entire board of directors then in office at any regular or special meeting of the board of directors or by the vote of a majority of the shareholders in amount of the stock then issued and outstanding at any regular or special meeting of the shareholders.

By-Laws approved as correct:

_Marvin L. Berry_

Marvin L. Berry, President

By-Laws attested as duly adopted:

_Mattie L. Boyce_

Mattie L. Boyce, Secretary-Treas.

AMENDMENT TO THE BY-LAWS
BERRY CONTRACTING, INC.


BE IT RESOLVED that the By-Laws of Berry Contracting, Inc. be amended as follows:

That Article XXV and XXVI be amended by adding the following phrase to said Article XXVI:

"Attendance in person or by proxy at any meeting of shareholders, either annual or special, shall constitute waiver of notice of such shareholders meeting and it will not be necessary for a formal written waiver of notice to be executed by such shareholders."

"Attendance in person at any directors meeting, whether annual, regular, special or called, shall constitute waiver of notice of call of such meeting and shall not be necessary for such director so attending in person to execute a formal written waiver of notice of same."

By-Laws adopted this 9th day of August, 1966, at the annual meeting of shareholders and a copy ordered signed and affixed to the By-Laws of the Corporation.

Certified correct:

ATTEST:

_Marvin L. Berry_

Marvin L. Berry, President and
Chairman of Shareholders Meeting

_Mattie L. Boyce_

Mattie L. Boyce, Secretary of
Shareholders Meeting and Secretary-
Treasurer of Corporation

(New Section)

NOTICE OF DIRECTORS MEETINGS:  No notice of annual meeting need be given directors.

IX
(As Amended)

OFFICERS:  The officers of the company shall consist of a President, an Executive Vice President, one or more Vice Presidents, a General Counsel, a Secretary and Treasurer and one or more assistant Secretaries or Treasurers and such subordinate officers as may from time to time be elected by the Board of Directors or appointed by the President.

X
(As Amended)

OFFICERS - HOW CHOSEN AND REMOVED:  The President, Executive Vice President, Vice Presidents and the Secretary of the Corporation shall be elected by the Board of Directors at either its annual meeting (to be held on the second Tuesday of August of each year immediately following the annual meeting of the Shareholders) and shall serve for one year or until their successors have been elected provided however, that vacancies may be filled or new officers elected at any special meeting of the Board of Directors called for such purpose.  All other Corporation employees shall be appointed by the President.  The salaries and emoluments of all officers shall be determined by the President subject only to the right of review by the Board of Directors on the written request of a majority of the entire Board of Directors, but provided that no such review shall have retroactive effect on any officer.  Any officer may be removed by a majority vote of the Board of Directors.

XI-A
(New Section)

EXECUTIVE VICE PRESIDENT:  There is hereby created the office of Executive Vice President,  The Executive Vice President shall be a person thoroughly familiar with the broad spectrum of activities and projects of the Corporation and its subsidiary entities and shall be a person knowledgeable in the business and professional affairs of the Corporation.  The Executive Vice President shall act for, as and in the place of the President in the event of absence or disability of the President.  In addition, the Executive Vice President shall supervise the Vice Presidents, the Secretary, managers, departments and activities as directed by the President and is vested with broad executive management of the Corporation subject to direction of the Board of Directors and the President.

XII
(As Amended)

VICE PRESIDENT:  If both the President and the Executive Vice President be absent, disabled or unable to serve or fulfill their duties, any vice president may and shall serve in the place of and perform all or any of the duties of the President and/or Executive Vice President; and shall, in addition, perform such regular and other duties, including supervision of departments, as may be prescribed by the Board of Directors or delegated or assigned by the President or Executive Vice President.

XII-A
(New Section)

GENERAL COUNSEL:  There is herewith created the office of General Counsel of Berry Contracting, Inc.  The person appointed General Counsel may be also designated as Vice President and shall receive such compensation and be employed on such terms and conditions as may be properly designated.  The General Counsel shall supervise the Legal Department of the Corporation, shall be responsible for and direct the legal affairs of the Corporation including drafting and preparation of documents and instruments, shall provide legal counsel to the Corporation, and shall direct and hangle litigation and shall

generally perform the duties of Corporate Attorney under the direction of the President, Executive Vice President and the Board of Directors. The General Counsel shall be a licensed attorney at law and a person schooled and knowledgeable in general corporation law and other activities in which the company engages. If the General Counsel is also named Vice President, he shall perform such executive duties as pertains to the office of Vice President and as be assigned and being in addition to that of General Counsel.

## XV
## (As Amended)

VACANCIES: If the office of any director or any officer becomes vacant by reason of death, resignation, retirement, disqualification or removal from office or otherwise, the Directors then in office, although less than a quorum may, by a majority vote, choose a successor or successors who shall hold such office for the unexpired term of such officer or officers and until their successors be nominated and elected.

## XVI
## (As Amended)

DUTIES DELEGATED: In the case of the absence of any officer of the Company, the Board of Directors or the President may delegate for temporary purposes the powers and duties of such officer to any other officer or to any other Director.

I, R. W. Black, being Secretary of Berry Contracting, Inc. do certify that the foregoing amendments to the Bylaws of Berry Contracting, Inc. were duly, lawfully and legally adopted at an annual meeting of the Board of Directors held pursuant to the Bylaws on the 11th day of August, 1981.

WITNESS my hand and the seal of the corporation.

R. W. BLACK, Secretary

-3-

## AMENDMENT TO THE BY-LAWS
## BERRY CONTRACTING, INC.

BE IT RESOLVED that the By-Laws of Berry Contracting, Inc. be amended as follows:

That Article IV be amended as follows:

The Board of Directors shall consist of not less than two directors.

By-Laws adopted this 9th day of August 1982.

CERTIFIED CORRECT:

_Marvin L. Berry_

Marvin L. Berry, President and
Chairman of Shareholders Meeting

ATTEST:

_D. E. Spangler_

D. E. Spangler, Secretary-Treasurer

# EXHIBIT C



P.O. Box 4858
1414 Valero Way
Corpus Christi, Texas
78469-4858
Bus: (361) 693-2100

May 30, 2023

Sean Strawbridge, Director
Port Of Corpus Christ
400 Harbor Drive
Corpus Christi, TX 78401

Dear Mr. Strawbridge,

After immense consideration, the principals at Berry G.P. have decided to open two strategic properties to the marketplace. The property's synergy directly enhances one another and will be packaged as one. This asset's development would greatly benefit the port and the immediate properties contiguous, thus Berry G.P. would like to offer this to the Port as a first option. The Port of Corpus Christi will be responsible for the offer, based on knowledge of future growth and economic strategy. Please be respectful in timing of response, as this divestment will be presented for open offers. Attached you will find surveys and legal descriptions for both tracts. Thank you very much.

Sincerely,

Robert Rickett
Berry, G.P.
361-693-2841
409-771-1267
RickettR@Bayltd.com

# EXHIBIT D

 Frost

# CERTIFICATE OF CORPORATE RESOLUTIONS
# OF
# BERRY GP, INC

I, M. G. Berry, Secretary of BERRY GP, INC, a Texas corporation (the "Corporation"), do hereby certify as follows:

1.  I am the duly elected and qualified Secretary of the Corporation and the custodian of the Corporation's records.

2.  Set forth below is a true and correct extract from the records of the Corporation showing resolutions duly adopted either: (a) at a meeting of its Board of Directors duly called and held, at which meeting a quorum was present and acting throughout, or (b) by unanimous written consent of the Board of Directors of the Corporation, which resolutions have not in any way been amended or modified and are in full force and effect:

    RESOLVED, that the President, any Vice President, or Secretary of the Corporation be and is hereby authorized and directed to obtain a loan in the amount of $20,000,000.00 from FROST BANK ("Lender"), upon such terms and conditions as the said officer shall in his or her sole discretion deem necessary or advisable; to execute and deliver on behalf of the Corporation all promissory notes, deeds of trust, security instruments, documents, certificates and agreements (collectively, the "Loan Documents") required by Lender, and to pledge as security for the loan such assets of the Corporation as such officer deems necessary or advisable; and to do any and all things in connection with such loan or any renewal, extension or rearrangement thereof that such officer deems necessary or advisable and in the best interests of the Corporation.

    FURTHER RESOLVED, that the President, any Vice President, or the Secretary of the Corporation be and hereby is authorized and empowered on behalf of the Company from time to time to execute, acknowledge and deliver any interest rate swap agreement, interest rate exchange agreement, currency exchange agreement, foreign exchange agreement, interest rate and currency exchange agreement, forward rate agreement, rate floor agreement, interest rate protection agreement, interest rate cap agreement, rate collar agreement, any option agreement respecting the foregoing, International Swaps and Derivatives Association, Inc. (ISDA) Master Agreement, or any similar agreement or arrangement and any schedule, confirmation, exhibit, document or instrument evidencing any interest in a transaction covered by any such agreement as the same may be modified, supplemented, amended or revised and in effect from time to time;

    FURTHER RESOLVED, that all acts of the President, any Vice President, or the Secretary of the Corporation authorized and directed herein, including the execution and delivery of the Loan Documents and all other documents referenced herein relating to the loan herein referenced, are reasonably expected to benefit, directly or indirectly,

the Corporation;

FURTHER RESOLVED, that the officers of the Corporation are hereby severally authorized to (a) sign, execute, certify to, verify, acknowledge, deliver, accept, file and record any and all instruments and documents, and (b) take, or cause to be taken, any and all such action, in the name and on behalf of the Corporation or otherwise, as in any such officer's judgment is necessary, desirable or appropriate in order to consummate the transactions contemplated by or otherwise to effect the purposes of the foregoing resolutions;

FURTHER RESOLVED, that all actions heretofore taken by the directors or the officers of the Corporation, and all things done by their authority, in connection with the transaction described herein, be and the same are hereby ratified, approved and adopted as the acts of the Corporation;

FURTHER RESOLVED, that said officers are authorized and empowered to perform all acts and execute and deliver all instruments, documents and agreements required by Lender to carry out the purposes of these resolutions;

3.   The following are duly elected, qualified and serving officers of the Corporation, and that the signature set out opposite the name of each officer is the genuine signature of such person, to-wit:

| Name | Title | Signature |
|------|-------|-----------|
| Robert Powers | President | |
| M. G. Berry | Secretary | |

4.   (a) all franchise and other taxes required to maintain the Corporation's corporate existence have been paid when due and that no such taxes are delinquent; (b) no proceedings are pending for the forfeiture of the Corporation's Certificate of Incorporation or the Corporation's dissolution, voluntary or involuntary; (c) the Corporation is duly qualified to do business in the State of Texas and any other states in which it is doing business, and is in good standing in such states; (d) there is no provision of the Articles of Incorporation or Bylaws of the Corporation limiting the power of the Board of Directors to pass the resolutions set out above, and that such resolutions are in conformity with the provisions of said Articles of Incorporation and Bylaws.

IN WITNESS WHEREOF, I have hereto set my hand this 29th day of June, 2023.

_____
M. G. Berry, in the capacity of Secretary

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Christina Pena on behalf of Barrett Reasoner
Bar No. 16641980
cpena@gibbsbruns.com
Envelope ID: 85562149
Filing Code Description: Amended Petition
Filing Description: Plaintiff's First Amended Verified Petition and Application For Temporary Injunction
Status as of 3/20/2024 8:57 AM CST

Associated Case Party: Robert Rickett

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Van Huseman | | vhuseman@husemanlawfirm.com | 3/14/2024 1:36:43 PM | SENT |
| John Swallow | | jswallow@husemanlawfirm.com | 3/14/2024 1:36:43 PM | SENT |

Associated Case Party: Robert Powers

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Clay Steely | | csteely@porterhedges.com | 3/14/2024 1:36:43 PM | SENT |
| William  Stukenberg | | wstukenberg@porterhedges.com | 3/14/2024 1:36:43 PM | SENT |

Associated Case Party: Michael Hummell

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Van  Huseman | | vhuseman@husemanlawfirm.com | 3/14/2024 1:36:43 PM | SENT |
| John Swallow | | jswallow@husemanlawfirm.com | 3/14/2024 1:36:43 PM | SENT |

# APPENDIX 57

CAUSE NO.: 2023-81703

| | | |
|---|---|---|
| LAWRENCE BERRY, individually and derivatively on behalf of BERRY GP, INC., | § § § § | IN THE DISTRICT COURT OF |
| *Plaintiff,* | § § § | |
| BERRY GP, INC., | § § | |
| *Nominal Plaintiff,* | § § | HARRIS COUNTY, TEXAS |
| v. | § § § | |
| MARTY BERRY, ROBERT RICKETT, ROBERT POWERS, MICHAEL HUMMELL, BERRY GP, INC., BERRY OPERATING COMPANY LLC, and BERRY CONTRACTING LP, | § § § § § § § | |
| *Defendants.* | § | 333rd JUDICIAL DISTRICT |

**AMENDED TEMPORARY RESTRAINING ORDER AGAINST DEFENDANTS AND ORDER SETTING HEARING FOR TEMPORARY INJUNCTION**

On this date, the Court heard Plaintiffs Lawrence Berry and Berry GP, Inc.'s motion to modify the existing temporary restraining order against Defendants Marty Berry, Robert Rickett, Robert Powers, Michael Hummell, Berry GP, Inc., Berry Operating Company LLC, and Berry Contracting LP. The motion was presented with notice to the Defendants. The Court, after considering Plaintiffs' motion, Plaintiffs' previous TRO application, the existing TRO, any response, the pleadings, the affidavits, any evidence submitted, and arguments of counsel, finds that the motion is well-taken and should be in all things GRANTED.

In particular, the Court finds the following:

Copy from re:SearchTX

1. The evidence shows that Plaintiffs will suffer probable, imminent, and irreparable injury before the temporary injunction hearing if the Court does not modify the existing temporary restraining order against Defendants because Marty Berry and the other Defendants have expressed an intent to (1) pledge the Berry Entities' real property as collateral without approval from the sole disinterested Director of Berry GP, Inc., Lawrence Berry; (2) sell other real property belonging to the Berry Entities without similar approval; (3) improperly attempt to ratify unauthorized and self-dealing activities after the fact, over the objections of Lawrence as the sole disinterested Director; (4) improperly remove Lawrence from the Board of Directors and replace him with one or more new Directors; and (5) circumvent and violate the existing temporary restraining order.

2. These actions threaten harm to the Berry Entities' real property interests and to Lawrence's 1/3 ownership interest in the Berry Entities, such that money damages are an inadequate remedy. In particular, improper post-hoc ratification by interested Directors threatens to prevent Lawrence from recovering on his present claims for breach of fiduciary duty.

3. It is necessary to further enjoin the Defendants as ordered herein in order to prevent this harm.

It is therefore ORDERED that Defendants Marty Berry, Robert Rickett, Robert Powers, Michael Hummell, Berry GP, Inc., Berry Operating Company LLC, and Berry Contracting LP, and any other parties acting in concert with Defendants, are immediately:

Copy from re:SearchTX

1. Restrained from selling, mortgaging, or otherwise encumbering any of the Berry Entities' real property without the approval of the sole disinterested member of the Board of Directors, Lawrence Berry.

2. Restrained from taking any action, or causing any action to be taken, either directly or indirectly individually, as Directors, as Shareholders, or as Officers, which in any way interferes with, disrupts, impairs, or otherwise deprives or seeks to deprive Lawrence Berry of his equal 1/3 ownership rights in the Berry Entities, including, but not limited to:

   a. His voting rights as a Shareholder, including his votes for the election of Directors;

   b. His voting rights as a Director, including but not limited to the appointment and election of officers, to remove officers, to amend the bylaws, and such other rights and privileges as set forth in the bylaws;

   c. His position as Officer; and

   d. His individual and derivative claims and causes of action in this lawsuit by improperly attempting to preclude judicial resolution of any of the matters that are the subject of the lawsuit, including but not limited to purporting to ratify their own self-interested transactions or transactions in furtherance of their own self-dealing. For the avoidance of doubt, this includes the transactions at issue in topics 3, 4, 5, 7, 8, and 9 of the December 1, 2023 "Notice of Special Meeting of Directors."

3. Restrained from holding the December 7, 2023 Shareholder meeting and from purporting to hold further Shareholder meetings without the proper 10 days' notice.

Copy from re:SearchTX

4. Restrained from purporting to remove Lawrence as a Director, or from purporting to elect new Directors to ratify their own self-interested transactions.

It is further ORDERED that the Clerk of the Court issue a writ of injunction to Defendants Marty Berry, Robert Rickett, Robert Powers, Michael Hummell, Berry GP, Inc., Berry Operating Company LLC, and Berry Contracting LP in accordance with the terms of this Order.

It is further ORDERED that Plaintiffs Lawrence Berry and Berry GP, Inc. have already filed sufficient bond as security for this modified temporary restraining order such that a writ of injunction may issue upon execution of this order.

It is further ORDERED that Plaintiffs' application for a temporary injunction is reset for hearing on the ___ day of _____, 2023 at ____:_____ ____ in this Court. The purpose of the hearing is to determine whether the Court should issue a temporary injunction against Defendants as requested by Plaintiffs pending a full trial on the merits.

This Order expires on _____, 2023.


EXECUTED on this ____ day of _____, 2023 at _____ o'clock ___.


_____

The Honorable Judge Presiding

Copy from re:SearchTX

# APPENDIX 58

# TEXAS SECRETARY of STATE
## JANE NELSON

**BUSINESS ORGANIZATIONS INQUIRY - VIEW ENTITY**

| | | | |
|---|---|---|---|
| **Filing Number:** | 802812872 | **Entity Type:** | Domestic Limited Liability Company (LLC) |
| **Original Date of Filing:** | September 12, 2017 | **Entity Status:** | In existence |
| **Formation Date:** | N/A | | |
| **Tax ID:** | 32064822730 | **FEIN:** | |
| **Duration:** | Perpetual | | |

| | |
|---|---|
| **Name:** | Axis Midstream Holdings, LLC |
| **Address:** | 1414 CORN PRODUCT RD |
| | Corpus Christi, TX 78409-3020 USA |

REGISTERED AGENT     FILING HISTORY     NAMES     MANAGEMENT     ASSUMED NAMES     ASSOCIATED ENTITIES     INITIAL ADDRESS

| View Image | Document Number | Filing Type | Filing Date | Effective Date | Eff. Cond | Page Count |
|---|---|---|---|---|---|---|
| 🗒 | 761160540002 | Certificate of Formation | September 12, 2017 | September 12, 2017 | No | 3 |
| 🗒 | 776790170002 | Change of Registered Agent/Office | November 27, 2017 | November 27, 2017 | No | 1 |
| 🗒 | 779019010005 | Change of Registered Agent/Office | December 6, 2017 | December 6, 2017 | No | 2 |
| 🗒 | 873777170001 | Public Information Report (PIR) | December 31, 2018 | March 12, 2019 | No | 2 |
| 🗒 | 943324640003 | Change of Registered Agent/Office | February 4, 2020 | February 5, 2020 | No | 2 |
| 🗒 | 1143061640001 | Public Information Report (PIR) | December 31, 2021 | April 25, 2022 | No | 3 |
| 🗒 | 1205890360002 | Certificate of Amendment | December 13, 2022 | December 13, 2022 | No | 3 |
| 🗒 | 1263271830001 | Public Information Report (PIR) | December 31, 2022 | July 3, 2023 | No | 3 |
| 🗒 | 1351140410001 | Public Information Report (PIR) | December 31, 2023 | April 3, 2024 | No | 2 |

[Order]   [Return to Search]

Instructions:
🔴 To place an order for additional information about a filing press the 'Order' button.

# APPENDIX 59

| ALBERT THEODORE POWERS; | § | IN THE BUSINESS COURT |
|---|---|---|
| ALLIED PORTS LLC, | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| | § | |
| v. | § | ELEVENTH DISTRICT |
| | § | |
| AXIS MIDSTREAM HOLDINGS, | § | |
| LLC; ALLEN LAWRENCE BERRY; | § | |
| MARVIN GLENN BERRY; AND | § | |
| BONNIE BERRY, as successor in | § | |
| interest to DENNIS WAYNE BERRY | § | |
| | § | |
| *Defendants.* | § | HARRIS COUNTY, TEXAS |

---

**NOTICE OF HEARING ON PLAINTIFFS'
APPLICATION FOR A TEMPORARY INJUNCTION**

---

Please take notice that an oral hearing to consider Plaintiffs' Application for a Temporary Injunction has been set for Wednesday, January 29, 2024 and continuing if needed to Thursday, January 30, 2025 beginning at 9:30 a.m. each day before Judge Sofia Adrogué. The hearing will take place at the Fourteenth Court of Appeals at the 1910 Courthouse, Houston, Texas.

DATED: January 6, 2025

Respectfully submitted,

*/s/ Alistair B. Dawson*
Alistair B. Dawson
State Bar No. 05596100
M. Jake McClellan
State Bar No. 24109525
Madeline E. Gay
State Bar No. 24138681
E-mail: adawson@beckredden.com
E-mail: jmcclellan@beckredden.com
E-mail: mgay@beckredden.com
1221 McKinney Street, Suite 4500
Houston, Texas 77010-2010
Telephone:     (713) 951-3700
Telecopier:     (713) 951-3720

**ATTORNEYS FOR PLAINTIFFS**

1

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of this document was served on counsel of record in this matter in accordance with Rules 21 and 21a of the Texas Rules of Civil Procedure on this 6th day of January, 2025.

*/s/ M. Jake McClellan*
M. Jake McClellan

# APPENDIX 60

| | | |
|---|---|---|
| LAWRENCE BERRY, individually and as Trustee of the ALLEN LAWRENCE BERRY TRUST, directly and derivatively on behalf of BECON, INC.; LDMA LIMITED PARTNERSHIP; and BERRY GP, INC.; | §<br>§<br>§<br>§<br>§<br>§<br>§ | IN THE DISTRICT COURT OF |
| *Plaintiff,* | §<br>§ | |
| BERRY GP, INC.; LDMA LIMITED PARTNERSHIP; and BECON, INC.; | §<br>§<br>§ | NUECES COUNTY, TEXAS |
| *Nominal Plaintiffs,* | §<br>§<br>§ | |
| v. | §<br>§<br>§ | **JURY TRIAL DEMANDED** |
| MARTY BERRY; MICHAEL HUMMELL; BERRY GP, INC.; BERRY OPERATING COMPANY LLC; and BERRY CONTRACTING LP; | §<br>§<br>§<br>§<br>§ | 94TH JUDICIAL DISTRICT |
| *Defendants.* | §<br>§ | |

**LAWRENCE BERRY'S RESPONSES AND OBJECTIONS TO THE BERRY ENTITIES' FIRST REQUESTS FOR PRODUCTION TO ALLEN LAWERENCE BERRY, INDIVIDUALLY AND AS TRUSTEE OF ALLEN LAWERENCE BERRY 2007 TRUST**

To:     Berry GP, Inc., Berry Operating Company LLC and Berry Contracting LP, by and through the attorney of record, Douglas Allison, LAW OFFICE OF DOUGLAS ALLISON, 403 N. Tancahua Street, Corpus Christi, Texas 78401.

Lawrence Berry ("Lawrence" or "Plaintiff") serves these responses and objections to Berry GP, Inc., Berry Operating Company LLC, and Berry Contracting LP ("the Berry Entities" or "Defendants") First Set of Requests for Production to Allen Lawrence Berry, Individually and as Trustee of Allen Lawrence Berry 2007 Trust.  Plaintiff reserves the right to supplement these responses as discovery continues in accordance with the Texas Rules of Civil Procedure.

Dated: June 7, 2024

Respectfully submitted,

By: */s/Barrett Reasoner*

Barrett Reasoner
State Bar No. 16641980
breasoner@gibbsbruns.com
Michael Absmeier
State Bar No. 24050195
mabsmeier@gibbsbruns.com
L. Bruce Baldree
State Bar No. 24116064
bbaldree@gibbsbruns.com
**GIBBS & BRUNS LLP**
1100 Louisiana, Suite 5300
Houston, Texas 77002
Tel: 713.650.8805
Fax: 713.750.0903

and

Butch Boyd
State Bar No. 00783694
butchboyd@butchboydlawfirm.com
**BUTCH BOYD LAW FIRM**
2905 Sackett Street
Houston, Texas 77098
Tel: 713.589.8477

**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I hereby certify that on June 7, 2024, a true and correct copy of this document was served on all counsel of record pursuant to the Texas Rules of Civil Procedure.

/s/ *Bruce Baldree*
L. Bruce Baldree

Plaintiff asserts the following General Objections to the Definitions and Instructions from Defendants' First Requests for Production.  These objections apply to each Request regardless of whether such objections are stated separately in response to an individual Request, and they form a part of the response to each and every Request as if set forth therein. They are set forth here to avoid duplication and repetition.

1. Plaintiff objects to the inclusion of Plaintiff's attorneys in Definitions 11, 29, 30, 31, 32, 33, 34, and Instruction 9 to the extent that such Definition or Instruction could be read to seek information protected from discovery by the attorney-client, attorney work-product, or other legally-recognized privilege.  Plaintiff will withhold any such information and respond in accordance with the Texas Rules of Civil Procedure.

2. Plaintiff objects to the Definition of "Berry-Related Companies" as overly broad, unduly burdensome, harassing, and not reasonably calculated to lead to the discovery of admissible evidence.  Defendants' definition of "Berry-Related Companies" includes over 40 entities, many of which have no affiliation or common ownership with the Berry Entities, Marty Berry, or Dennis Berry; no connection to the claims at issue in this litigation; or are not owned or controlled by Plaintiff.  Where used in a discovery request, Plaintiff will limit the term "Berry-Related Companies" or "BRCs" to such of the listed entities that are or were directly or indirectly owned, in whole or in part, by the Berry Entities, Marty Berry, or Dennis Berry.

3. Plaintiff objects to the Definition of "Ridgefield Entities" and "Ridgefield Property Interests" as overly broad, unduly burdensome, harassing, and not reasonably calculated to lead to the discovery of admissible evidence.  Defendants' definition of "Ridgefield Entities" and "Ridgefield Property Interests" includes nine entities, including entities that have no affiliation or common ownership with the Berry Entities, Marty Berry, or Dennis Berry; no connection to the claims at issue in this litigation; or are not owned or controlled by Plaintiff.

4. Plaintiff objects to Defendants' Requests as overly broad, unduly burdensome, harassing, and not reasonably calculated to lead to the discovery of admissible evidence to the extent that they do not state a relevant time frame for the documents sought.  To the extent an individual request does not seek a specific, identifiable document or state a time frame for a category of requested documents, Plaintiff will limit its search for responsive documents to the time frame from January 1, 2020 to present.

5. Pursuant to Texas Rule of Civil Procedure 196.4, Plaintiff specifically objects to these Requests to the extent they would require Plaintiff to search for or retrieve documents from backup tapes, archival media, or any other source of information that is not readily accessible. Any response by Plaintiff stating that he will produce documents is without waiver of the foregoing objection and means only that Plaintiff will conduct a diligent search for responsive electronic documents to the extent they exist in a readily-accessible

3

format. Plaintiff reserves the right to seek an order requiring Defendants to pay the reasonable expenses of any extraordinary steps required to retrieve or produce information pursuant to these Requests.

6. Plaintiff objects to Defendants' Definitions and Instructions to the extent they seek to impose requirements in excess of or different than those provided by the Texas Rules of Civil Procedure. Plaintiff will respond and produce documents in accordance with the Texas Rules of Civil Procedure.

7. Plaintiff objects to these Requests to the extent that they seek documents or information protected from discovery by the attorney-client, attorney work-product, or other legally recognized privilege, and Plaintiff will withhold any such information.

8. Nothing contained in any answer herein will be deemed an admission, concession, or waiver by Plaintiff as to the relevance, materiality or admissibility of any information produced in response to this Request. Plaintiff reserves the right to amend, supplement, or correct these Responses and Objections.

## RESPONSES AND OBJECTIONS TO
## THE BERRY ENTITIES' FIRST REQUESTS FOR PRODUCTION

**REQUEST NO. 1:** Produce articles of incorporation for each of the Berry-Related Companies, including all supplements and amendments thereto.

**RESPONSE:**

Plaintiff objects to this request as overly broad, unduly burdensome, harassing, and not reasonably calculated to lead to the discovery of admissible evidence because it seeks documents related to "each of the Berry-Related Companies," regardless of their relevance to the claims or defenses at issue in this suit. Plaintiff incorporates by reference his General Objection to the definition of "Berry-Related Companies" and will read this request consistent with that objection.

Subject to the foregoing objection, Plaintiff will produce responsive documents to the extent that they exist and are in Plaintiff's custody or control.

**REQUEST NO. 2:** Produce all organizational charts (current and past) for each of the Berry-Related Companies, including all supplements and amendments thereto.

**RESPONSE:**

Plaintiff objects to this request as overly broad, unduly burdensome, harassing, and not reasonably calculated to lead to the discovery of admissible evidence because it seeks documents related to "each of the Berry-Related Companies," regardless of their relevance to the claims or defenses at issue in this suit. Plaintiff incorporates by reference his General Objection to the definition of "Berry-Related Companies" and will read this request consistent with that objection. Plaintiff further objects to this request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence because it fails to state a time frame for the documents requested. Plaintiff incorporates by reference his General Objection #4 and will search for responsive documents from January 1, 2020 to present.

Subject to the foregoing objection, Plaintiff will produce responsive documents to the extent that they exist and are in Plaintiff's custody or control.

**REQUEST NO. 3:** Produce all by-laws for each of the Berry-Related Companies, including all supplements and amendments thereto.

**RESPONSE:**

Plaintiff objects to this request as overly broad, unduly burdensome, harassing, and not reasonably calculated to lead to the discovery of admissible evidence because it seeks documents related to "each of the Berry-Related Companies," regardless of their relevance to the claims or defenses at

5

issue in this suit. Plaintiff incorporates by reference his General Objection to the definition of "Berry-Related Companies" and will read this request consistent with that objection.

Subject to the foregoing objection, Plaintiff will produce responsive documents to the extent that they exist and are in Plaintiff's custody or control.

**REQUEST NO. 4:** Produce all operating agreements (sometimes referred to as company agreements) for each of the Berry-Related Companies, including all supplements and amendments thereto.

**RESPONSE:**

Plaintiff objects to this request as overly broad, unduly burdensome, harassing, and not reasonably calculated to lead to the discovery of admissible evidence because it seeks documents related to "each of the Berry-Related Companies," regardless of their relevance to the claims or defenses at issue in this suit. Plaintiff incorporates by reference his General Objection to the definition of "Berry-Related Companies" and will read this request consistent with that objection.

Subject to the foregoing objection, Plaintiff will produce responsive documents to the extent that they exist and are in Plaintiff's custody or control.

**REQUEST NO. 5:** Produce all partnership agreements for each of the Berry-Related Companies, including all supplements and amendments thereto.

**RESPONSE:**

Plaintiff objects to this request as overly broad, unduly burdensome, harassing, and not reasonably calculated to lead to the discovery of admissible evidence because it seeks documents related to "each of the Berry-Related Companies," regardless of their relevance to the claims or defenses at issue in this suit. Plaintiff incorporates by reference his General Objection to the definition of "Berry-Related Companies" and will read this request consistent with that objection.

Subject to the foregoing objection, Plaintiff will produce responsive documents to the extent that they exist and are in Plaintiff's custody or control.

**REQUEST NO. 6:** Produce all business organization governing documents (including but not limited to by-laws, company agreements, operating agreements, and partnership agreements) relating to each of the Berry-Related Companies.

**RESPONSE:**

Plaintiff objects to this request as overly broad, unduly burdensome, harassing, and not reasonably calculated to lead to the discovery of admissible evidence because it seeks documents related to

"each of the Berry-Related Companies," regardless of their relevance to the claims or defenses at issue in this suit. Plaintiff incorporates by reference his General Objection to the definition of "Berry-Related Companies" and will read this request consistent with that objection.

Subject to the foregoing objection, Plaintiff will produce responsive documents to the extent that they exist and are in Plaintiff's custody or control.

**REQUEST NO. 7:** Produce all trust agreements for each of the Berry-Related Companies, including all supplements and amendments thereto.

**RESPONSE:**

Plaintiff objects to this request as overly broad, unduly burdensome, harassing, and not reasonably calculated to lead to the discovery of admissible evidence because it seeks documents related to "each of the Berry-Related Companies," regardless of their relevance to the claims or defenses at issue in this suit. Plaintiff incorporates by reference his General Objection to the definition of "Berry-Related Companies" and will read this request consistent with that objection.

Subject to the foregoing objection, none.

**REQUEST NO. 8:** Produce all of the following items for Orca:
a) Articles of Organization;
b) Certificate of Organization;
c) Operating Agreement;
d) Orca Assets GP LLC Organizational Meeting;
e) Articles of Organization;
f) Membership Interest Certificate;
g) Membership Interest Certificate stubs;
h) Membership Interest transfer ledger; and
i) Meeting Minutes for each and every meeting of Orca.

**RESPONSE:**

Plaintiff objects to this request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence because it fails to state a time frame for the documents requested and seeks documents that are irrelevant to the claims and defenses at issue in this case.

**REQUEST NO. 9:** Produce all of the following items for Orca / ICI:
a) Articles of Organization;
b) Certificate of Organization;
c) Operating Agreement;
d) Orca / ICI Organizational Meeting;

7

e) Articles of Organization;
f) Membership Interest Certificate;
g) Membership Interest Certificate stubs;
h) Membership Interest transfer ledger; and
i) Meeting Minutes for each and every meeting of Orca / ICI.

**RESPONSE:**

Plaintiff objects to this request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence because it fails to state a time frame for the documents requested and seeks documents that are irrelevant to the claims and defenses at issue in this case.

Subject to the foregoing objection, Plaintiff will produce responsive documents to the extent that they exist and are in Plaintiff's custody or control.

**REQUEST NO. 10:**  Produce all of the following items for Gansevoort:
a) Articles of Organization;
b) Certificate of Organization;
c) Operating Agreement;
d) Orca Assets GP LLC Organizational Meeting;
e) Articles of Organization;
f) Membership Interest Certificate;
g) Membership Interest Certificate stubs;
h) Membership Interest transfer ledger; and
i) Meeting Minutes for each and every meeting of Orca.

**RESPONSE:**

Plaintiff objects to this request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence because seeks documents that are irrelevant to the claims and defenses at issue in this case.

**REQUEST NO. 11:**  Produce all of the following items for Axis:
a) Articles of Organization;
b) Certificate of Organization;
c) Operating Agreement;
d) Axis Organizational Meeting;
e) Articles of Organization;
f) Membership Interest Certificate;
g) Membership Interest Certificate stubs;
h) Membership Interest transfer ledger; and
i) Meeting Minutes for each and every meeting of Axis.

**RESPONSE:**

Plaintiff objects to this request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence because it fails to state a time frame for the documents requested and seeks documents that are irrelevant to the claims and defenses at issue in this case.

Subject to the foregoing objection, Plaintiff will produce responsive documents to the extent that they exist and are in Plaintiff's custody or control.

**REQUEST NO. 12:**  Produce all of the following items for the Ridgefield Entities:
a) Articles of Organization;
b) Certificate of Organization;
c) Operating Agreement;
d) Ridgefield Entities' Organizational Meeting;
e) Articles of Organization;
f) Membership Interest Certificate;
g) Membership Interest Certificate stubs;
h) Membership Interest transfer ledger; and
i) Meeting Minutes for each and every meeting of the Ridgefield Entities.

**RESPONSE:**

Plaintiff objects to this request as overly broad, unduly burdensome, harassing, and not reasonably calculated to lead to the discovery of admissible evidence because it seeks documents related to each of the "Ridgefield Entities," regardless of their relevance to the claims or defenses at issue in this suit.  Plaintiff incorporates by reference his General Objection to the definition of "Ridgefield Entities."  Plaintiff objects to this request as overly broad, unduly burdensome, harassing, and not reasonably calculated to lead to the discovery of admissible evidence because it seeks documents that are irrelevant to the claims and defenses at issue in this case.

**REQUEST NO. 13:**  Produce all of the following items for West 17th:
a) Articles of Organization;
b) Certificate of Organization;
c) Operating Agreement;
d) West 17th's Organizational Meeting;
e) Articles of Organization;
f) Membership Interest Certificate;
g) Membership Interest Certificate stubs;
h) Membership Interest transfer ledger; and
i) Meeting Minutes for each and every meeting of West 17th.

**RESPONSE:**

Plaintiff objects to this request as overly broad, unduly burdensome, harassing, and not reasonably calculated to lead to the discovery of admissible evidence because it seeks documents that are irrelevant to the claims and defenses at issue in this case.

**REQUEST NO. 14:**   Produce all of the following items for Lone Star Ports:
a) Articles of Organization;
b) Certificate of Organization;
c) Operating Agreement;
d) Lone Star Ports' Organizational Meeting;
e) Articles of Organization;
f) Membership Interest Certificate;
g) Membership Interest Certificate stubs;
h) Membership Interest transfer ledger; and
i) Meeting Minutes for each and every meeting of Lone Star Ports.

**RESPONSE:**

Plaintiff objects to this request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence because it fails to state a time frame for the documents requested and seeks documents that are irrelevant to the claims and defenses at issue in this case.

Subject to the foregoing objection, Plaintiff will produce responsive documents to the extent that they exist and are in Plaintiff's custody or control.

**REQUEST NO. 15:**   Produce all of the following items for Riverway:
a) Articles of Organization;
b) Certificate of Organization;
c) Operating Agreement;
d) Riverway's Organizational Meeting;
e) Articles of Organization;
f) Membership Interest Certificate;
g) Membership Interest Certificate stubs;
h) Membership Interest transfer ledger; and
i) Meeting Minutes for each and every meeting of Riverway.

**RESPONSE:**

Plaintiff objects to this request as overly broad, unduly burdensome, harassing, and not reasonably calculated to lead to the discovery of admissible evidence because it seeks documents that are irrelevant to the claims and defenses at issue in this case.

**REQUEST NO. 16:**   Produce all of the following items for Escopeta/Furie:

10

a) Articles of Organization;
b) Certificate of Organization;
c) Operating Agreement;
d) Furie's Organizational Meeting;
e) Articles of Organization;
f) Membership Interest Certificate;
g) Membership Interest Certificate stubs;
h) Membership Interest transfer ledger; and
i) Meeting Minutes for each and every meeting of Furie.

**RESPONSE:**

Plaintiff objects to this request as overly broad, unduly burdensome, harassing, and not reasonably calculated to lead to the discovery of admissible evidence because it seeks documents that are irrelevant to the claims and defenses at issue in this case.

**REQUEST NO. 17:**   Produce all of the following items for ALB Holdings:
a) Articles of Organization;
b) Certificate of Organization;
c) Operating Agreement;
d) ALB Holdings' Organizational Meeting;
e) Articles of Organization;
f) Membership Interest Certificate;
g) Membership Interest Certificate stubs;
h) Membership Interest transfer ledger; and
i) Meeting Minutes for each and every meeting of ALB Holdings.

**RESPONSE:**

Plaintiff objects to this request as overly broad, unduly burdensome, harassing, and not reasonably calculated to lead to the discovery of admissible evidence because it seeks documents that are irrelevant to the claims and defenses at issue in this case.

**REQUEST NO. 18:**   Produce all of the following items for Y & V:
a) Articles of Organization;
b) Certificate of Organization;
c) Operating Agreement;
d) Y & V's Organizational Meeting;
e) Articles of Organization;
f) Membership Interest Certificate;
g) Membership Interest Certificate stubs;
h) Membership Interest transfer ledger; and
i) Meeting Minutes for each and every meeting of Y & V.

**RESPONSE:**

Plaintiff objects to this request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence because it fails to state a time frame for the documents requested and seeks documents that are irrelevant to the claims and defenses at issue in this case.

Subject to the foregoing objection, Plaintiff will produce responsive documents to the extent that they exist and are in Plaintiff's custody or control.

**REQUEST NO. 19:** Produce all of the following items for BBI:
a) Articles of Organization;
b) Certificate of Organization;
c) Operating Agreement;
d) BBI's Organizational Meeting;
e) Articles of Organization;
f) Membership Interest Certificate;
g) Membership Interest Certificate stubs;
h) Membership Interest transfer ledger; and
i) Meeting Minutes for each and every meeting of BBI.

**RESPONSE:**

Plaintiff objects to this request as overly broad, unduly burdensome, harassing, and not reasonably calculated to lead to the discovery of admissible evidence because it seeks documents that are irrelevant to the claims and defenses at issue in this case.

**ALB Trust**

**REQUEST NO. 20:** Produce all trust agreements for the Allen Lawrence Berry 2007 Trust, including all supplements and amendments thereto.

**RESPONSE:**

Plaintiff objects to this request as overly broad, unduly burdensome, harassing, and not reasonably calculated to lead to the discovery of admissible evidence because it seeks documents that are irrelevant to the claims and defenses at issue in this case.

**REQUEST NO. 21:** Produce all Allen Lawrence Berry 2007 Trust books and records.

**RESPONSE:**

12

Plaintiff objects to this request as overly broad, unduly burdensome, harassing, and not reasonably calculated to lead to the discovery of admissible evidence because it seeks documents that are irrelevant to the claims and defenses at issue in this case.

**REQUEST NO. 22:** Produce all documents conveying/transferring anything of value to the Allen Lawrence Berry 2007 Trust. Please limit your response to such conveyances/transfers of things with a value greater than $50,000.00.

**RESPONSE:**

Plaintiff objects to this request as overly broad, unduly burdensome, harassing, and not reasonably calculated to lead to the discovery of admissible evidence because it seeks documents that are irrelevant to the claims and defenses at issue in this case.

**REQUEST NO. 23:** Produce all documents conveying/transferring any mineral interests to/from the Allen Lawrence Berry 2007 Trust.

**RESPONSE:**

Plaintiff objects to this request as overly broad, unduly burdensome, harassing, and not reasonably calculated to lead to the discovery of admissible evidence because it seeks documents that are irrelevant to the claims and defenses at issue in this case.

**REQUEST NO. 24:** Produce all documents conveying/transferring any real property interests to/from the Allen Lawrence Berry 29007 Trust.

**RESPONSE:**

Plaintiff objects to this request as overly broad, unduly burdensome, harassing, and not reasonably calculated to lead to the discovery of admissible evidence because it seeks documents that are irrelevant to the claims and defenses at issue in this case.

**REQUEST NO. 25:** Produce all documents evidencing any distribution(s) to Allen Lawrence Berry from the Allen Lawrence Berry 2007 Trust.

**RESPONSE:**

Plaintiff objects to this request as overly broad, unduly burdensome, harassing, and not reasonably calculated to lead to the discovery of admissible evidence because it seeks documents that are irrelevant to the claims and defenses at issue in this case.

**REQUEST NO. 26:** Produce copies of all Negotiable Instruments for payment of funds to Allen Lawrence Berry for any services rendered to the Allen Lawrence Berry 2007 Trust.

**RESPONSE:**

Plaintiff objects to this request as overly broad, unduly burdensome, harassing, and not reasonably calculated to lead to the discovery of admissible evidence because it seeks documents that are irrelevant to the claims and defenses at issue in this case.

**REQUEST NO. 27:** Produce all documents transferring funds (checks, wire transfer documents, negotiable instruments, and other such documents) to/from Allen Lawrence Berry 2007 Trust:
a) from/to Orca;
b) from/to Orca ICI;
c) from/to any one or more of the Ridgefield Entities;
d) from/to any one or more of the Orca Entities;
e) from/to Escopeta;
f) from/to Furie; and
g) from/to any of the Berry-Related Companies.
Please limit your response to the time period January 1, 2011 to present.

**RESPONSE:**

Plaintiff objects to this request as overly broad, unduly burdensome, harassing, and not reasonably calculated to lead to the discovery of admissible evidence because it seeks documents related to each of the "Ridgefield Entities," regardless of their relevance to the claims or defenses at issue in this suit. Plaintiff incorporates by reference his General Objection to the definition of "Ridgefield Entities." Plaintiff objects to the definition of "Orca Entities" as overly broad, unduly burdensome, harassing, and not reasonably calculated to lead to the discovery of admissible evidence. Defendants' definition of "Orca Entities" includes entities which have no affiliation or common ownership with the Berry Entities, Marty Berry, or Dennis Berry and have no connection to the claims at issue in this litigation. Plaintiff objects to this request as overly broad, unduly burdensome, harassing, and not reasonably calculated to lead to the discovery of admissible evidence because it seeks documents that are irrelevant to the claims and defenses at issue in this case.

**REQUEST NO. 28:** Produce all records of meetings of the principals, members, directors, or shareholders for each of the Berry-Related Companies. Please limit your response to the time period January 1, 2019 to present – except for with any one or more of the Berry-Related Companies that did not exist or have such meetings during the identified period of time then produce all records for the most recent two (2) years of meetings of principals, members, directors, or shareholders for each of the Berry-Related Companies.

**RESPONSE:**

Plaintiff objects to this request as overly broad, unduly burdensome, harassing, and not reasonably calculated to lead to the discovery of admissible evidence because it seeks documents related to "each of the Berry-Related Companies," regardless of their relevance to the claims or defenses at issue in this suit. Plaintiff incorporates by reference his General Objection to the definition of "Berry-Related Companies" and will read this request consistent with that objection.

Subject to the foregoing objection, Plaintiff will produce responsive documents to the extent that they exist and are in Plaintiff's custody or control.

**Emails re: Formation**

**REQUEST NO. 29:** Produce all communications relating to the formation of each of the Berry-Related Companies. For each of the Berry-Related Companies, please limit your response to the time period beginning six (6) months before date of formation and ending six (6) months after the date of formation.

**RESPONSE:**

Plaintiff objects to this request as overly broad, unduly burdensome, harassing, and not reasonably calculated to lead to the discovery of admissible evidence because it seeks documents related to "each of the Berry-Related Companies," regardless of their relevance to the claims or defenses at issue in this suit. Plaintiff incorporates by reference his General Objection to the definition of "Berry-Related Companies" and will read this request consistent with that objection.

Subject to the foregoing objection, Plaintiff will produce responsive documents to the extent that they exist and are in Plaintiff's custody or control.

**Finances**

**REQUEST NO. 30:** Produce all documents relating to the finances for each of the Berry-Related Companies, including but not limited to monthly profit and loss statements, balance sheets, bank statements, and those ledgers and other documents showing capital contributions for each of the Berry-Related Companies. Please limit your responses to the time period beginning one (1) month prior to date of formation of each legal entity and ending twelve (12) months after the date of formation of such legal entity.

**RESPONSE:**

Plaintiff objects to this request as overly broad, unduly burdensome, harassing, and not reasonably calculated to lead to the discovery of admissible evidence because it seeks documents related to "each of the Berry-Related Companies," regardless of their relevance to the claims or defenses at issue in this suit. Plaintiff incorporates by reference his General Objection to the definition of "Berry-Related Companies" and will read this request consistent with that objection. Plaintiff further objects to the extent this request seeks "all documents relating to the finances," as that

15

request is vague, overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Plaintiff will read this request as seeking accounting records, to the extent they exist and are in Plaintiff's custody or control.

Subject to the foregoing objection, Plaintiff will produce responsive documents to the extent that they exist and are in Plaintiff's custody or control.

**REQUEST NO. 31:** For all Berry-Related Companies still in existence, produce all documents relating to the finances for each of the Berry-Related Companies, including but not limited to monthly profit and loss statements, annual balance sheets, all monthly bank statements, and those ledgers and other documents showing capital contributions. Please limit your responses to the time period beginning January 1, 2019 to present.

**RESPONSE:**

Plaintiff objects to this request as overly broad, unduly burdensome, harassing, and not reasonably calculated to lead to the discovery of admissible evidence because it seeks documents related to "all Berry-Related Companies," regardless of their relevance to the claims or defenses at issue in this suit. Plaintiff incorporates by reference his General Objection to the definition of "Berry-Related Companies" and will read this request consistent with that objection. Plaintiff further objects to the extent this request seeks "all documents relating to the finances," as that request is vague, overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Plaintiff will read this request as seeking accounting records, to the extent they exist and are in Plaintiff's custody or control.

Subject to the foregoing objection, Plaintiff will produce responsive documents to the extent that they exist and are in Plaintiff's custody or control.

**REQUEST NO. 32:** For all Berry-Related Companies no longer in existence, produce all documents relating to finances for each of the Berry-Related Companies, including but not limited to monthly profit and loss statements, annual balance sheets, all monthly bank statements, and those ledgers and other documents showing capital contributions. Please limit your responses to the time period beginning four (4) years prior to the date each of the Berry-Related Entities ceased to exist and ending six (6) months after the date such entity ceased to exist.

**RESPONSE:**

Plaintiff objects to this request as overly broad, unduly burdensome, harassing, and not reasonably calculated to lead to the discovery of admissible evidence because it seeks documents related to "all Berry-Related Companies," regardless of their relevance to the claims or defenses at issue in this suit. Plaintiff incorporates by reference his General Objection to the definition of "Berry-Related Companies" and will read this request consistent with that objection. Plaintiff further objects to the extent this request seeks "all documents relating to the finances," as that request is vague, overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery

16

of admissible evidence.  Plaintiff will read this request as seeking accounting records, to the extent they exist and are in Plaintiff's custody or control.

Subject to the foregoing objection, Plaintiff will produce responsive documents to the extent that they exist and are in Plaintiff's custody or control.

**REQUEST NO. 33:**  For all Berry-Related Companies that may be considered dormant or inactive, produce all documents relating to the finances for such Berry-Related Companies, including but not limited to monthly profit and loss statements, annual balance sheets, all monthly bank statements, and those ledgers and other documents showing capital contributions. Please limit your response to the time period beginning four (4) years before prior to the date such legal entity became dormant or inactive and ending six (6) months after the legal entity became dormant or inactive.

**RESPONSE:**

Plaintiff objects to this request as overly broad, unduly burdensome, harassing, and not reasonably calculated to lead to the discovery of admissible evidence because it seeks documents related to "all Berry-Related Companies," regardless of their relevance to the claims or defenses at issue in this suit.  Plaintiff incorporates by reference his General Objection to the definition of "Berry-Related Companies" and will read this request consistent with that objection.  Plaintiff further objects to the extent this request seeks "all documents relating to the finances," as that request is vague, overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.  Plaintiff will read this request as seeking accounting records, to the extent they exist and are in Plaintiff's custody or control.

Subject to the foregoing objection, Plaintiff will produce responsive documents to the extent that they exist and are in Plaintiff's custody or control.

**REQUEST NO. 34:**  Produce all documents relating to transfer of funds (checks, wire transfer documents, negotiable instruments, and other such documents) of more than $250,000.00 to/from any Berry-Related Company. Please limit your response to the time period beginning January 1, 2011 to present.

**RESPONSE:**

Plaintiff objects to this request as overly broad, unduly burdensome, harassing, and not reasonably calculated to lead to the discovery of admissible evidence because it seeks documents related to "any Berry-Related Companies," regardless of their relevance to the claims or defenses at issue in this suit.  Plaintiff incorporates by reference his General Objection to the definition of "Berry-Related Companies" and will read this request consistent with that objection.  Plaintiff further objects to the extent this request seeks "all documents relating to transfer of funds," as that request is vague, overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery

of admissible evidence. Plaintiff will read this request as seeking accounting records, to the extent they exist and are in Plaintiff's custody or control.

Subject to the foregoing objection, Plaintiff will produce responsive documents to the extent that they exist and are in Plaintiff's custody or control.

**REQUEST NO. 35:** For each bank and/or financial account opened in the name of any one or more of the Berry-Related Companies, produce the bank's/financial institution's first statement of account; and produce the bank's/financial institution's last statement of account. To be clear, the purpose of this request is to allow – to the extent possible – tracing of monies moved from one bank/financial institution account to another. Please limit your response to the time period beginning January 1, 2014, to present.

**RESPONSE:**

Plaintiff objects to this request as overly broad, unduly burdensome, harassing, and not reasonably calculated to lead to the discovery of admissible evidence because it seeks documents related to "any one or more of the Berry-Related Companies," regardless of their relevance to the claims or defenses at issue in this suit. Plaintiff incorporates by reference his General Objection to the definition of "Berry-Related Companies" and will read this request consistent with that objection. Plaintiff further objects to the extent this request seeks "statement[s] of account," as that request is vague, overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Plaintiff will read this request as seeking accounting records, to the extent they exist and are in Plaintiff's custody or control.

Subject to the foregoing objection, Plaintiff will produce responsive documents to the extent that they exist and are in Plaintiff's custody or control.

**REQUEST NO. 36:** Produce the following items for Orca:
a) Current Balance Sheet;
b) More recent consolidated financial statement inclusive of Orca's assets;
c) Most recent annual Profit and Loss statement; and
d) Most recent financial statement signed by any person with authority.

**RESPONSE:**

Plaintiff objects to this request as overly broad, unduly burdensome, harassing, and not reasonably calculated to lead to the discovery of admissible evidence because it seeks documents that are irrelevant to the claims and defenses at issue in this case.

**REQUEST NO. 37:** Produce the following items for Orca / ICI:
a) Current Balance Sheet;
b) More recent consolidated financial statement inclusive of Orca / ICI's assets;

c) Most recent annual Profit and Loss statement; and
d) Most recent financial statement signed by any person with authority.

**RESPONSE:**

Plaintiff will produce responsive documents to the extent that they exist and are in Plaintiff's custody or control.

**REQUEST NO. 38:**  Produce the following items for Gansevoort:
a) Current Balance Sheet;
b) More recent consolidated financial statement inclusive of Gansevoort's assets;
c) Most recent annual Profit and Loss statement; and
d) Most recent financial statement signed by any person with authority.

**RESPONSE:**

Plaintiff objects to this request as overly broad, unduly burdensome, harassing, and not reasonably calculated to lead to the discovery of admissible evidence because it seeks documents that are irrelevant to the claims and defenses at issue in this case.

**REQUEST NO. 39:**  Produce the following items for Axis:
a) Current Balance Sheet;
b) More recent consolidated financial statement inclusive of Axis' assets;
c) Most recent annual Profit and Loss statement; and
d) Most recent financial statement signed by any person with authority.

**RESPONSE:**

Plaintiff will produce responsive documents to the extent that they exist and are in Plaintiff's custody or control.

**REQUEST NO. 40:**  Produce the following items for each of the Ridgefield Entities:
a) Current Balance Sheet;
b) More recent consolidated financial statement inclusive of Ridgefield Entities' (one or more of them) assets;
c) Most recent annual Profit and Loss statement; and
d) Most recent financial statement signed by any person with authority.

**RESPONSE:**

Plaintiff objects to this request as overly broad, unduly burdensome, harassing, and not reasonably calculated to lead to the discovery of admissible evidence because it seeks documents related to each of the "Ridgefield Entities," regardless of their relevance to the claims or defenses at issue in

this suit.  Plaintiff incorporates by reference his General Objection to the definition of "Ridgefield Entities."  Plaintiff objects to this request as overly broad, unduly burdensome, harassing, and not reasonably calculated to lead to the discovery of admissible evidence because it seeks documents that are irrelevant to the claims and defenses at issue in this case.

**REQUEST NO. 41:**  Produce the following items for West 17th:
a) Current Balance Sheet;
b) More recent consolidated financial statement inclusive of West 17th's assets;
c) Most recent annual Profit and Loss statement; and
d) Most recent financial statement signed by any person with authority.

**RESPONSE:**

Plaintiff objects to this request as overly broad, unduly burdensome, harassing, and not reasonably calculated to lead to the discovery of admissible evidence because it seeks documents that are irrelevant to the claims and defenses at issue in this case.

**REQUEST NO. 42:**  Produce the following items for each of the Lone Star [sic]:
a) Current Balance Sheet;
b) More recent consolidated financial statement inclusive of Lone Star's assets;
c) Most recent annual Profit and Loss statement; and
d) Most recent financial statement signed by any person with authority.

**RESPONSE:**

Plaintiff will produce responsive documents to the extent that they exist and are in Plaintiff's custody or control.

**REQUEST NO. 43:**  Produce the following items for each of the Riverway [sic]:
a) Current Balance Sheet;
b) More recent consolidated financial statement inclusive of Riverway's assets;
c) Most recent annual Profit and Loss statement; and
d) Most recent financial statement signed by any person with authority.

**RESPONSE:**

Plaintiff objects to this request as overly broad, unduly burdensome, harassing, and not reasonably calculated to lead to the discovery of admissible evidence because it seeks documents that are irrelevant to the claims and defenses at issue in this case.

**REQUEST NO. 44:**  Produce the following items for each of the Escopeta/Furie [sic]:
a) Current Balance Sheet;

20

b) More recent consolidated financial statement inclusive of Escopeta/Furie's assets;
c) Most recent annual Profit and Loss statement; and
d) Most recent financial statement signed by any person with authority.

**RESPONSE:**

Plaintiff objects to this request as overly broad, unduly burdensome, harassing, and not reasonably calculated to lead to the discovery of admissible evidence because it seeks documents that are irrelevant to the claims and defenses at issue in this case.

**REQUEST NO. 45:**  Produce the following items for ALB Holdings:
a) Current Balance Sheet;
b) More recent consolidated financial statement inclusive of ALB Holding's assets;
c) Most recent annual Profit and Loss statement; and
d) Most recent financial statement signed by any person with authority.

**RESPONSE:**

Plaintiff objects to this request as overly broad, unduly burdensome, harassing, and not reasonably calculated to lead to the discovery of admissible evidence because it seeks documents that are irrelevant to the claims and defenses at issue in this case.

**REQUEST NO. 46:**  Produce the following items for Y & V:
a) Current Balance Sheet;
b) More recent consolidated financial statement inclusive of Y & V's assets;
c) Most recent annual Profit and Loss statement; and
d) Most recent financial statement signed by any person with authority.

**RESPONSE:**

Plaintiff will produce responsive documents to the extent that they exist and are in Plaintiff's custody or control.

**REQUEST NO. 47:**  Produce the following items for BBI:
a) Current Balance Sheet;
b) More recent consolidated financial statement inclusive of BBI's assets;
c) Most recent annual Profit and Loss statement; and
d) Most recent financial statement signed by any person with authority.

**RESPONSE:**

Plaintiff objects to this request as overly broad, unduly burdensome, harassing, and not reasonably calculated to lead to the discovery of admissible evidence because it seeks documents that are irrelevant to the claims and defenses at issue in this case.

**REQUEST NO. 48:** Produce all bank statements, cancelled checks, and wire transfer documents for Orca. Please limit your response to the time period January 1, 2010 to present.

**RESPONSE:**

Plaintiff objects to this request as overly broad, unduly burdensome, harassing, and not reasonably calculated to lead to the discovery of admissible evidence because it seeks documents that are irrelevant to the claims and defenses at issue in this case. Plaintiff further objects to the extent this request seeks "all bank statements, cancelled checks, and wire transfer documents," as that request is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 49:** Produce all bank statements, cancelled checks, and wire transfer documents for Orca ICI. Please limit your response to the time period January 1, 2010 to present.

**RESPONSE:**

Plaintiff objects to this request as overly broad, unduly burdensome, harassing, and not reasonably calculated to lead to the discovery of admissible evidence because it seeks documents that are irrelevant to the claims and defenses at issue in this case. Plaintiff further objects to the extent this request seeks "all bank statements, cancelled checks, and wire transfer documents," as that request is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Plaintiff will read this request as seeking accounting records, to the extent they exist and are in Plaintiff's custody or control.

Plaintiff will produce responsive documents to the extent that they exist and are in Plaintiff's custody or control.

**REQUEST NO. 50:** Produce all bank statements, cancelled checks, and wire transfer documents for Gansevoort. Please limit your response to the time period January 1, 2019 to present.

**RESPONSE:**

Plaintiff objects to this request as overly broad, unduly burdensome, harassing, and not reasonably calculated to lead to the discovery of admissible evidence because it seeks documents that are irrelevant to the claims and defenses at issue in this case. Plaintiff further objects to the extent this request seeks "all bank statements, cancelled checks, and wire transfer documents," as that request is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 51:**   Produce all bank statements, cancelled checks, and wire transfer documents for Axis. Please limit your response to the time period January 1, 2019 to present.

**RESPONSE:**

Plaintiff objects to this request as overly broad, unduly burdensome, harassing, and not reasonably calculated to lead to the discovery of admissible evidence because it seeks documents that are irrelevant to the claims and defenses at issue in this case.  Plaintiff further objects to the extent this request seeks "all bank statements, cancelled checks, and wire transfer documents," as that request is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.  Plaintiff will read this request as seeking accounting records, to the extent they exist and are in Plaintiff's custody or control.

Plaintiff will produce responsive documents to the extent that they exist and are in Plaintiff's custody or control.

**REQUEST NO. 52:**   Produce all bank statements, cancelled checks, and wire transfer documents for each of the Ridgefield Entities. Please limit your response to the time period January 1, 2019 to present.

**RESPONSE:**

Plaintiff objects to this request as overly broad, unduly burdensome, harassing, and not reasonably calculated to lead to the discovery of admissible evidence because it seeks documents that are irrelevant to the claims and defenses at issue in this case.  Plaintiff further objects to the extent this request seeks "all bank statements, cancelled checks, and wire transfer documents," as that request is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.  Further, Plaintiff objects to this request as overly broad, unduly burdensome, harassing, and not reasonably calculated to lead to the discovery of admissible evidence because it seeks documents related to each of the "Ridgefield Entities," regardless of their relevance to the claims or defenses at issue in this suit.  Plaintiff incorporates by reference his General Objection to the definition of "Ridgefield Entities."

**REQUEST NO. 53:**   Produce all bank statements, cancelled checks, and wire transfer documents for West 17th. Please limit your response to the time period January 1, 2019 to present.

**RESPONSE:**

Plaintiff objects to this request as overly broad, unduly burdensome, harassing, and not reasonably calculated to lead to the discovery of admissible evidence because it seeks documents that are irrelevant to the claims and defenses at issue in this case.  Plaintiff further objects to the extent this request seeks "all bank statements, cancelled checks, and wire transfer documents," as that request

is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 54:**  Produce all bank statements, cancelled checks, and wire transfer documents for Lone Star. Please limit your response to the time period January 1, 2019 to present.

**RESPONSE:**

Plaintiff objects to this request as overly broad, unduly burdensome, harassing, and not reasonably calculated to lead to the discovery of admissible evidence because it seeks documents that are irrelevant to the claims and defenses at issue in this case.  Plaintiff further objects to the extent this request seeks "all bank statements, cancelled checks, and wire transfer documents," as that request is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.  Plaintiff will read this request as seeking accounting records, to the extent they exist and are in Plaintiff's custody or control.

Plaintiff will produce responsive documents to the extent that they exist and are in Plaintiff's custody or control.

**REQUEST NO. 55:**  Produce all bank statements, cancelled checks, and wire transfer documents for Riverway. Please limit your response to the time period January 1, 2019 to present.

**RESPONSE:**

Plaintiff objects to this request as overly broad, unduly burdensome, harassing, and not reasonably calculated to lead to the discovery of admissible evidence because it seeks documents that are irrelevant to the claims and defenses at issue in this case.  Plaintiff further objects to the extent this request seeks "all bank statements, cancelled checks, and wire transfer documents," as that request is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 56:**  Produce all bank statements, cancelled checks, and wire transfer documents for Escopeta/Furie. Please limit your response to the time period January 1, 2019 to present.

**RESPONSE:**

Plaintiff objects to this request as overly broad, unduly burdensome, harassing, and not reasonably calculated to lead to the discovery of admissible evidence because it seeks documents that are irrelevant to the claims and defenses at issue in this case.  Plaintiff further objects to the extent this request seeks "all bank statements, cancelled checks, and wire transfer documents," as that request is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 57:**  Produce all bank statements, cancelled checks, and wire transfer documents for ALB Holdings. Please limit your response to the time period January 1, 2019 to present.

**RESPONSE:**

Plaintiff objects to this request as overly broad, unduly burdensome, harassing, and not reasonably calculated to lead to the discovery of admissible evidence because it seeks documents that are irrelevant to the claims and defenses at issue in this case.  Plaintiff further objects to the extent this request seeks "all bank statements, cancelled checks, and wire transfer documents," as that request is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 58:**  Produce all bank statements, cancelled checks, and wire transfer documents for Y & V. Please limit your response to the time period January 1, 2019 to present.

**RESPONSE:**

Plaintiff objects to this request as overly broad, unduly burdensome, harassing, and not reasonably calculated to lead to the discovery of admissible evidence because it seeks documents that are irrelevant to the claims and defenses at issue in this case.  Plaintiff further objects to the extent this request seeks "all bank statements, cancelled checks, and wire transfer documents," as that request is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.  Plaintiff will read this request as seeking accounting records, to the extent they exist and are in Plaintiff's custody or control.

Plaintiff will produce responsive documents to the extent that they exist and are in Plaintiff's custody or control.

**REQUEST NO. 59:**  Produce all bank statements, cancelled checks, and wire transfer documents for BBI. Please limit your response to the time period January 1, 2019 to present.

**RESPONSE:**

Plaintiff objects to this request as overly broad, unduly burdensome, harassing, and not reasonably calculated to lead to the discovery of admissible evidence because it seeks documents that are irrelevant to the claims and defenses at issue in this case.  Plaintiff further objects to the extent this request seeks "all bank statements, cancelled checks, and wire transfer documents," as that request is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 60:**  Produce all of Allen Lawrence Berry's financial statements (signed by Allen Lawrence Berry). Please limit your response to such items that refer to any one or more of

the Berry-Related Companies. Please limit your response to the time period January 1, 2017 to present.

**RESPONSE:**

Plaintiff objects to this request as overly broad, unduly burdensome, harassing, and not reasonably calculated to lead to the discovery of admissible evidence because it seeks documents that are irrelevant to the claims and defenses at issue in this case.

**REQUEST NO. 61:** Produce all agreements between Orca and ICI, including loan agreements, merger agreements, promissory notes, purchase agreements, purchase sale agreements, partnership agreements, and any amendments thereto.

**RESPONSE:**

Plaintiff will produce responsive documents to the extent that they exist and are in Plaintiff's custody or control.

**REQUEST NO. 62:** Produce all agreements between Orca, ICI, Orca ICI, and/or Orca ICI Development JV (any two (2) or more of them), including any amendments, supplements, and/or exhibits/attachments/schedules to such agreements.

**RESPONSE:**

Plaintiff will produce responsive documents to the extent that they exist and are in Plaintiff's custody or control.

**REQUEST NO. 63:** Produce all agreements between any one or more of the Orca Entities and any one or more of the Ridgefield Entities, including any amendments, supplements, and/or exhibits/attachments/schedules to such agreements.

**RESPONSE:**

Plaintiff objects to the definition of "Orca Entities" as overly broad, unduly burdensome, harassing, and not reasonably calculated to lead to the discovery of admissible evidence. Defendants' definition of "Orca Entities" includes entities which have no affiliation or common ownership with the Berry Entities, Marty Berry, or Dennis Berry and have no connection to the claims at issue in this litigation. Plaintiff further objects to this request as overly broad, unduly burdensome, harassing, and not reasonably calculated to lead to the discovery of admissible evidence because it seeks documents related to each of the "Ridgefield Entities." Plaintiff incorporates by reference his General Objection to the definition of "Ridgefield Entities." Plaintiff further objects to this request as overly broad, unduly burdensome, harassing, and not reasonably calculated to lead to

26

the discovery of admissible evidence because it seeks documents that are irrelevant to the claims and defenses at issue in this case.

**REQUEST NO. 64:** Produce all documents identifying all mineral interests acquired with the near-$32,000,000.00 provided to ICI by Berry GP (including such mineral interests that may have been acquired in the name of ICI, or Orca ICI. To be clear, the purpose of this request is to allow – to the extent possible – tracing of money received to purchase of specific mineral interest held by one or more of the Berry-Related Companies. Please limit your response to the time period January 1, 2014, to present.

**RESPONSE:**

Plaintiff objects to this request as overly broad, unduly burdensome, harassing, and not reasonably calculated to lead to the discovery of admissible evidence because it seeks documents that are irrelevant to the claims and defenses at issue in this case.

**REQUEST NO. 65:** Produce all documents referring to any transfer, trade, merger, sale, lease, gift, or other transaction changing ownership or control of mineral interests purchased, directly or indirectly, with any portion of the near-$32,000,000.00 provided by Berry GP and/or Orca Assets (or a related entity) to ICI and/or ICI Orca. To be clear, the purpose of this request is to allow – to the extent possible – tracing of mineral interests transferred or received by one or more of the Berry-Related Companies. Please limit your response to the time period beginning January 1, 2014, to present.

**RESPONSE:**

Plaintiff objects to this request as overly broad, unduly burdensome, harassing, and not reasonably calculated to lead to the discovery of admissible evidence because it seeks documents that are irrelevant to the claims and defenses at issue in this case.

**REQUEST NO. 66:** For each Berry-Related Company, produce all checks, wire transfer documents, and other negotiable instruments transferring money to Allen Lawrence Berry. Please limit your response to money transfers equal to or greater than $50,000.00.

**RESPONSE:**

Plaintiff objects to this request as overly broad, unduly burdensome, harassing, and not reasonably calculated to lead to the discovery of admissible evidence because it seeks documents related to "each Berry-Related Companies," regardless of their relevance to the claims or defenses at issue in this suit. Plaintiff incorporates by reference his General Objection to the definition of "Berry-Related Companies" and will read this request consistent with that objection. Plaintiff further objects to the extent this request seeks "all checks, wire transfer documents, or other negotiable instruments" as that request is overly broad, unduly burdensome, and not reasonably calculated to

lead to the discovery of admissible evidence.  Plaintiff will read this request as seeking accounting records, to the extent they exist and are in Plaintiff's custody or control.

Plaintiff will produce responsive documents to the extent that they exist and are in Plaintiff's custody or control.


**REQUEST NO. 67:**  For each Berry-Related Company, produce all checks, wire transfer documents, and other negotiable instruments transferring money to Allen Lawrence Berry 2007 Trust. Please limit your response to money transfers equal to or greater than $50,000.00.

**RESPONSE:**

Plaintiff objects to this request as overly broad, unduly burdensome, harassing, and not reasonably calculated to lead to the discovery of admissible evidence because it seeks documents related to "each Berry-Related Companies," regardless of their relevance to the claims or defenses at issue in this suit.  Plaintiff incorporates by reference his General Objection to the definition of "Berry-Related Companies" and will read this request consistent with that objection.  Plaintiff further objects to the extent this request seeks "all checks, wire transfer documents, or other negotiable instruments" as that request is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.  Plaintiff will read this request as seeking accounting records, to the extent they exist and are in Plaintiff's custody or control.

Plaintiff will produce responsive documents to the extent that they exist and are in Plaintiff's custody or control.


**REQUEST NO. 68:**  For each Berry-Related Company, produce all documents relating to a transfer, gift, conveyance, sale, trade, or lease of any asset to Allen Lawrence Berry. Please limit your response to such transactions with a value equal to or greater than $50,000.00.

**RESPONSE:**

Plaintiff objects to this request as overly broad, unduly burdensome, harassing, and not reasonably calculated to lead to the discovery of admissible evidence because it seeks documents related to "each Berry-Related Companies," regardless of their relevance to the claims or defenses at issue in this suit.  Plaintiff incorporates by reference his General Objection to the definition of "Berry-Related Companies" and will read this request consistent with that objection.  Plaintiff further objects to the extent this request seeks "all checks, wire transfer documents, or other negotiable instruments" as that request is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.  Plaintiff will read this request as seeking accounting records, to the extent they exist and are in Plaintiff's custody or control.

Plaintiff will produce responsive documents to the extent that they exist and are in Plaintiff's custody or control.

**REQUEST NO. 69:** For each Berry-Related Company, produce all documents relating to a transfer, gift, conveyance, sale, trade, or lease of any asset to Allen Lawrence Berry 2007 Trust. Please limit your response to such transactions with a value equal to or greater than $50,000.00.

**RESPONSE:**

Plaintiff objects to this request as overly broad, unduly burdensome, harassing, and not reasonably calculated to lead to the discovery of admissible evidence because it seeks documents related to "each Berry-Related Companies," regardless of their relevance to the claims or defenses at issue in this suit. Plaintiff incorporates by reference his General Objection to the definition of "Berry-Related Companies" and will read this request consistent with that objection. Plaintiff further objects to the extent this request seeks "all checks, wire transfer documents, or other negotiable instruments" as that request is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Plaintiff will read this request as seeking accounting records, to the extent they exist and are in Plaintiff's custody or control.

Plaintiff will produce responsive documents to the extent that they exist and are in Plaintiff's custody or control.

**Mineral Interests**

**REQUEST NO. 70:** Produce all documents conveying, selling, contributing, trading, exchanging, leasing, or in any manner transferring (by merger or otherwise) any mineral interest to/from any one or more of the Berry-Related Companies. Please limit your response to the time period beginning January 1, 2011 to present.

**RESPONSE:**

Plaintiff objects to this request as overly broad, unduly burdensome, harassing, and not reasonably calculated to lead to the discovery of admissible evidence because it seeks documents related to "any one or more of the Berry-Related Companies," regardless of their relevance to the claims or defenses at issue in this suit. Plaintiff incorporates by reference his General Objection to the definition of "Berry-Related Companies" and will read this request consistent with that objection. Plaintiff further objects to this request as overly broad, unduly burdensome, harassing, and not reasonably calculated to lead to the discovery of admissible evidence because it seeks documents related to "any mineral interest," regardless of their relevance to the claims or defenses at issue in this suit. Plaintiff further objects to this request as overly broad, unduly burdensome, harassing, and not reasonably calculated to lead to the discovery of admissible evidence because it seeks documents that are irrelevant to the claims and defenses at issue in this case.

**REQUEST NO. 71:** Produce all documents conveying, selling, contributing, trading, exchanging, leasing, or in any manner transferring (by merger or otherwise) any mineral interest to/from Orca. Please limit your response to the time period beginning January 1, 2011 to present.

**RESPONSE:**

Plaintiff objects to this request as overly broad, unduly burdensome, harassing, and not reasonably calculated to lead to the discovery of admissible evidence because it seeks documents related to "any mineral interest," regardless of their relevance to the claims or defenses at issue in this suit. Plaintiff further objects to this request as overly broad, unduly burdensome, harassing, and not reasonably calculated to lead to the discovery of admissible evidence because it seeks documents that are irrelevant to the claims and defenses at issue in this case.

**REQUEST NO. 72:** Produce all documents conveying, selling, contributing, trading, exchanging, leasing, or in any manner transferring (by merger or otherwise) any mineral interest to/from Orca / ICI. Please limit your response to the time period beginning January 1, 2011 to present.

**RESPONSE:**

Plaintiff will produce responsive documents to the extent that they exist and are in Plaintiff's custody or control.

**REQUEST NO. 73:** Produce all documents conveying, selling, contributing, trading, exchanging, leasing, or in any manner transferring (by merger or otherwise) any mineral interest to/from any one or more of the Ridgefield Entities. Please limit your response to the time period beginning January 1, 2011 to present.

**RESPONSE:**

Plaintiff objects to this request as overly broad, unduly burdensome, harassing, and not reasonably calculated to lead to the discovery of admissible evidence because it seeks documents related to each of the "Ridgefield Entities," regardless of their relevance to the claims or defenses at issue in this suit. Plaintiff incorporates by reference his General Objection to the definition of "Ridgefield Entities." Plaintiff further objects to this request as overly broad, unduly burdensome, harassing, and not reasonably calculated to lead to the discovery of admissible evidence because it seeks documents related to "any mineral interest," regardless of its relevance to the claims or defenses at issue in this suit. Plaintiff further objects to this request as overly broad, unduly burdensome, harassing, and not reasonably calculated to lead to the discovery of admissible evidence because it seeks documents that are irrelevant to the claims and defenses at issue in this case.

**REQUEST NO. 74:** Produce all documents conveying, selling, contributing, trading, exchanging, leasing, or in any manner transferring (by merger or otherwise) any mineral interest to/from BBI (including but not limited to conveyance, selling, contributing, trading, exchanging, leasing, or transferring (by merger or otherwise) a 10% mineral interest from BBI to Berry GP). Please limit your response to the time period beginning January 1, 2011, to present.

**RESPONSE:**

Plaintiff objects to this request as overly broad, unduly burdensome, harassing, and not reasonably calculated to lead to the discovery of admissible evidence because it seeks documents related to "any mineral interest," regardless of its relevance to the claims or defenses at issue in this suit. Plaintiff further objects to this request as overly broad, unduly burdensome, harassing, and not reasonably calculated to lead to the discovery of admissible evidence because it seeks documents that are irrelevant to the claims and defenses at issue in this case.

**REQUEST NO. 75:** Produce all documents conveying, selling, contributing, trading, exchanging, leasing, or in any manner transferring (by merger or otherwise) any mineral interest to/from Escopeta. Please limit your response to the time period beginning January 1, 2011 to present.

**RESPONSE:**

Plaintiff objects to this request as overly broad, unduly burdensome, harassing, and not reasonably calculated to lead to the discovery of admissible evidence because it seeks documents related to "any mineral interest," regardless of its relevance to the claims or defenses at issue in this suit. Plaintiff further objects to this request as overly broad, unduly burdensome, harassing, and not reasonably calculated to lead to the discovery of admissible evidence because it seeks documents that are irrelevant to the claims and defenses at issue in this case.

**REQUEST NO. 76:** Produce all documents conveying, selling, contributing, trading, exchanging, leasing, or in any manner transferring (by merger or otherwise) any mineral interest to/from Furie. Please limit your response to the time period beginning January 1, 2011 to present.

**RESPONSE:**

Plaintiff objects to this request as overly broad, unduly burdensome, harassing, and not reasonably calculated to lead to the discovery of admissible evidence because it seeks documents related to "any mineral interest," regardless of its relevance to the claims or defenses at issue in this suit. Plaintiff further objects to this request as overly broad, unduly burdensome, harassing, and not reasonably calculated to lead to the discovery of admissible evidence because it seeks documents that are irrelevant to the claims and defenses at issue in this case.

**REQUEST NO. 77:** Produce all documents conveying, selling, contributing, trading, exchanging, leasing, or in any manner transferring (by merger or otherwise) any mineral interest to/from the Allen Lawrence Berry 2007 Trust. Please limit your response to the time period beginning January 1, 2011 to present.

**RESPONSE:**

Plaintiff objects to this request as overly broad, unduly burdensome, harassing, and not reasonably calculated to lead to the discovery of admissible evidence because it seeks documents related to "any mineral interest," regardless of its relevance to the claims or defenses at issue in this suit. Plaintiff further objects to this request as overly broad, unduly burdensome, harassing, and not reasonably calculated to lead to the discovery of admissible evidence because it seeks documents that are irrelevant to the claims and defenses at issue in this case.

**REQUEST NO. 78:** Produce all Berry-Related Entities' documents conveying, selling, contributing, trading, exchanging, leasing, or in any manner transferring (by merger or otherwise) any mineral interest to/from B.B.I. Inc., including but not limited to the 'Kitchen Prospects: Lease Numbers #389185, #389186, #389189, #38189, #389190, #389191, #389192, #389193, #389194, #389202, #389203, #389212, and #389213.

**RESPONSE:**

Plaintiff objects to this request as overly broad, unduly burdensome, harassing, and not reasonably calculated to lead to the discovery of admissible evidence because it seeks documents related to all Berry-Related Entities," regardless of their relevance to the claims or defenses at issue in this suit. Plaintiff incorporates by reference his General Objection to the definition of "Berry-Related Companies" and will read this request consistent with that objection. Plaintiff further objects to this request as overly broad, unduly burdensome, harassing, and not reasonably calculated to lead to the discovery of admissible evidence because it seeks documents related to "any mineral interest," regardless of their relevance to the claims or defenses at issue in this suit. Plaintiff further objects to this request as overly broad, unduly burdensome, harassing, and not reasonably calculated to lead to the discovery of admissible evidence because it seeks documents that are irrelevant to the claims and defenses at issue in this case.

**REQUEST NO. 79:** Produce all Berry-Related Entities' documents conveying, selling, contributing, trading, exchanging, or in any manner transferring (by merger or otherwise) any mineral interest to/from Escopeta; including but not limited to such documents relating to the Kitchen Prospects: Lease Numbers #389185, #389186, #389189, #38189, #389190, #389191, #389192, #389193, #389194, #389202, #389203, #389212, and #389213.

**RESPONSE:**

Plaintiff objects to this request as overly broad, unduly burdensome, harassing, and not reasonably calculated to lead to the discovery of admissible evidence because it seeks documents related to all Berry-Related Entities," regardless of their relevance to the claims or defenses at issue in this suit. Plaintiff incorporates by reference his General Objection to the definition of "Berry-Related Companies" and will read this request consistent with that objection. Plaintiff further objects to this request as overly broad, unduly burdensome, harassing, and not reasonably calculated to lead to the discovery of admissible evidence because it seeks documents related to "any mineral interest," regardless of their relevance to the claims or defenses at issue in this suit. Plaintiff

32

further objects to this request as overly broad, unduly burdensome, harassing, and not reasonably calculated to lead to the discovery of admissible evidence because it seeks documents that are irrelevant to the claims and defenses at issue in this case.

**REQUEST NO. 80:** Produce all documents conveying, selling, contributing, trading, exchanging, leasing, or in any manner transferring (by merger or otherwise) any mineral interest any of the Ridgefield Property Interests. Please limit your response to the time period beginning January 1, 2011 to present.

**RESPONSE:**

Plaintiff objects to this request as overly broad, unduly burdensome, harassing, and not reasonably calculated to lead to the discovery of admissible evidence because it seeks documents related to each of the "Ridgefield Entities," regardless of their relevance to the claims or defenses at issue in this suit. Plaintiff incorporates by reference his General Objection to the definition of "Ridgefield Entities." Plaintiff further objects to this request as overly broad, unduly burdensome, harassing, and not reasonably calculated to lead to the discovery of admissible evidence because it seeks documents related to "any mineral interest," regardless of its relevance to the claims or defenses at issue in this suit. Plaintiff further objects to this request as overly broad, unduly burdensome, harassing, and not reasonably calculated to lead to the discovery of admissible evidence because it seeks documents that are irrelevant to the claims and defenses at issue in this case.

**Communications**

**REQUEST NO. 81:** Produce all communications between and among Lawrence Berry, Marty Berry, Dennis Berry, Rob Powers, Mike Hummell, and/or Jim Klein relating to any of the Berry-Related Companies. Please limit your response to the time period beginning January 1, 2019 to present.

**RESPONSE:**

Plaintiff objects to this request as overly broad, unduly burdensome, harassing, and not reasonably calculated to lead to the discovery of admissible evidence because it seeks documents related to "each of the Berry-Related Companies," regardless of their relevance to the claims or defenses at issue in this suit. Plaintiff incorporates by reference his General Objection to the definition of "Berry-Related Companies" and will read this request consistent with that objection. Plaintiff further objects to this request as overly broad, unduly burdensome, harassing, and not reasonably calculated to lead to the discovery of admissible evidence because it seeks "all communications . . . relating to any of the Berry-Related Companies" without specifying a subject matter relevant to the claims or defenses at issue in this suit. Plaintiff further objects to this request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence because it states an overly broad time frame for the documents requested. Plaintiff will search for responsive documents related to the claims and defenses at issue from January 1, 2020 to present.

33

Subject to the foregoing objection, Plaintiff will produce responsive documents to the extent that they exist and are in Plaintiff's custody or control.

**REQUEST NO. 82:** Produce all communications between and among Lawrence Berry, Marty Berry, Dennis Berry, Rob Powers, Mike Hummell, and/or Jim Klein relating to any of the Berry-Related Companies. Please limit your response to the time period beginning six (6) months prior to the date of formation of each of the Berry-Related Companies, and ending six (6) months after the date of formation of each of the Berry-Related Companies.

**RESPONSE:**

Plaintiff objects to this request as overly broad, unduly burdensome, harassing, and not reasonably calculated to lead to the discovery of admissible evidence because it seeks documents related to "each of the Berry-Related Companies," regardless of their relevance to the claims or defenses at issue in this suit. Plaintiff incorporates by reference his General Objection to the definition of "Berry-Related Companies" and will read this request consistent with that objection. Plaintiff further objects to this request as overly broad, unduly burdensome, harassing, and not reasonably calculated to lead to the discovery of admissible evidence because it seeks "all communications . . . relating to any of the Berry-Related Companies" without specifying a subject matter relevant to the claims or defenses at issue in this suit. Plaintiff further objects to this request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence because it states an overly broad time frame for the documents requested. Plaintiff will search for responsive documents related to the claims and defenses at issue from January 1, 2020 to present.

Subject to the foregoing objection, Plaintiff will produce responsive documents to the extent that they exist and are in Plaintiff's custody or control.

**Lawsuits**

**REQUEST NO. 83:** Produce original petitions for all lawsuits filed by Allen Lawrence Berry. Please limit your response to this request to the time period January 1, 2019, to present.

**RESPONSE:**

Plaintiff objects to this request as overly broad, unduly burdensome, harassing, and not reasonably calculated to lead to the discovery of admissible evidence because it seeks "all lawsuits filed by Allen Lawrence Berry" without specifying a subject matter relevant to this claims or defenses at issue in this suit. Plaintiff further objects to this request as overly broad, unduly burdensome, harassing, and not reasonably calculated to lead to the discovery of admissible evidence because it seeks documents that are irrelevant to the claims and defenses at issue in this case.

**REQUEST NO. 84:** Produce original petitions for all lawsuits filed by Allen Lawrence Berry 2007 Trust. Please limit your response to this request to the time period beginning January 1, 2019, to present.

**RESPONSE:**

Plaintiff objects to this request as overly broad, unduly burdensome, harassing, and not reasonably calculated to lead to the discovery of admissible evidence because it seeks "all lawsuits filed by Allen Lawrence Berry 2007 Trust" without specifying a subject matter relevant to this claims or defenses at issue in this suit. Plaintiff further objects to this request as overly broad, unduly burdensome, harassing, and not reasonably calculated to lead to the discovery of admissible evidence because it seeks documents that are irrelevant to the claims and defenses at issue in this case.

**REQUEST NO. 85:** Produce original petitions for all lawsuits filed against Allen Lawrence Berry. Please limit your response to this request to the time period beginning January 1, 2019, to present.

**RESPONSE:**

Plaintiff objects to this request as overly broad, unduly burdensome, harassing, and not reasonably calculated to lead to the discovery of admissible evidence because it seeks "all lawsuits against Allen Lawrence Berry" without specifying a subject matter relevant to this claims or defenses at issue in this suit. Plaintiff further objects to this request as overly broad, unduly burdensome, harassing, and not reasonably calculated to lead to the discovery of admissible evidence because it seeks documents that are irrelevant to the claims and defenses at issue in this case.

**REQUEST NO. 86:** Produce original petitions for all lawsuits filed against Allen Lawrence Berry 2007 Trust. Please limit your response to this request to the time period January 1, 2019, to present.

**RESPONSE:**

Plaintiff objects to this request as overly broad, unduly burdensome, harassing, and not reasonably calculated to lead to the discovery of admissible evidence because it seeks "all lawsuits against Allen Lawrence Berry 2007 Trust" without specifying a subject matter relevant to this claims or defenses at issue in this suit. Plaintiff further objects to this request as overly broad, unduly burdensome, harassing, and not reasonably calculated to lead to the discovery of admissible evidence because it seeks documents that are irrelevant to the claims and defenses at issue in this case.

**REQUEST NO. 87:** Produce original petitions for all lawsuits filed by or against any one or more of the Berry-Related Companies, or any company in which either Allen Lawrence Berry or the

Allen Lawrence Berry 2007 Trust have (or then had) a controlling interest). Please limit your response to this request to the time period beginning January 1, 2014, to present.

**RESPONSE:**

Plaintiff objects to this request as overly broad, unduly burdensome, harassing, and not reasonably calculated to lead to the discovery of admissible evidence because it seeks documents related to "each of the Berry-Related Companies," regardless of their relevance to the claims or defenses at issue in this suit. Plaintiff incorporates by reference his General Objection to the definition of "Berry-Related Companies" and will read this request consistent with that objection. Plaintiff further objects to this request as overly broad, unduly burdensome, harassing, and not reasonably calculated to lead to the discovery of admissible evidence because it seeks "all lawsuits filed by Allen Lawrence Berry" without specifying a subject matter relevant to this claims or defenses at issue in this suit. Plaintiff further objects to this request as overly broad, unduly burdensome, harassing, and not reasonably calculated to lead to the discovery of admissible evidence because it seeks documents that are irrelevant to the claims and defenses at issue in this case.

**REQUEST NO. 88:** Produce the most recent tax return for each of the Berry-Related Companies, whether such company still exists or not.

**RESPONSE:**

Plaintiff objects to this request as overly broad, unduly burdensome, harassing, and not reasonably calculated to lead to the discovery of admissible evidence because it seeks documents related to "each of the Berry-Related Companies," regardless of their relevance to the claims or defenses at issue in this suit. Plaintiff incorporates by reference his General Objection to the definition of "Berry-Related Companies" and will read this request consistent with that objection.

Subject to the foregoing objection, Plaintiff will produce responsive documents to the extent that they exist and are in Plaintiff's custody or control.

**REQUEST NO. 89:** Produce all emails relating to any proposed purchase or sale of any one or more, or portion thereof, of the Berry Entities (including but not limited to your interest, Marty Berry's interest, and/or Dennis Berry's interest in any one or more of the Berry Entities (or related entities)). Please limit your response to the time period beginning January 1, 2020 to present.

**RESPONSE:**

Plaintiff objects to this request as overly broad, unduly burdensome, harassing, and not reasonably calculated to lead to the discovery of admissible evidence because it seeks documents related to "each of the Berry-Related Companies," regardless of their relevance to the claims or defenses at issue in this suit. Plaintiff incorporates by reference his General Objection to the definition of "Berry-Related Companies" and will read this request consistent with that objection.

36

Subject to the foregoing objection, Plaintiff will produce responsive documents to the extent that they exist and are in Plaintiff's custody or control.

**REQUEST NO. 90:** Produce all emails relating to any proposed purchase or sale of LDMA Limited Partnership, or any portion thereof. Please limit your response to the time period beginning January 1, 2020 to present.

**RESPONSE:**

Plaintiff will produce responsive documents to the extent that they exist and are in Plaintiff's custody or control.

**REQUEST NO. 91:** Produce all emails relating to any proposed purchase or sale of Becon Inc., or any portion thereof. Please limit your response to the time period beginning January 1, 2020 to present.

**RESPONSE:**

Plaintiff will produce responsive documents to the extent that they exist and are in Plaintiff's custody or control.

**REQUEST NO. 92:** Produce all emails relating to any proposed purchase or sale of any one or more of the Berry-Related Entities, or any portion thereof. Please limit your response to the time period beginning January 1, 2020 to present.

**RESPONSE:**

Plaintiff objects to this request as overly broad, unduly burdensome, harassing, and not reasonably calculated to lead to the discovery of admissible evidence because it seeks documents related to "each of the Berry-Related Companies," regardless of their relevance to the claims or defenses at issue in this suit. Plaintiff incorporates by reference his General Objection to the definition of "Berry-Related Companies" and will read this request consistent with that objection.

Subject to the foregoing objection, Plaintiff will produce responsive documents to the extent that they exist and are in Plaintiff's custody or control.

**REQUEST NO. 93:** Produce all Berry-Related Companies' invoices that relied, in whole or in part, upon information (man-hours worked, price of rented equipment, or other) contained in an invoice prepared by any one or more of the Berry Entities.

**RESPONSE:**

37

Plaintiff objects to this request as overly broad, unduly burdensome, harassing, and not reasonably calculated to lead to the discovery of admissible evidence because it seeks documents related to "each of the Berry-Related Companies," regardless of their relevance to the claims or defenses at issue in this suit. Plaintiff incorporates by reference his General Objection to the definition of "Berry-Related Companies" and will read this request consistent with that objection. Plaintiff further objects to this request as overly broad, unduly burdensome, harassing, and not reasonably calculated to lead to the discovery of admissible evidence because it seeks documents that are irrelevant to the claims and defenses at issue in this case. Plaintiff further objects to this request because it is vague and confusing as worded.

**REQUEST NO. 94:** OMITTED.

**REQUEST NO. 95:** Produce all payroll records for Y & V for the following time period: January 1, 2020 to present.

**RESPONSE:**

Plaintiff objects to the extent this request seeks "all payroll records," as that request is vague, overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Plaintiff will read this request as seeking accounting records, to the extent they exist and are in Plaintiff's custody or control

Plaintiff will produce responsive documents to the extent that they exist and are in Plaintiff's custody or control.

**REQUEST NO. 96:** Produce all documents and communications relating to BBI Inc.'s (sometimes B.B.I. Inc.) or a related company's sale of 10% of all of BBI Inc.'s and/or Allen Lawrence Berry's right, title and interest in approximately 98,000 net mineral acres in the Cook Inlet, Alaska (sometimes referred to as the 'Kitchen Prospects: Lease Numbers #389185, #389186, #389189, #38189, #389190, #389191, #389192, #389193, #389194, #389202, #389203, #389212, and #389213). Your response to this request must include, at a minimum, all Negotiable Instruments relating to same, all lease/title transfer/conveyance/assignment and other documents relating to same, and email exchanges relating to same.

**RESPONSE:**

Plaintiff objects to this request as overly broad, unduly burdensome, harassing, and not reasonably calculated to lead to the discovery of admissible evidence because it seeks documents that are irrelevant to the claims and defenses at issue in this case.

**REQUEST NO. 97:** Produce all Negotiable Instruments relating to full or partial payment of any U.S. government Jones Act fine incurred by Furie Operating Alaska LLC and/or Escopeta Oil &

Gas Corporation, or any of their related companies. Please limit your response to the time period beginning January 1, 2017 to present.

**RESPONSE:**

Plaintiff objects to this request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence because seeks documents that are irrelevant to the claims and defenses at issue in this case.

**REQUEST NO. 98:** Produce Escopeta Oil & Gas Corporation's (or its related company's/companies') application for a Jones Act waiver to use a foreign ship to move equipment to Alaska's Cook Inlet (with all attachments). Please limit your response to the time period beginning January 1, 2010 to present.

**RESPONSE:**

Plaintiff objects to this request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence because seeks documents that are irrelevant to the claims and defenses at issue in this case.

**REQUEST NO. 99:** Produce all Department of Homeland Security (DHS) denials of any waiver(s) sought by Escopeta Oil & Gas Corporation's (or its related company's/companies') application for a Jones Act waiver to use a foreign ship to move equipment to Alaska's Cook Inlet. Please limit your response to the time period beginning January 1, 2010 to present.

**RESPONSE:**

Plaintiff objects to this request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence because seeks documents that are irrelevant to the claims and defenses at issue in this case.

**REQUEST NO. 100:** For any one or more of the Berry-Related Companies, produce a copy of all documents (check, wire transfer, or other) evidencing full or partial payment to any company for use of the Chinese heavy-lift ship Kang Sheng Kou. Please limit your response to the time period beginning January 1, 2010 to present.

**RESPONSE:**

Plaintiff objects to this request as overly broad, unduly burdensome, harassing, and not reasonably calculated to lead to the discovery of admissible evidence because it seeks documents related to "each of the Berry-Related Companies," regardless of their relevance to the claims or defenses at issue in this suit. Plaintiff incorporates by reference his General Objection to the definition of "Berry-Related Companies" and will read this request consistent with that objection. Plaintiff

further objects to this request as overly broad, unduly burdensome, harassing, and not reasonably calculated to lead to the discovery of admissible evidence because it seeks documents that are irrelevant to the claims and defenses at issue in this case.

**REQUEST NO. 101:** For any one or more of the Berry-Related Companies, produce a copy of all documents (check, wire transfer, or other) evidencing full or partial payment to any company to use the drill rig Spartan 151 (a jack-up rig owned by Spartan Offshore Drilling) in or near Alaska's Cook inlet. Please limit your response to the time period beginning January 1, 2010 to present.

**RESPONSE:**

Plaintiff objects to this request as overly broad, unduly burdensome, harassing, and not reasonably calculated to lead to the discovery of admissible evidence because it seeks documents related to "each of the Berry-Related Companies," regardless of their relevance to the claims or defenses at issue in this suit. Plaintiff incorporates by reference his General Objection to the definition of "Berry-Related Companies" and will read this request consistent with that objection. Plaintiff further objects to this request as overly broad, unduly burdensome, harassing, and not reasonably calculated to lead to the discovery of admissible evidence because it seeks documents that are irrelevant to the claims and defenses at issue in this case.

**REQUEST NO. 102:** For any one or more of the Berry-Related Companies, produce a copy of all documents (check, wire transfer, or other) evidencing full or partial payment to any company to use the jack-up rig Randolph Yost in or near Alaska's Cook inlet. Please limit your response to the time period beginning January 1, 2010 to present.

**RESPONSE:**

Plaintiff objects to this request as overly broad, unduly burdensome, harassing, and not reasonably calculated to lead to the discovery of admissible evidence because it seeks documents related to "each of the Berry-Related Companies," regardless of their relevance to the claims or defenses at issue in this suit. Plaintiff incorporates by reference his General Objection to the definition of "Berry-Related Companies" and will read this request consistent with that objection. Plaintiff further objects to this request as overly broad, unduly burdensome, harassing, and not reasonably calculated to lead to the discovery of admissible evidence because it seeks documents that are irrelevant to the claims and defenses at issue in this case.

**REQUEST NO. 103:** Produce all bank statements for account held in the name of Escopeta (Sterling Bank Houston, Texas ABA #113005549). Please limit your response to the time period beginning January 1, 2001 to present.

**RESPONSE:**

Plaintiff objects to this request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence because seeks documents that are irrelevant to the claims and defenses at issue in this case.

**REQUEST NO. 104:** Produce the "Lease Assignment and Participation Agreement (the "LAPA") concerning the Cook Inlet Basin" – executed on or about October 22, 2010 – referred to in "Plaintiffs' [Allen Lawrence Berry, the Allen Lawrence Berry 2007 Trust, Danny S. Davis, and Taylor Minerals LLC] Verified First Amended Original Petition and Application for Temporary Injunction" in Cause No. 2023-29225 (Harris County, Texas).

**RESPONSE:**

Plaintiff objects to this request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence because seeks documents that are irrelevant to the claims and defenses at issue in this case.

**REQUEST NO. 105:** Produce the "June 18, 2020 Assignment" referred to in "Plaintiffs' [Allen Lawrence Berry, the Allen Lawrence Berry 2007 Trust, Danny S. Davis, and Taylor Minerals LLC] Verified First Amended Original Petition and Application for Temporary Injunction" in Cause No. 2023-29225 (Harris County, Texas).

**RESPONSE:**

Plaintiff objects to this request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence because seeks documents that are irrelevant to the claims and defenses at issue in this case.

**REQUEST NO. 106:** Produce all documents purporting to sell, convey, assign, pledge, gift, or otherwise transfer any right, title, and/or interest in "the Kitchen Prospects" (as this terms is used by Allen Lawrence Berry), Cook Inlet, Alaska; specifically lease numbers #389185, #389186, #389189, #38189, #389190, #389191, #389192, #389193, #389194, #389202, #389203, #389212, and #389213.

**RESPONSE:**

Plaintiff objects to this request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence because seeks documents that are irrelevant to the claims and defenses at issue in this case.

**REQUEST NO. 107:** Produce all negotiable instruments (checks, wire transfer documents, and other) transferring funds from any of the Berry-Related Entities to Allen Lawrence Berry or the Allen Lawrence Berry 2007 Trust. Please limit your response to the time period beginning January

1, 2011 to present. Please further limit your response to such transfer of funds in excess of $100,000.00.

**RESPONSE:**

Plaintiff objects to this request as overly broad, unduly burdensome, harassing, and not reasonably calculated to lead to the discovery of admissible evidence because it seeks documents related to "each of the Berry-Related Companies," regardless of their relevance to the claims or defenses at issue in this suit. Plaintiff incorporates by reference his General Objection to the definition of "Berry-Related Companies" and will read this request consistent with that objection. Plaintiff further objects to this request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence because seeks documents that are irrelevant to the claims and defenses at issue in this case.

**REQUEST NO. 108:** Produce all Frost Bank statements for Orca Assets GP LLC account number 560066192. Please limit your response to the time period January 1, 2014 to present.

**RESPONSE:**

Plaintiff objects to this request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence because seeks documents that are irrelevant to the claims and defenses at issue in this case.

**REQUEST NO. 109:** Produce all books and records of Orca / ICI (the partnership). Orca, as Managing Partner, is the responsible party for maintenance of the books and records. Please limit your response to the time period January 1, 2014 to present.

**RESPONSE:**

Plaintiff will produce responsive documents to the extent that they exist and are in Plaintiff's custody or control.

**REQUEST NO. 110:** Produce all bank records, including monthly bank statements, of Orca / ICI (the partnership). Orca, as Managing Partner, is the responsible party for maintenance of the partnership's bank statements. Please limit your response to the time period January 1, 2014 to present.

**RESPONSE:**

Plaintiff objects to the extent this request seeks "all bank records," as that request is vague, overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Plaintiff will read this request as seeking accounting records, to the extent they exist and are in Plaintiff's custody or control.

42

Plaintiff will produce responsive documents to the extent that they exist and are in Plaintiff's custody or control.

**REQUEST NO. 111:** Produce all K-1s issued by Orca / ICI. Orca, as Managing Partner, is the responsible party for maintenance of such K-1s. Please limit your response to the time period January 1, 2014 to present.

**RESPONSE:**

Plaintiff will produce responsive documents to the extent that they exist and are in Plaintiff's custody or control.

**REQUEST NO. 112:** Produce all tax returns issued by Orca / ICI. Orca, as Managing Partner, is the responsible party for maintenance of such tax returns.

**RESPONSE:**

Plaintiff will produce responsive documents to the extent that they exist and are in Plaintiff's custody or control.

**REQUEST NO. 113:** Produce all books and records of Y & V. Please limit your response to the time period January 1, 2017, to present.

**RESPONSE:**

Plaintiff will produce responsive documents to the extent that they exist and are in Plaintiff's custody or control.

**REQUEST NO. 114:** Produce all bank records, including monthly bank statements, of Y & V. Please limit your response to the time period beginning January 1, 2017, to present.

**RESPONSE:**

Plaintiff objects to the extent this request seeks "all bank records," as that request is vague, overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Plaintiff will read this request as seeking accounting records, to the extent they exist and are in Plaintiff's custody or control.

Plaintiff will produce responsive documents to the extent that they exist and are in Plaintiff's custody or control.

**REQUEST NO. 115:** Produce all K-1s issued by Y & V. Please limit your response to the time period beginning January 1, 2017, to present.

**RESPONSE:**

Plaintiff will produce responsive documents to the extent that they exist and are in Plaintiff's custody or control.


**REQUEST NO. 116:** Produce all tax returns issued by Y & V. Please limit your response to the time period beginning January 1, 2017, to present.

**RESPONSE:**

Plaintiff will produce responsive documents to the extent that they exist and are in Plaintiff's custody or control.


**REQUEST NO. 117:** Produce all checks, wire transfer documents, and other negotiable instruments relating to distributions to members (owners) of Y & V. Please limit your response to the time period beginning January 1, 2017, to present.

**RESPONSE:**

Plaintiff objects to the extent this request seeks "all checks, wire transfer documents, and other negotiable instruments," as that request is vague, overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Plaintiff will read this request as seeking accounting records, to the extent they exist and are in Plaintiff's custody or control.

Plaintiff will produce responsive documents to the extent that they exist and are in Plaintiff's custody or control.


**REQUEST NO. 118:** Produce the Matador Purchase Agreement (dated on or about May 16, 2011) referred to in the Amended and Restated Partnership Agreement of Orca / ICI Development (effective on or about May 20, 2011).

**RESPONSE:**

Plaintiff objects to this request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence because seeks documents that are irrelevant to the claims and defenses at issue in this case.

44

**REQUEST NO. 119:** For Allen Lawrence Berry, please produce all Form 1099, Form 1120, Form 1120-S, and Schedule K-1 documents. Please limit your response to the time period beginning January 1, 2014 to present.

**RESPONSE:**

Plaintiff objects to this request as overly broad, unduly burdensome, harassing, and not reasonably calculated to lead to the discovery of admissible evidence because seeks documents that are irrelevant to the claims and defenses at issue in this case.

**REQUEST NO. 120:** For Allen Lawrence Berry 2007 Trust, please produce all Form 1099, Form 1120, Form 1120-S, and Schedule K-1 documents. Please limit your response to the time period beginning January 1, 2014 to present.

**RESPONSE:**

Plaintiff objects to this request as overly broad, unduly burdensome, harassing, and not reasonably calculated to lead to the discovery of admissible evidence because seeks documents that are irrelevant to the claims and defenses at issue in this case.

**REQUEST NO. 121:** Produce all documents showing production of oil and gas (and other minerals, if any) from Ridgefield Property Interests.

**RESPONSE:**

Plaintiff objects to this request as overly broad, unduly burdensome, harassing, and not reasonably calculated to lead to the discovery of admissible evidence because it seeks documents related to each of the "Ridgefield Entities," regardless of their relevance to the claims or defenses at issue in this suit. Plaintiff incorporates by reference his General Objection to the definition of "Ridgefield Entities." Plaintiff objects to this request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence because it fails to state a time frame for the documents requested and seeks documents that are irrelevant to the claims and defenses at issue in this case.

**REQUEST NO. 122:** For all Berry-Related Companies, produce all production reports for all Ridgefield Property Interests.

**RESPONSE:**

Plaintiff objects to this request as overly broad, unduly burdensome, harassing, and not reasonably calculated to lead to the discovery of admissible evidence because it seeks documents related to "each of the Berry-Related Companies," regardless of their relevance to the claims or defenses at issue in this suit. Plaintiff incorporates by reference his General Objection to the definition of

45

"Berry-Related Companies" and will read this request consistent with that objection. Plaintiff objects to this request as overly broad, unduly burdensome, harassing, and not reasonably calculated to lead to the discovery of admissible evidence because it seeks documents related to each of the "Ridgefield Entities," regardless of their relevance to the claims or defenses at issue in this suit. Plaintiff incorporates by reference his General Objection to the definition of "Ridgefield Entities." Further, Plaintiff incorporates by reference his General Objection #4 and will search for responsive documents from January 1, 2020 to present.

Subject to the foregoing objection, none.

**REQUEST NO. 123:** Produce all loan documents for any Berry-Related Company wherein mineral interests, or mineral production, was pledged as collateral, security, or somehow encumbered to secure the loan for one or more of the Berry-Related Companies. Please limit your response to the time period beginning January 1, 2014, to present.

**RESPONSE:**

Plaintiff objects to this request as overly broad, unduly burdensome, harassing, and not reasonably calculated to lead to the discovery of admissible evidence because it seeks documents related to "each of the Berry-Related Companies," regardless of their relevance to the claims or defenses at issue in this suit. Plaintiff incorporates by reference his General Objection to the definition of "Berry-Related Companies" and will read this request consistent with that objection. Plaintiff further objects to this request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence because it fails to state a time frame for the documents requested and seeks documents that are irrelevant to the claims and defenses at issue in this case.

**REQUEST NO. 124:** Produce all loan documents for Allen Lawrence Berry wherein mineral interests, or mineral production, was pledged as collateral, security, or somehow encumbered to secure the loan for Allen Lawrence Berry. Please limit your response to the time period beginning January 1, 2014, to present.

**RESPONSE:**

Plaintiff objects to this request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence because it fails to state a time frame for the documents requested and seeks documents that are irrelevant to the claims and defenses at issue in this case.

**REQUEST NO. 125:** Produce all loan documents for the Allen Lawrence Berry 2007 Trust wherein mineral interests, or mineral production, was pledged as collateral, security, or somehow encumbered to secure the loan for the Allen Lawrence Berry 2007 Trust. Please limit your response to the time period beginning January 1, 2014, to present.

46

**RESPONSE:**

Plaintiff objects to this request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence because it fails to state a time frame for the documents requested and seeks documents that are irrelevant to the claims and defenses at issue in this case.

# APPENDIX 61



05-102
(Rev.9-15/33)

# Texas Franchise Tax Public Information Report

To be filed by Corporations, Limited Liability Companies (LLC), Limited Partnerships (LP),
Professional Associations (PA) and Financial Institutions

■ **Tcode** 13196 Franchise

■ Taxpayer number

| 3 | 2 | 0 | 6 | 4 | 8 | 2 | 2 | 7 | 3 | 0 |
|---|---|---|---|---|---|---|---|---|---|---|

■ Report year

| 2 | 0 | 2 | 4 |
|---|---|---|---|

*You have certain rights* under Chapter 552 and 559, Government Code, to review, request and correct information we have on file about you. Contact us at 1-800-252-1381.

| Taxpayer name | Axis Midstream Holdings, LLC | ■ ○ Blacken circle if the mailing address has changed. |
|---|---|---|
| Mailing address | 1414 VALERO WAY | Secretary of State (SOS) file number or Comptroller file number |
| City CORPUS CHRISTI | State TX | ZIP code plus 4 78409 |  0802812872 |

○ Blacken circle if there are currently no changes from previous year; if no information is displayed, complete the applicable information in Sections A, B and C.

| Principal office | 1414 Valero Way, Corpus Christi, TX, 78409 |
|---|---|
| Principal place of business | 1414 Valero Way, Corpus Christi, TX, 78409 |

*You must report officer, director, member, general partner and manager information as of the date you complete this report.*

***Please sign below!*** **This report must be signed to satisfy franchise tax requirements.**

1000000000015

**SECTION A** Name, title and mailing address of each officer, director, member, general partner or manager.

| Name | Title | Director | | m m d d y y |
|---|---|---|---|---|
| **AL Berry** | **President** | ○ YES | Term expiration | |
| Mailing address 1414 Valero Way | City Corpus Christi | State TX | | ZIP Code 78409 |
| Name **DW Berry** | Title **V.P.** | Director ○ YES | Term expiration | m m d d y y |
| Mailing address 1414 Valero Way | City Corpus Christi | State TX | | ZIP Code 78409 |
| Name **MG Berry** | Title **V.P.** | Director ○ YES | Term expiration | m m d d y y |
| Mailing address 1414 Valero Way | City Corpus Christi | State TX | | ZIP Code 78409 |

**SECTION B** Enter information for each corporation, LLC, LP, PA or financial institution, if any, in which this entity owns an interest of 10 percent or more.

| Name of owned (subsidiary) corporation, LLC, LP, PA or financial institution | State of formation | Texas SOS file number, if any | Percentage of ownership |
|---|---|---|---|
| Name of owned (subsidiary) corporation, LLC, LP, PA or financial institution | State of formation | Texas SOS file number, if any | Percentage of ownership |

**SECTION C** Enter information for each corporation, LLC, LP, PA or financial institution, if any, that owns an interest of 10 percent or more in this entity.

| Name of owned (parent) corporation, LLC, LP, PA or financial institution | State of formation | Texas SOS file number, if any | Percentage of ownership |
|---|---|---|---|
| **Berry GP, Inc.** | **TX** | **0011654900** | **100.000** |

| Registered agent and registered office currently on file *(see instructions if you need to make changes)* | You must make a filing with the Secretary of State to change registered agent, registered office or general partner information. |
|---|---|
| Agent: **Mike Hummell** | |

| Office: **1414 Valero Way** | City **Corpus Christi** | State **TX** | ZIP Code **78409** |
|---|---|---|---|

The information on this form is required by Section 171.203 of the Tax Code for each corporation, LLC, LP, PA or financial institution that files a Texas Franchise Tax Report. Use additional sheets for Sections A, B and C, if necessary. The information will be available for public inspection.

I declare that the information in this document and any attachments is true and correct to the best of my knowledge and belief, as of the date below, and that a copy of this report has been mailed to each person named in this report who is an officer, director, member, general partner or manager and who is not currently employed by this or a related corporation, LLC, LP, PA or financial institution.

| sign here ▶ | **James Klein** | Title **Officer** | Date **11/15/2024** | Area code and phone number **( 361 ) 693 - 2100** |
|---|---|---|---|---|

## Texas Comptroller Official Use Only

| VE/DE | ○ | PIR IND | ○ |
|---|---|---|---|



05-102
(Rev.9-15/33)

# Texas Franchise Tax Public Information Report

To be filed by Corporations, Limited Liability Companies (LLC), Limited Partnerships (LP),
Professional Associations (PA) and Financial Institutions

■ **Tcode** 13196 Franchise

■ Taxpayer number

| 3 | 2 | 0 | 6 | 4 | 8 | 2 | 2 | 7 | 3 | 0 |
|---|---|---|---|---|---|---|---|---|---|---|

■ Report year

| 2 | 0 | 2 | 4 |
|---|---|---|---|

*You have certain rights under Chapter 552 and 559, Government Code, to review, request and correct information we have on file about you. Contact us at 1-800-252-1381.*

Taxpayer name
**Axis Midstream Holdings, LLC**

■ ◯ Blacken circle if the mailing address has changed.

Mailing address
**1414 VALERO WAY**

Secretary of State (SOS) file number or Comptroller file number

City **CORPUS CHRISTI** | State **TX** | ZIP code plus 4 **78409**

**0802812872**

◯ Blacken circle if there are currently no changes from previous year; if no information is displayed, complete the applicable information in Sections A, B and C.

Principal office
**1414 Valero Way, Corpus Christi, TX, 78409**

Principal place of business
**1414 Valero Way, Corpus Christi, TX, 78409**

*You must report officer, director, member, general partner and manager information as of the date you complete this report.*

*Please sign below!* **This report must be signed to satisfy franchise tax requirements.**

1000000000015

**SECTION A** Name, title and mailing address of each officer, director, member, general partner or manager.

| Name | Title | Director | | m m d d y y |
|---|---|---|---|---|
| **Robert Powers** | **V.P.** | ◯ YES | Term expiration | |
| Mailing address **1414 Valero Way** | City **Corpus Christi** | State **TX** | | ZIP Code **78409** |
| Name **Robert Powers** | Title **ASecretary** | Director ◯ YES | Term expiration | m m d d y y |
| Mailing address **1414 Valero Way** | City **Corpus Christi** | State **TX** | | ZIP Code **78409** |
| Name **Mike Hummell** | Title **V.P.** | Director ◯ YES | Term expiration | m m d d y y |
| Mailing address **1414 Valero Way** | City **Corpus Christi** | State **TX** | | ZIP Code **78409** |

**SECTION B** Enter information for each corporation, LLC, LP, PA or financial institution, if any, in which this entity owns an interest of 10 percent or more.

| Name of owned (subsidiary) corporation, LLC, LP, PA or financial institution | State of formation | Texas SOS file number, if any | Percentage of ownership |
|---|---|---|---|
| Name of owned (subsidiary) corporation, LLC, LP, PA or financial institution | State of formation | Texas SOS file number, if any | Percentage of ownership |

**SECTION C** Enter information for each corporation, LLC, LP, PA or financial institution, if any, that owns an interest of 10 percent or more in this entity.

| Name of owned (parent) corporation, LLC, LP, PA or financial institution | State of formation | Texas SOS file number, if any | Percentage of ownership |
|---|---|---|---|

Registered agent and registered office currently on file *(see instructions if you need to make changes)*

Agent: **Mike Hummell**

*You must make a filing with the Secretary of State to change registered agent, registered office or general partner information.*

Office: **1414 Valero Way** | City **Corpus Christi** | State **TX** | ZIP Code **78409**

The information on this form is required by Section 171.203 of the Tax Code for each corporation, LLC, LP, PA or financial institution that files a Texas Franchise Tax Report. Use additional sheets for Sections A, B and C, if necessary. The information will be available for public inspection.

I declare that the information in this document and any attachments is true and correct to the best of my knowledge and belief, as of the date below, and that a copy of this report has been mailed to each person named in this report who is an officer, director, member, general partner or manager and who is not currently employed by this or a related corporation, LLC, LP, PA or financial institution.

| sign here ▶ | **James Klein** | Title **Officer** | Date **11/15/2024** | Area code and phone number **( 361 ) 693 - 2100** |
|---|---|---|---|---|

## Texas Comptroller Official Use Only

| VE/DE | ◯ | PIR IND | ◯ |
|---|---|---|---|



05-102
(Rev.9-15/33)
FORM

# Texas Franchise Tax Public Information Report

To be filed by Corporations, Limited Liability Companies (LLC), Limited Partnerships (LP),
Professional Associations (PA) and Financial Institutions

■ **Tcode** 13196 Franchise

| ■ Taxpayer number | ■ Report year | *You have certain rights* under Chapter 552 and 559, Government Code, to review, request and correct information we have on file about you. Contact us at 1-800-252-1381. |
|---|---|---|
| 3 2 0 6 4 8 2 2 7 3 0 | 2 0 2 4 | |

| Taxpayer name | |
|---|---|
| **Axis Midstream Holdings, LLC** | ■ ◯ Blacken circle if the mailing address has changed. |

| Mailing address | Secretary of State (SOS) file number or |
|---|---|
| **1414 VALERO WAY** | Comptroller file number |

| City | State | ZIP code plus 4 | |
|---|---|---|---|
| **CORPUS CHRISTI** | **TX** | **78409** | **0802812872** |

◯ Blacken circle if there are currently no changes from previous year; if no information is displayed, complete the applicable information in Sections A, B and C.

| Principal office |
|---|
| **1414 Valero Way, Corpus Christi, TX, 78409** |

| Principal place of business |
|---|
| **1414 Valero Way, Corpus Christi, TX, 78409** |

You must report officer, director, member, general partner and manager information as of the date you complete this report.

*Please sign below!* **This report must be signed to satisfy franchise tax requirements.**

1000000000015

**SECTION A** Name, title and mailing address of each officer, director, member, general partner or manager.

| Name | Title | Director | | m m d d y y |
|---|---|---|---|---|
| **Mike Hummell** | **Genl Counsel** | ◯ YES | Term expiration | |
| Mailing address **1414 Valero Way** | City **Corpus Christi** | State **TX** | | ZIP Code **78409** |
| Name **James Klein** | Title **V.P.** | Director ◯ YES | Term expiration | m m d d y y |
| Mailing address **1414 Valero Way** | City **Corpus Christi** | State **TX** | | ZIP Code **78409** |
| Name **James Klein** | Title **Treasurer** | Director ◯ YES | Term expiration | m m d d y y |
| Mailing address **1414 Valero Way** | City **Corpus Christi** | State **TX** | | ZIP Code **78409** |

**SECTION B** Enter information for each corporation, LLC, LP, PA or financial institution, if any, in which this entity owns an interest of 10 percent or more.

| Name of owned (subsidiary) corporation, LLC, LP, PA or financial institution | State of formation | Texas SOS file number, if any | Percentage of ownership |
|---|---|---|---|
| Name of owned (subsidiary) corporation, LLC, LP, PA or financial institution | State of formation | Texas SOS file number, if any | Percentage of ownership |

**SECTION C** Enter information for each corporation, LLC, LP, PA or financial institution, if any, that owns an interest of 10 percent or more in this entity.

| Name of owned (parent) corporation, LLC, LP, PA or financial institution | State of formation | Texas SOS file number, if any | Percentage of ownership |
|---|---|---|---|

| Registered agent and registered office currently on file *(see instructions if you need to make changes)* | You must make a filing with the Secretary of State to change registered agent, registered office or general partner information. |
|---|---|
| Agent: **Mike Hummell** | |

| Office: **1414 Valero Way** | City **Corpus Christi** | State **TX** | ZIP Code **78409** |
|---|---|---|---|

The information on this form is required by Section 171.203 of the Tax Code for each corporation, LLC, LP, PA or financial institution that files a Texas Franchise Tax Report. Use additional sheets for Sections A, B and C, if necessary. The information will be available for public inspection.

I declare that the information in this document and any attachments is true and correct to the best of my knowledge and belief, as of the date below, and that a copy of this report has been mailed to each person named in this report who is an officer, director, member, general partner or manager and who is not currently employed by this or a related corporation, LLC, LP, PA or financial institution.

| sign here ▸ | **James Klein** | Title **Officer** | Date **11/15/2024** | Area code and phone number **( 361 ) 693 - 2100** |
|---|---|---|---|---|

## Texas Comptroller Official Use Only

| VE/DE | ◯ | PIR IND | ◯ |
|---|---|---|---|



05-102
(Rev.9-15/33)

# Texas Franchise Tax Public Information Report

To be filed by Corporations, Limited Liability Companies (LLC), Limited Partnerships (LP),
Professional Associations (PA) and Financial Institutions

■ **Tcode** 13196 Franchise

■ Taxpayer number

| 3 | 2 | 0 | 6 | 4 | 8 | 2 | 2 | 7 | 3 | 0 |
|---|---|---|---|---|---|---|---|---|---|---|

■ Report year

| 2 | 0 | 2 | 4 |
|---|---|---|---|

*You have certain rights* under Chapter 552 and 559,
*Government Code, to review, request and correct information*
*we have on file about you. Contact us at 1-800-252-1381.*

| Taxpayer name | |
|---|---|
| **Axis Midstream Holdings, LLC** | ■ ○ Blacken circle if the mailing address has changed. |

| Mailing address **1414 VALERO WAY** | Secretary of State (SOS) file number or Comptroller file number |
|---|---|
| City **CORPUS CHRISTI** State **TX** ZIP code plus 4 **78409** | **0802812872** |

○ Blacken circle if there are currently no changes from previous year; if no information is displayed, complete the applicable information in Sections A, B and C.

| Principal office **1414 Valero Way, Corpus Christi, TX, 78409** |
|---|
| Principal place of business **1414 Valero Way, Corpus Christi, TX, 78409** |

*You must report officer, director, member, general partner and manager information as of the date you complete this report.*

***Please sign below!*** **This report must be signed to satisfy franchise tax requirements.**

1000000000015

## SECTION A   Name, title and mailing address of each officer, director, member, general partner or manager.

| Name **James Klein** | Title **CFO** | Director ○ YES | Term expiration | m | m | d | d | y | y |
|---|---|---|---|---|---|---|---|---|---|
| Mailing address **1414 Valero Way** | City **Corpus Christi** | State **TX** | ZIP Code **78409** | | | | | | |
| Name | Title | Director ○ YES | Term expiration | m | m | d | d | y | y |
| Mailing address | City | State | ZIP Code | | | | | | |
| Name | Title | Director ○ YES | Term expiration | m | m | d | d | y | y |
| Mailing address | City | State | ZIP Code | | | | | | |

## SECTION B   Enter information for each corporation, LLC, LP, PA or financial institution, if any, in which this entity owns an interest of 10 percent or more.

| Name of owned (subsidiary) corporation, LLC, LP, PA or financial institution | State of formation | Texas SOS file number, if any | Percentage of ownership |
|---|---|---|---|
| Name of owned (subsidiary) corporation, LLC, LP, PA or financial institution | State of formation | Texas SOS file number, if any | Percentage of ownership |

## SECTION C   Enter information for each corporation, LLC, LP, PA or financial institution, if any, that owns an interest of 10 percent or more in this entity.

| Name of owned (parent) corporation, LLC, LP, PA or financial institution | State of formation | Texas SOS file number, if any | Percentage of ownership |
|---|---|---|---|

| Registered agent and registered office currently on file *(see instructions if you need to make changes)* | *You must make a filing with the Secretary of State to change registered agent, registered office or general partner information.* |
|---|---|
| Agent: **Mike Hummell** | |
| Office: **1414 Valero Way** City **Corpus Christi** State **TX** ZIP Code **78409** | |

The information on this form is required by Section 171.203 of the Tax Code for each corporation, LLC, LP, PA or financial institution that files a Texas Franchise Tax Report. Use additional sheets for Sections A, B and C, if necessary. The information will be available for public inspection.

I declare that the information in this document and any attachments is true and correct to the best of my knowledge and belief, as of the date below, and that a copy of this report has been mailed to each person named in this report who is an officer, director, member, general partner or manager and who is not currently employed by this or a related corporation, LLC, LP, PA or financial institution.

| sign here ▶ | **James Klein** | Title **Officer** | Date **11/15/2024** | Area code and phone number **( 361 ) 693 - 2100** |
|---|---|---|---|---|

## Texas Comptroller Official Use Only

| VE/DE | ○ | PIR IND | ○ |
|---|---|---|---|

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Susan Gonzales on behalf of Douglas Allison
Bar No. 1083500
susan@dallisonlaw.com
Envelope ID: 97256869
Filing Code Description: Appendix
Filing Description: Relators' Appendix Vol 5 of 5
Status as of 2/11/2025 4:49 PM CST

Associated Case Party: Marty Berry

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Douglas AAllison | | doug@dallisonlaw.com | 2/11/2025 4:07:26 PM | SENT |
| Vanessa AGilmore | | vg@robertsmarkland.com | 2/11/2025 4:07:26 PM | SENT |
| Kim Brunkenhoefer | | kim@dallisonlaw.com | 2/11/2025 4:07:26 PM | SENT |
| Susan Gonzales | | susan@dallisonlaw.com | 2/11/2025 4:07:26 PM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Rosa Brennan | | rbrennan@gibbsbruns.com | 2/11/2025 4:07:26 PM | SENT |
| Michelle Bultman | | MBultman@gibbsbruns.com | 2/11/2025 4:07:26 PM | SENT |
| Roxanne Graham | | rgraham@gibbsbruns.com | 2/11/2025 4:07:26 PM | SENT |
| Christina Pena | | cpena@gibbsbruns.com | 2/11/2025 4:07:26 PM | SENT |

Associated Case Party: AllenLawrenceBerry

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Michael Absmeier | 24050195 | mabsmeier@gibbsbruns.com | 2/11/2025 4:07:26 PM | SENT |
| Barrett Reasoner | 16641980 | breasoner@gibbsbruns.com | 2/11/2025 4:07:26 PM | SENT |
| Sydney Ballesteros | | sballesteros@gibbsbruns.com | 2/11/2025 4:07:26 PM | SENT |
| Bruce Baldree | | bbaldree@gibbsbruns.com | 2/11/2025 4:07:26 PM | SENT |

Associated Case Party: AlbertTheodorePowers

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Susan Gonzales on behalf of Douglas Allison
Bar No. 1083500
susan@dallisonlaw.com
Envelope ID: 97256869
Filing Code Description: Appendix
Filing Description: Relators' Appendix Vol 5 of 5
Status as of 2/11/2025 4:49 PM CST

Associated Case Party: AlbertTheodorePowers

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Alistair Dawson | 5596100 | adawson@beckredden.com | 2/11/2025 4:07:26 PM | SENT |

Associated Case Party: Allied Ports, LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Roland Garcia | 7645250 | garciar@gtlaw.com | 2/11/2025 4:07:26 PM | SENT |